Randall A. Peterman, ISB No. 1944
MOFFATT, THOMAS, BARRETT, ROCK &
    FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
rap@moffatt.com
15-924.4

Attorneys for J. R. Simplot Company

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>DON J. SIMPLOT,<br><br>         Debtor. | Case No. 06-00002-TLM<br>Chapter 11<br><br>**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY** |

       COMES NOW J. R. Simplot Company ("JRS" or "Company") and objects to the confirmation of the Joint Plan of Reorganization of Debtor and Creditors' Committee ("Plan"), and the Creditors' Trust Agreement ("CTA"), proposed by Don Simplot ("Debtor") and the Creditors' Committee ("Creditors' Committee" or "CC"), as follows.

## I.    THE PLAN AND THE CREDITORS' TRUST AGREEMENT.

       The Plan is proposed jointly by the Debtor and the Creditors' Committee.

       The Plan proposes that the Debtor "walk away" from the reorganization process, with certain concessions made to the Debtor regarding his ongoing ownership of a home, his

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN**
**OF REORGANIZATION OF DEBTOR AND CREDITORS'**
**COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 1**

right to a portion of his retirement income, and freedom from nondischargeability actions in the future. The Plan further proposes that the assets of the estate be transferred to a trust ("Trust") which is created under the CTA. Authority over the Trust is vested in an Executive Board, whose members are the existing members of the CC. CTA § 6.19. The Trustee is identified as Ronald Greenspan (for purposes of simplicity, the term "Trustee" shall include the Trustee, the Executive Board, and the Plan Administrator). CTA § 2.2.

The Plan and the Creditors Trust Agreement identify three principal roles of the Trust:

(a)     transfer from the Debtor to the Trustee of all assets of the estate, which will be liquidated and distributed to unsecured creditors;

(b)     litigation, either in the form of prosecuting voidance actions, or in the form of litigation aimed at the Company or DJS Properties L.P. ("DJS" or "Partnership"), to liquidate assets which theoretically will enlarge the property of the estate to be distributed to creditors; and

(c)     implementation of the Plan and the CTA. CTA § 2.2.

The Plan proposes that the Trust be granted a period of five years to accomplish its purposes. If such purposes are not satisfied within that period, the Plan proposes a liquidation of the remaining assets of the estate.

As to the Company, the Plan proposes:

(a)     that the Company's Class A stock and Class B stock, which is assumed to be property of the estate, be transferred to the Trustee;

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 2**

(b)    that the Trustee be a Class A and Class B shareholder of the Company for the five-year period of the Plan;

(c)    the sale of such stock by the Trustee to third parties; and

(d)    A postponement until the post-confirmation period of litigation regarding the efficacy and enforceability of certain contracts between the Company (or the shareholders of the Company) and the Debtor, which such contracts will be assigned by the Debtor to the Trustee if the Plan is confirmed. Because such contracts contain transfer restrictions ("Transfer Restrictions") regarding the stock and the value of the stock in the event of a sale, they are critical to the Company, the estate, the unsecured creditors, and the Trustee. [1]

---

[1] The Debtor is the owner of the following sharehold interests in the Company:

**Class A Stock.** The Debtor is the owner of 18 shares of the Class A voting stock in the Company, which is approximately 22% of such stock. *The Class A stock is subject to those Transfer Restrictions as outlined below.*

**Class B Stock.** The Debtor is the owner of approximately 133 shares of the non-voting Class B stock in the Company, which is less than 1% of such stock. *The Class B stock is not subject to those Transfer Restrictions as outlined below.*

**Preferred Stock.** The Debtor is *not* the owner of any Preferred stock in the Company. *The Preferred stock is subject to those Transfer Restrictions identified below.* However, DJS (as to which the Debtor is a general partner and limited partner) is the owner of 114,285.702 shares of the 457,142.808 Preferred stock in the Company, which is approximately 25% of such stock, and is therefore subject to those Transfer Restrictions as outlined below. Furthermore, to the extent the Trustee can rightfully assume or assign the rights of the Debtor (as general partner or limited partner) in DJS, the Company maintains that the Trustee is also subject to such Transfer Restrictions.

Shares of all such stock are held by shareholders ("Shareholders"), including but not limited to members of the Simplot family. Shareholders of Class A stock and Preferred stock, other than the Debtor, have filed a joinder to this Objection.

Transfer restrictions on the Class A and Preferred stock are included in various documents between and among the Debtor, shareholders of the Debtor ("Shareholders"), DJS, and the

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 3**                    BOI_MT2:638270.3

Company, including but not limited to the following documents or amendments to such documents:

**Undated. Certificates of Class A Stock and Preferred Stock** in J. R. Simplot Co. which reflect transfer restrictions.

**June 28, 1955, and May 21, 1997. Articles of Incorporation** dated June 28, 1955, and amended on May 21, 1997 (Class A Stock and Preferred Stock restrictions)

**March 11, 1997. Special Resolution of the Board of Directors** of J. R. Simplot Company dated March 11, 1997, which ratifies a Certificate of Amendment to the Articles of Incorporation of J. R. Simplot Co.

**March 11, 1997. Special Resolution of the Class A Shareholders of J. R. Simplot Co.,** which ratifies a Certificate of Amendment to the Articles of Incorporation of J. R. Simplot Co.

**March 24, 1997.**

**Consent of Class B Capital Stockholders of J. R. Simplot Co.,** which ratifies a Certificate of Amendment to the Articles of Incorporation of J. R. Simplot Co.

**Consent of Class B Capital Stockholders of J. R. Simplot Co.,** which ratifies the same Certificate of Amendment to the Articles of Incorporation of J. R. Simplot Co.

**Consent of Class B Capital Stockholders of J. R. Simplot Co.,** which ratifies the same Certificate of Amendment to the Articles of Incorporation of J. R. Simplot Co.

**Consent of Class B Capital Stockholders of J. R. Simplot Co.,** which ratifies the same Certificate of Amendment to the Articles of Incorporation of J. R. Simplot Co.

**Consent of Class B Capital Stockholders of J. R. Simplot Co.,** which ratifies the same Certificate of Amendment to the Articles of Incorporation of J. R. Simplot Co.

**Consent of Class B Capital Stockholders of J. R. Simplot Co.,** which ratifies a Certificate of Amendment to the Articles of Incorporation of J. R. Simplot Co.

**May 1997. Stockholders Agreement** among J. R. Simplot Co. and the Shareholders.

**Supplemental Class A Shareholder Agreement** dated January 1, 2000, among the shareholders.

**July 17, 2001. Bylaws** of J. R. Simplot Company dated July 17, 2001.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 4**

The Trustee's assumption of the role as a Class A stockholder in JRS will be precedent setting—all such shareholders have, in the past, been members of the Simplot family. The Trustee's status as a shareholder will impose duties and responsibilities which are owed by the Trustee to the Company, and by the Company to the Trustee. The Trustee will also attempt to sell the Debtor's Interest in the Class A stock and Class B stock of the Company—either free from the Transfer Restrictions, or subject to such restrictions. All of these relationships will doubtless require massive amounts of negotiation and/or litigation between the Trustee and the Company. The Company is therefore highly interested in the terms of the Plan and the Creditors' Trust Agreement, which will govern the Trustee's actions over the next five years.

## II.    HISTORY OF THE CASE.

To fully understand the implications of the Plan and the CTA, some history of the case is necessary.

### A.    The Creditors' Committee's Initial Attempts to Exonerate Itself from Liability Under the Guise of 11 U.S.C. Section 1102(b)(3).

A major objection of the Company relates to the provisions of the Plan and the CTA, which attempt to exonerate and exculpate the Trustee from any liability in its dealings over the next five years with the Company. A history of this case demonstrates that this attempt is merely a continuation of prior attempts by the Creditors' Committee to exonerate itself from liability for its actions within the bankruptcy process.

Debtor's Chapter 11 petition in bankruptcy was initially filed on January 4, 2006. After initial wrangling, the Creditors' Committee's first action was to file a "Motion for *Nunc Pro Tunc* Order Temporarily Limiting Duties Under 11 U.S.C. Section 1102(b)(3)," by which the CC attempted to (a) avoid its duties under Section 1102(b)(3) because the language of the

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 5**

statute was "vague and ambiguous" to the CC; and (b) exculpate and exonerate itself from

liability under Section 1102(b)(3).[2]  The Company (Docket No. 83), the Debtor (Docket No. 85),

and the U.S. Trustee (Docket No. 92) all interposed objections to such motion.  In denying that

motion and entering an appropriate order defining the CC's duties under Section 1102(b)(3)

(Docket No. 138), this Court refused to exonerate or exculpate the CC, ruling that the purpose of

the statute was to impose a duty of disclosure on the CC, not absolve the CC from liability.

**B.     This Court's Initial Identification of the Company as a "Party in Interest" with Standing to Appear.**

The Company anticipates that the Creditors' Committee intends to take the

position at the confirmation hearing that the Company is simultaneously (a) bound by the terms

of the Plan; and (b) without standing as a "party in interest" to object to confirmation of the Plan.

Assuming that the CC takes this contradictory position, this Court's prior observations and

rulings regarding the Company's status are important to the case.

At the very first hearing in this case on March 6, 2006 (regarding the

Section 1102(b)(3) issue), question was raised by the CC regarding the standing of two parties—

one an unsecured creditor (Banner Bank) and one the Company.  At that time, this Court

explicitly ruled that Banner Bank had standing, and that the Company "has standing as a party in

interest . . ." (Docket No. 100).

---

[2] In paragraph (k) of its Motion for a *Nunc Pro Tunc* Order Temporarily Limiting Duties Under 11 U.S.C. Section 1102(b)(3) (Docket No. 58), the Creditors' Committee requested an order of this Court, stating:

> Neither the Creditors' Committee nor any individual member of the Creditors' Committee shall be liable for damages for any act or omission relating to 11 U.S.C. Section 1102(b)(3) during the term that this order is in effect, provided, however, that any Party-in-Interest may move the Court for the enforcement of the order.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 6**

### C.    The Protective Order.

In March of 2006, the CC also filed motions seeking to immediately undertake the Rule 2004 examinations of the Debtor (Docket No. 88), the Company (Docket No. 89), and the Partnership (Docket No. 93), and served subpoenas upon such entities.  All such parties objected (Docket Nos. 99, 103, 104, 105 and 119), which resulted in this Court ruling (Docket No. 189) that the "meet and confer" requirements of the Bankruptcy Rules applied to the Creditors' Committee's discovery requests.  Following such court-ordered meet and confer sessions, this Court ultimately entered its Ordering Granting Stipulated Order and Protective Order Regarding Rule 2004 Exams and Confidentiality (Simplot Parties) ("Protective Order") on May 9, 2006 (Docket No. 225).  Thereafter, the Company was granted a period of months to fulfill its obligations to produce documents relative to the Debtor, the Company, or the Partnership—a duty which it fulfilled.

### D.    Recent Negotiations Among the Creditors' Committee, the Debtor, the Company and the Partnership.

Over the past ten months, representatives of the Debtor, the Creditors' Committee, and the Company have met repeatedly in an attempt to determine the basic outline of a consensual plan of reorganization which would be proposed by the Debtor and the CC, and to which the Company could agree.  Such a consensual plan seemed advisable, given:

(a)    the Debtor's wish to "walk away" from the reorganization process;

(b)    the shared desire that a consensual plan be confirmed, which would allow for future judicial determination of certain litigation that seemed inevitable in the case;

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 7**          BOI_MT2:638270.3

(c)     the parties' acknowledgement that the Partnership and the Company were the principal "targets" of litigation;[3]

(d)     the desire that all litigation rights available to the Trustee against Third Parties, including the Company, would be preserved and reserved, as they existed on the date of the filing of the bankruptcy; and

(e)     the mutual desire to create a "level playing field" within which the parties could resolve litigation matters.

Given these common goals, the Company understood that would propose a Plan, whereby the Trust was created, and whereby the Trust would complete the Chapter 11 process in lieu of the Debtor. Inherent in the Company's consideration of such a Plan was the idea that *the Plan create a "level playing field" for the Company to protect its interest in its stock, and that all rights of the parties (and especially the rights of the Trustee and the Company) as they existed on the date of the filing of the bankruptcy be reserved and preserved.* Unfortunately, this premise (which formed the basis for all prior discussions among the parties) is not honored in the Plan.

Another supervening event occurred. Late in the confirmation process, DJS elected to exercise it right to object to the Plan, based upon the contention that the Plan violates Section 365 and case law, to the extent it proposed a transfer of a partner's interest in a limited partnership to a non-debtor third party.[4]

---

[3] Docket No. 89; Docket No. 126.

[4] Assuming *arguendo* that a party is not a party in interest, Idaho case law also makes it clear that the Court has a duty to independently review the confirmability of any proposed plan of reorganization, and may rely on any sources (even the objection to the plan filed by a party

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 8**

Unfortunately, the Plan as proposed by the CC has morphed from what was intended by the parties to be a relatively objective statement which preserved and reserved all rights and all parties, to a Plan that is skewed and tortured to:

(a)     protect, exculpate, and exonerate the Creditors' Committee (now in the guise of the "Executive Board" of the Trust) and its appointed Trustee from liability, at the expense of those parties who will be required to deal with the CC and the Trustee under the Plan;

(b)     free the Trustee (who is nothing more than the successor to the Debtor) from critical oversight of this Court, and fundamental principals of bankruptcy law, commercial law, and due process.

(c)     create fuzzy lines of authority as between the Executive Board and the Trustee, such that either party may have ill-defined discretionary rights, and simultaneously have recourse to this Court in the event they disagree among themselves;

(d)     create a trust relationship between the Trust and its beneficiaries, then take it away;

(e)     utilize language which indicates that the transfer of the Company's stock interest from the Debtor to the Trustee will be "free and clear of all liens, claims and interests;"

(f)     fail to contain adequate language to protect the Company's Transfer Restrictions regarding its Class A, Class B or Preferred Stock;

(g)     fail to contain adequate language to protect the interests of the Company (and its Shareholders) from the effect of the liquidation of the Preferred stock held by DJS;

---

whose status as a party in interest is challenged) to determine such issue. *In re Zaleha,* 93 IBCR 296 (Bankr. Id. 1993).

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 9**                    BOI_MT2:638270.3

      (h)     create doubt as to the ongoing applicability of the Protective Order to the CC (now in the guise of the Executive Board and its Trustee); and

      (i)     fail to create a level playing field vis-à-vis the Company.

## III.    SUMMARY OF OBJECTIONS TO CONFIRMATION.

      Given these circumstances, JRS's objections can be classified as follows:

      (a)     Objections based upon the broad language of the Plan and the CTA that exonerates or exculpates the Trust, the Trustee, the Executive Board, and related parties (including professionals) from any liability, regardless of such parties' actions (no matter how illegal or onerous) during the five-year term of the Plan;

      (b)     Objections based upon the lack of judicial oversight over the actions of the Trust, the Trustee, the Executive Board, and related parties (including professionals) in critical areas where such oversight has traditionally been exercised by the bankruptcy court;

      (c)     Objections based upon the confusing relationship between the Executive Board and the Trustee regarding management decisions of the Trust;

      (d)     Objections based upon confusing and contradictory language in the Plan and the CTA, which both creates then vitiates a trust relationship;

      (e)     Objections based upon the transfer to the Trustee of the Debtor's interest in the Company (represented by Class A and Class B sharehold interests in the Company) "free and clear of any lien, claim or Interest in such property of any other Person. . . .";

      (f)     Objections regarding the effect of confirmation on Transfer Restrictions that exist between the Company and the Debtor, which are being transferred to the Trustee;

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 10**      BOI_MT2:638270.3

(g)    Objections regarding the Preferred stock of the Company which is held by

the Partnership, and the ongoing and post-confirmation viability of Transfer Restrictions as to

such Preferred stock;

(h)    Objections regarding the lack of Plan provisions by which the terms of the

Protective Order are applicable to the Trustee; and

(i)    Miscellaneous objections.

To the extent the Plan and the CTA attempt to avoid the Trustee's compliance

with such fundamental principles, it is objectionable and fatally flawed.

## IV.    THE COMPANY'S STATUS AS A PARTY IN INTEREST WITH STANDING IN THE CONFIRMATION PROCESS.

As indicated above, the Company anticipates that the CC will maintain that the

Company lacks standing as a party in interest in the bankruptcy confirmation process, even

though the CC simultaneously maintains that the Company is bound by the terms and provisions

of the Plan.  Any such argument is unsupported by the facts, the law, and the history of the case.

11 U.S.C. Section 1128(b) confirms that, "A party in interest may object to

confirmation of a plan."  Accordingly, the only question is whether the Company is a party in

interest in this matter.

The standard in Idaho for determination of whether a party is a party in interest is

quite broad:

> "Party in interest" is only partially defined in the Bankruptcy Code
> .... 11 U.S.C. Section 1121(c).... The term "party in interest"
> is expandable, and its application must be determined on a case-
> by-case basis.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 11**

*In re Rook Broadcasting of Idaho, Inc.,* 93 IBCR 133, 134 (Bankr. Id. 1993); *see also In re*

*Zaleha,* 93 IBCR 296 (Bankr. Id. 1993) (relying upon the definition of a party in interest in 11

U.S.C. Section 1109(b)).

>   As stated by this Court in another case:
>
>   Section 1128(b) limits standing to object to a proposed chapter 11
>   plan to "part[ies] in interest." The term "party in interest is not
>   defined in the Bankruptcy Code, although section 1109(b) and
>   section 1121(c) provide partial definitions. . . . This district has
>   indicated on several occasions that the term "party in interest" is
>   expandable, and is evaluated on a case-by-case basis.
>
>   *In re Chandler Airpark Joint Venture I,* 92 IBCR 23 (Bankr. D. Arizona 1992).

The notion of who is a party in interest is an expandable one whereby the Court "should, on a

case-by-case basis, determine whether a party has a sufficient stake in the outcome of a case so

as to require its representation." *Id.* The concept "is an elastic and broad one designed to give a

Court great latitude to insure fair representation of all constituencies impacted in any significant

way by a Chapter 11 case." *Id., citing In re Johns-Manville Corp.,* 36 B.R. 743, 754 (Bankr.

S.D.N.Y. 1984).

>   In the present case the Company has "a sufficient stake in the outcome of the case

so as to require its representation," and is entitled to party in interest status as a

claimant/constituent who is impacted "in a significant way" by this bankruptcy proceeding, for

numerous reasons.

>   First, the CC has previously acknowledged on numerous occasions that the

Company has a substantial "stake" in the outcome of the case, and has in fact repeatedly

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 12**

trumpeted the criticality of the Company's role in this case.[5] The Creditors' Committee has previously identified the Debtor's interest in the Company as "[t]he most valuable asset in this bankruptcy estate"; stated that the Class A stock and Class B stock is "of tremendous legal significance" in the case; and indicated that the CC's understanding of the Company and its value is critical to the reorganization process (Docket No. 89).

The Creditors' Committee has stated:

> Foremost among the questions raised by the Debtor's schedules are the nature and value of Debtor's direct and indirect stakes in the Company, and the nature and value of his direct stake in the Partnership. These assets are the estate's most valuable, and most complex, assets.

Creditors' Committee's Memorandum in Support of its Motion to Conduct Rule 2004 Examinations, p. 3. (Docket No. 126). The CC has further trumpeted the absolute importance of the efficacy and enforceability of the contract provisions between the Company (and its Shareholders) and the Debtor (which the Plan proposes to be transferred to the Trustee) which place Transfer Restrictions on the Company stock.[6]

---

[5] See footnote 3 above.

[6] As stated by the Committee (Docket No. 126):

> Second, the transfer restrictions may not be enforeceable. The voting shares and the preferred shares are subject to a right of first refusal in favor of the Company. However, rights of first refusal may be executory contracts that can be rejected by the Debtor. . . .

> Third, even in the unlikely event that the company's right of first refusal with respect to the preferred shares is enforceable, it might not be applicable. There are certain exempt sales that are not subject to the right of first refusal. . . .

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 13**

Second, this Court ruled at the outset of this case that the Company is in fact a party in interest, and neither the Debtor nor the CC (until the moment of confirmation) have argued any differently.[7] The Company has been involved in virtually all matters brought before the Court, and has played a substantial role in negotiations among the parties.

Third (and even according to the CC's own Plan) the Company is a party in interest that is "impacted in a significant way" by the bankruptcy of the Debtor for numerous reasons. First, the Company previously contractually agreed to pay over to the Debtor the sum of $50,000 over a period of six years, in consideration of the Debtor's decision to resign from the board of directors of Micron, Inc. Under the Plan, those funds will now be paid over to the Trustee. Plan, Exhibit 1.2.56 ¶ 1. Second, the Company owes certain obligations to the Debtor regarding retirement payments, some of which the Plan proposes will continue to be paid to the Debtor and some of which will not. Those which are not paid to the Debtor will be paid to the Trustee. (Plan, Section 5.6) Third, the Debtor is the owner of 18 shares of Class A stock in the Company, and 133.331 shares of Class B stock in the Company, both of which are proposed to be transferred to the Trust (Plan, Exhibit 1.2.56 ¶¶ 8 and 9). Fourth, the Partnership (which the Plan proposes will be pierced and liquidated by the Trustee so as to reach the value in the Partnership) is the owner of the Company's Preferred stock and is subject to the Transfer

---

Fifth, the right of first refusal for the preferred shares triggers the Company's obligation to conduct an appraisal to determine a fair market price.

[7] See Section II (B), *supra*.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 14**          BOI_MT2:638270.3

Restrictions, which will also be applicable to the Trustee. Fifth, the question of the

enforceability of the Transfer Restrictions is to be determined under the Plan. [8]

Finally, any argument by the Committee that the Company lacks standing is

abrogated by the fact that the Company is in fact a creditor in this case. If, as argued by the CC,

the Transfer Restrictions are subject to 11 U.S.C. Section 365, the CC may maintain a right to

reject such contracts. In the event of such rejection, the Company is a "creditor" with a "claim"

against the Trustee.

This very issue was considered by this Court in *In re Zaleha,* 93 IBCR 296

(Bankr. Id. 1993). In that case, the Debtor's former law firm argued that it was a creditor with a

claim by virtue of the assignment to it of a $300 claim which had formerly belonged to an

attorney in the firm, and argued that it was a party in interest by virtue of such claim. the Debtor

(like the CC in the present case) challenged the standing of his former law firm to object to the

Plan.

In confirming the standing of the former law firm as a party in interest, this Court

noted that the former law firm was a "creditor" (as defined in 11 U.S.C. Section 101(10)(A)

which held a "claim" (as defined in 11 U.S.C. section 101(5)(A)), even though such "claim" was

unliquidated, contingent, and disputed. Since the term "party in interest" included a "creditor"

under 11 U.S.C. Section 1109(b), this Court concluded that the former law firm had standing as a

party in interest.

---

[8] The Company does not agree or acknowledge that Section 365 applies, or that the
contracts between the Company (or Shareholders of the Company) and the Debtor, which will be
assigned to the Trustee under the Plan, are executory in nature under 11 U.S.C. Section 365, and
reserves any rights regarding such issue.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 15**                    BOI_MT2:638270.3

A parity of reasoning applies here.  The Company is, by definition, a party in interest with standing.[9]

## V.   OBJECTIONS BASED UPON THE BROAD LANGUAGE OF THE PLAN AND THE CTA WHICH EXONERATES OR EXCULPATES THE TRUST, THE TRUSTEE, THE EXECUTIVE BOARD, AND RELATED PARTIES (INCLUDING PROFESSIONALS) FROM ANY LIABILITY, REGARDLESS OF SUCH PARTIES' ACTIONS (NO MATTER HOW ILLEGAL OR ONEROUS) DURING THE FIVE YEAR TERM OF THE PLAN.

### A.   Exculpation from Liability.

Section 12.4 of the Plan and Section 6.9 of the CTA both provide for exculpation of the Trustee and any of his agents, attorneys or accountants from numerous acts which they may undertake during the five-year term following the Effective Date.  The exculpatory language is breathtaking in its width.

Section 12.4 of the Plan exculpates the Trustee from any and all liability, "except for liability based on willful misconduct or gross negligence as finally determined by the Bankruptcy Court."  Such exculpation exists as to any actions undertaken during the administration of the Chapter 11 case, *or "the administration of the Creditors' Trust, the Plan or the property to be distributed . . . ."*  (Emphasis added.)  Stated differently, Section 12.4 exculpates, exonerates and excuses all such parties for *future* events over the next five years.

Section 12.6.2 of the Plan contains yet another provision releasing the Trustee and any of his professionals, "except for their fraud, breach of fiduciary duty, or willful misconduct."  Section 12.6.1 contains similar, but slightly different language.[10]

---

[9] Identical reasoning applies to the Shareholders, who are joining in this Objection on their own behalf.  See footnote 1.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 16**

BOI_MT2:638270.3

Section 6.9 of the CTA, on the other hand, imposes upon the Trustee a duty of "reasonable diligence and care under the circumstances," and exculpates those parties absent a violation of the duty of care imposed by Idaho Code Section 15-7-302, and only if "determined by a Final Order of a court of competent jurisdiction . . . ."[11]

The language in the Plan and the CTA creates obvious issues. First, the two documents create variant standards to determine the duty of care imposed on the Trustee, the Executive Board and their professionals, and differ in the extent to which the parties are exculpated from liability. Second, the Plan and the CTA propose that different courts determine the issue of exculpation. Third, the exculpatory language proposed by these parties is contrary to the doctrine and rule of the Bankruptcy Code—a fact which this Court already pointed out in denying these parties' prior attempts to exculpate themselves from liabilities (in the Section 1102(b) phase of the case) for duties that are clearly owed by these parties to the parties in interest in the case. Fourth, third parties ("Third Parties" -- e.g., the Company) who may be dealing with the Trustee, the Plan Administrator, the Executive Board, and any of their agents, attorneys or accountants over the five-year term of the Trust are entitled to assurances that such parties will act in a reasonable manner, with knowledge that a failure to act reasonably may have negative consequences. The Court should not approve a term in the Plan or the CTA which

---

[10] This is not the first time the unsecured creditors in the case have attempted to excuse their actions (or the actions of their attorneys, accountants or employees) from liability in this case. See Section II (A), *supra.*

[11] The meaning of the term "court of competent jurisdiction" is unclear. Are the Trustee and the Executive Board proposing that a court other than this Court determine the scope of the Trustee's duties, despite the broad language in the Plan that reserves this Court's ongoing jurisdiction to determine such issues? (Plan, Article XI).

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 17**

BOI_MT2:638270.3

exculpates these parties from liabilities which may occur over the next five years in their future dealings with Third Parties, including the Company.

For example, Rule 9011 of the Rules of Bankruptcy Procedure requires that any party or attorney who signs a pleading is attesting to the fact that such pleading is not being presented for any improper purpose, is not frivolous, is based upon *bona fide* facts, and is warranted by the evidence. That duty as to any pleadings which the Trustee may file in the future against Third Parties (including the Company) should not and cannot be vitiated by an order of this Court which confirms the Plan or the CTA.

Similarly, any contract between two parties (e.g., the documents which create the Transfer Restrictions) imposes a duty of good faith and fair dealing. The language in the Plan and the CTA proposes to exculpate and exonerate the Trustee from any such obligation in his dealings with the Company—a result that is clearly contrary to law.

Again, confirmation of the Plan and adoption of the CTA will result in the Trustee becoming a Class A and Class B stockholder in the Company, and will impose upon both the Trustee and the Company certain duties and obligations (as set forth in the Nevada Corporate Code) for the five-year period of the Trust. Confirmation of a Plan which exonerates, exculpates and excuses the Trustee from any such obligations, even as such obligations continue to be imposed on the Company, is contrary to law.

Finally, any of the professionals retained by the Trustee may commit acts of malpractice. Confirmation of the Plan and adoption of the CTA in their present form would excuse such professionals from any liability for such acts of malpractice—a consequence which is inherently unfair and contrary to law.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN**
**OF REORGANIZATION OF DEBTOR AND CREDITORS'**
**COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 18**          BOI_MT2:638270.3

Two of the fundamental requirements which must be met before a Plan can be confirmed is that the Plan "complies with the applicable provisions of this title," and that the Plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §§ 1129(a)(1) and (2). Where the Plan exculpates, exonerates, and excuses the Trustee's compliance with fundamental principles of law and equity, for the entire five-year term of the Plan, and creates an uneven playing field between the Trustee and the Third Parties (including the Company) with whom the Trustee will deal, the Plan proponent has not complied with these requirements.

Instead of the Plan language proposed by the Debtor and the CC, the Plan and the CTA should contain provisions which require the obvious—i.e., the requirement that the Trust, the Trustee, the Executive Board, and any related professionals fully comply with any and all requirements imposed by state and federal rules or laws which would have been or would be applicable to the Debtor. Any other result is contradictory to law and contradictory to the good faith requirements of 11 U.S.C. Section 1129.

## B.    Indemnification.

Sections 6.9 and 6.10 of the CTA also provide for indemnification of "the Trustee, the Trustee's Representatives and the members of the Executive Board" by the Trust, to the extent such parties may be required to defend "any action, suit, proceeding or investigation" to which such parties "may be subject by reason of their execution in good faith of their duties under this Trust Agreement or the Plan."

Such language is subject to the same objections and criticisms as are applicable to the exculpatory language contained in the two documents. The indemnification language sets

forth yet another standard for determining whether these parties have failed to fulfill their duties under the Plan or the CTA.[12] All such language is contradictory, imposes on the estate an unliquidated liability which is unjustified, and is nothing more than an attempt by all such parties to excuse any and all actions that they may take during the five-year term of the Trust.

Furthermore, in the event an indemnification duty owed by the Trust to the Trustee or the Executive Board ever matures, by the very language of the CTA,[13] such duty creates a "Creditors' Trust Administrative Expense," which is payable immediately and without Court approval, and which may dwarf any other liabilities in the bankruptcy proceeding. The purpose of the Plan is not to protect the Trustee, the Executive Board and related parties from liability for wrongful acts; the purpose of the Plan is to expedite the orderly liquidation of the estate and to resolve pending issues with Third Parties. The Plan should concentrate on the

---

[12] The Plan and the CTA propose at least four different standards by which the conduct of the Trustee is to be measured:

(a)     The Trustee is proposed to be exculpated and exonerated "except for liability based on willful misconduct or gross negligence (Plan, Section 12.4);

(b)     The Trustee and the Executive Board are proposed to be exculpated and exonerated "except for their fraud, breach of fiduciary duty, or willful misconduct (Plan, Section 12.6.2);

(c)     The Trustee is proposed to be exculpated and exonerated absent a violation of either (i) a duty of "reasonable diligence and care under the circumstances;" or (ii) a violation of a duty imposed by state law (Idaho Code Section 15-7-302) (CTA § 6.9); and

(d)     The indemnification provision of the CTA are invoked to defend any action to which such parties "may be subject by reason of their execution in good faith of their duties under this Trust Agreement or the Plan." (CTA, Sections 6.9 and 6.10).

[13] Section 1.6 of the Creditors' Trust Agreement defines "Creditors' Trust Administrative Expenses" to include the indemnity liability which may be invoked against the Trust.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN**
**OF REORGANIZATION OF DEBTOR AND CREDITORS'**
**COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 20**                    BOI_MT2:638270.3

*duties* that are owed by the Trustee to Third Parties, not the *excuses* that the Trustee anticipates will be necessary if he commits a wrongful act.

### C.    Bond; Exoneration and Protection.

Section 6.1 of the CTA requires that the Trustee at all times maintain a Bond in an amount set forth in the Confirmation Order. At the same time, Section 6.11 of the CTA provides that: "Third parties dealing with the Creditors' Trust shall look only to the Creditors' Trust Assets to satisfy any liability incurred by Trustee, Trustee's Representatives or the Executive Board to such parties." No mention is made in Section 6.11 to recourse against the Bond, the creation of which occurs by virtue of Section 6.1. Third Parties should obviously have recourse to the Bond in the event of the Trustee's malfeasance—this is the very purpose of the Bond.

### D.    Lack of Personal Liability to the Trust or the Trustee.

Section 6.2 of the CTA exonerates the Trust and the Trustee from any personal liability for the obligations of the Debtor—a provision which may be reasonable under the circumstances. However, the provision goes on to provide that the Trust assets may be utilized to defend the Trust and the Trustee "in the event such liability or obligation is at any time asserted against the Trust or the Trustee." Furthermore, the "Trustee shall in no event be required to use Trustee's personal funds or assets or the funds or assets of any entity in which Trustee may be involved for such purpose."

The Company acknowledges that, under most circumstances, the provisions of Section 6.2 are reasonable. By the same token, should the Trust or the Trustee undertake actions which would expose a bankruptcy trustee to liability under well-established statutory and case law, the Trust or the Trustee should be personally liable. The Trustee may also be liable for

criminal violations, as set forth in 28 U.S.C. Sections 151-158. The provisions of Section 6.2, when viewed in conjunction with the other attempts by the Trustee to exculpate and exonerate himself from liability, are not reasonable under the circumstances. The Trustee should not be exculpated and exonerated as set forth in Section 6.2 of the CTA.

### E.    Lack of Offset/Setoff/Recoupment Provision.

Neither Section 6.2 of the CTA nor any provision of the Plan recognizes a Third Party's right of offset, setoff, or recoupment against the Trustee. The language of Section 6.2 may, in fact, be read to prohibit any such language. The language of the Plan and CTA should be amended to reflect such right of offset, setoff, or recoupment.

## VI.   OBJECTIONS BASED UPON THE LACK OF JUDICIAL OVERSIGHT OVER THE ACTIONS OF THE TRUST, THE TRUSTEE, THE EXECUTIVE BOARD, AND RELATED PARTIES (INCLUDING PROFESSIONALS) IN CRITICAL AREAS WHERE SUCH OVERSIGHT HAS TRADITIONALLY BEEN EXERCISED BY THE BANKRUPTCY COURT.

### A.    Retained Jurisdiction.

The Plan (Article XI) proposes substantial provisions by which this Court retains exclusive jurisdiction over the Plan and the Trust "to the fullest extent permitted by law."[14] Other Plan provisions (as outlined below) reflect confusion and contradictions regarding this Court's ongoing role in the Trust's actions over the next five years.

The Plan language vacillates between (i) acknowledgement of the Court's ongoing jurisdiction over the Trustee; (ii) provisions which free the Trustee from this Court's ongoing jurisdiction (which appear to allow the Trustee *carte blanche* as to issues which are

---

[14] At the same time, the Plan creates an exception to this jurisdiction, "with respect to claims by the Creditors' Trust against third parties, wherein the Bankruptcy Court shall have original but not exclusive jurisdiction."

traditionally subject to this Court's oversight); or (iii) provisions which allow the Trustee the absolute discretion to invoke the oversight of the Court. Third Parties who will be required to deal with the Trustee over the next five years are entitled to clear and concise language regarding this Court's oversight function, and are especially entitled to know that any settlements with the Trustee will be subject to bankruptcy court approval.[15]

### B.      Payment of Costs and Fees Without Court Approval.

Both the Plan and CTA are bipolar in their treatment of payments to or by the Trustee. On the one hand, the CTA (Section 6.8) allows the Trustee discretionary recourse to this Court "in the event the Executive Board fails or refuses" to pay his bills. On the other hand, Section 6.17 of the CTA indicates that the Trustee's retention of professionals is subject only to the approval of the Executive Board, and allows the Trustee to pay such professionals "from and out of the Bank Accounts as Creditors' Trust Administrative Expenses."

Similarly, Section 11.1.2 retains this Court's exclusive jurisdiction to "hear and determine all applications for compensation and reimbursement of expenses of professionals," yet retains to the Trustee and the Executive Board the right to make payments to professionals "in the ordinary course of business," which are not "subject to the approval of the Bankruptcy Court."

These provisions of the Plan are not only contradictory—they are also overreaching, especially when considered in light of the Trustee's simultaneous attempts to exculpate and exonerate himself from any liability for the life of the Plan. The Trustee cannot

---

[15] The Plan (Section 11.1.17) reserves to this Court the jurisdiction to "Monitor *Debtor's* actions pertaining to his obligations under this Plan and the Creditors' Trust Agreement . . . ." No similar provision is proposed by which the *Trustee's* actions would be monitored.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 23**

have it both ways—total discretion to retain and pay professionals, with a reserved right to petition the Court if he, in his total discretion, decides to do so.

### C.     Court Approval of Settlements and Compromises.

Section 13.1 of the Plan allows the Trustee the right to "compromise and settle various claims . . . in accordance with the provisions of this Plan and Creditors' Trust Agreement." The same section of the Plan provides that the Trustee may, at one and the same time, undertake such compromises *without Court approval*, even as he reserves the right to seek "Bankruptcy Court approval if he in his discretion deems it desirable." No standards are reflected regarding the basis by which the Trustee may make the decision regarding Court approval of a compromise.

Section 6.19(e) of the CTA indicates that the Trustee has the unfettered right to "settle or compromise any of the Causes of Action in which the amount in controversy exceeds $100,000 or with respect to which Trustee has a conflict of interest." No explanation is given as to why the Trustee should be granted the authority to settle, without Court approval, any matter as to which the Trustee has a conflict of interest. Any such situation where the Trustee has a conflict of interest only reinforces (rather than obviates) the necessity for bankruptcy court approval.

Furthermore, the Trustee provides no justification as to why Rule 9019 of the Bankruptcy Rules should not apply, despite the fact that the Trustee is the successor-in-interest to the Debtor, who is clearly bound by the provisions of the Rule.

Rule 9019 of the Rules of Bankruptcy Procedure exists for two basic reasons. First, the rule requires that the debtor (or in this case the Trustee) justify his decision to

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 24**          <span>BOI_MT2:638270.3</span>

compromise a claim under the familiar four-part test imposed by the Ninth Circuit decisional law. Second, court approval protects and insulates third parties from later challenges to a proffered compromise, but requires that approval of such compromise occur only after "notice and a hearing." These fundamental principles cannot and should not be vitiated for the administrative convenience of the Trustee, especially when they are so deleterious to the interests of Third Parties (including the Company) who wish to resolve matters with the Trustee through compromise or settlement.

Imposition of a requirement that any settlement or compromise between the Trustee and a Third Party (and especially the Company) does not create an unnecessary burden on the Trustee. According to well-established precedent in this jurisdiction, this Court may approve a compromise under Rule 9019 if it is established that the compromise is "fair and equitable" and supported by a sufficient factual foundation. *In re Lake City R.V., Inc.,* 98.4 IBCR 104 (Bankr. Id. 1998). The law favors compromise (*In re Goff,* 92 IBCR 1 (Bankr. Id. 1992), quoting *In re A & C Props.,* 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson,* 479 U.S. 854 (1986); *Matter of Walsh Constr., Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982). The Court views itself as having "a limited role in this context," and "'need not conduct an exhaustive investigation into the validity of the merits of the claims sought to be compromised.'" *In re W. Appliance, Inc.,* 96.1 IBCR 32, 34 (Bankr. Id. 1996), *quoting Matter of Walsh Constr., Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982).

Case law precedent exists for this Court's approval under Rule 9019 of a compromise and settlement proposed by a trustee under a post-confirmation trust which exist by virtue of a confirmed plan. In *In re Pintlar Corp.,* 96.2 IBCR 78 (Bankr. Id. 1996), a confirmed

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 25**

Chapter 11 plan created a litigation trust which subsequently instituted litigation against two entities. The litigation trust and the two defendant entities subsequently resolved the litigation by compromise, and proposed that such compromise be approved by the Court under Rule 9019. One party (Nycal) objected.

Relying on language in the plan and the trust agreement, this Court approved the compromise. This Court even went so far as to acknowledge that because the trust situation "does not meet the normal Rule 9019 factual situation," the traditional criteria under Rule 9019 "must be applied in the context of the nature of the compromise," and requires "a higher degree of discretion on the part of the trustees of what is, essentially, a common law trust." *In re Pintlar Corp.,* 96.2 IBCR 78, 79 (Bankr. Id. 1996).

Confirmation of a Plan which avoids application of Rule 9019 to compromises and settlements only acts as a disincentive to Third Parties compromising claims with the Trustee. Such Third Parties are entitled to assurances that, once the Trustee complies with Rule 9019, any such compromise will have *res judicata* effect not only between the Trustee and the Third Party, but among all parties in interest in the bankruptcy. The *in rem* nature of a bankruptcy proceeding, the *res judicata* effect of the Plan, the *in rem* nature of the Trust, and the possibility that unsecured creditors who are not members of the CC or the Executive Board will be paid less than the full amount due, only reinforce the requirement that such parties be given notice and an opportunity to object to any such compromise.

### D.    Asset Sales.

Section 13.2 of the Plan deals with asset sales. The provision fails to incorporates any provisions of the Bankruptcy Code and Rules, the provisions of the UCC, or existing real

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 26**

property law, which impose a reasonableness standard on any such sales. Similarly, Section 6.13 of the CTA grants the Trustee the unfettered power to "market, sell or otherwise dispose of Creditors' Trust Assets," unless "expressly limited in this Trust Agreement or the Plan, without limitation of his/her power and authority. . . ."

Again, the Trustee cannot be given *carte blanche* to act however he may wish in selling assets, without compliance with applicable law. Confirmation and compliance with the law and the requirement of good faith require no less.

### E.    Notice and a Hearing.

Section 9.9 of the CTA appears to retain to the Trustee the right (but not the obligation) "to obtain Bankruptcy Court approval of any action or when Trustee, in its discretion, elects to seek Bankruptcy Court approval of an action where such approval is not so required. . . ." Furthermore, *the Trustee's notice in any such case is limited to service upon the Executive Board, its attorneys and the United States Trustee.* This provision is severely limiting, fails to provide for notice to Third Parties whose interests may be vitally affected by this Court's approval of any matter proposed by the Trustee, and does not comply with due process requirements.[16]

---

[16] This is not the first time that the Creditors' Committee has attempted to exempt itself from notice requirements imposed by bankruptcy rule and due process. In its initial "Motion for *Nunc Pro Tunc* Order Temporarily Limiting Duties Under 11 U.S.C. Section 1102(b)(3)," the CC (paragraph (j)) sought an order limiting the parties "to whom obligations of the Committee for disclosure flow. . . ." After expressing concerns regarding the impact of such a provision upon Bankruptcy Rule 9006 and other bankruptcy principals, this Court refused to enter an order under Section 1102 which restricted critical "notice and a hearing" requirements otherwise imposed by the bankruptcy system.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 27**

The Creditors' Trust proposed by the Plan and the CTA should not create a "club," consisting of the Trustee and the Executive Board, who are granted the *carte blanche* ability to ignore the rights of Third Parties who are parties-in-interest, and whose interests may be impacted by actions of the Trust.

## VII. OBJECTIONS BASED UPON THE CONFUSING RELATIONSHIP BETWEEN THE EXECUTIVE BOARD AND THE TRUSTEE REGARDING MANAGEMENT DECISIONS OF THE TRUST.

### A. Management Issues.

The Plan and CTA reflect similar fuzzy language regarding management issues. On the one hand, assets of the estate are transferred in trust to the Trustee, who holds the absolute right to deal with such assets within his sole discretion. (CTA § 6.13(a). The Executive Board is apparently vested with the right to "make all substantive decisions (including settlement decisions)" regarding such assets. CTA § 3.2. The Executive Board is also vested with the discretionary right to remove the Trustee. CTA § 6.4.

The Trustee is granted the right to "control and exercise authority over the Creditors' Trust Assets, over the management, sale, disposition or abandonment thereof, and over the management of the Creditors' Trust. . . ." CTA §§ 6.13(a) and (b). The Trustee is vested with the additional and contradictory right to petition this Court in the event of any disagreement with the Executive Board regarding payment of his fees. CTA § 6.8. Furthermore, the Trustee retains the right to appeal to the Court for approval of borrowing of money, payment of expenses, sale of assets, compromise of claims, and other critical matters where "the Executive Board has refused to authorize such action." CTA § 6.19(e).

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 28**

BOI_MT2:638270.3

Third Parties (including the Company) who are expected to deal with the Trustee

and the Executive Board over the next five years are entitled to disclosure of the line of authority

which exists within the Trust. Who is in charge? With whom can a Third Party deal, with

assurances that authority exists in that Trust representative? In the event of a conflict between

the Trustee and the Executive Board in its dealings with a Third Party, will the Trustee or the

Executive Board petition the Court for determination of such issues?

## VIII.  OBJECTIONS BASED UPON CONFUSING AND CONTRADICTORY LANGUAGE IN THE PLAN OR THE CTA, WHICH BOTH CREATES A TRUST RELATIONSHIP THEN VITIATES THAT TRUST RELATIONSHIP.

### A.    Existence or Nonexistence of Trust Relationship.

On the one hand, the CTA (Section 2.1) transfers all the Debtor's assets to the

Trustee in trust and "for the benefit of the Beneficiaries." On the other hand, other provisions

within the same document (Sections 6.13(a) and (b)) vitiate the trust relationship with language

which provides that: "Trustee may control and exercise authority over the Creditors' Trust

Assets, over the management, sale, disposition or abandonment thereof, and over the

management of the Creditors' Trust to the same extent as if Trustee were the sole legal and

beneficial owner thereof in his/her own right." What one hand gives, the other takes away. The

Plan and the CTA apparently propose that the Trustee be unfettered by even the most

fundamental requirements imposed by trust law, despite the self-acknowledged existence of a

trust.

The language in the CTA should make clear the exact nature of the relationship of

the Trust and the Trustee and the beneficiaries, and the exact nature of the relationship between

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 29**

BOI_MT2:638270.3

the Trustee and Third Parties who will be required to deal with the Trustee over the next five

years.

**IX. OBJECTIONS BASED UPON THE TRANSFER TO THE TRUSTEE OF THE DEBTOR'S INTEREST IN THE COMPANY (REPRESENTED BY CLASS A AND CLASS B SHAREHOLD INTERESTS IN THE COMPANY) "FREE AND CLEAR OF ANY LIEN, CLAIM OR INTEREST IN SUCH PROPERTY OF ANY OTHER PERSON. . . ."**

Section 2.1 of the CTA provides for the transfer to the Trustee of the Debtor's

interest in all assets (presumably including the transfer of Debtor's Class A and Class B

sharehold interests) "free and clear of any lien, claim or Interest in such property of any other

Person or entity . . . ." To the extent such "free and clear" transfer proposes a transfer of such

sharehold interests free and clear of any duties or obligations imposed by the Transfer

Restrictions, the Company objects. Furthermore, to the extent that any contracts between the

Company (or its Shareholders) and the Debtor are transferred to the Trustee, the Company

reserves the right to maintain that such contracts (which reflect the Transfer Restrictions) are not

executory contracts for purposes of 11 U.S.C. Section 365.[17]

The Plan was originally intended to transfer from the Debtor to the Trustee all

rights under any contracts between the Debtor and the Company (or the Shareholders of the

Company), while preserving to all parties any and all rights which they may have or held under

such contracts on the date of the filing of the petition in bankruptcy. To the extent Section 2.1 of

the CTA proposes something other than this agreement, it is objectionable.

---

[17] Such contracts include Transfer Restrictions which impact the Preferred stock as well, which may be implicated if the Trustee is successful in piercing and liquidating DJS (which is the owner of the Company's Preferred Stock).

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 30**

BOI_MT2:638270.3

X.    **OBJECTIONS REGARDING THE EXECUTORY CONTRACTS THAT EXIST BETWEEN THE COMPANY AND THE DEBTOR, WHICH ARE BEING TRANSFERRED TO THE TRUSTEE.**

Section 5.2.2.2 provides for the transfer to the Trustee of the Debtor's rights under

certain contracts with JRS:

> 5.2.2.2  Transfer of JRSCo Interests to the
> Creditors' Trust.  Without limitation to Article 5.2.2.1, as part of
> the conveyance described in Article 5.2.1 above, Debtor's Interests
> in JRSCo shall be transferred to the Creditors' Trust.  The Plan
> Administrator, in his/her capacity as Trustee of the Creditors'
> Trust, shall have all rights, powers, and claims with respect to the
> Interests as Debtor had as a debtor in possession under the
> Bankruptcy Code.  All restrictions, limitations, conditions or
> qualifications set forth in JRSCo's articles of incorporation,
> bylaws, the Class A Shareholder Agreement , or the J.R. Simplot
> Company Preferred Stock Shareholders Agreement dated as of
> May __, 1997 with respect to the Interests shall be enforceable
> against the Plan Administrator, in his/her capacity as Trustee of the
> Creditors' Trust, to the extent that such restrictions, limitations,
> conditions or qualifications would be enforceable against a debtor
> in possession under the Bankruptcy Code.  To the extent that such
> limitations, restrictions, conditions or qualifications constitute or
> arise from an Executory Contract, such contract shall be treated in
> accordance with Article 4 hereof.

Plan at 14.

Section 4.1 of the Plan provides for "Treatment of Executory Contracts" as

follows:

> **4.1    Executory Contracts.**
>
> 4.1.1    Except as otherwise provided in this Plan,
> all of Debtor's rights under any Executory Contract to which
> Debtor is a party shall transfer to the Trust in accordance with
> Article 5 hereof.  Trustee shall thereafter enjoy with respect to such
> Executory Contracts all rights and powers that Debtor had as a
> debtor in possession under the Bankruptcy Code, including the
> right to assume or reject such Executory Contracts.  The
> non-debtor parties to such Executory Contracts shall enjoy all

rights and powers as they enjoyed with respect to such contracts during Debtor's Chapter 11 Case prior to the Confirmation Date.

        4.1.2   Trustee's assumption or rejection of Executory Contracts shall be subject to Bankruptcy Court approval obtained prior to the termination [of] the Creditors' Trust. Trustee shall be entitled to assume or reject the Executory Contracts notwithstanding any provision in section 365 of the Bankruptcy Code that might otherwise require an earlier assumption or rejection.

        4.1.3   Notwithstanding the foregoing, Debtor reserves the right, at any time prior to the Confirmation Date, to seek approval of the Bankruptcy Court to reject any Executory Contract.

        4.1.4   Should litigation be commenced to determine the extent to which a particular contract or unexpired lease is an Executory Contract, then Trustee shall be entitled to bring a separate, subsequent motion to assume or reject the contract or unexpired lease to the extent it is an Executory Contract. The motion to assume or reject need not be brought as part of the initial litigation.

Plan at 12-13.

Included within the executory contracts referenced in Sections 5.2.2.2 and 4.1 are the executory contracts between the Debtor and the Company (or Shareholders of the Company) which reflect the Transfer Restrictions.

As to both Section 5.2.2.2 and Section 4.1, JRS objects and responds as follows:

(1)     The contracts (which may or may not be executory) which exist between the Debtor and the Company (or Shareholders of the Company) are identified in footnote 1, below. The Plan and the CTA should so provide.

(2)     For purposes of the Plan and the CTA, the term "Third Party" should include, but not be limited to (a) J. R. Simplot Company; (b) Shareholders of the Company; and (c) any successors or assigns of any such parties. The Plan and CTA should so provide.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 32**

(3)     The Plan and the CTA should contain a provision regarding any claim of

the Company or the Shareholders which may arise from the Trustee's rejection of executory

contracts with the Company under 11 U.S.C. Section 365. Both documents should indicate that

any proof of claim regarding such claim shall be filed in compliance with 11 U.S.C.

Section 502(g), Rule 3003(c)(3) and Rule 3002(c)(4), and within such time limit as the Court

shall direct upon notice and a hearing requested by any party to any executory contract.

(4)     The Company wishes to preserve and reserve its right to maintain (a) that

the issues between the Company and the Trustee are governed by Section 541 rather than Section

365; (b) that any contract assigned by the Debtor to the Trustee may not constitute an executory

contract for purposes of 11 U.S.C. Section 365, or that any such contracts may not otherwise be

enforceable against the Company; and (c) that the Company retains any other defenses or offsets

or setoffs or recoupments. The Plan and the CTA should so provide.

(5)     The Plan provides as follows in Section 4.1.4:

> 4.1.4   Should litigation be commenced to
> determine the extent to which a particular contract or unexpired
> lease is an Executory Contract, then Trustee shall be entitled to
> bring a separate, subsequent motion to assume or reject the
> contract or unexpired lease to the extent it is an Executory
> Contract. The motion to assume or reject need not be brought as
> part of the initial litigation.

Plan at 13. While the Company is unsure as to the impact of such provision, the Company

objects to such provision to the extent it vitiates principles of *res judicata* or collateral estoppel

or the law of the case. To the extent the relationship between the Trustee and the Company can

be determined in a single litigation, rather than multiple litigations, the interests of all parties are

advanced.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 33**                    BOI_MT2:638270.3

(6)    DJS has filed its Objection of DJS Properties L.P. to Confirmation of Joint

Plan of Reorganization of Debtor and Creditors' Committee ("DJS Objection").  In the DJS

Objection, the limited partnership objects to confirmation of the Plan based upon Plan provisions

which violate 11 U.S.C. Section 365, *In re Catapult Entertainment,* 165 F.3d 747,751 (9th Cir.

1999), and *In re Sunset Developers,* 69 B.R. 710, 713 (Bankr. Id. 1987).  The Company hereby

reserves the right to assert an objection to the Plan, based upon the legal principals set forth in

such authorities.

## XI.    OBJECTIONS REGARDING THE LACK OF PLAN PROVISIONS REGARDING THE SIMPLOT PREFERRED STOCK OWNED BY THE PARTNERSHIP

The Plan identifies numerous claims and causes of action which the Trustee

allegedly holds against the Partnership, all of which are retained by the Trustee for future

litigation.  (Plan, Section 5.3).  Furthermore, the CC (which will be transformed into the

Executive Committee of the Trust upon confirmation) has already indicated that it intends to

pierce the Partnership in an attempt to liquidate the assets of the Partnership, and sell Partnership

assets to third parties to increase the recovery to unsecured creditors.

Included among the assets of the Partnership are 114,285,702 shares of Preferred

Stock in the Company.[18]  As is the situation with the Class A stock, the Company's Preferred

stock is subject to several contracts (which contain Transfer Restrictions) between the Company

(and Shareholders of the Company) and the Debtor, which the Plan proposes be transferred to the

Trustee.  No provision of the Plan states that such contracts will continue to be binding upon

either the Debtor or the Trustee during the post-confirmation period.

---

[18] See footnote 1.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 34**

The Plan should be amended to include such a provision. Furthermore, the Plan should impose a time limit (as referenced in Paragraph X (6)) above within which such Preferred Stock is sold by the Trustee.

## XII.   OBJECTIONS REGARDING THE LACK OF PLAN PROVISIONS BY WHICH THE TERMS OF THE PROTECTIVE ORDER ARE APPLICABLE TO THE TRUSTEE.

On May 9, 2006, this Court entered its Protective Order, the entry of which was the result of months of motion practice, negotiations, and hearings. Once in place, the Protective Order:

(a)     placed a burden upon the Debtor, DJS and especially the Company (given its status as the "repository" for tens of thousands of documents related to this case) to produce multiple documents to the Creditors Committee—on obligation which was completed in the summer of 2006;

(b)     provided for the immediate Rule 2004 examinations by the CC of the Debtor, DJS and the Company, subject only to the terms of the Protective Order—examinations which have still not been undertaken;

(c)     created a process by which confidential information was identified;

(d)     provided that such confidential information could be produced by the CC to third parties, including members ("Members") of the Committee itself, persons "with a sincere interest in purchasing assets from the bankruptcy Estate" ("Purchasers"), and others, but only so long as the producing party consented, or the Member or Purchaser executed an Undertaking agreeing to the terms of the Protective Order;

(e)     provided that the Protective Order would be in effect until "completion of this bankruptcy proceeding," which was defined to be "when this bankruptcy case is closed or

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 35**

dismissed" (Protective Order, pp. 12-13, Paragraph 23), or until certain further activities "have

come to a close and the need for the use of the Confidential Information has ceased"; and

      (f)     provided that this "Court retains jurisdiction to interpret, modify, and

enforce the terms of this Order."

      Section 5.13 of the Plan deals with the Protective Order as follows:

### 5.13    The Protective Order.

> The Protective Order shall continue to apply after the
> Confirmation Date and the Effective Date. The Plan
> Administrator, in his/her capacity as Plan Administrator and in
> his/her capacity as Trustee, and the members of the Executive
> Board, shall have all rights and obligations of "Members" under
> the Protective Order. Further, the Protective Order shall continue
> to apply to establish the rights and obligations of those persons
> identified in sections 12(b) through and including 12(h) of the
> Protective Order, in all instances with the Plan Administrator, in
> his/her capacity as Plan Administrator and in his/her capacity as
> Trustee, and the members of the Executive Board being considered
> "Members" as set forth therein.

Plan at 22.

      The Plan is objectionable because it is merely proposes that the Trustee and

Executive Board be considered to be "Members" under the terms of the Protective Order.

Instead, the Plan must recognize several premises.

      First, the Plan must recognize that its terms effectively terminate the existence of

the Creditors Committee, which is currently the repository for the hundreds of thousands of

documents produced in this case, and the recipient of massive Confidential Information from the

Debtor, DJS and the Company. The CC is the "gatekeeper" for the transmission of such

documents and information to third parties, under the strict terms of the Protective Order. The

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN**
**OF REORGANIZATION OF DEBTOR AND CREDITORS'**
**COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 36**      

rights, duties and obligations of the CC under the Protective Order cannot simply evaporate upon confirmation, as apparently proposed by the Plan.

Second, the Plan must recognize the obvious—that the Trustee is to an extent the successor to the rights of the CC, and must be bound by the rights, duties and obligations of the CC under the Protective Order. Inherent in such recognition should be a transfer of the documents produced and the Confidential Information obtained by the CC from that committee to the Trustee, subject of course to the terms of the Protective Order.

Any and all provisions of the Protective Order must, by order of this Court, be imposed upon the Trustee as the new custodian of the documents and Confidential Information. Any other outcome violates the provisions of the Protective Order, where this Court (with the consent of all of the parties) clearly ruled that the Protective Order was to continue to the end of the confirmation process. Furthermore, recognition of such continued jurisdiction of this Court granted under the Protective Order must jive with the other jurisdictional grants or reservations sought in the Plan.

Third, the Plan must recognize that to the extent the Trustee becomes a shareholder in the Company, the provisions of the Protective Order clearly apply to the Trustee *qua* the Company's shareholder. By its very terms, the Protective Order applied to Third Parties, and defined a "Third Party" to include (a) unsecured creditors who were not members of the Committee; and (b) "any other entity, as defined in 11 U.S.C. Section 101(15), including but not limited to any trustee or examiner." (Protective Order, pp. 8—emphasis added). This language, when taken with the Protective Order language which states that the order shall continue until the

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 37**

bankruptcy process is totally completed, makes it clear that the Protective Order was intended to include the Trustee as proposed in the Plan.

The Company is in fact entitled to such protection *vis-à-vis* the Trustee as a Company shareholder. That is, should the Trustee (in his capacity as a shareholder of the Company, as opposed to his capacity as the Trustee or the "gatekeeper" under the Protective Order) come into possession of confidential documents or information subject to the Protective Order, there is every reason for the provisions of the Protective Order to apply in such circumstance. The Company's concerns regarding the confidential nature of the information and documents it provided to the CC, are equally applicable to the Trustee, no matter what his status.

A Plan provision which simply provides that the Trustee is to be considered a "Member" of the CC under the terms of the Protective Order is insufficient for the Protective Order to work during the five-year term of the Plan. Steps must be taken in the Plan to assure that all of the confidentiality concerns expressed by the Debtor, DJS and the Company in stipulating to the original Protective Order nine months ago are met, and that the Protective Order is administered by a party committed to the terms of the prior order of the Court.

## XIII. MISCELLANEOUS OBJECTIONS.

### A. Effects of Failure of Conditions Precedent to Confirmation.

Article IX of the Plan creates several conditions precedent to confirmation and consummation of the Plan. Section 9.3 states that if such conditions precedent are not waived or not satisfied within 179 days of the Confirmation Date, the Confirmation Order is deemed vacated. Vacation of the Confirmation Order renders the Plan "null and void in all respects." Section 14.7 of the Plan contains similar provisions.

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 38**     BOI_MT2:638270.3

Section 9.3 also grants the CC (rather than the Trustee or the Executive Board) the right to petition the Court regarding failure of the conditions precedent.

Section 9.3 is impracticable, will delay the Effective Date and implementation of the Plan until a date six months after entry of the Confirmation Order, ignores fundamental bankruptcy law regarding "substantial consummation" and the finality of a confirmation order, and will be difficult if not impossible to implement. The Plan should simply state that the Confirmation Order is effective on the date that it is a Final Order, as defined in the Plan.

**B.     Injunction.**

Section 12.5 of the Plan permanently enjoins any Third Party from commencing any litigation against the Trust or the Estate. In other words, while the Trustee is granted a full five years to commence any litigation against any Third Party for any reason, such Third Parties are refused the right to institute litigation or file a motion before this Court to protect their interests *vis-à-vis* the Trustee. A level playing field should be created for Third Parties, by which their right to seek relief before this Court is preserved and reserved.

DATED this 7th day of February, 2007.

MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED


By
Randall A. Peterman – Of the Firm
Attorneys for J. R. Simplot Company

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 39**

BOI_MT2:638270.3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ____⁷ᵗʰ____ day of February, 2007, I caused a true
and correct copy of the foregoing **OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY
J. R. SIMPLOT COMPANY** to be electronically filed with the Clerk of the Court using the
CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Jerome Shulkin
SHULKIN HUTTON, INC., P.S.
425 Pike Street, Suite 610
Seattle, Washington  98101-4078
*Attorneys for Debtor*

Joseph M Meier
COSHO HUMPHREY, LLP
P. O. Box 9518
800 Park Boulevard, Suite 790
Boise, Idaho 83707-9518
*Attorneys for Debtor*

GARY L. MCCLENDON
OFFICE OF THE UNITED STATES TRUSTEE
Washington Group Central Plaza
720 Park Boulevard, Suite 220
Boise, Idaho 83712

Ada County Treasurer
P. O. Box 2868
Boise, Idaho 83701-2868

Ford Elsaesser
Bruce A. Anderson
ELSAESSER, JARZABEK, ANDERSON, MARKS,
        ELLIOTT & MCHUGH, CHTD.
123 South 3rd
Post Office Box 1049
Sandpoint, Idaho  83864-0855
*Attorneys for Regal Financial Bank*

Eric R. Bjorkman
PERKINS COIE, L.L.P.
251 East Front Street, Suite 400
Boise, Idaho 83702-7310
*Attorneys for Foundation Bank*

Grant E. Courtney
Bruce W. Leaverton
Charles R. Ekbert
LANE POWELL PC
1420 Fifth Avenue, Suite 4100
Seattle, Washington  98101-2338
*Attorneys for Washington Mutual Bank and
KeyBank, N.A.*

Larry E. Prince
Robert A. Faucher
Brad A. Goergen
HOLLAND & HART, L.L.P.
101 South Capitol Boulevard, Suite 1400
Post Office Box 2527
Boise, Idaho 83701-2527
*Attorneys for Official Committee of
Unsecured Creditors*

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 40**

John F. Kurtz and Janine P. Reynard
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 West Main Street, Suite 1000
Post Office Box 1617
Boise, Idaho 83701-1617
*Attorneys for American West Bank*

Craig Miller
DAVIS WRIGHT TREMAINE LLP
2600 Century Square
1501 Fourth Avenue
Seattle, Washington 98101-1688
*Attorneys for Banner Bank*

Michael G Schmidt
LUKINS & ANNIS, PS
250 Northwest Boulevard, Suite 102
Coeur d'Alene, Idaho 83814-2971
*Attorneys for Washington Trust Bank*

Jeffrey M Wilson
WILSON MCCOLL & RASMUSSEN
420 West Washington
Post Office Box 1544
Boise, Idaho 83701-1544
*Attorneys for CitiCapital Commercial
Corporation*

Steven W. Boyce
JUST LAW OFFICE
381 Shoup Avenue
Post Office Box 50271
Idaho Falls, Idaho 83405
*Attorneys for PHH Mortgage Corp.*

Kelly Greene McConnell
GIVENS PURSLEY LLP
601 West Bannock Street
Post Office Box 2720
Boise, Idaho 83701-2720
*Attorneys for Banner Bank*

Harold Q. Noack
1199 Shoreline Lane, Suite 308
Post Office Box 9795
Boise, Idaho 83707
*Attorneys for Rhodes Asset Management, LLC*

William L. Smith
TROUT ♦ JONES ♦ GLEDHILL ♦ FUHRMAN, P.A.
225 North 9th Street, Suite 820
Post Office Box 1097
Boise, Idaho 83701
*Attorneys for Frontier Bank*

William R. Snyder
WILLIAM R. SNYDER & ASSOCIATES, P.A.
520 W. Franklin Street
Post Office Box 2338
Boise, Idaho 83701-2338
*Attorneys for DJS Properties, L.P.*

Lance Loveland
PARSONS, SMITH, & STONE, LLP
137 West 13th Street
Post Office Box 910
Burley, Idaho 83318
*Attorneys for Diversified Financial
Services, LLC*

AND, I HEREBY CERTIFY that on this ⁀7th⁀ day of February, 2007, I caused a
true and correct copy of the foregoing **OBJECTIONS TO CONFIRMATION OF JOINT
PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY** to be served by the method indicated below, and
addressed to the following non-CM/ECF Registered Participants:

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 41**

BOI_MT2:638270.3

| | |
|---|---|
| Don J. Simplot<br>Post Office Box 27<br>Boise, Idaho 83707 | (✓) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Bradley R. Duncan<br>2600 Century Square<br>1501 Fourth Avenue<br>Seattle, Washington 98101<br>*Attorneys for Banner Bank* | (✓) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| American Marine Bank<br>Attn: Barbara Swartling<br>Post Office Box 10788<br>Bainbridge Island, Washington 98110 | (✓) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Citicorp USA, Inc.<br>399 Park Avenue<br>New York, New York 10043 | (✓) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| The Commerce Bank of Washington, N.A.<br>c/o Charles C. Robinson<br>Eighteenth Floor<br>1191 Second Avenue<br>Seattle, Washington 98101-2939 | (✓) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Brent G. Summers<br>TARLOW NAITO & SUMMERS LLP<br>6650 SW Redwood Lane, Suite 215<br>Portland, Oregon 97224<br>*Attorneys for DJS Properties, L.P.* | (✓) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |
| Foundation Bank<br>c/o Frederick W. Schoepflin<br>1201 Third Avenue, Suite 3200<br>Seattle, Washington 98101 | (✓) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile |

Randall A. Peterman

**OBJECTIONS TO CONFIRMATION OF JOINT PLAN
OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 42**

BOI_MT2:638270.3