Larry E. Prince, ISB No. 1759
Robert A. Faucher, ISB No. 4745
Brad A. Goergen, ISB No. 6631
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, ID  83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
E-mail:  lprince@hollandhart.com
          rfaucher@hollandhart.com
          bagoergen@hollandhart.com

Attorneys for the Official Committee of Unsecured Creditors

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| In Re:<br><br>DON J. SIMPLOT,<br><br>                Debtor. | Case No. 06-00002-TLM<br>Chapter 11<br><br>**OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION** |

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (the "Creditors' Committee"), by and through its attorneys of record, hereby submits the following Omnibus Response to Objections to Confirmation (the "Response").

**I.     BACKGROUND.**

Debtor Don J. Simplot filed this chapter 11 case on January 4, 2006.  Docket No. 1.  Near the end of Debtor's exclusivity period for filing a plan, *see* 11 U.S.C. § 1121, Debtor moved for an extension of the exclusivity period.  Docket No. 218.  The Creditors' Committee consented to a limited, one-time extension, *see* Docket No. 226, in the hope that additional time would permit the parties to negotiate the terms of a plan that was both consensual and confirmable.

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 1

During the extension period, the parties negotiated several issues. DJS Properties, L.P. ("DJS"), through its counsel, was a part of these negotiations. Unfortunately, not all negotiations between the Debtor and the Creditors' Committee were concluded by the end of the extension period. Debtor, therefore, filed a plan ("Debtor's Plan") and disclosure statement prior to the end of the extended exclusivity period. Docket Nos. 322, 323.

Negotiations continued nonetheless. Again, these negotiations included DJS. Ultimately, a joint plan emerged, endorsed by Debtor and the Creditors' Committee. This joint plan was filed on December 29, 2006 (the "Joint Plan"). Docket No. 480. A key feature of both Debtor's Plan and the Joint Plan was the transfer of essentially all property of the estate to a creditors' trust, which trust would have all the rights, claims, and interests of the estate prior to the transfer. *See* Debtor's Plan at § 5.1.1, Docket No. 323; Joint Plan at § 5.2, Docket No. 480.

More specifically, both Debtor's Plan and the Joint Plan provided for the transfer of all the estate's rights, interests, claims, and defenses relating to DJS to the creditors' trust. At the same time, DJS would retain all of its rights, interests, claims, and defenses against the estate, and could assert them against the creditors' trust. In short, the transfer provisions of the plans preserve the status quo and give the parties the opportunity to negotiate, settle, or litigate their claims post-confirmation in the same manner as they could pre-confirmation.

The relevant provisions of Debtor's Plan, vis-à-vis DJS, provide that "all of the Transferred Assets other than the Retained Assets . . . shall vest in the Creditors' Trust for the sole and exclusive benefits of the holders of Allowed Clams . . . ." Debtor's Plan at § 5.1.1, Docket No. 323. "Transferred Assets" include "Partnership Claims,"

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 2

which in turn is defined as "all claims and rights of Debtor's bankruptcy estate against and relating to, all Interests of Debtor's bankruptcy estate in, and all defenses of the bankruptcy estate against claims of, the Partnership and the Partners, including the claims, rights, Interests, and defenses identified in Article 3.3.5.1 hereof." *Id*. at §§ 1.2.43, 1.2.58.  Conversely, DJS retained its claims and defenses against the bankruptcy estate.  "Absent a settlement between the Plan Administrator and the Partnership, the parties shall litigate their respective positions with respect to the Partnership before the Bankruptcy Court, including their respective claims to the ownership of the Contested Assets."  *Id*. at § 3.3.5.3, Docket No. 323.  Similarly, "[t]he efficacy or enforceability of any provision of the Partnership Agreement shall be subject to the litigation . . . ." *Id*. at § 3.3.5.4.

> The Joint Plan contains comparable language.

> > Without limitation to Article 5.2.2.1, as part of the conveyance described in Article 5.2.1 above, the Partnership Claims (including Interests in the Partnership) shall be transferred to the Creditors' Trust.  The Plan Administrator, in his/her capacity as Trustee of the Creditors' Trust, shall have all rights, powers, and claims with respect to such claims (including Interests) as Debtor had as a debtor in possession under the Bankruptcy Code.  All restrictions, limitations, conditions or qualifications set forth in the Partnership Agreement with respect to the Partnership Claims (including Interests) shall be enforceable against the Plan Administrator, in his/her capacity as a Trustee of the Creditors' Trust, to the extent that such restrictions, limitations, conditions or qualifications would be enforceable against a debtor in possession under the Bankruptcy Code.  To the extent that such limitations, restrictions, conditions or qualifications constitute or arise from an Executory Contract, such contract shall be treated in accordance with Article 4 hereof.

Joint Plan, § 5.2.2.3, Docket No. 480.

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 3

Debtor and the Creditors' Committee have devoted substantial time and resources in the development of the Joint Plan and its progression towards confirmation. An important factor in the Creditors' Committee's decision to pursue the Joint Plan was DJS's consent to the structure of Debtor's Plan and the Joint Plan, particularly those provisions preserving the status quo between DJS and the bankruptcy estate for post-confirmation resolution. Again, these provisions simply allowed DJS to assert against the creditors' trust whatever rights, claims, interests, and defenses it may have had against the estate, while allowing the creditors' trust to assert whatever rights, claims, interests, and defenses the estate had against DJS. DJS's agreement with the negotiated plan provisions relating to it has been consistent—until its very recent reversal of course.

During the first approximately nine months of this case, DJS was represented by Mr. William Snyder. In October 2006, Mr. Albert Kennedy joined in representing DJS. Until recently, there was no indication they did not support Debtor's Plan and the Joint Plan. Mr. Snyder asked the Creditors' Committee to involve him in the development of the Joint Plan, and Mr. Snyder participated in its development. Mr. Snyder never expressed any concern over the key features of Debtor's Plan or the Joint Plan to the Creditors' Committee and supported the Joint Plan's approach to dealing with the issues between DJS and the bankruptcy estate. Mr. Kennedy cited the transfer provisions of the plan when arguing to the Court that these provisions eliminated the need for the grant of derivative standing Debtor and the Creditors' Committee requested. *See* Motion, Docket No. 374; Minute Entry, Docket No. 439.

The Joint Plan enjoys broad support. Of the sixteen unsecured creditors that have cast ballots to date, fourteen have voted to accept the Joint Plan. The votes in

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 4

favor of the Joint Plan, excluding DJS's claim for $14 million, which claim is insufficiently substantiated and, at best, is contingent and unliquidated and will draw an objection, amount to over 94% of the unsecured debt casting ballots[1].

Quite surprisingly, DJS has committed an eleventh-hour about face. Immediately prior to the objection deadline, DJS circulated draft objections to confirmation, which draft included a proposed objection to the transfer feature of the Joint Plan. The Creditors' Committee obtained a short extension to DJS's objection deadline in an effort to resolve DJS's proposed objections. This effort was, however, unsuccessful. DJS filed its objections to confirmation on February 7, 2007. Docket No. 542. DJS's objections included an objection to a key feature of the Joint Plan—its transfer provisions pertaining to DJS.

DJS's objection to confirmation is ironic. The Joint Plan is proposed, in part, by Debtor. Debtor holds in excess of a 73% interest in DJS as a limited partner and a 2% interest in DJS as a general partner. The remaining interests are held by Debtor's descendants either directly or indirectly for their benefit. Thus, an entity owned by the Debtor and his descendants is attempting to derail the very plan Debtor has proposed to reorganize his financial affairs.

## II. SUMMARY OF OBJECTIONS.

In addition to the Creditors' Committee's efforts to resolve DJS's objections, it has also attempted to resolve the objections of other parties. For example, the Creditors' Committee obtained a short extension to the J.R. Simplot Company's ("JRSCO") objection deadline in an effort to resolve its proposed objections. The

---

[1] Even if DJS's claim was included for the full amount, in excess of 68% of the unsecured debt casting ballots voted in favor of the Joint Plan, more than the required two-thirds. 11 U.S.C. §1126(c).

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 5

Creditors' Committee has also contacted counsel for the Internal Revenue Service ("IRS"), the U.S. Trustee, and PHH Mortgage Corp. ("PHH") to resolve those parties' confirmation issues. Frankly, however, DJS's filing of its objection to confirmation chilled the progress being made with other objecting parties, especially JRSCO.

Currently, there are five parties objecting to confirmation: the U.S. Trustee, Docket No. 527; the IRS, Docket No. 533; PHH Mortgage Corp., Docket No. 523; JRSCO (which includes the joinder of certain JRSCO shareholders), Docket Nos. 543, 544; and DJS, Docket No. 542.

### A.    The U.S. Trustee Objection.

The U.S. Trustee' objection is that the Joint Plan proposes to pay applicable fees in a one-time, lump sum amount (subject to the statutory cap) rather than in quarterly installments (which would be subject to the same statutory cap).

### B.    The IRS Objection.

The IRS objection identifies three issues: the interest rate to be applied to its claims; perceived ambiguities in the timing of payments to it and its source; and the absence of IRS-specific default provisions.

### C.    The PHH Objection.

PHH's objections focus on two issues. First, PHH disputes the treatment of one of its claims as unsecured, contending instead that it is secured. Second, PHH argues the proposed eighteen-month period for marketing and selling the "El Paso Road" property is excessive in light of the lack of any post-petition payments to PHH on account of its claim. PHH's objection will most likely be resolved in connection with the resolution of its pending stay relief motion, Docket No. 469.

    **D.**    **The JRSCO Objection.**

JRSCO has made multiple objections.  In general, they seek either clarifications, modifications, or additions that JRSCO finds preferable to the existing provisions.  A subset of JRSCO's objections focus on the provisions permitting the creditors' trust, which will operate post-confirmation, to liquidate assets outside of certain procedural and substantive Bankruptcy Code provisions.

    **E.**    **The DJS Objection.**

DJS's primary objection to the Joint Plan is based on DJS's perception that the Joint Plan transfers to the creditors' trust "the status of partnership in the Partnership and all of the rights and obligations related to the status of partnership."  DJS Objection at 2, Docket No. 542.  According to DJS, such a transfer is impermissible.  Of course, as explained above, the Joint Plan only seeks to preserve the existing rights, interests, claims, and defenses between the bankruptcy estate and DJS for subsequent resolution, albeit with the creditors' trust stepping into the shoes of the bankruptcy estate.

### III.    CREDITORS' COMMITTEE'S RESPONSE.

DJS has unexpectedly and curiously decided to object, at the last minute, to the Joint Plan, despite DJS's prior support for the Joint Plan.  In light of this, the Creditors' Committee is not at this time prepared to seek confirmation of the Joint Plan.  The Creditors' Committee has not had sufficient time to determine how best to proceed in light of DJS's recent reversal of its position.  Indeed, the Creditors' Committee has several options to consider, including seeking conversion, litigating certain issues prior to confirmation, and pursuing confirmation of a modified plan.

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 7

### IV. CONCLUSION.

Based on the foregoing, the Creditors' Committee will not proceed with confirmation of the Joint Plan at this time. The Creditors' Committee reserves its rights to pursue confirmation of the Joint Plan or a modified plan at a later date, and upon doing so, to respond more fully to any pending objections to confirmation.[2]

DATED this 14th day of February, 2007.

HOLLAND & HART LLP

By  /s/ Larry E. Prince
 Larry E. Prince, of the firm
 Attorneys for the Official Committee of
 Unsecured Creditors

---

[2] The Creditors' Committee's reservation includes the right to advance arguments that DJS should be estopped from interposing an objection to the Joint Plan's transfer provisions. There are four basic elements to the defense of equitable estoppel: (1) the party to be estopped must know the facts; (2) the party to be estopped must either intend for its conduct to be acted upon or act in such a manner that the party asserting estoppel has a right to believe it so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on conduct to its injury. *Alary Corp. v. Sims* (*In re Associated Vintage Group, Inc.*), 283 B.R. 549, 567 (B.A.P. 9th Cir. 2002). Judicial estoppel may also apply. *See In re Kiklis*, 352 B.R. 355, 360 (Bankr. D. Mass. 2006) (addressing a judicial estoppel claim in the context of an objection to a disclosure statement).

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 8

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2007, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Joseph M. Meier<br>Cosho Humphrey, LLP<br>jmeier@cosholaw.com<br>(Debtor) | Kelly Greene McConnell<br>Givens Pursley LLP<br>litigation@givenspursley.com<br>(Banner Bank) |
| Jerome Shulkin<br>mepelbaum@shulkin.com<br>(Debtor) | Craig Miller<br>Davis Wright Tremaine LLP<br>craigmiller@dwt.com<br>(Banner Bank) |
| U.S. Trustee<br>ustp.region18.bs.ecf@usdoj.gov | John S. Kaplan<br>Erik R. Bjorkman<br>Perkins Coie LLP<br>jkaplan@perkinscoie.com<br>Ebjorkman@perkinscoie.com<br>(Foundation Bank) |
| Gary L. McClendon<br>gary.mcclendon@usdoj.gov<br>(U.S. Trustee) | Michael G. Schmidt<br>Lukins & Annis, P.S.<br>mgs@lukins.com<br>(Washington Trust Bank) |
| Bruce A. Anderson<br>Elsaesser Jarzabek Anderson Marks Elliott and McHugh<br>baafiling@ejame.com<br>(Regal Financial Bank) | Ford Elsaesser<br>Elsaesser Jarzabek Anderson Marks Elliott and McHugh<br>ford@ejame.com<br>(Regal Financial Bank) |
| Jeffrey M. Wilson<br>Wilson McColl & Rasmussen<br>jeff@wilsonmccoll.com<br>(CitiCapital Commercial Corporation) | Jed Morris<br>Lukins & Annis, P.S.<br>mgs@lukins.com<br>(Washington Trust Bank) |
| William L. Smith<br>Trout Jones Gledhill Fuhrman, P.A.<br>bsmith@idalaw.com<br>(Frontier Bank) | John F. Kurtz, Jr.<br>Hawley Troxell Ennis & Hawley, LLP<br>jfk@hteh.com<br>(American West Bank) |
| Lynda Fischer<br>Ada County Treasurer<br>trbankrupt@adaweb.net,<br>bankruptcy@adaweb.net | Grant E. Courtney<br>Lane Powell PC<br>courtneyg@lanepowell.com<br>(Washington Mutual Bank and Key Bank) |

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 9

| | |
|---|---|
| Harold Q. Noack, Jr.<br>Harold Q. Noack, Jr., P.A.<br>pete@noacklaw.com<br>(Rhodes Asset Management) | Bruce W. Leaverton<br>Lane Powell PC<br>leavertonb@lanepowell.com<br>(Key Bank, N.A.) |
| William R. Snyder<br>William R. Snyder & Associates, P.A.<br>main@wrslegal.com<br>(DJS Properties, L.P.) | Randall A. Peterman<br>Moffatt, Thomas, Barrett, Rock & Fields, Chtd.<br>rap@moffatt.com<br>(J.R. Simplot Company) |
| Steven W. Boyce<br>Just Law Office<br>sboyce@justlawidaho.com<br>(PHH Mortgage Corp.) | Daniel C. Green<br>Racine Olson Nye Budge & Bailey, Chtd.<br>dan@racinelaw.net<br>(Cowlitz Bank) |
| Jan S. Ostrovsky<br>Crocker Kuno Ostrovsky LLC<br>jostrovsky@crockerkuno.com<br>(Cowlitz Bank) | Charles R. Ekberg<br>Lane Powell PC<br>ekbergc@lanepowell.com<br>(Washington Mutual Bank and Key Bank) |
| P. Larry Westberg<br>Westberg<br>lwstbrg@cableone.net<br>(DJS Properties, L.P.) | |

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:

Via first-class mail, postage prepaid addressed as follows:

| | |
|---|---|
| American Marine Bank<br>Seattle Office<br>1000 2nd Avenue, Suite 200<br>Washington, WA  98104 | Michael Ballantyne<br>Thornton Oliver Keller<br>250 S. Fifth Street, 2nd Floor<br>Boise, ID  83702 |
| Bill Downs<br>Bill Downs Auction Service, Inc.<br>P.O. Box 428<br>Nampa, ID  83653 | Bradley R. Duncan<br>2600 Century Square<br>1501 Fourth Avenue<br>Seattle, WA  98101 |
| Washington Mutual<br>c/o Charles R. Ekberg<br>Lane Powell PC<br>1420 Fifth Avenue, Suite 4100<br>Seattle, WA  98101-2338 | |

/s/ Larry E. Prince
for HOLLAND & HART LLP

3668554_1.DOC

OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 10