**Jerome Shulkin, WSB No. 2198**
**Shulkin Hutton, Inc., P.S.**
2101 Fourth Avenue, Suite 200
Seattle, WA  98121
Telephone:  (206) 623-3515
Facsimile:  (206) 682-9289
Email:  mepelbaum@shulkin.com

**Joseph M. Meier, ISB No. 3314**
**Cosho Humphrey, LLP**
P.O. Box 9518
Boise, ID  83707-9518
Telephone:  (208) 344-7811
Facsimile:  (208) 338-3290
Email:  jmeier@cosholaw.com

Attorneys for Debtor-in-Possession

**Larry E. Prince, ISB No. 1759**
**Robert A. Faucher, ISB No. 4745**
**Brad A. Goergen, ISB No. 6631**
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, ID  83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
E-mail:  lprince@hollandhart.com
        rfaucher@hollandhart.com
        bagoergen@hollandhart.com

Attorneys for the Official Committee of Unsecured Creditors

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>DON J. SIMPLOT,<br><br>               Debtor. | Case No. 06-00002-TLM<br>Chapter 11<br><br>**MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE** |

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE

# TABLE OF CONTENTS

**ARTICLE I. DEFINITIONS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME** ................................................................1

1.1 Scope of Definitions; Rules of Construction..................................................1

1.2 Definitions .....................................................................................................1

1.3 Rules of Interpretation...................................................................................9

1.4 Computation of Time .....................................................................................9

**ARTICLE II. CLASSIFICATION OF CLAIMS AND INTERESTS** .......................9

2.1 Introduction ...................................................................................................9

2.2 Unclassified Claims (not entitled to vote on the Plan).................................9

2.3 Unimpaired Class of Claims (deemed to have accepted the Plan and, therefore, not
entitled to vote)................................................................................................10

2.4 Impaired Classes of Claims (entitled to vote on the Plan) ..........................10

**ARTICLE III. TREATMENT OF CLAIMS AND INTERESTS** ...........................11

3.1 Unclassified Claims.......................................................................................11

3.2 Unimpaired Class of Claims..........................................................................13

3.3 Impaired Classes of Claims ...........................................................................13

3.4 Allowed Claims ..............................................................................................14

3.5 Accrual of Post-Petition Interest ..................................................................15

**ARTICLE IV. TREATMENT OF EXECUTORY CONTRACTS**...........................15

4.1 Executory Contracts .......................................................................................15

4.2 Claims Based on Rejection of Executory Contracts .....................................16

**ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN** ......................17

5.1 Reserve and Retained Assets.........................................................................17

5.2 Creditors' Trust ..............................................................................................21

5.3 [Intentionally Omitted]...................................................................................26

5.4 No Revesting of Assets ..................................................................................26

5.5 Cooperation of Debtor....................................................................................26

5.6 Bifurcated Tangible Exempt Assets ..............................................................27

5.7 Bankruptcy Code Sections 1106(b)(8) and 1106(c)......................................27

5.8 Post-Effective Date Assets ............................................................................27

Table of Contents - i

5.9 Post-Effective Date Earnings ................................................................................27

5.10    Exemption from Certain Transfer Taxes ....................................................28

5.11    Transactions on Business Days .....................................................................28

5.12    Implementation ................................................................................................28

5.13    The Protective Order........................................................................................28

5.14    Automatic Substitution of the Estate Representative in Litigation Prosecuted
by the Creditors' Committee ........................................................................29

**ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN .......................................29**

6.1 Classes Entitled to Vote ....................................................................................29

6.2 Acceptance by Impaired Classes......................................................................29

6.3 Elimination of Classes........................................................................................30

6.4 Cramdown ............................................................................................................30

**ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ..........................................30**

7.1 Time of Payment on Claims...............................................................................30

7.2 Allocation of Consideration ..............................................................................30

7.3 Means of Cash Payment .....................................................................................30

7.4 Fractional Dollars; De Minimis Distributions ...............................................31

7.5 Delivery of Distributions; Undeliverable or Unclaimed Distributions; No
Requirement to Surrender Certificates .......................................................31

7.6 Withholding and Reporting Requirements......................................................31

7.7 Setoffs....................................................................................................................31

**ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
AND UNLIQUIDATED CLAIMS...............................................................................31**

8.1 Objections to Claims; Disputed Claims ..........................................................31

8.2 No Distribution Pending Allowance ................................................................32

8.3 Estimation of Claims; Distribution Reserve....................................................32

8.4 Distributions After Allowance ..........................................................................33

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ...........................................................................33**

9.1 Conditions to Effective Date .............................................................................33

9.2 Waiver of Conditions ..........................................................................................33

9.3 Effects of Failure of Conditions ........................................................................34

**ARTICLE X. MODIFICATIONS AND AMENDMENTS** ........................................................**34**

**ARTICLE XI. RETENTION OF JURISDICTION** ...............................................................**34**

**ARTICLE XII. EFFECTS OF CONFIRMATION** ...............................................................**36**

12.1    Discharge ...............................................................................................................36

12.2    Binding Effect .......................................................................................................37

12.3    Authorization of Further Action ...........................................................................37

12.4    [Intentionally omitted ...........................................................................................37

12.5    Injunction ..............................................................................................................37

12.6    Releases .................................................................................................................38

12.7    Rights of Action ....................................................................................................38

**ARTICLE XIII. COMPROMISES AND SETTLEMENTS; ASSET SALES** ..................**38**

13.1    Compromises and Settlements...............................................................................38

13.2    Asset Sales ............................................................................................................39

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** .........................................................**39**

14.1    Bar Dates for Certain Claims................................................................................39

14.2    Payment of Estate Representative's Fees Incurred Prior to the Effective Date .........40

14.3    Payment of Statutory Fees ....................................................................................40

14.4    Severability of Plan Provisions.............................................................................40

14.5    Successors and Assigns .........................................................................................41

14.6    Term of Injunctions or Stays ................................................................................41

14.7    Revocation, Withdrawal or Non-Consummation .................................................41

14.8    Creditors' Committee ............................................................................................41

14.9    Plan Supplement ...................................................................................................41

14.10   Notices to Debtors and Creditors' Committees ....................................................42

14.11   Governing Law ......................................................................................................43

14.12   Conflict with the Creditors' Trust Agreement .....................................................43

14.13   Closure of the Bankruptcy Case ...........................................................................43

## TABLE OF EXHIBITS

**<u>Exhibit</u>**

1.2.3          Avoidance Actions

1.2.16        Contested Assets

1.2.17        Conveyed Assets

1.2.20        Creditors' Trust Agreement

1.2.22        Debtor's El Paso Property

1.2.31        Exempt Assets

1.2.60        Miscellaneous Transferred Assets

## INTRODUCTION

Debtor Don J. Simplot and the Official Committee of Unsecured Creditors of Don J. Simplot hereby jointly propose the following plan of reorganization. This Plan treats all of the assets of Don J. Simplot and proposes a resolution of the outstanding claims against him. Reference is made to the Disclosure Statement, which was distributed with a prior version of this Plan, and which contains a discussion of the Debtor's assets, his business troubles, liquidation alternatives, and certain related matters. This Plan has been modified from its prior version to address various issues. Debtor and the Creditors' Committee urge all holders of claims to read this Plan. To the extent this Plan varies from the prior version, you are entitled to change your ballot as explained in the Notice accompanying this Plan.

## ARTICLE I.
## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### 1.1    Scope of Definitions; Rules of Construction.

Except as expressly provided or unless the context otherwise requires, capitalized terms used but not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I. Any term used in this Plan that is not defined herein, but is defined in the Disclosure Statement, the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### 1.2    Definitions.

1.2.1    "Administrative Claims Bar Date" shall have the meaning given it in Article 14.1.1 of this Plan.

1.2.2    "Allowed Claim" means a claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is scheduled, other than a claim that is scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order, or (d) is reflected in a schedule of Allowed Claims, if any, filed from time to time with the Bankruptcy Court by the Estate Representative, or (e) that is expressly allowed in a liquidated amount in this Plan. An Allowed Claim (a) includes a Disputed Claim to the extent such Disputed Claim becomes allowed after the Effective Date; and (b) shall be net of any valid setoff exercised with respect to such claim under the provisions of the Bankruptcy Code and applicable law. Unless otherwise

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 1

specified herein, in section 506(b) of the Bankruptcy Code, or in any order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of distributions under this Plan, include for prepetition claims interest on such claim or claims accruing from or after the Petition Date.

      1.2.3    "Avoidance Actions" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims existing or arising under Chapter 5 of the Bankruptcy Code, including but not limited to state law remedies available pursuant to Section 544 of the Bankruptcy Code, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including without limitation those avoidance claims identified at Exhibit 1.2.3 hereto.

      1.2.4    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§101-1532, as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

      1.2.5    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Idaho.

      1.2.6    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Debtor's Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

      1.2.7    "Business Day" means any day on which commercial banks are open for business in Boise, Idaho, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)) .

      1.2.8    [Intentionally deleted.]

      1.2.9    "Causes of Action" means, individually or collectively, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims held by Debtor or the bankruptcy estate as of the Effective Date, including, but not limited to, the Avoidance Actions and the Partnership Claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

      1.2.10   "Class" means one of the classes of claims listed in Article II of this Plan.

      1.2.11   "Class A Shareholder Agreement" means that "Supplemental Class A Shareholder Agreement" dated January 1, 2000, among Debtor, Gay C. Simplot, Scott R. Simplot and the Estate of Richard R. Simplot, Deceased.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 2

1.2.12  "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

1.2.13  "Confirmation Date" means the date of entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court with respect to this Chapter 11 case.

1.2.14  "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code, to consider confirmation of this Plan under section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.2.15  "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.16  "Contested Assets" means that portion of the Retained Assets which the Partnership might allege that it owns, including without limitation the assets identified at Exhibit 1.2.16 hereto.

1.2.17  "Conveyed Assets" means any assets conveyed by Debtor to the Partnership within the four year period prior to the Petition Date, including those assets identified at Exhibit 1.2.17 hereto.

1.2.18  "Creditors' Committee" means the official committee of unsecured creditors appointed in Debtor's Chapter 11 case pursuant to section 1102(a) of the Bankruptcy Code, as such committee may be reconstituted from time to time.

1.2.19  "Creditors' Trust" means the trust that is created pursuant to Article 5.2 of this Plan and the Creditors' Trust Agreement to facilitate the administration and liquidation of the Transferred Assets and payment of Allowed Claims in Class 5, as more specifically set forth in the Creditors' Trust Agreement.

1.2.19A  "Creditors' Trust Administrative Expenses" has the meaning assigned to that term in the Creditors' Trust Agreement.

1.2.20  "Creditors' Trust Agreement" means the agreement by and among Debtor, the Trustee and the Executive Board governing the Creditors' Trust, a form of which is attached hereto as Exhibit 1.2.20.

1.2.21  "Debtor" means Don J. Simplot, including in his capacity as debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

1.2.22  "Debtor's El Paso Property" means that real property in Canyon County, Idaho described at Exhibit 1.2.22 hereto.

1.2.23  "Debtor's Share" means, with respect to the Post-Effective Date Earnings, 75% of the before tax amount thereof.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 3

1.2.24   "Disclosure Statement" means the disclosure statement as approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017 on December 19, 2007, as such disclosure statement may be amended, modified or supplemented from time to time.

1.2.25   "Disputed Claim" means any claim against Debtor or any portion thereof that is not an Allowed Claim or a disallowed claim, as the case may be.

1.2.26   "Distribution Reserve" means the reserve described in Article 8.3.2 of this Plan.

1.2.27   "Effective Date" means the first Business Day on which all conditions set forth in Article 9.1 of this Plan have been either satisfied or waived as provided in Article 9.2 of this Plan.

1.2.28   "Estate Representative" means the person designated pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code to enforce all of the bankruptcy estate's and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Retained Assets and to administer and carry out the objectives of this Plan, and any successor thereto.  The Estate Representative and the Trustee of the Creditors' Trust shall always be the same person.  The Estate Representative shall initially be Ronald Greenspan.  The granting of a right or power to the Estate Representative under this Plan shall likewise authorize the Estate Representative to exercise such power or right in his/her right as Trustee.

1.2.29   "Executive Board" means the Executive Board of the Creditors' Trust possessing the governance and oversight authority specifically set forth in this Plan and Creditors' Trust Agreement.

1.2.30   "Executory Contract" means "executory contract" and "unexpired lease" as used in section 365 of the Bankruptcy Code.

1.2.31   "Exempt Assets" means those assets, or that portion of the total value of particular assets, identified at Exhibit 1.2.31 hereto

1.2.32   "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.2.33   "Garden City Property" means that real property in Garden City, Idaho which is described as Lots 24 and 25, Fairview Acres Subdivision No. 5, according to the official plat thereof, filed in Book 11 of Plats at Page 619, records of Ada County, Idaho.  Title to that

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 4

real property is vested in Don J. Simplot as custodian for John Ralstin Simplot and April Gwin Simplot.

1.2.34  "General Unsecured Claim" means a pre-petition unsecured claim against Debtor that is not entitled to priority under section 507 of the Bankruptcy Code, including any claim for money borrowed or guaranteed, rejection of executory contracts, unsecured deficiency claims, and claims for indemnification, if any.

1.2.35  "Interest" means the legal, equitable, contractual and other rights of any holder of a stock interest, membership interest, partnership interest or other equity interest in a corporation, limited liability company, limited partnership, general partnership or other entity, whether or not transferable, and any option, warrant or right, contractual or otherwise, to purchase, sell, subscribe for or otherwise acquire or receive any such interest.

1.2.36  "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.2.37  "JRSCo" means J.R. Simplot Company, a Nevada corporation.

1.2.38  "JRSCo Documents" means the JRSCo articles of incorporation dated June 28, 1955, as amended on May 21, 1997, and bylaws dated July 21, 2001, the Class A Shareholder Agreement, the Special Resolution of the Board of Directors of JRSCo dated March 11, 1997, the Special Resolution of the Class A Shareholders of JRSCo dated March 11, 1997, six separate consents of Class B Capital Stockholders of JRSCo, each dated March 24, 1997, and, to the extent it is applicable to the Debtor's bankruptcy estate, the J.R. Simplot Company Preferred Stock Shareholder Agreement dated as of May ___, 1997.

1.2.39  "JRSCo Interests" means all of the bankruptcy estate's rights, powers, title, interests, and claims in and to Interests in JRSCo and the JRSCo Documents.

1.2.40  "Other Priority Claim" means a claim entitled to priority under section 507(a) of the Bankruptcy Code other than a priority tax claim or an administrative claim.

1.2.41  "Partners" means the past, present, or future partners of the Partnership other than Debtor, and their principals, attorneys, and agents.

1.2.42  "Partnership" means DJS Properties L.P., an Idaho limited partnership.

1.2.43  "Partnership Agreement" means that Amended and Restated Agreement of Limited Partnership of DJS Properties L.P., dated as of March 6, 2000 by and between Don J. Simplot, as the General Partner, and Don J. Simplot and certain of the Partners as Limited Partners.

1.2.44  "Partnership Claims" means all claims, title, interests, rights, and powers of Debtor's bankruptcy estate and the Debtor in, against, and relating to, all Interests in the Partnership, claims against the Partnership and the Partners, and all defenses against claims of the Partnership and the Partners, including, without limitation: (a) the bankruptcy estate's claims

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 5

against the Partnership for approximately $9,000,000 in respect of money owed the bankruptcy estate by the Partnership; (b) the bankruptcy estate's general partnership Interest in the Partnership of approximately 2%; (c) the bankruptcy estate's limited partnership Interest in the Partnership of approximately of 73.4%; (d) the bankruptcy estate's claim that it holds all other rights of a general partner and a limited partner under the Partnership Agreement and applicable bankruptcy and non-bankruptcy law; (e) the bankruptcy estate's claim of ownership of certain assets which the Partnership also claims that it owns, including, without limitation, the Contested Assets; (f) Avoidance Actions against the Partnership, including, without limitation, claims under section 544 of the Bankruptcy Code with respect to the Contested Assets and fraudulent conveyance claims under sections 544 and 548 of the Bankruptcy Code with respect to the Conveyed Assets; (g) the bankruptcy estate's claims that certain provisions of the Partnership Agreement are unenforceable under bankruptcy law and that certain provisions of the Partnership Agreement are not enforceable against the bankruptcy estate under applicable non-bankruptcy law; (h) any right the Debtor or the bankruptcy estate may have to assume or reject the Partnership Agreement to the extent it is determined to be an Executory Contract; (i) the Debtor and the bankruptcy estate's damage claims against the Partners for violation of the automatic stay for purportedly replacing the Debtor as the general partner of the Partnership or otherwise limiting the Debtor and the bankruptcy estate's rights under the Partnership Agreement; (j) the Debtor and the bankruptcy estate's claims that the Partners said purported replacement and/or limitation rights was void and without effect because it was a violation of the automatic stay; (k) the Debtor and the bankruptcy estate's claims that the Partnership is obligated to be dissolved pursuant to the terms of the Partnership Agreement; (l) the bankruptcy estate's claim that since all of the Partners did not consent to said purported replacement and/or limitation of rights the action is void and without effect pursuant to the terms of the Partnership Agreement; (m) the bankruptcy estate's claims for breach of fiduciary duty, including claims arising out of said purported replacement and/or limitation of rights; (n) the bankruptcy estate's claim that the Debtor's consent as a limited partner to said purported replacement and/or limitation of rights was not done in the ordinary course of business; (o) all other rights of the general partner and/or a limited partner under the Partnership Agreement and/or damage claims against the Partnership and/or the Partners; (p) claims that the Partnership is merely the alter-ego of Don J. Simplot, and that all of the Partnership's assets should be as a result thereof be treated as assets of the bankruptcy estate (this might also be called a "reverse piercing" argument); (q) claims that the Partnership is not entitled to setoff the amounts it owes Debtor's estate against the prepetition claims it holds against Debtor's estate; (r) claims that the Partnership's allowable pre-petition unsecured claims against the estate, if any, should be subordinated; (s) all of the bankruptcy estate's defenses to claims of the Partnership and/or the Partners against it; and (t) all other Interests, claims, rights, powers, and defenses that the bankruptcy estate may have in, against, or concerning the Partnership and the Partners, and the assets of the Partnership, including those arising under the Partnership Agreement, bankruptcy law, and applicable non-bankruptcy law. These are collective claims and defenses that have been asserted by the Debtor-in-Possession or the Creditors' Committee that exist against the Partners and the Partnership. The Debtor does not agree that a cause of action exists as to all of the specified claims and defenses. All claims and defenses, whether agreed to by Debtor or not, however, are contained within this definition.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 6

1.2.45  "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof or other entity.

1.2.46  "Petition Date" means January 4, 2006, the date on which Debtor filed his petition for reorganization relief commencing the Chapter 11 case.

1.2.47  "Plan" means this joint reorganization plan proposed jointly by Debtor and the Creditors' Committee, together with all exhibits hereto, as it may be further amended, modified or supplemented from time to time in accordance with section 1127 of the Bankruptcy Code, including any Plan Supplements.

1.2.48  "Plan Supplement" means the compilation of documents or forms of documents specified in this Plan, including any exhibits to this Plan not included herewith, that the Creditors' Committee (with the consent of Debtor) will file with the Bankruptcy Court on or before the date that is fourteen (14) days prior to the date of the Confirmation Hearing.

1.2.49  "Post-Effective Date Assets" means all property of the kind specified in sections 541 and 1115 of the Bankruptcy Code that Debtor acquires after the Effective Date but before the closure of this Chapter 11 case, including without limitation inheritances and the Trust's Share of the Post-Effective Date Earnings, except for (i) the Exempt Assets, income that is part of the Exempt Assets, income that Debtor earns directly from the Exempt Assets, property acquired with the Exempt Assets and proceeds of the Exempt Assets, and (ii) Debtor's Share of the Post-Effective Date Earnings. Post-Effective Date Assets shall further include without limitation (i) any assets owned by Debtor prior to the Effective Date but which Debtor failed to identify or disclose in this bankruptcy case, but which Debtor or Estate Representative discovers after the Effective Date; and (ii) any tax refunds that are owing or paid in respect of Debtor's income or losses prior to the Effective Date.

1.2.50  "Post-Effective Date Earnings" means all of Debtor's earnings from services performed by Debtor during that period which commences on the Effective Date and ends on the first to occur of the following:  (i) the day on which this bankruptcy case is closed, dismissed, or converted; or (ii) the day which is the five year anniversary of the Effective Date.

1.2.51  "Pro Rata" means, at any time, the proportion that the face amount of an Allowed Claim in a particular Class bears to the aggregate face amount of all claims (including Disputed Claims, but excluding disallowed claims) in that Class, unless this Plan provides otherwise.

1.2.52  "Professional Fee Claims" shall have the meaning given it in Article 14.1.1 of this Plan.

1.2.53  "Protective Order" means that certain "Stipulated Order and Protective Order Regarding Rule 2004 Exams and Confidentiality (Simplot Parties") entered in this Chapter 11 case on or about May 9, 2006.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 7

1.2.54  [Intentionally Deleted.]

1.2.55  "Reserve" means the maximum amount of cash that the Estate Representative estimates is required to satisfy Allowed Claims described in Articles 3.1.1, 3.2, 14.1.1, 14.1.2, and the first sentence of 14.2 hereof.

1.2.56  "Retained Assets" means the Partnership Claims, the JRSCo Interests, and the JRSCo Documents.

1.2.57  "Secured Claim" means a claim, other than a Setoff Claim, that is secured by a lien that is valid, perfected and enforceable, and not avoidable, on property in which Debtor has an interest, or the proceeds of the sale of such property, to the extent of the value, as of the Petition Date, of such interest or lien as determined by a Final Order of the Bankruptcy Court under section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Estate Representative and the holder of such claim.

1.2.58  "Setoff Claim" means a claim of a holder that has a valid right of setoff with respect to such claim, which right is enforceable under section 553 of the Bankruptcy Code as determined by a Final Order or as otherwise agreed in writing by the Estate Representative, to the extent of the amount subject to such right of setoff.

1.2.59  "Transfer Restrictions" means, as applicable, as to the Interests in the Partnership the restrictions and rights set forth in the Partnership Agreement pertaining to a transfer of an Interest in the Partnership, including, without limitation, those pertaining to a "Defaulting Partner" and an "Assignee" as those terms are defined in the Partnership Agreement (Sections 2.6 and 2.11) and as to JRSCo the transfer restrictions contained in the JRSCo Documents, including, without limitation, those set forth in the JRSCo articles of incorporation (Article IV, Section 6).

1.2.60  "Transferred Assets" means (i) all claims, rights, powers, defenses, Interests, properties and assets of Debtor's bankruptcy estate as of the Effective Date of any nature whatsoever, including without limitation the Causes of Action (except those which are part of the Retained Assets), the Avoidance Actions (except those which are part of the Retained Assets), and the Miscellaneous Transferred Assets identified at Exhibit 1.2.60 hereto, and (ii) the Post-Effective Date Assets; provided, however, that the Transferred Assets shall not include (a) the Retained Assets, (b) the Reserve, (c) the Exempt Assets or (d) the Garden City Property.

1.2.61  "Trustee" means the Trustee of the Creditors' Trust  and any successor thereto.

1.2.62  "Trust's Share" means, with respect to the Post-Effective Date Earnings, 25% of the before tax amount thereof.

1.2.63  "Voting Deadline" means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 8

**1.3    Rules of Interpretation.**

In this Plan (a) any reference to a contract, instrument, release, indenture or other agreement or document as being in a particular form or on particular terms and conditions means the agreement or document substantially in that form or on those terms and conditions; (b) any reference to an existing document or exhibit means that document or exhibit as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and Sections are for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, and (f) the rules of construction in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.4    Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

**2.1    Introduction.**

All claims, except administrative claims and priority tax claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative claims and priority tax claims, as described below, have not been classified and are not entitled to vote on this Plan.

A claim is placed in a particular Class only to the extent that the claim falls within the description of that Class, and is classified in other Classes to the extent that any portion of the claim or Interest falls within the description of such other Classes.  A claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such claim is an Allowed Claim in that Class and such claim has not been paid, released, or otherwise settled prior to the Effective Date.

**2.2    Unclassified Claims (not entitled to vote on the Plan).**

2.2.1    *Administrative Claims*.

2.2.2    *Priority Tax Claims*.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 9

**2.3    Unimpaired Class of Claims (deemed to have accepted the Plan and, therefore, not entitled to vote).**

2.3.1    *Class l:  Other Priority Claims.*

Class l consists of all Other Priority Claims against Debtor, if any.  There are no unpaid Other Priority Claims consisting of domestic support obligations, as defined in section 101(14A) of the Bankruptcy Code.

2.3.2    *Class 3 Secured Claim of Diversified Financial Services, Inc.*

Class 3 consists of the claims of Diversified Financial Services, LLC ("DFS") (i) in respect of that Retail Installment Contract (Security Agreement) between Don J. Simplot and Silver Creek Irrigation dated September 17, 2001, secured by a security interest in two agricultural pivots and related equipment, and (ii) in respect of that Retail Installment Contract (Security Agreement) between Don J. Simplot and Silver Creek Irrigation Co. dated September 17, 2004, secured by a security interest in one agricultural pivot and related equipment.

Pursuant to an Order Removing Stay and Waiver Under FRBP 4001 (the "Stipulated Order") (Docket No. 534), DFS sold the three agricultural pivots subject to its liens, has from the proceeds of the sale been paid in full the amounts due it, and has paid the bankruptcy estate the sale proceeds in excess of the amounts due it.  DFS is therefore not impaired by the Plan and will not receive any further payments under this Plan.

**2.4    Impaired Classes of Claims (entitled to vote on the Plan).**

2.4.1    *Class 2:  Secured Claims of PHH Mortgage Corp.*

Class 2 consists of (i) the claims of PHH Mortgage Corp. ("PHH") in respect of that Adjustable Rate Note dated November 16, 2000 in the principal face amount of $2,000,000, allegedly secured by an interest in Debtor's El Paso Property by that Deed of Trust of even date recorded in the official records of the Canyon County Recorder as Instrument No. 200040869, and (ii) the claims of PHH allegedly secured by an interest in Debtor's El Paso Property by that Deed of Trust dated November 16, 2000 recorded in the official records of the Canyon County Recorder as Instrument No. 200040870.  Class 2 does not include the claims of PHH in respect of that Adjustable Rate Note dated February 20, 1997 (the "1997 Note") in the principal face amount of $130,000, secured by that Mortgage of even date recorded in the official records of the Canyon County Recorder as Instrument No. 9705267.  The 1997 Note is secured by the property identified in item 2 of Exhibit 1.2.17 (the Hollow Road property) and will not be paid under or treated in this Plan except that in the event this property is recovered as an asset of the bankruptcy estate or, as applicable, the Creditors' Trust, the claim shall be paid in accordance with the terms of the 1997 Note.

2.4.2    [Intentionally omitted.]

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 10

### 2.4.3   *Class 4: Claims of April Dawn Simplot and John Ralstin Simplot.*

Class 4 consists of all claims of April Dawn Simplot and John Ralstin Simplot, including the claim that they beneficially own the Garden City Property free and clear of any interest of the bankruptcy estate except for the bankruptcy estate's legal title as custodian under the Uniform Transfers to Minors Act.

### 2.4.4   *Class 5: General Unsecured Claims.*

Class 5 consists of all General Unsecured Claims that exist against Debtor except for the unsecured claims of April Dawn Simplot and John Ralstin Simplot (which are included in Class 4). Class 5 includes claims against Debtor for, without limitation, monies borrowed, rejection of executory contracts and unexpired leases, unsecured deficiency claims, and claims for indemnification, if any.

### 2.4.5   *Class 6:  Claims of Don J. Simplot.*

Class 6 consists of all of Debtor's ownership interests in the assets of the bankruptcy estate, and his claims against the bankruptcy estate.

## ARTICLE III.
## TREATMENT OF CLAIMS AND INTERESTS

**3.1    Unclassified Claims.**

### 3.1.1   *Administrative Claims.*

The Estate Representative shall pay from the Reserve, to each holder of an Allowed Claim that is an administrative claim, in full satisfaction, settlement, release, and discharge of and in exchange for such allowed administrative claim, cash equal to the unpaid portion of such allowed administrative claim on or as soon as reasonably practicable after the latest of (a) the Effective Date, (b) the date that is five (5) Business Days after the date an administrative claim becomes an Allowed Claim, or (c) the date that is five (5) Business Days after the date an administrative claim becomes payable pursuant to any agreement between the Estate Representative and the holder of an administrative claim, except as otherwise provided for in the Plan, and subject to the requirements of Article 14.1.2 of the Plan for Professional Fee Claims and substantial contribution claims;  *provided, however*, that obligations incurred by the Creditors' Trust after the Confirmation Date, including Professional Fee Claims, shall not be subject to applications to the Bankruptcy Court and may be paid by the Creditors' Trust in the ordinary course of its operations and without further Bankruptcy Court approval.  There are no unpaid postpetition claims consisting of domestic support obligations, as defined in section 101(14A) of the Bankruptcy Code, and as provided for in section 1129(a)(14) of the Bankruptcy Code.  Notwithstanding anything else contained herein, the holder of an Allowed Claim that is an administrative claim that has arisen with respect to or in respect of the Exempt Assets shall be paid by Debtor solely from such Exempt Assets.  Such allowed administrative claims shall not be paid from assets of the bankruptcy estate, the Creditors' Trust, or the Reserve.  Debtor shall not

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 11

receive a discharge of such claims until such claims are paid in full.  The holders of such claims shall not be subject to the injunction provided for in Article 12.5 hereof insofar as Debtor or the Exempt Assets are concerned.

### 3.1.2    *Priority Tax Claims*.

(a)        The Trustee shall pay from the Creditors' Trust, to each holder of an Allowed Claim that is a priority tax claim, at the sole discretion of the Trustee, and in full satisfaction, settlement, release and discharge of and in exchange for such allowed priority tax claim, (a) cash equal to the unpaid portion of such allowed priority tax claim, (b) cash payments made in equal annual installments beginning on or before the first anniversary following the Effective Date, with the final installment payable not later than the fifth (5th) anniversary of the Petition Date, together with interest on the unpaid portion thereof at the rate provided in Section 511(b) of the Bankruptcy Code from the Effective Date through the date of payment thereof, or (c) such other treatment as to which the Estate Representative and such holder shall have agreed on in writing; *provided, however*, that the Estate Representative reserves the right to pay any allowed priority tax claim or any remaining balance of any allowed priority tax claim, in full at any time on or after the Effective Date without premium or penalty; and *provided further*, that no holder of an allowed priority tax claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising after the Petition Date with respect to or in connection with such allowed priority tax claim.  Notwithstanding anything else contained herein, the holder of an Allowed Claim that is a priority tax claim that has arisen with respect to or in respect of the Exempt Assets shall be paid by Debtor solely from such Exempt Assets.  Such allowed priority tax claims shall not be paid from assets of the bankruptcy estate, the Creditors' Trust, or the Reserve.

(b)        It is understood by the Debtor that the discharge granted by 11 U.S.C. §1141(d) shall be and the same is modified as to the tax debt provided for in this Plan, and discharge of any tax debt under this Plan shall not be effective until all State of Idaho taxes provided for under this Plan have been paid in full.  Nothing herein, however, shall alter this Plan as to the stated party's (Debtor or Estate Representative/Trustee) obligation to pay those debts owed to the State of Idaho as provided in this Plan.

If either the Idaho State Tax Commission or the Internal Revenue Service declares that the Estate Representative/Trustee appointed under the Plan is in default in payment of, as applicable, the pre-petition state and federal tax obligations under the Plan, then, as applicable, the entire Idaho State Tax or the Federal Tax pre-petition liability shall become due and payable within thirty (30) days of the written demand to the Debtor and the Estate Representative/Trustee if the alleged default has not been cured.  The foregoing is not a cross default provision  Further the Idaho State Tax Commission and the Internal Revenue Service shall determine whether the obligation is a Debtor obligation under the Plan or the obligation of the Estate Representative/Trustee under the Plan and it shall provide written notice of that default to the respective obligor (Debtor or the Estate Representative/Trustee).

If full payment is not made within thirty (30) days of such demand, or other arrangement is not agreed to in writing, the Idaho State Tax Commission or, as applicable, the Internal

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 12

Revenue Service, may collect any unpaid liabilities through the administrative collection provisions of the Idaho State Tax Commission or, as applicable, the Internal Revenue Service from the Debtor if it is a Debtor tax obligation under the Plan or from the bankruptcy estate and/or the Creditors' Trust if it is not the Debtor's tax obligation under the Plan.

**3.2    Unimpaired Class of Claims.**

3.2.1    *Class 1:  Other Priority Claims.*

On, or as soon as reasonably practicable after, the later of (i) the Effective Date or (ii) the date an Other Priority Claim becomes an Allowed Claim, each holder of an allowed Other Priority Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such allowed Other Priority Claim, as applicable, (a) cash in an amount equal to the unpaid portion of such allowed Other Priority Claim or (b) such other treatment as to which the Estate Representative and such holder shall have agreed upon in writing.

**3.3    Impaired Classes of Claims.**

3.3.1    *Class 2:  Secured Claims of PHH*

The transfer of Debtor's El Paso Property to the Creditors' Trust shall be subject to the deed of trust liens of PHH except to the extent such liens are subsequently disallowed or avoided.  The Debtor's El Paso Property shall be sold either by Debtor before the Effective Date or by Estate Representative after the Effective Date.  The sale shall be subject to Bankruptcy Court approval.  To the extent that PHH's secured claim is an Allowed Claim, the amount of such Allowed Claim shall be paid from the net proceeds of sale of that portion of Debtor's El Paso Property which is subject to PHH's deeds of trust.  If such a sale does not realize the full amount of PHH's Allowed Claim, then any deficiency shall be a General Unsecured Claim hereunder.  If no such sale is consummated within 18 months after the Effective Date, then PHH shall be entitled to enforce its security interests to the extent permissible under applicable non-bankruptcy law.  As provided in the Order Granting Conditional Relief From Section 362 Stay and Approving Stipulation (Docket No. 571) (the "Order"), interest only payments shall be made to PHH on or before the 15th of each month.  The current interest only payment on the $2,000,000.00 loan is $9,988.06 per month, and the current interest only payment on the $1,000,000.00 loan is $5,921.81 per month.  It is acknowledged that the interest rate under the notes is adjustable and that the required interest only payment amounts may vary as interest rates fluctuate pursuant to the terms of these notes.  The terms and conditions of the Order are incorporated in this Plan as if set forth herein.  As provided in Section 2.4.1, the 1997 Note will not be paid under or treated in the Plan except that in the event the Hollow Road property is recovered as an asset of the bankruptcy estate or, as applicable, the Creditors' Trust, the claim shall be paid in accordance with the terms of the 1997 Note.

3.3.2    [Intentionally omitted.]

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 13

### 3.3.3    *Class 4: Claims of April Dawn Simplot and John Ralstin Simplot.*

The interest of the bankruptcy estate in and to the Garden City Property shall be transferred to the class members in full satisfaction of any and all claims they assert against the bankruptcy estate, including their unsecured claims.

### 3.3.4    *Class 5: General Unsecured Claims.*

Each holder of an Allowed General Unsecured Claim shall retain that Allowed Claim, and shall receive payments Pro Rata from the proceeds of Creditors' Trust, sales of Transferred Assets, and from amounts received by the Debtor's bankruptcy estate in connection with Retained Assets, in partial satisfaction of that Allowed Claim. As to any creditor whose claim against Debtor is non-dischargeable, the consideration received in respect of this Article 3.3.4 shall not be in full satisfaction, settlement, or release of such person's claim.

### 3.3.5    *Class 6:  Claims of Don J. Simplot.*

On the Effective Date, on account of, and in full and complete satisfaction of, Debtor's ownership interests in the assets of the bankruptcy estate and his claims against the bankruptcy estate, the Exempt Assets shall be transferred from the bankruptcy estate to Don J. Simplot free and clear of all claims against the bankruptcy estate.

Provided, however, in the event Allowed Claims in Class 5 are paid the full amount of their claims and are also paid in full the post-petition interest thereon at the rate of twelve percent (12%) per annum and all other obligations and expenses of the bankruptcy estate and the Creditors' Trust have been paid in full then, in that event, and only in that event, any remaining property in either the bankruptcy estate or the Creditors' Trust shall be transferred to the Debtor. The Debtor shall not, however, have any right whatsoever to inquire into or challenge any settlement or compromise by or any other action, or failure to take action, of the Estate Representative or the Trustee. Notwithstanding the foregoing, the Debtor shall have the right to bid on the sale of assets of the Creditors' Trust and the bankruptcy estate and nothing herein shall be construed as a limitation on Debtor from objecting to or otherwise opposing any request to delay the entry of a discharge under Bankruptcy Code section 1141(d) beyond five years of the Effective Date of the Plan.

### 3.4    Allowed Claims.

Notwithstanding any provision herein to the contrary, Trustee shall make distributions only to holders of Allowed Claims. No holder of a Disputed Claim shall receive any distribution on account thereof until and to the extent that its Disputed Claim becomes an Allowed Claim. The presence of a Disputed Claim in any Class shall not be a cause to delay distribution to Allowed Claims in that Class. Any holder of a Disputed Claim that becomes an Allowed Claim after distributions have commenced shall receive its Pro Rata distribution, without post-petition interest (except as otherwise expressly provided in this Plan), as set forth in Article 8.4 of this Plan.

**3.5    Accrual of Post-Petition Interest.**

In accordance with section 502(b)(2) of the Bankruptcy Code, the amount of all claims against all Debtors shall be calculated as of the Petition Date.  Except as otherwise provided elsewhere in this Plan or in an order of the Bankruptcy Court, no holder of an Allowed Claim shall be entitled to the accrual of post-petition interest or the payment by Debtor of post-petition interest on account of such Allowed Claim for any purpose.  Notwithstanding the foregoing, holders of Allowed Claims that are secured claims shall be entitled to post-petition interest to the extent provided for in Bankruptcy Code section 506(b).

**ARTICLE IV.**
**TREATMENT OF EXECUTORY CONTRACTS**

**4.1    Executory Contracts.**

4.1.1    This Article 4 shall not apply to or control the Partnership Claims, including, but not limited to, the Partnership Agreement, and it shall not apply to or control the JRSCo Documents.  The treatment of the Partnership Claims and the JRSCo Documents shall be governed by Article V.

4.1.2    The Debtor does not believe he is a party to any Executory Contracts except possibly the following:

(a)    The Partnership claims that the Partnership Agreement is an Executory Contract.  This is disputed and it is asserted that the Partnership Agreement is not an Executory Contract.

(b)    JRSCo may claim that some of the JRSCo Documents are not Executory Contracts.  The Creditors' Committee may claim that some of the JRSCo Documents are Executory Contracts.

(c)    The timeshare maintenance agreement with Operadora Turistica pertaining to the Debtor's Mazatlan El Cid timeshare.

(d)    The timeshare maintenance agreement with Resort Maintenance, LLC pertaining to the Debtor's Mazatlan El Cid timeshare.

(e)    Any agreement between the Debtor and April and John Simplot pertaining to the management of property.  Any such agreement is fully settled and resolved by the treatment of April and John Simplot as Class 4 claimants and April and John Simplot shall not have any claims against the Debtor or the bankruptcy estate as a result of any such alleged agreement.

(f)    An agreement dated January 2, 2006 for the purchase of the Debtor's El Paso Property between, among others, the Debtor and M&H Development.  This agreement has been terminated due to the conditions precedent not being satisfied and, as

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 15

Case 06-00002-TLM    Doc 577    Filed 03/28/07    Entered 03/28/07 11:33:49    Desc Main
Document    Page 21 of 55


a result, M&H Development does not have any claims against the Debtor or the bankruptcy estate by virtue of the agreement.

(g)    The back-up agreement to purchase the Debtor's El Paso Property between, among others, the Debtor and Scott Lamm and Robert Haggett. This agreement has terminated due to the conditions precedent not being satisfied and, as a result, Scott Lamm and Robert Haggett do not have any claims against the Debtor or the bankruptcy estate by virtue of this agreement.

Although the foregoing is a list of all the contracts which the Debtor believes may possibly be Executory Contracts, in the event the Debtor is a party to any contract which may be determined to be an Executory Contract then, in that event, any such Executory Contract shall be covered by this Plan, including, without limitation, this Article IV. In that regard, no Executory Contract shall "ride through" this bankruptcy proceeding.

4.1.3    Except as otherwise provided in this Plan, all of Debtor's rights under any Executory Contract to which Debtor is a party shall transfer to the Trust in accordance with Article 5 hereof. Trustee shall thereafter enjoy with respect to such Executory Contracts all rights and powers that Debtor had as a debtor in possession under the Bankruptcy Code, including the right to assume or reject such Executory Contracts. The non-debtor parties to such Executory Contracts shall enjoy all rights and powers as they enjoyed with respect to such contracts during Debtor's Chapter 11 Case prior to the Confirmation Date.

4.1.4    Trustee's assumption or rejection of Executory Contracts shall be subject to Bankruptcy Court approval obtained prior to the termination the Creditors' Trust. Except as otherwise provided in the Plan, Trustee shall be entitled to assume or reject the Executory Contracts notwithstanding any provision in section 365 of the Bankruptcy Code that might otherwise require an earlier assumption or rejection.

4.1.5    Notwithstanding the foregoing, Debtor reserves the right, at any time prior to the Confirmation Date, to seek approval of the Bankruptcy Court to reject any Executory Contract.

4.1.6    Should litigation be commenced to determine the extent to which a particular contract or unexpired lease is an Executory Contract, then Trustee shall be entitled to bring a separate, subsequent motion to assume or reject the contract or unexpired lease to the extent it is an Executory Contract. The motion to assume or reject need not be brought as part of the initial litigation.

**4.2    Claims Based on Rejection of Executory Contracts.**

If the rejection by Debtor or Trustee, pursuant to this Plan or otherwise, of an Executory Contract results in a claim for damages, then the non-debtor party to such Executory Contract shall be entitled to file a proof of claim in accordance with Bankruptcy Code section 502(g). The time for filing such a claim shall be determined by the Bankruptcy Court in accordance with Bankruptcy Rule 3002(c)(4).

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1     Reserve and Retained Assets.**

5.1.1    *Reserve.*

The Estate Representative shall on the Effective Date establish the amount of the Reserve, and Debtor shall on the Effective Date convey said amount in cash to Estate Representative subject to the terms of this Plan.  Estate Representative shall set such sum aside as the Reserve.  The Estate Representative, subject to the terms of this Plan and the oversight of the Bankruptcy Court, shall have sole control of the Reserve.  The Estate Representative shall use the Reserve to satisfy all Allowed Claims described in Articles 3.1.1, 3.1.2, 3.2, 14.1.1, 14.1.2, and the first sentence of Article 14.2 hereof.  After the payment of all such Allowed Claims, the Estate Representative shall convey any remaining monies from the Reserve to the Creditors' Trust.

5.1.2    *Retained Assets.*

5.1.2.1 Background Statement.

DJS and the Partners claim that the Partnership Agreement is an Executory Contract, that it cannot be assumed by the debtor-in-possession, and that any transfer of the bankruptcy estate's Interests in the Partnership to the Creditors' Trust may trigger the Transfer Restrictions contained in the Partnership Agreement.  The Creditors' Committee asserts that the Partnership Agreement is not an Executory Contract and that any transfer of such Interests in the Partnership to the Creditors' Trust will not result in the Transfer Restrictions being triggered.  JRSCo and the shareholders of JRSCo other than the Debtor may claim that any transfer of the JRSCo Interests to the Creditors' Trust will trigger the Transfer Restrictions and that some of the JRSCo Documents may not be Executory Contracts.  The Creditors' Committee claims that any transfer of the JRSCo Interests to the Creditors' Trust will not trigger the Transfer Restrictions and that some of the JRSCo Documents may be Executory Contracts.  Since the value of the bankruptcy estate's Interests in the Partnership and JRSCo may be adversely impacted if the Transfer Restrictions were triggered by the transfer of the Retained Assets to the Creditors' Trust, the Partnership Claims, the JRSCo Interests, and the bankruptcy estate's rights and, to the extent they are enforceable against the bankruptcy estate, its obligations under the JRSCo Documents will not be presently transferred to the Creditors' Trust, but are expressly retained by the bankruptcy estate and they shall be administered by the Estate Representative as provided in this Plan.

5.1.2.2 Retained Assets.

(a)     The Retained Assets are, and shall be, for the sole and exclusive benefit of the holders of Allowed Claims in Class 5.  Debtor shall have no rights to, or interest in, the Retained Assets.  Any attorney-client privilege, work product privilege or other

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 17

privilege or immunity attaching to any documents or communications (either written or oral) related to the Retained Assets shall remain with the bankruptcy estate and shall be controlled, exercised and/or waived solely by the Estate Representative.

(b)    The Retained Assets shall be retained by the bankruptcy estate and no part of the Retained Assets shall be transferred to the Creditors' Trust until the sale, liquidation, or monetization of, or other realization upon, any of the Retained Assets. Upon the sale, liquidation, or monetization of or other realization upon any of the Retained Assets, the proceeds thereof shall be immediately transferred by the Estate Representative to the Creditors' Trust and upon receipt by the Creditors' Trust any such proceeds shall be treated in all respects as Transferred Assets.

### 5.1.2.3 Estate Representative.

The Estate Representative shall be, pursuant to Section 1123(b)(3)(B), appointed to enforce all of the bankruptcy estate's and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Retained Assets and to discharge his other obligations under this Plan. The Estate Representative shall have all of the rights and powers of the debtor-in-possession in respect of the Retained Assets, including, without limitation, the right to commence and prosecute litigation and/or contested matters and the right, after first obtaining approval of the Bankruptcy Court, to sell all or any part of the Retained Assets and to compromise and settle claims relating to all or any part of the Retained Assets. The Estate Representative shall be appointed effective as of the entry of the Confirmation Order and shall assume his duties on the Effective Date. The Estate Representative and the Trustee shall always be the same person and in the event someone other than Ron Greenspan is the Trustee then, in that event, such person shall be, without further action or approval, appointed the Estate Representative and shall be substituted for any such prior Estate Representative. Accordingly, any person who is the Trustee and ceases to be the Trustee for any reason shall also cease to be the Estate Representative. The Estate Representative's compensation and expenses and all costs and expenses associated with: (i) the Retained Assets; (ii) the enforcement of the bankruptcy estate and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Retained Assets (including, without limitation, professional fees); and (iii) the administration of the bankruptcy estate (including, without limitation, professional fees and taxes) shall be the responsibility of, and shall be paid by, the Creditors' Trust. The term "Trustee" as used in Sections 6.9, 6.10, 6.11, 6.12, 6.14.1, 6.15, and 6.17.3 of the Creditors' Trust shall include the Estate Representative.

### 5.1.2.4 Resolution of Dispute Between Bankruptcy Estate and the Partnership.

(a)    Except as expressly provided in Section 5.1.2.2(b), the Partnership Claims shall be retained by the bankruptcy estate and the Estate Representative shall enforce all of the bankruptcy estate's and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Partnership Claims.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 18

(b)    The Partnership has claims against the bankruptcy estate, including, without limitation, the following:  (i) the Partnership has a pre-petition claim against the bankruptcy estate as set forth in that proof of claim filed by it against Debtor in the amount of $14 million; (ii) the Partnership claims ownership of certain assets which Debtor's estate claims that it owns, including without limitation the Contested Assets; (iii) the Partnership claims that Debtor's interest in the Partnership, and any transfer thereof, are subject to all terms of the Partnership Agreement, and (iv) the Partnership has defenses to the claims of Debtor's estate against it, many of which have been raised and disclosed in the Disclosure Statement.

(c)    The claims, interests, rights, title, powers, and defenses identified in Articles 5.1.2.4(a) and 5.1.2.4(b) hereof shall be treated as follows.  Absent a settlement between the bankruptcy estate, the Partnership and the Partners, the parties shall litigate their respective positions with respect to the Partnership Claims before the Bankruptcy Court, including, but not limited to, their respective claims to the ownership of the Contested Assets.

(d)    Without limiting the generality of Section 5.1.2.4(c), whether or not the Partnership Agreement is an Executory Contract shall be determined by the Bankruptcy Court.  Unless DJS or the Partners have already filed a motion with the Bankruptcy Court seeking to require the Debtor or, as applicable, the Estate Representative, to either reject or, to the extent allowable, assume the Partnership Agreement, within sixty (60) days after the Effective Date the Estate Representative shall file an adversary proceeding in the Bankruptcy Court against the Partners and, to the extent necessary, the Partnership seeking a declaratory judgment upon whether or not the Partnership Agreement is an Executory Contract.  This declaratory judgment proceeding may be filed as a separate action and does not need to include any of the other Partnership Claims.  In the event a Final Order is entered by the Bankruptcy Court that the Partnership Agreement is an Executory Contract then, in that event, the Estate Representative shall, subject to approval of the Bankruptcy Court, and only to the extent allowed in any such Final Order, assume or reject the Partnership Agreement within sixty (60) days after the Final Order, or within such additional time as the Court, for cause, within such sixty-day period, fixes.  Pending entry of such Final Order the Estate Representative shall not be required to either assume or reject the Partnership Agreement.  In the event the Partnership Agreement is determined by the Bankruptcy Court to be an Executory Contract and in the further event the Partnership Agreement is rejected by the Estate Representative then, in that event, if such rejection results in a claim for damages, then the Partners or, as applicable, the Partnership, shall be entitled to file a proof of claim in accordance with Bankruptcy Code Section 502(g).  The time for filing such a claim shall be determined by the Bankruptcy Court in accordance with Bankruptcy Rule 3002(c)(4).  Article IV of this Plan shall not apply to the Partnership Agreement.

(e)    Should, after resolution of the disputes (either by Final Order or court approved stipulation) between the Estate Representative, the Partnership and the Partners, the Partnership and/or the Partners have an allowed unsecured claim that is not

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 19

subordinated, such claim shall be treated as if it were an Allowed Claim in Class 5. If the Partnership and, as applicable, the Partner's claim is allowed but subordinated, then the Partnership and, as applicable, the Partners shall receive nothing in respect of such a claim, except after payment in full to the holders of other Allowed Claims in Class 5.

          5.1.2.5 Resolution of Dispute Between Estate Representative and JRSCo.

(a)     Except as expressly provided in Section 5.1.2.2(b), the JRSCo Interests and the bankruptcy estate's rights and, to the extent they are enforceable against the bankruptcy estate, its obligations under the JRSCo Documents, shall be retained by the bankruptcy estate and the Estate Representative shall enforce all of the bankruptcy estate's rights, title, interests, claims, powers, and defenses in and to such Interests.

(b)     Absent a settlement between the bankruptcy estate, JRSCo and the other applicable shareholders of JRSCo, the parties shall litigate before the Bankruptcy Court their respective positions with respect to whether or not any of the JRSCo Documents are Executory Contracts and the efficacy and enforceability of any provision of the JRSCo Documents. In the event a Final Order is entered by the Bankruptcy Court that any of the JRSCo Documents are an Executory Contract then, in that event, the Estate Representative shall, subject to the approval of the Bankruptcy Court, and only to the extent allowed in such Final Order, assume or reject such JRSCo Document within sixty (60) days after entry of the Final Order or within such additional time as the Court, for cause, within such sixty-day period, fixes. If the rejection by the Estate Representative of any of the JRSCo Documents results in a claim for damages, then, as applicable, JRSCo and the other shareholders of JRSCo shall be entitled to file a proof of claim in accordance with the Bankruptcy Code Section 502(g). The time for filing such a claim shall be determined by the Bankruptcy Court in accordance with Bankruptcy Rule 3002(c)(4), and any such allowed claim shall be treated as Allowed Claims in Class 5. Article IV of this Plan shall not apply to the JRSCo Documents.

(c)     Pending the entry of a Final Order of the Bankruptcy Court upon whether or not any of the JRSCo Documents are Executory Contracts, the Estate Representative shall not be required to either assume or reject any of the Executory Contracts, provided, however, not withstanding the foregoing at any time after sixty (60) days from the Effective Date JRSCo or any of the other JRSCo shareholders may seek an order for the Bankruptcy Court to require the Estate Representative to either reject or, to the extent allowed, assume any of the JRSCo Documents, and the Estate Representative shall have all of the bankruptcy estate's rights, claims, powers, and defenses with respect to any such motion.

          5.1.2.6 Bankruptcy Estate Administration.

(a)     Subject to the approval of the Executive Board, the Estate Representative may retain such law firms, accounting firms, disbursing agents, experts, advisors, appraisers, auctioneers or other professionals as she/he may deem necessary to aid in the performance of his/her responsibilities pursuant to this Plan including, without limitation,

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 20

the liquidation of the Retained Assets and the transfer of the Retained Assets to the Creditors' Trust pursuant to the terms of this Plan. Professionals currently employed in this case may be employed by the Estate Representative. Persons affiliated with the Estate Representative may be employed by the Estate Representative. The Estate Representative shall give written notice of his proposed retention of any such person to each member of the Executive Board. The Executive Board shall be deemed to have approved the proposed retention if no member of the Executive Board objects to the proposed retention within seven (7) business days of having received notice thereof.

(b)     The Estate Representative shall, on behalf of the bankruptcy estate, prepare and provide to or file with the appropriate parties such notices, tax returns or other filings as may be required by applicable law.

(c)     Compensation of the Estate Representative shall be at the same fixed hourly rate as the Trustee is compensated.

(d)     The Retained Assets shall be transferred to the Creditors' Trust on or before four and one-half (4-1/2) years after the Effective Date or such later date as may be approved by the Bankruptcy Court. Upon the transfer of the Retained Assets to the Creditors' Trust they shall be treated, for all purposes, as Transferred Assets.

**5.2     Creditors' Trust.**

5.2.1     *Creditors' Trust.*

On or before the Effective Date, Debtor, the Trustee and the Executive Board shall execute the Creditors' Trust Agreement and shall take all other steps necessary to establish the Creditors' Trust. On the Effective Date, Debtor shall be deemed to have transferred all of his and the bankruptcy estate's rights, title, powers, interests, and defenses in and to the Transferred Assets, but not in the Retained Assets, the Exempt Assets or the Reserves, to the Creditors' Trust for the sole and exclusive purposes of the payment of Creditors' Trust Administrative Expenses and the partial payment of Allowed Claims in Class 5 and Allowed Claims for priority taxes (but subject to the rights of the holder of the Class 3 claims hereunder). Debtor shall have no interest in the Creditors' Trust subsequent to his conveyance of those assets to the Creditors' Trust except as provided in Section 3.3.5. In connection with this transfer, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Creditors' Trust shall vest in the Trustee and his or her representatives.

5.2.2     *Conveyance of the Transferred Assets.*

In addition to all other rights, claims, interests, powers, and defenses provided to him under this Plan, the Estate Representative, in his or her capacity as Estate Representative and as Trustee, shall possess with respect to all of the Transferred Assets and the Retained Assets all rights, interests, powers, claims, and defenses of a trustee under the Bankruptcy Code.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 21

### 5.2.3    *Trustee*.

The Estate Representative shall be established as Trustee of the Creditors' Trust in the Trust Agreement.  The Trustee of the Creditors' Trust shall be appointed effective upon the entry of the Confirmation Order, with said Trustee assuming the duties of the Trustee on the Effective Date.  In accordance with the provisions of the Creditors' Trust Agreement, the Trustee, in his or her reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to cash the assets of the Creditors' Trust, make timely distributions and not unduly prolong the duration of the Creditors' Trust.  The Trustee shall have and perform only those duties, responsibilities, rights and obligations set forth in the Creditors' Trust Agreement, this Plan, and the Confirmation Order, which obligations include the posting of a Bond, in an amount set forth in the Confirmation Order, for the benefit of Beneficiaries (as that term is defined in the Creditors' Trust Agreement) of the Creditors' Trust Agreement.

### 5.2.4    *Executive Board*.

The Executive Board shall be appointed effective upon the entry of the Confirmation Order and shall assume its duties on the Effective Date.  The initial members of the Executive Board shall consist of four individuals.  Each of the following unsecured creditors shall be entitled to designate one individual:  AmericanWest Bank; Foundation Bank; Regal Financial Bank; and Washington Trust Bank.  The designee of AmericanWest Bank shall serve as the initial chairman of the Executive Board.  The Executive Board shall have and perform the duties, responsibilities, rights and obligations set forth in this Plan and the Creditors' Trust Agreement.

### 5.2.5    *Estate Representative*.

Debtor and the Creditors' Committee designate Ronald Greenspan as the Estate Representative.  The Estate Representative shall be appointed effective upon the entry of the Confirmation Order, with said Estate Representative assuming the duties of the Estate Representative on the Effective Date.  The Estate Representative shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Creditors' Trust Agreement and this Plan.

### 5.2.6    *Powers and Duties of and Governance by Executive Board*.

The Executive Board shall prescribe its own rules of procedure, subject to the provisions of this Plan and the Creditors' Trust Agreement.

The Executive Board may retain such attorneys as it may deem reasonably necessary, and the reasonable fees and expenses incurred by such retained attorneys shall be paid by the Creditors' Trust.  Present counsel for the Creditors' Committee may represent the Executive Board, if so employed.  Counsel for Trustee may represent the Executive Board except to the extent that such joint representation would constitute a conflict of interest.  The Executive Board may not employ any accounting firms, experts, advisors, appraisers, auctioneers or other professionals. All such professionals shall only be employed by Trustee.  Members of the Executive Board shall be entitled to receive reimbursement of their reasonable expenses (other

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 22

than individual attorneys' fees and costs) from the Creditors' Trust as described in the Creditors' Trust Agreement.

Trustee shall budget for monthly meetings with the Executive Board regarding the administration of the Creditors' Trust and the Transferred Assets.

Without the consent of the Executive Board and the Bankruptcy Court, Trustee shall not:

      (a)    make any borrowing on behalf of the Creditors' Trust or encumber the Transferred Assets;

      (b)    incur or pay any expenditure that has not been previously approved by the Executive Board as a line item in the quarterly budget plus any applicable variance;

      (c)    agree to the sale of any of the Transferred Assets;

      (d)    [Intentionally Deleted]; or

      (e)    settle or compromise any of the Causes of Action.

Upon the final distribution by Trustee to beneficiaries of the Creditors' Trust, the Creditors' Trust shall be dissolved and the Executive Board's duties and responsibilities shall be deemed completed.

        5.2.7   *Quarterly Budgetary Process*.

Within ten (10) days of the Effective Date, with respect to the balance of the calendar quarter commencing on the Effective Date, and prior to the commencement of each subsequent calendar quarter during the term of the Creditors' Trust, Trustee shall present to the Executive Board for approval Trustee's budget and ancillary reports for the Creditors' Trust and the Retained Assets.  Such reports may be modified from time-to-time as agreed between Trustee and the Executive Board.

The Executive Board shall approve such quarterly budget or approve with modifications (either as to scope or amount) such quarterly budget within ten (10) business days after Trustee's written and oral presentation of such budget to the Executive Board.  If the Executive Board refuses to approve such quarterly budget, or fails to approve such quarterly budget within such ten (10) business day period, Trustee may seek approval of such quarterly budget by the Bankruptcy Court.  The budget for projected professional costs set forth on the schedule of projected professional costs shall be based upon and include the quarterly budgets, broken down into monthly components, to be submitted by each professional listed on such schedule.

Each month during each calendar quarter, Trustee shall furnish to the Executive Board monthly operating reports (with a budget to actual comparison).

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 23

### 5.2.8    *Creditors' Trust Agreement*.

On the Effective Date, the Creditors' Trust Agreement shall become effective.  Subject only to the terms and conditions of the Creditors' Trust Agreement and this Plan, Trustee shall have full power, authority and responsibility to take any steps necessary to administer the Creditors' Trust, including, without limitation, the duty and obligation to commence and prosecute litigation and/or contested matters, liquidate assets of the Creditors' Trust, to make payments therefrom to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes, and to pursue objections to any Disputed Claims, except that the Partnership's Disputed Claim shall be objected to and prosecuted by the Estate Representative.  Consistent with Idaho Code § 68-110, no Person dealing with the Creditors' Trust shall be obligated to inquire into the authority of Trustee in connection with the management, sale, operation, leasing, abandonment or disposition of Creditors' Trust Assets.  The limitations on the Trustee's power to act without prior consent from the Executive Board and the Bankruptcy Court as provided in Section 5.2.6(a)–(e) define the rights between and among the parties to the Creditors' Trust Agreement and the beneficiaries thereto.

### 5.2.9    *Creditors' Trust Administration*.

Subject to the approval of the Executive Board, Trustee may retain such law firms, accounting firms, disbursing agents, experts, advisors, appraisers, auctioneers or other professionals as she/he may deem necessary to aid in the performance of his/her responsibilities pursuant to the Creditors' Trust Agreement and this Plan including, without limitation, the liquidation and distribution of the Transferred Assets.  Professionals currently employed in this case may be employed by Trustee.  Persons affiliated with Trustee may be employed by Trustee.  Trustee shall give written notice of his proposed retention of any such person to each member of the Executive Board.  The Executive Board shall be deemed to have approved the proposed retention if no member of the Executive Board objects to the proposed retention within seven business days of having received notice thereof.

The Causes of Action (except those which are part of the Retained Assets) shall vest in the Creditors' Trust upon the Effective Date.  The Creditors' Trust shall retain and preserve all of the Causes of Action (except those which are part of the Retained Assets) and Trustee and the Executive Board shall pursue and enforce all of the Causes of Action (except those which are part of the Retained Assets), including, but not limited to the Avoidance Actions (except those which are part of the Retained Assets), as representatives and successors to Debtor in accordance with Bankruptcy Code section 1123(b)(3)(B).

Trustee shall, on behalf of the Creditors' Trust, prepare and provide to or file with the appropriate parties such notices, tax returns and other filings as may be required by applicable law.

Trustee may be removed at the discretion of the Executive Board.  If Trustee is removed, dies or resigns, the Executive Board shall have the exclusive right to nominate any successor Trustee and Estate Representative, subject to approval by the Bankruptcy Court.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 24

Compensation of Trustee shall be at a fixed hourly rate to be set as of the Effective Date of the Plan, as described in the Creditors' Trust Agreement.

5.2.10  *Tax Matters*.

For federal income tax purposes, it is intended that the Creditors' Trust be classified as a liquidating trust under Section 301.7701-4(d) of the Procedure and Administration Regulations of the Internal Revenue Code and that such trust be owned by its grantor and beneficiary, the Debtor's bankruptcy estate, for the sole and exclusive purposes of the payment of Creditors' Trust Administrative Expenses and the partial payment of Allowed Claims in Class 5 and Allowed Claims for priority taxes.  Accordingly, the Debtor's bankruptcy estate will report all taxable net income, gains and losses from transactions in both the Transferred Assets and the Retained Assets for the duration of the Plan.  The Trustee will be responsible for filing all federal, state and local tax returns for both the Creditors' Trust and the Debtor's bankruptcy estate, and will pay all resulting tax liabilities from assets of the Creditors' Trust.

5.2.11  *Distributions; Beneficial Interests in the Creditors' Trust*.

Trustee shall make payments from the Creditors' Trust to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes in accordance with the Creditors' Trust Agreement.  Trustee shall make payments of all funds reasonably available for payment (after making appropriate reserves for further cost of administration of the Creditors' Trust or any reserves necessary for protection of Disputed Claims) to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes as promptly as is reasonably practicable and is consistent with economical management of the Creditors' Trust.  In no event shall Trustee be obligated to make a payment if, in the reasonable business judgment of Trustee, the amount then on hand and the ultimate payment to be made would not be justified, taking into account all of the attendant costs of such payment.

5.2.12  *Costs and Expenses*.

All costs and expenses associated with the administration of the Creditors' Trust and of the Estate Representative, including, but not limited to, all federal, state, and local taxes, shall be the responsibility of and paid by the Creditors' Trust.

5.2.13  *Liquidation of Assets of the Creditors' Trust*.

The liquidation of the Transferred Assets shall occur on or before four and one half years after the Effective Date or such later date as may be approved by the Bankruptcy Court.  In the event the Transferred Assets are not liquidated by that date, Trustee shall commence to auction the Transferred Assets and shall complete such auction(s) on or before the later to occur of: (i) the fifth anniversary of the Effective Date; and (ii) such later date as may be approved by the Bankruptcy Court.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 25

5.2.14 *Approval or Consent to Act*.

In any situation in which an action by Trustee requires the approval or consent of the Executive Board and the Executive Board has refused or failed to give such approval or consent, Trustee may seek such approval or consent from the Bankruptcy Court by application or motion, and any order granting such application or motion shall constitute the necessary approval or consent for such action by Trustee.

**5.3    [Intentionally Omitted].]**

**5.4    No Revesting of Assets.**

The property of Debtor's bankruptcy estate other than the Exempt Assets shall remain property of such Debtor's bankruptcy estate and shall be subject to the control of the Estate Representative after the Confirmation Date until such property vests in the Creditors' Trust. Provided, however, in the event Allowed Claims in Class 5 and Allowed Claims for priority taxes are paid the full amount of their claims and are also paid in full the post-petition interest thereon at the rate of twelve percent (12%) per annum or such other rate as applicable and all other obligations and expenses of the bankruptcy estate and the Creditors' Trust have been paid in full then, in that event, and only in that event, any remaining property in either the bankruptcy estate or the Creditors' Trust shall be transferred to the Debtor. The Debtor shall not, however, have any right whatsoever to inquire into or challenge any settlement or compromise by or any other action, or failure to take action, of the Estate Representative or the Trustee. Notwithstanding the foregoing, the Debtor shall have the right to bid on the sale of assets of the Creditors' Trust and the bankruptcy estate and nothing herein shall be construed as a limitation on Debtor from objecting to or otherwise opposing any request to delay the entry of a discharge under Bankruptcy Code section 1141(d) beyond five years of the Effective Date of the Plan.

**5.5    Cooperation of Debtor.**

Debtor shall reasonably cooperate, without the necessity of compensation, with Trustee in administering the Creditors' Trust Assets and performing his/her duties as Estate Representative and Trustee. Such obligation shall include, without limitation, (i) an obligation to sign such instruments or documents as prove necessary or desirable in effecting a transfer of any Creditors' Trust Asset, (ii) an obligation to assist in resolving tax matters that arise in connection with the affairs of the Creditors' Trust, such as, for example, assisting in determining the tax basis of any asset transferred to the Creditors' Trust and assisting in the preparation and filing of amended tax returns, and (iii) an obligation to appear to consult or testify, upon reasonable advance notice and without the necessity of a subpoena, in connection with litigation to which the Estate Representative or the Trustee is a party. Debtor shall cooperate with the Estate Representative to facilitate the transfer of Debtor's books and records to Estate Representative, including computer generated or maintained books, records, and data. Debtor shall assist in causing his agents, including his accountants, to cooperate in this regard as well. Further, Debtor shall not take any action that would hinder or obstruct the Estate Representative from performing his/her duties under this Plan and the Creditors' Trust Agreement.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 26

**5.6    Bifurcated Tangible Exempt Assets.**

This Article 5.6 shall apply to assets 2.b, 2.c, 2.d and 9 described at Exhibit 1.2.31 hereof. Each of those assets is partially exempt. Those assets—notwithstanding their inclusion in Exhibit 1.2.31—shall be considered part of the Transferred Assets and shall be conveyed to the Creditors' Trust. Trustee shall not liquidate those assets during the first fifteen days after the Effective Date, in order to provide Debtor time to make Trustee a cash offer from his exempt funds to purchase some or all of those assets. If Debtor and Trustee are able to reach the terms of a satisfactory purchase and sale, then the asset at issue shall be conveyed by Trustee to Debtor at the agreed-upon price and the entire asset shall thereafter be considered an Exempt Asset. The price shall be set by Trustee in his sole discretion and need not be in the amount of the "Value" column in Exhibit 1.2.31. To the extent that Trustee does not sell the assets to Debtor, then Trustee shall sell the assets not later than 240 days after the Effective Date. Trustee shall remit to Debtor, within 30 days of the sale, cash proceeds in the amount set forth in the "Asset or Value Retained" column with respect to such asset in Exhibit 1.2.31.

**5.7    Bankruptcy Code Sections 1106(b)(8) and 1106(c).**

Debtor shall fulfill all obligations required of a trustee under sections 1106(b)(8) and 1106(c) of the Bankruptcy Code. Nothing in this Plan shall be construed as altering or modifying any state court ordered domestic support obligation.

**5.8    Post-Effective Date Assets.**

In accordance with section 1115(a) of the Bankruptcy Code, all Post-Effective Date Assets shall be conveyed to the Creditors' Trust. Should Don J. Simplot acquire an interest in property that is a Post-Effective Date Asset, then Don J. Simplot shall transfer such interest in property to the Creditors' Trust within fifteen (15) Business Days of acquiring or becoming aware of such interest. Trustee shall possess with respect to such Post-Effective Date Assets all rights which a debtor in possession would possess with respect to such assets, and all rights as are set forth in this Plan, the Creditors' Trust Agreement, and the Confirmation Order.

**5.9    Post-Effective Date Earnings.**

Debtor and Trustee shall cooperate as necessary to allow for appropriate and just treatment of Post-Effective Date Earnings, both as regards the tax treatment thereof and the transfer of funds. The parties' present intention and understanding is that, notwithstanding section 1115 of the Bankruptcy Code, Debtor's Share of the Post-Effective Date Earnings are excluded from the estate as a result of such share being exempt pursuant to Idaho law (see I.R.S. Notice 2006-83). Debtor shall be responsible for paying taxes on Debtor's Share of Post-Effective Date Earnings. Trust's Share of Post-Effective Date Earnings shall be regarded as property of the Creditors' Trust, as the continuation of the bankruptcy estate. The Creditors' Trust shall be responsible for paying taxes on the Trust's Share of Post-Effective Date Earnings. Debtor shall, as promptly as possible, convey to Trustee, on behalf of the Creditors' Trust, Trust's Share of Post-Effective Date Earnings.

**5.10    Exemption from Certain Transfer Taxes.**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer from Debtor to a Creditors' Trust or any other Person or entity pursuant to a sale or transfer authorized by this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**5.11    Transactions on Business Days.**

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**5.12    Implementation.**

Pursuant to the Confirmation Order and upon Confirmation of this Plan, the Debtor and the Estate Representative shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan, in accordance with its terms.  On or before the Effective Date, Debtor and the Creditors' Committee jointly may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and the other agreements referred to herein.  Debtor or the Estate Representative, as the case may be, shall execute such documents and take such other actions as necessary to effectuate the transactions provided for in this Plan, without the need for any additional approvals, authorizations or consents.

**5.13    The Protective Order.**

5.13.1  The Protective Order shall continue to apply after the Confirmation Date and the Effective Date to documents disclosed or required to be disclosed pursuant to the Protective Order.  With respect to such documents, the Estate Representative, in his/her capacity as Estate Representative and in his/her capacity as Trustee, and the members of the Executive Board, shall have all rights and obligations of the "Committee" and "Members" under the Protective Order.  Further, regarding documents subject to the Protective Order, the Protective Order shall continue to apply to establish the rights and obligations of those persons identified in sections 12(b) through and including 12(h) of the Protective Order, in all instances with the Estate Representative, in his/her capacity as Estate Representative and in his/her capacity as Trustee, and the members of the Executive Board being considered "Members" as set forth therein.  Nothing in the Protective Order or Section 5.13 of this Plan shall prevent the Creditors' Committee and its attorneys from turning over, and the Creditors' Committee and its attorneys

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 28

are hereby expressly directed to turn over, Confidential Information in their possession (as that term is defined in the Protective Order) to the Estate Representative and Executive Board.

5.13.2  Notwithstanding the foregoing Section 5.13.1, information acquired by the Estate Representative, whether in his/her capacity as Estate Representative or in his/her capacity as Trustee, shall not be subject to the Protective Order if obtained outside of the Protective Order.  Specifically, information obtain by the Estate Representative, whether in his/her capacity as Estate Representative or in his/her capacity as Trustee, by virtue of his/her status as a successor to Debtor's rights, which rights include the right to request and receive certain information, shall not be subject to the Protective Order, and the Estate Representative shall have the right to use such information in the same manner as Debtor could have used the information prior to the entry of the Protective Order.

**5.14    Automatic Substitution of the Estate Representative in Litigation Prosecuted by the Creditors' Committee.**

Should, pursuant to an order of the Bankruptcy Court, the Creditors' Committee be engaged in litigation of any claims of the bankruptcy estate as of the Effective Date, including without limitation, all or some of the Partnership Claims, or should the Creditors' Committee be prosecuting an objection to any claim as of the Effective Date, then the Estate Representative shall be entitled to substitute himself/herself in lieu of the Creditors' Committee in such litigation upon occurrence of the Effective Date, in his/her capacity as Estate Representative or in his/her capacity as Trustee.  Entry of the Confirmation Order shall constitute approval of such substitution and no further order of the Bankruptcy Court shall be necessary.  In connection with this substitution, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) arising in favor of the Creditors' Committee in connection with these proceedings shall vest in the Trustee and his or her representatives.

**ARTICLE VI.
ACCEPTANCE OR REJECTION OF THE PLAN**

**6.1    Classes Entitled to Vote.**

Each impaired Class of claims under this Plan is entitled to vote to accept or reject this Plan.  By operation of law, each unimpaired Class of claims, if any, is deemed to have accepted this Plan and, therefore, is not entitled to vote.

**6.2    Acceptance by Impaired Classes.**

An impaired Class of claims shall have accepted this Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan, in each case not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 29

**6.3    Elimination of Classes.**

Any Class that does not contain, as of the date of the commencement of the Confirmation Hearing, any Allowed Claims or Interests or any claims temporarily allowed for voting purposes under Fed. R. Bankr. P. 3018 shall be deemed to have been deleted from this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**6.4    Cramdown.**

If, and to the extent, necessary to confirm this Plan notwithstanding the rejection of this Plan by any Class, Debtor and the Creditors' Committee shall request confirmation of this Plan, as it relates to such Classes and as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  Debtor and the Creditors' Committee reserve the right to modify this Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1    Time of Payment on Claims.**

As soon as and as often as is practicable until the Creditors' Trust is terminated, Trustee shall make payments from the Creditors' Trust to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes of the net income of the Creditors' Trust and the net proceeds from the sale or liquidation of Transferred Assets; provided, however, Trustee shall be permitted to withhold such amounts of cash as Trustee reasonably determines shall be necessary for the Creditors' Trust to satisfy and pay its obligations and the obligations of the bankruptcy estate.

Any payment under this Plan of property other than cash shall be made by the Estate Representative in accordance with the terms of this Plan.

**7.2    Allocation of Consideration.**

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class of claims under this Plan shall be treated first, as satisfying the stated principal amount of each holder's Allowed Claim and second, to the extent of any remaining consideration, as satisfying accrued but unpaid interest, if any.

**7.3    Means of Cash Payment.**

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Estate Representative, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Estate Representative.  Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.  Cash payments

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 30

made pursuant to this Plan in the form of checks issued by Trustee shall be null and void if not cashed within one year of the date of the issuance thereof.

### 7.4    Fractional Dollars; De Minimis Distributions.

Any other provision of this Plan notwithstanding, payments of fractions of dollars shall not be made.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  Trustee shall not make any payment of less than $25.00 with respect to any claim unless a request therefor is made in writing to Trustee.

### 7.5    Delivery of Distributions; Undeliverable or Unclaimed Distributions; No Requirement to Surrender Certificates.

Distributions to holders of Allowed Claims shall be made by the Trustee (i) at the holder's last known address, (ii) at the address in any written notice of address change delivered to Trustee, or (iii) at the address shown in a duly filed Notice of Transfer under Bankruptcy Rule 3001.  If any holder's distribution is returned as undeliverable, is unclaimed or such holder fails to cash a check within one (1) year of its issuance, such distribution shall be distributed Pro Rata to the holders of Allowed Claims in Class 5.

### 7.6    Withholding and Reporting Requirements.

In connection with this Plan and all distributions hereunder, the Estate Representative shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Estate Representative shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

### 7.7    Setoffs.

The Estate Representative may, but shall not be required to, set off against any claim the payments or other distributions to be made pursuant to this Plan in respect of such claim, claims, or Causes of Action of any nature whatsoever that either Debtor or either Creditors' Trust may have against the claim's holder; provided, however, that neither the failure to do so nor the allowance of any claim hereunder shall constitute a waiver or release by Debtor or a Creditors' Trust of a Cause of Action that Debtor or Creditors' Trust or may have against such holder. Nothing herein shall be deemed to expand rights to setoff under applicable law.

### ARTICLE VIII.
### PROCEDURES FOR RESOLVING DISPUTED,
### CONTINGENT, AND UNLIQUIDATED CLAIMS

### 8.1    Objections to Claims; Disputed Claims.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 31

As soon as practicable after the Effective Date, the Estate Representative shall file objections, if any, to proofs of claim with the Bankruptcy Court. Notwithstanding any provision of this Plan or the Creditors' Trust Agreement to the contrary, the Estate Representative shall have the right and standing to process and bring on for final hearing claims objections filed before the Effective Date by Debtor or the Creditors' Committee.

**8.2     No Distribution Pending Allowance.**

Notwithstanding any other provision hereof, if any portion of a claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such claim unless and until such Disputed Claim becomes an Allowed Claim.

**8.3     Estimation of Claims; Distribution Reserve.**

8.3.1    *Estimation of Claims*.

Debtor, the Creditors' Committee, or the Estate Representative, as applicable, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether Debtor, the Creditors' Committee or the Estate Representative, as applicable, has previously objected to such claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated claim, that estimated amount will constitute either the allowed amount of such claim or a maximum limitation on such claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such claim, Debtor, the Creditors' Committee or the Estate Representative, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such claim. All of the aforementioned claims and objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

8.3.2    *Distribution Reserve*.

From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, the Estate Representative shall reserve for the benefit of each holder of a Disputed Claim, a portion of the Transferred Assets in an amount equal to the Pro Rata share of distributions which would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the amount of such Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court as described in Article 8.3.1 of this Plan or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Estate Representative, as applicable. Any Transferred Assets, as applicable, reserved and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 32

Claim for purposes of computing any additional amounts to be distributed to such holder in the event the Disputed Claim ultimately becomes an Allowed Claim.

        **8.4**     **Distributions After Allowance.**

        To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  Within thirty (30) days after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Estate Representative shall provide to the holder of such claim the distribution to which such holder is entitled under this Plan.  After a Final Order has been entered, or other final resolution has been reached, with respect to each Disputed Claim (i) any property held in the Distribution Reserve shall be distributed Pro Rata to holders of Allowed Claims entitled thereto under the terms of this Plan and (ii) any cash or other property remaining in the Distribution Reserve shall become property of the applicable Creditors' Trust.  All distributions made under this Article 8.4 on account of an Allowed Claim shall be made together with any payments, or other distributions made on account of, as well as any obligations arising from, the distributed property, as if such Allowed Claim had been an Allowed Claim on the dates of prior distributions.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION AND**
**CONSUMMATION OF THE PLAN**

        **9.1**     **Conditions to Effective Date.**

        The following are conditions precedent to the occurrence of the Effective Date that must be (i) satisfied or (ii) waived in accordance with Article 9.2 below:

        9.1.1   The Confirmation Date shall have occurred and the Confirmation Order confirming this Plan, as the same may have been modified, supplemented or amended, shall have been entered by the Bankruptcy Court.

        9.1.2   The Confirmation Order shall have become a Final Order.

        **9.2**     **Waiver of Conditions.**

        The condition set forth in Article 9.1.2 above may be waived in whole or in part by Debtor and the Creditors' Committee, without any notice to parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date may be asserted by Debtor and the Creditors' Committee regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor or the Creditors' Committee).  The failure of Debtor or the Creditors' Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**9.3     Effects of Failure of Conditions.**

If the conditions to occurrence of the Effective Date have not been satisfied or waived in accordance with Article 9.2 above on or before the first Business Day that is more than one-hundred seventy-nine (179) days after the Confirmation Date, or by such later date as is approved by the Bankruptcy Court after notice and a hearing, then on motion by Debtor and the Creditors' Committee made prior to the time that all of the conditions have been satisfied or waived, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to the occurrence of the Effective Date set forth in Article 9.1 above are either satisfied or waived prior to entry by the Bankruptcy Court of an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to this Article 9.3, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any claims against or Interests in the Debtor or (b) prejudice in any manner the rights of the holder of any claim against or Interest in the Debtor.

# ARTICLE X.
## MODIFICATIONS AND AMENDMENTS

Debtor and the Creditors' Committee may alter, amend or modify this Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended exhibits in this Plan or the Plan Supplement.  After the Confirmation Date and prior to substantial consummation of this Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtor or the Estate Representative, as applicable, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, the Confirmation Order, or the Creditors' Trust Agreement, and such matters as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of holders of claims or Interests under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court, with specific notice to the Executive Board and its respective counsel.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code and, notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (except with respect to claims by the Creditors' Trust against third parties, wherein the Bankruptcy Court shall have original but not exclusive jurisdiction) over all matters arising out of, and related to, Debtor's Chapter 11 case, the bankruptcy estate, the Creditors' Trust, and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

11.1.1  Allow, disallow, determine, liquidate, classify, estimate or establish the priority, nature, validity or amount of any claim or Interest, including, but not limited to, the

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 34

resolution of any request for payment of any administrative claim, the resolution of any objections to the allowance or priority of claims, and the resolution of any adversary proceeding or contested matter to subordinate any claim or Interest under section 510 of the Bankruptcy Code or otherwise;

11.1.2  Hear and determine all applications for compensation and reimbursement of expenses of professionals under this Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained professionals of Debtor, the Creditors' Trust, the Estate Representative, or the Executive Board shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

11.1.3  Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which Debtor is a party or with respect to which Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any claims arising therefrom;

11.1.4  Effectuate performance of and payments under the provisions of this Plan;

11.1.5  Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, Debtor's Chapter 11 case, including, but not limited to, the Partnership Claims, the Causes of Action, the Contested Assets, and any Avoidance Actions;

11.1.6  Hear and determine any and all motions to subordinate claims or Interests at any time and on any basis permitted by applicable bankruptcy or non-bankruptcy law;

11.1.7  Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

11.1.8  Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

11.1.9  Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

11.1.10    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation or enforcement of this Plan or the Confirmation Order;

11.1.11    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

11.1.12    Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

11.1.13    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Chapter 11 case;

11.1.14    Recover all assets of Debtor or the Creditors' Trust and property of Debtor's estate, wherever located;

11.1.15    Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

11.1.16    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

11.1.17    Monitor Debtor's actions pertaining to his obligations under this Plan and the Creditors' Trust Agreement, including without limitation under Article 5.5 hereof; and

11.1.18    Enter a final decree closing Debtor's Chapter 11 case after termination of the Trust.

## ARTICLE XII.
## EFFECTS OF CONFIRMATION

### 12.1    Discharge.

Upon the termination of the Creditors' Trust as provided in Section 8.1 of the Creditors' Trust Agreement, Debtor will be deemed to have completed all payments under the Plan as described in Bankruptcy Code section 1141(d)(5).  Immediately thereafter Debtor shall be discharged from all debts as described in Bankruptcy Code section 1141(d)(1).  Notwithstanding the foregoing, any person whose claim against Debtor is non-dischargeable pursuant to section 523 of the Bankruptcy Code shall have recourse on and after the Effective Date against Debtor but not against the Creditors' Trust, against the Transferred Assets, the Retained Assets, the Reserve or against Debtor's (except as provided under applicable non-bankruptcy law) otherwise exempt assets which are described as the Exempt Assets.  Nothing herein, however, shall be construed as a limitation on Debtor from objecting to or otherwise opposing any request to delay the entry of a discharge under Bankruptcy Code Section 1141(d) beyond five years of the Effective Date of the Plan.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 36

**12.2    Binding Effect.**

This Plan shall be binding on and inure to the benefit of Debtor, all current and former holders of claims against Debtor and their respective successors and assigns, and all other parties-in-interest in Debtor's Chapter 11 case.

**12.3    Authorization of Further Action.**

The entry of the Confirmation Order shall constitute a direction to and authorization for the Executive Board, the Trustee, the Estate Representative and Debtor to take or cause to be taken any action necessary or appropriate to consummate the transactions contemplated by this Plan and any related documents or agreements prior to and through the Effective Date, and all such actions taken or caused to be taken in accordance with the provisions of this Plan shall be deemed to have been authorized and approved by the Bankruptcy Code without the need for any additional authorizations, approvals or consents.

**12.4    [Intentionally omitted.]**

**12.5    Injunction.**

Except as otherwise expressly provided in this Plan, including Section 3.3.1, all holders of claims against or Interests in Debtor, the Exempt Assets or the Transferred Assets are permanently enjoined, from and after the Effective Date, from (1) commencing or continuing in any manner any action or other proceeding of any kind on any such claim against or Interest in Debtor, the Exempt Assets or the Transferred Assets against the Exempt Assets, the Transferred Assets or the Creditors' Trust; (2) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Exempt Assets, the Transferred Assets or the Creditors' Trust; and (3) creating, perfecting or enforcing any encumbrance or any kind against the Exempt Assets, the Transferred Assets or the Creditors' Trust.  Further, all creditors filing claims in this bankruptcy case shall on the Effective Date be required to dismiss Debtor from any action filed in any court other than the Bankruptcy Court, which includes but is not limited to the following:

12.5.1  *Citicorp USA, Inc vs. Don Simplot,* Case No. 604047/05 in Supreme Court of State of New York.

12.5.2  *Citicapital Commercial vs. Don Simplot,* Case No. CV-05-2033 in U.S. District Court for the District of Western Washington.

12.5.3  Any continuing action by *Rhodes Asset Management vs. Don Simplot,* Case No. *04-2-12588* in Superior Court of King County Washington or filed in an action instituted in the State of Idaho.

Notwithstanding the foregoing provisions of this Section 12.5, 11 U.S.C. § 362 shall continue to apply according to its terms.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 37

**12.6    Releases.**

12.6.1  Nothing in this Plan shall release any Person (other than Debtor's estate and the Creditors' Trust) from any claims, obligations, rights, Causes of Action, demands, suits, proceedings or liabilities based on any act or omission arising out of such Person's fraud, breach of fiduciary duty, malpractice, gross negligence or willful misconduct.

12.6.2  To the fullest extent permitted by applicable law, neither the Creditors' Committee, nor any of their respective members, shall have or incur any liability to any holder of a claim against or an Interest in Debtor, or any other party in interest, or any of their respective officers, directors, subsidiaries, affiliates, members, managers, shareholders, partners, representatives, employees, attorneys or agents or any of their respective successors and assigns, for any pre-Confirmation Date act or omission in connection with, relating to, or arising out of, the administration of this Chapter 11 case, the solicitation of acceptances of this Plan, and the pursuit of Confirmation of this Plan, except for their fraud, breach of fiduciary duty, willful misconduct, or gross negligence as finally determined by the Bankruptcy Court.

**12.7    Rights of Action.**

Except as otherwise provided elsewhere in the Plan, on and after the Effective Date, Trustee and the Executive Board on behalf of the Creditors' Trust, and, as to the Retained Assets, the Estate Representative, shall have the exclusive right to enforce any and all present or future powers, rights, claims, or causes of action of Debtor and the bankruptcy estate against any person that arose before the Effective Date, including, but not limited to, powers, rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, where applicable.  In addition to the foregoing, the Estate Representative and, as applicable, the Trustee, shall also have the exclusive right to, in the exercise of the sole discretion of the Estate Representative or, as applicable, the Trustee: (i) pursue rights under section 502(d) of the Bankruptcy Code as a defensive measure, including for purposes of setoff against distributions, if any, due to a holder of a claim or Interest pursuant to this Plan; and (ii) offset any such claim held against a person against any payment due such person under the Plan.

**ARTICLE XIII.**
**COMPROMISES AND SETTLEMENTS; ASSET SALES**

**13.1    Compromises and Settlements.**

After the Effective Date, the Estate Representative may compromise and settle various claims against the bankruptcy estate and/or claims the bankruptcy estate may have against other Persons, in accordance with the provisions of this Plan.  After the Effective Date, Trustee may compromise and settle various claims against the Creditors' Trust and/or claims the Creditors' Trust may have against other Persons, in accordance with the provisions of this Plan and the Creditors' Trust Agreement.  Bankruptcy Court approval shall not be necessary except to the extent set forth in the Creditors' Trust Agreement, but nothing herein shall prohibit Trustee from seeking Bankruptcy Court approval if he in his discretion deems it desirable.  Debtor expressly

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 38

reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle claims against him and claims that he may have against other Persons up to and including the Effective Date.

**13.2    Asset Sales.**

After the Effective Date, the Estate Representative may sell the Retained Assets in accordance with the provisions of this Plan.  After the Effective Date, Trustee may sell the assets of the Creditors' Trust, in accordance with the provisions of this Plan and the Creditors' Trust Agreement.  Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to sell assets of the bankruptcy estate up to and including the Effective Date.

**ARTICLE XIV.
MISCELLANEOUS PROVISIONS**

**14.1    Bar Dates for Certain Claims.**

14.1.1 *Administrative Claims*.

The Confirmation Order shall establish the "Administrative Claims Bar Date" for filing administrative claims (other than (i) claims previously allowed by the Bankruptcy Court, (ii) the claims of professionals employed in the cases ("Professional Fee Claims") and (iii) claims for reimbursement of the expenses of the members of the Creditors' Committees), which date shall be thirty (30) days after the Confirmation Date.  Holders of asserted administrative claims, except for Professional Fee Claims, United States Trustee fees or the expenses of the members of the Creditors' Committee, whose claims were not paid prior to the Confirmation Date, shall submit requests for payment of administrative expenses on or before such Administrative Claims Bar Date or forever be barred from doing so.  The notice of entry of the Confirmation Order to be delivered pursuant to Fed. R. Bankr. P. 3020(c) and 2002(f) shall set forth such date and constitute notice of the Administrative Claims Bar Date.  Debtor or the Estate Representative, as the case may be, shall have sixty (60) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such administrative claims before a hearing for determination of allowance of such administrative claims.

14.1.2 *Professional Fee Claims; Substantial Contribution Claims*.

All final requests for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to Debtor or the Creditors' Committee prior to or through the Effective Date (including requests under section 503(b)(4) of the Bankruptcy Code by any professional or other entity for making a substantial contribution in Debtor's Chapter 11 case) shall be filed and served on Debtor and his counsel, the Creditors' Committee and its counsel, the Estate Representative, and the Office of the United States Trustee, as well as those parties filing notices of appearance in these cases or otherwise requesting notice of such application, no later than fifteen (15) days after the Effective Date,

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 39

unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such professionals or other entities for compensation or reimbursement of expenses shall be filed and served on Debtor and his counsel, the Creditors' Committee and its counsel, the Estate Representative, the Office of the United States Trustee, and the requesting professional or other entity within the time allotted by the Bankruptcy Rules.  Any professional holding a retainer provided by Debtor shall return such retainer (less amounts for compensation or reimbursement of expenses as approved by the Bankruptcy Court) to the Estate Representative within ten (10) days of the entry of a Final Order pertaining to such application.

**14.2    Payment of Estate Representative's Fees Incurred Prior to the Effective Date.**

Subject to the approval of the Executive Board, the Estate Representative is entitled to pay himself on the Effective Date from the Reserve for fees arising in respect of his efforts prior to the Effective Date.  It is not necessary that this payment be approved by the Bankruptcy Court.

**14.3    Payment of Statutory Fees.**

All fees payable under section 1930 of title 28 the United States Code accruing on or before the Confirmation Date, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date but before the closing of the Chapter 11 case shall be paid by the Creditors' Trust.  For the purposes of determining the amount of the fees payable, the conveyance of the Transferred Assets, any remaining Reserves and, subject to the provisions of Section 5.1.2.2(b) of this Plan, the Retained Assets to the Creditors' Trust shall not be deemed a "disbursement" under 28 U.S.C. § 1930(a)(6).  The transfer to the Debtor of the Exempt Assets shall also not be deemed to be a "disbursement."  The Trustee's payments from the Creditors' Trust to holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes and the payment of the amounts held in the Reserve to the holders of Allowed Claims described in Articles III and IV shall be deemed "disbursements."  The Trustee shall file an abbreviated monthly report with the U.S. Trustee's office setting forth the gross receipts of and the gross payments from the Creditors' Trust and the Reserve.

**14.4    Severability of Plan Provisions.**

If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Creditors' Committee, and with the prior consent of Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 40

Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.5    Successors and Assigns.

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

### 14.6    Term of Injunctions or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### 14.7    Revocation, Withdrawal or Non-Consummation.

Debtor and the Creditors' Committee each reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If Debtor or the Creditors' Committee revokes or withdraws this Plan or if Confirmation does not occur, or if the Confirmation Order is vacated pursuant to Article 9.3 of this Plan, then (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any claim or Interest or Class of claims or Interests), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute or be deemed to constitute a waiver or release of any claims by or against, or any Interests in, Debtor or any other Person; (b) prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor; or (c) constitute an admission of any sort by Debtor or any other Person.

### 14.8    Creditors' Committee.

On the Effective Date, the duties of the Creditors' Committee shall terminate, except with respect to any appeal of an order in the Debtor's Chapter 11 case, proceedings with regard to objections to claims and applications for professional fees; provided, however, that the exculpation provided for in Article 12.4 and the release provided in Article 12.6.2 shall survive such termination of the Creditors' Committee.

### 14.9    Plan Supplement.

Any and all exhibits, lists or schedules referred to herein but not filed with this Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least

fourteen days prior to the date of the commencement of the Confirmation Hearing.  Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of claims or Interests may obtain a copy of the Plan Supplement on written request to Debtor in accordance with Article 14.9 below.

**14.10   Notices to Debtors and Creditors' Committees.**

Any notice, request or demand required or permitted to be made or provided to or on Debtor or the Creditors' Committee under this Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested; (b) hand delivery; (c) overnight delivery service; (d) first class mail; or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to Debtor:

Don J. Simplot
P.O. Box 27
Boise, ID  83707

with a copy to Debtor's counsel:

Jerome Shulkin
Shulkin Hutton, Inc., P.S.
2101 Fourth Avenue, Suite 200
Seattle, WA  98121
Telephone:  (206) 623-3515
Facsimile:  (206) 682-9289

Joseph M. Meier
Cosho, Humphrey, LLP
P.O. Box 9518
Boise, ID  83707-9518
Telephone:  (208) 344-7811
Facsimile:  (208) 338-3290

if to the Creditors' Committee:

> Larry E. Prince
> Robert A. Faucher
> Brad A. Goergen
> HOLLAND & HART LLP
> Suite 1400, U.S. Bank Plaza
> 101 South Capitol Boulevard
> P.O. Box 2527
> Boise, ID 83701-2527
> Telephone: (208) 342-5000
> Facsimile: (208) 343-8869
> Attorneys for the Official Committee of Unsecured Creditors

Any party listed above may alter the address for receiving notice hereunder by filing a notification of such alteration with the Bankruptcy Court.

### 14.11   Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the state of Idaho shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan.

### 14.12   Conflict with the Creditors' Trust Agreement.

In the event of any express conflict between the terms of this Plan and the terms of the Creditors' Trust Agreement, the terms of this Plan shall control.

### 14.13   Closure of the Bankruptcy Case.

This bankruptcy case shall be closed, and Debtor's estate shall be deemed fully administered pursuant to Bankruptcy Rule 3022, contemporaneously with the termination of the Creditors' Trust.

*[Signature page to follow.]*

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 43

Dated:  March 28, 2007.

DON J. SIMPLOT
Debtor and Debtor-in-Possession


By:  Signature to be provided in supplemental
    pleading
    Don J. Simplot


THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS


By:  /s/ Chuck Foisie By Tom Hammons Acting
    Chairman
    Chuck Foisie, Chairman


SHULKIN, HUTTON, INC., P.S.


By: _____ /s/ Jerome Shulkin _____
    Jerome Shulkin, of the firm

and

COSHO HUMPHREY, LLP


By: _____ /s/ Joseph M. Meier _____
    Joseph M. Meier, of the firm
    Attorneys for Debtor and Debtor-in-Possession

HOLLAND & HART LLP


By: _____ /s/ Larry Prince _____
    Larry E. Prince, of the firm
    Attorneys for the Official Committee of Unsecured Creditors


MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2007, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joseph M. Meier
Cosho Humphrey, LLP
jmeier@cosholaw.com
(Debtor)

Kelly Greene McConnell
Givens Pursley LLP
litigation@givenspursley.com
(Banner Bank)

Jerome Shulkin
mepelbaum@shulkin.com
(Debtor)

Craig Miller
Davis Wright Tremaine LLP
craigmiller@dwt.com
(Banner Bank)

U.S. Trustee
ustp.region18.bs.ecf@usdoj.gov

John S. Kaplan
Erik R. Bjorkman
Perkins Coie LLP
jkaplan@perkinscoie.com
Ebjorkman@perkinscoie.com
(Foundation Bank)

Gary L. McClendon
gary.mcclendon@usdoj.gov
(U.S. Trustee)

Michael G. Schmidt
Lukins & Annis, P.S.
mgs@lukins.com
(Washington Trust Bank)

Bruce A. Anderson
Elsaesser Jarzabek Anderson Marks Elliott and McHugh
baafiling@ejame.com
(Regal Financial Bank)

Ford Elsaesser
Elsaesser Jarzabek Anderson Marks Elliott and McHugh
ford@ejame.com
(Regal Financial Bank)

Jeffrey M. Wilson
Wilson McColl & Rasmussen
jeff@wilsonmccoll.com
(CitiCapital Commercial Corporation)

Jed Morris
Lukins & Annis, P.S.
mgs@lukins.com
(Washington Trust Bank)

William L. Smith
Trout Jones Gledhill Fuhrman, P.A.
bsmith@idalaw.com
(Frontier Bank)

John F. Kurtz, Jr.
Hawley Troxell Ennis & Hawley, LLP
jfk@hteh.com
(American West Bank)

Lynda Fischer
Ada County Treasurer
trbankrupt@adaweb.net, bankruptcy@adaweb.net

Grant E. Courtney
Lane Powell PC
courtneyg@lanepowell.com
(Washington Mutual Bank and Key Bank)

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE

Harold Q. Noack, Jr.
Harold Q. Noack, Jr., P.A.
pete@noacklaw.com
(Rhodes Asset Management)

Bruce W. Leaverton
Lane Powell PC
leavertonb@lanepowell.com
(Key Bank, N.A.)

William R. Snyder
William R. Snyder & Associates, P.A.
main@wrslegal.com
(DJS Properties, L.P.)

Randall A. Peterman
Moffatt, Thomas, Barrett, Rock & Fields, Chtd.
rap@moffatt.com
(J.R. Simplot Company)

Steven W. Boyce
Just Law Office
sboyce@justlawidaho.com
(PHH Mortgage Corp.)

Daniel C. Green
Racine Olson Nye Budge & Bailey, Chtd.
dan@racinelaw.net
(Cowlitz Bank)

Jan S. Ostrovsky
Crocker Kuno Ostrovsky LLC
jostrovsky@crockerkuno.com
(Cowlitz Bank)

Charles R. Ekberg
Lane Powell PC
ekbergc@lanepowell.com
(Washington Mutual Bank and Key Bank)

P. Larry Westberg
Westberg
lwstbrg@cableone.net
(DJS Properties, L.P.)

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF
Registered Participants in the manner indicated:

Via first-class mail, postage prepaid addressed as follows:

Don J. Simplot
c/o El Paso Tree Farm Company
P.O. Box 27
Boise, ID  83707

Bradley R. Duncan
2600 Century Square
1501 Fourth Avenue
Seattle, WA  98101

Brent G. Summers
Tarlow Nato & Summers LLP
6650 S.W. Redwood Lane, Suite 215
Portland, OR  97224

D. John Thornton, Esq.
Justin Jones, Esq.
Thornton Byron LLP
P.O. Box 7156
Boise, ID  83707-1156

Ronald N. Graves
999 Main  Street, Suite 1300
Boise, ID  83702

Marina Yakolina
Vice President, Private Banking
Special Assets and Restructuring Group
Citibank, N.A.
485 Lexington Avenue, 11th Floor
New York, NY 10017

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE

Tom Hammons
AmericanWest Bank
9019 E. Appleway Boulevard
Spokane Valley, WA  99212

Donald M. Campanella
CitiCapital Commercial Corp.
4000 Regent Boulevard, Mail Stop S1B-135
Irving, TX  75063


Richard C. Linthicum
Special Assets and Restructuring Group
Citibank, N.A.
485 Lexington Avenue, 11th Floor
New York, NY 10017

Charles Wood
Washington Trust Bank
P.O. Box 2127
Spokane, WA  99210-2127

David R. Riley
Weinstein & Riley P.S.
2101 Fourth Avenue, Suite 900
Seattle, WA  98121
(Frontier Bank)


Richard S. Fries
DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, NY  10020-1104
(Citicorp USA, Inc.)

Aequitas Capital Management
805 SW Broadway, Suite 560
Portland, OR  97205


Asia-Europe-America Bank
AEA Bank
1505 Westlake Ave. N., Suite 125
Seattle, WA  98109

Richard A. Hooper
Pivotal Solutions, Inc.
451 SW 10th Street, Suite 107
Renton, WA  98055
(Foundation Bank)

Chuck Foisie, CCO
Regal Financial Bank
925 Fourth Avenue, Suite 100
Seattle, WA  98104

Commerce Bank of Washington, N.A.
Charles C. Robinson
Garvey Schubert Barer
1191 Second Avenue, 18th Floor
Seattle, WA  98101-2939

Don Richards
Senior Vice President, Special Projects
Frontier Bank
P.O. Box 2210
Everett, WA 98213

Kim A. Andres
Associate General Counsel
CitiCapital Commercial Corp.
4000 Regent Boulevard
Mail Stop S1B-135
Irving, TX  75063
(CitiCapital Commercial Corp.)

Thomas R. Califano
DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, NY  10020-1104
(Citicorp USA, Inc.)

Bradford Anderson
Betts, Patterson & Mines, P.S.
One Convention Place, Suite 1400
701 Pike Street
Seattle, WA  98101-3927
(American Marine Bank)

Bay Bank
Division of Cowlitz Bancorp
1505 Westlake Ave. N., Suite 125
Seattle, WA  98109

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE

Columbia Bank
Special Credits MS:  6115
P.O. Box 2156
Tacoma, WA  98401-2156

Frederick W. Schoepflin
Keller Rohrback
1201 Third Avenue, Suite 3200
Seattle, WA  98101
(Foundation Bank)

Douglas W. Toms
2001 Lakewood Drive
Olympia, WA  98501

Key Bank
Coastal
1211 S.W. Fifth, Suite 560
Portland, OR  97204

Thomas Nadon
Key Bank N.A. Asset Recovery
601 108th Avenue N.E., 3rd Floor
Bellevue, WA  98004

Jean M. DeFond
First Vice President and Senior Counsel
Washington Mutual Bank
1201 Third Avenue, WMT 1706
Seattle, WA  98101

John Simplot
1103 E. Harrison Street
Seattle, WA  98102

Andrew Haroian
325 W. Karcher Road
Nampa, ID  83687

Coastal Hotel Group Mgmt.
c/o Agent Douglas W. Toms
2001 Lakewood Drive
Olympia, WA  98501

Diversified Financial Services
14010 First Natl. Bank Parkway,
Suite 205
Omaha, NE  68154

Key Bank
OR-MF-Portland
1211 SW Fifth, Suite 560
Portland, OR  97204

Mark Lundquist
Foundation Bank
1110 112th Avenue N.E., Suite 100
Bellevue, WA  98004

Merrill Lynch Credit Corp.
4802 Deer Lake Drive East
Jacksonville, FL  32246-6484

April Simplot
3000 E. Park River Drive
Boise, ID  83706

CQ Acquisition, LLC
c/o Manager, Douglas Toms
2001 Lakewood Drive
Olympia, WA  98501

3DM LLC
c/o Agent Douglas W. Toms
2001 Lakewood Drive
Olympia, WA  98501

BB Acquisition, LLC
c/o Manager, Douglas Toms
2001 Lakewood Drive
Olympia, WA  98501

Entech Development
325 W. Karcher Road
Nampa, ID  83687

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE

CQ River Cruises, LLC
c/o Manager, Douglas Toms
2001 Lakewood Drive
Olympia, WA  98501
EEX Acquisition, LLC
c/o Manager, Douglas Toms
2001 Lakewood Drive
Olympia, WA  98501

Fusion Packaging Solutions
325 W. Karcher Road
Nampa, ID  83687

M&H Development
c/o Bob Hanna
22499 Channel Road
Caldwell, ID  83607

Operadora Turistica
P.O. Box 51469
Los Angeles, CA  90051-5789

Resort Maintenance, LLC
P.O. Box 881069
San Diego, CA  92168

Royal Management
c/o Mr. Douglas Toms, President
2001 Lakewood Drive
Olympia, WA  98501

American Marine Bank
Attn: Barbara Swartling
P.O. Box 10788
Bainbridge, WA  98110

DJS Properties, LP
P.O. Box 27
Boise, ID  83707

GB Vessel Acquisition, LLC
c/o Manager, Douglas Toms
2001 Lakewood Drive
Olympia, WA  98501

MARAD
400 7th Street S.W.
Room 7228
Washington, D.C.  20590

ML Investments, Inc.
P.O. Box 27
Boise, ID  83707

Ontario Partners
c/o Colleen McManus
DLA Piper Rudnick
203 N. LaSalle Street, Suite 1900
Chicago, IL  60601

Wells Fargo Bank, N.A.
Consumer Credit Group
MAC #N8235-049
Des Moines, IA  50306-0438

Scott Lamm & Robert Haggett
c/o Redcliff Development
3451 Copper Point Drive, Suite 106
Meridian, ID  83642

The Commerce Bank of Washington, N.A.
c/o Charles C. Robinson
1191 Second Avenue, Eighteenth Floor
Seattle, WA  98101-2939

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE

Washington Mutual
c/o Charles R. Ekberg
Lane Powell PC
1420 Fifth Avenue, Suite 4100
Seattle, WA  98101-2338

DJS Management LLC
4406 N. Tiverton Place
Boise, ID  83702

Michael Simplot, Custodian for Breanne Simplot
4390 N. Westview Place
Boise, ID  83704

Cindy Haroian
1849 North Stoneview Place
Boise, ID  83702

Cindy Haroian, Custodian for Samantha Haroian
1849 North Stoneview Place
Boise, ID  83702

Cindy Haroian, Custodian for Julian Haroian
1849 North Stoneview Place
Boise, ID  83702

John D. Simplot
909 N. 20th
Boise, ID  83702

John D. Simplot, Custodian for Clayton Simplot
909 N. 20th
Boise, ID  83702

April Gwin, Custodian for Oliva Gwin
1936 Teal Lane
Boise, ID  83706

Debbie McDonald
3085 East Nature Drive
Boise, ID  83706

Michael Ballantyne
Thornton Oliver Keller
250 S. Fifth Street, 2nd Floor
Boise, ID  83702

Michael Simplot
4390 N. Westview Place
Boise, ID  83704

Debbie McDonald, Custodian for Patrick Henry McDonald
3085 East Nature Drive
Boise, ID  83706

Cindy Haroian, Custodian for Andrew Haroian
1849 North Stoneview Place
Boise, ID  83702

Cindy Haroian, Custodian for Isabelle Haroian
1849 North Stoneview Place
Boise, ID  83702

Cindy Haroian, Custodian for Sophia Haroian
1849 North Stoneview Place
Boise, ID  83702

John D. Simplot, Custodian for John Warren Simplot
909 N. 20th
Boise, ID  83702

John D. Simplot, Custodian for Thomas Simplot
909 N. 20th
Boise, ID  83702

Eric Simplot
4390 N. Westview Place
Boise, ID  83704

_____
       /s/ Larry Prince
for HOLLAND & HART LLP

3599406_12.DOC

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE