**EXHIBIT 1.2.3**

**Avoidance Actions**

Potential avoidance actions include, without limitation, the following:

| Target | Nature of Claim |
|---|---|
| DJS Properties L.P. | Avoidance action regarding conveyance of the Conveyed Assets |
| DJS Properties L.P.; DJS Management, LLC; Debbie S. MacDonald; and Partners of DJS Properties L.P. | Avoidance action regarding unauthorized post-petition transfer of Debtor's general partnership interest; and Violation of Automatic Stay |
| DJS Properties L.P. | Avoidance of interest in Contested Assets under strong-arm powers |
| Raine Simplot | Avoidance action regarding $120,000 payment towards 2401 E. Herbert Drive |
| Raine Simplot | Avoidance of transfer of 2001 Mercedes Benz |
| Austin Aviation | Avoidance of transfer of Beach Bonanza A36 Airplane |
| Keith Cope | Sale of 1999 Titan motorbike and 1983 Harley Motorcycle |
| Miscellaneous | Avoidance of all payments within 90 days of Petition Date as identified on Debtor's Exhibit SOFA-3 to his schedule of financial affairs |
| Debtor's Descendants: | |
| J.H. Gwin | Avoidance of transfer of shares of JRSCo B stock |
| O. Gwin | Avoidance of transfer of shares of JRSCo B stock |
| T. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| C. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| J.W. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| S. Haroian | Avoidance of transfer of shares of JRSCo B stock |
| J.J. Haroian | Avoidance of transfer of shares of JRSCo B stock |

EXHIBIT 1.2.3 (Avoidance Actions) – Page 1

| | |
|---|---|
| S. Haroian | Avoidance of transfer of shares of JRSCo B stock |
| N. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| R. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| I. Haroian | Avoidance of transfer of shares of JRSCo B stock |
| A.C. Haroian | Avoidance of transfer of shares of JRSCo B stock |
| P. McDonald | Avoidance of transfer of shares of JRSCo B stock |
| B. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| E. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| J. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| A.D. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| J.D. Simplot | Avoidance of transfer of shares of JRSCo B stock |
| C.J. Haroian | Avoidance of transfer of shares of JRSCo B stock |
| Debbie McDonald | Avoidance of transfer of shares of JRSCo B stock |
| M. Simplot | Avoidance of transfer of shares of JRSCo B stock |

EXHIBIT 1.2.3 (Avoidance Actions) – Page 2

# EXHIBIT 1.2.16

## Contested Assets

1) Hanger at 4217 Aviation Way, Caldwell, Idaho
2) Anacortes Marina Condo, Skagit County, Washington
3) Hangar Nos. 106-D and 106-E, McCall, Idaho
4) Real Property known as Casa Soridada, Mazatlan, Mexico
5) Membership interest in Entech Development, Ltd. Co.
6) Shares of stock in PCS Edventures!.Com, Inc.
7) Shares of stock in IMPCO Technologies, Inc.
8) Shares of stock in Entech Corporation
9) Real estate contract regarding Estrella del Mar property with Patrick Jutte and Veronica Jutte
10) Real estate contract regarding Mexico property with Jose Hernandez
11) Two (2) condominiums purchased in 2004 for $85,000 and $40,000 respectively
12) Bank account maintained by Luis Gomez in Mazatlan, Mexico

EXHIBIT 1.2.16 (Contested Assets) – Page 1

**EXHIBIT 1.2.17**

**Conveyed Assets**

1)      Condominium Unit 1402 as shown on the Condominium Plat of Boulevard Two Fifty Five Condominiums, Ada County Instrument No. 98015001

2)      Approximately 120 acres of real property located at 15665 Hollow Road, Caldwell, Idaho 83607, consisting of three parcels (labeled Parcels II, III, and IV below), and perhaps described as follows:

PARCEL II

The Southwest Quarter of the Northeast Quarter in Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho.

PARCEL III

The East Half of the Northwest Quarter of Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho.

PARCEL IV

A portion of the Northwest Quarter of the Northwest Quarter of Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho, more particularly described as follows:

BEGINNING at the Northeast corner of said Northwest Quarter of the Northwest Quarter; thence
      South 0° 00' 25" East along the East boundary of said Northwest Quarter of the Northwest Quarter a distance of 825.69 feet to a point on the North line of the South Half of the North Half of the South Half of the said Northwest Quarter of the Northwest Quarter; thence
      North 89° 41' 46" West along said North line a distance of 312.17 feet to a point in the centerline of an existing irrigation lateral; thence traversing said centerline as follows:
      Northeasterly a distance of 37.68 feet along the arc of a curve to the right, having a central angle of 14° 36' 11", a radius of 147.83 feet and a long chord which bears North 53° 42' 26" East a distance of 37.57 feet;
      North 61° 00' 32" East a distance of 97.97 feet;
      Northeasterly a distance of 118.59 feet along the arc of a curve to the left, having a central angle of 98° 16' 18", a radius of 69.14 feet and a long chord which bears North 11° 52' 23" East a distance of 104.58 feet;
      North 37° 15' 46" West a distance of 443.98 feet;

EXHIBIT 1.2.17 (Conveyed Assets) - 1

Northeasterly a distance of 61.47 feet along the arc of a curve to the left, having a central angle of 19° 37' 50", a radius of 179.42 feet and a long chord which bears North 47° 04' 41" West a distance of 61.17 feet;

North 56° 53' 36" West a distance of 60.10 feet;

Northeasterly a distance of 81.10 feet along the arc of a curve to the right, having a central angle of 40° 22' 37", a radius of 115.08 feet and a long chord which bears North 36° 42' 17" West a distance of 79.43 feet;

North 16° 30' 57" West a distance of 169.70 feet to a point on the North boundary of said Northwest Quarter of the Northwest Quarter; thence

South 89° 47' 52" East along said North boundary a distance of 634.24 feet to the POINT OF BEGINNING.

3.     Property located at 2340 Warren Wagon Road, McCall, Valley County, Idaho, described as a parcel of land, a portion of Lot 155 Payette Lake Cottage Sites, located in Government Lot 4, on Lot 155, Section 28, T 19 N, R 3 East Boise Meridian, consisting of approximately .23 acres and .45 acres

EXHIBIT 1.2.17 (Conveyed Assets) - 2

## EXHIBIT 1.2.20

## CREDITORS' TRUST AGREEMENT

This Creditors' Trust Agreement (this "Trust Agreement") among **Don J. Simplot** ("Debtor"), **Ronald Greenspan**, in his capacity as Trustee of the Creditors' Trust under the Plan (as defined below) and this Trust Agreement ("Trustee"), and the **Executive Board** as identified below, is executed this _____ day of _____, 2007 to facilitate the implementation of the Modified Joint Plan of Reorganization of Debtor and Creditors' Committee (the "Plan").

## RECITALS

WHEREAS, Don J. Simplot ( "Debtor") filed a petition for voluntary relief under the provisions of Chapter 11 of the Bankruptcy Code on January 4, 2006, in a case pending in the Bankruptcy Court, known as *In re Don J. Simplot*, Case No. 06-0002; and

WHEREAS, the Plan filed by Debtor and the Official Committee of Unsecured Creditors has been confirmed by the Bankruptcy Court pursuant to the Confirmation Order; and

WHEREAS, the Plan provides, among other things, for the creation of the Creditors' Trust; and

WHEREAS, at the time of the entry of the Confirmation Order, Debtor held the Transferred Assets; and

WHEREAS, pursuant to the Plan, this Trust Agreement shall become effective upon the Effective Date; and

WHEREAS, pursuant to the Plan, as soon as reasonably practicable after the Effective Date and after all administrative claims, priority tax claims, Other Priority Claims, and other specified claims against Debtor's estate have been paid in full or reserved for, the Transferred Assets shall vest in the Creditors' Trust; and

WHEREAS, pursuant to the Plan, the Creditors' Trust is to distribute the Creditors' Trust Assets to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes as and to the extent provided for herein; and

WHEREAS, the Creditors' Trust is intended to be treated as a grantor trust under Section 671 of the Internal Revenue Code, with the grantors and deemed owners of the Creditors' Trust being the Debtor's bankruptcy estate; and

NOW, THEREFORE, in consideration of the mutual covenants and understandings contained herein, and subject to and on the terms and conditions herein set forth, the parties hereby agree as follows:

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 1

## ARTICLE I.
## DEFINITIONS

Unless otherwise defined below, all capitalized terms contained herein shall have the meaning given to such terms in the Plan. All capitalized terms not defined below or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings given to them by the Bankruptcy Code or Bankruptcy Rules, respectively.

1.1    "Appointing Creditors" shall be AmericanWest Bank, Citicorp USA, Inc., Foundation Bank, Regal Financial Bank, and Washington Trust Bank.

1.2    "Beneficiary" means the Debtor's bankruptcy estate.

1.3    "Bank Accounts" means such accounts as Trustee may, in the course of his/her administration of the Creditors' Trust, from time to time open and maintain, which accounts shall be (a) insured or guaranteed by the United States or by a department, agency or instrumentality of the United States, (b) backed by the full faith and credit of the United States, or (c) maintained at a bank that has provided Trustee with (i) a bond in favor of the Creditors' Trust, secured by the undertaking of a corporate surety approved by Trustee and conditioned on a proper accounting for all money so deposited or invested and for any return on such money, prompt repayment of such money and return and faithful performance of duties as a depository or (ii) securities of the kind specified in section 9303 of title 31 of the United States Code.

1.4    "Bond" means a surety bond in an amount not less than the amount set forth in the Confirmation Order, issued by a surety approved by the Bankruptcy Court as assurance for the performance of Trustee's obligations under this Trust Agreement.

1.5    "Creditors' Trust" means the Creditors' Trust created pursuant to the Plan and this Trust Agreement.

1.6    "Creditors' Trust Administrative Expenses" means the Trustee, the Estate Representative, and the bankruptcy estate's fees and expenses charged to the Creditors' Trust in accordance with the Plan, including compensation of Trustee as set forth in Section 6.7 of this Trust Agreement, the Estate Representative's fees and expenses, such fees and expenses of the Executive Board as are payable by the Creditors' Trust pursuant to the Plan, including compensation and reimbursement of expenses of the members of the Executive Board as set forth in Section 6.19(c) of this Trust Agreement and all reasonable costs, expenses, and fees incurred by the Executive Board in employing attorneys to represent or assist the Executive Board in connection with the administration of the Creditors' Trust, and all reasonable costs, expenses (including, without limitation, taxes, rent, insurance (including such professional liability or similar insurance as Trustee or the Estate Representative may from time to time reasonably obtain and maintain for the benefit of Trustee, Trustee's Representatives, members of the Executive Board, the Creditors' Trust, and the bankruptcy estate), the Bond, reasonable travel, telephone, fax, utilities, staff salaries, and similar expenses) and fees, including, without limitation, all reasonable costs, expenses and fees incurred by Trustee and the Estate Representative in

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 2

employing attorneys, accountants, experts, consultants, advisors, investigators or other professionals to represent or assist Trustee and, as applicable, the Estate Representative in reviewing this Trust Agreement and carrying out the Trustee's and, as applicable, the Estate Representative's powers and duties under this Trust Agreement and the Plan and/or the administration of the Creditors' Trust and the bankruptcy estate, incurred or reasonably estimated by the Trustee and, as applicable, the Estate Representative in connection with (a) maintaining the Creditors' Trust and maintaining and disposing of Creditors' Trust Assets and, as applicable, the Retained Assets, (b) costs of compliance with applicable laws, (c) prosecuting the Causes of Action, including the Avoidance Actions and Partnership Claims, and (d) defending counterclaims and other claims or actions asserted or initiated by or against the Creditors' Trust, Trustee or the bankruptcy estate, and all sums payable hereunder to parties entitled to indemnification, to any taxing authority to satisfy all or any portion of any tax liability owed by Debtor for the Retained Assets, the Transferred Assets, and the Reserve with respect to any period prior to the Effective Date and for any period after the Effective Date for the Retained Assets, the Transferred Assets, and the Reserve and to the U.S. Trustee's office.

1.7    "Creditors' Trust Assets" means and refers collectively to (a) the Transferred Assets; (b) the assets or investments, if any, hereafter acquired by the Creditors' Trust, including without limitation the Post-Effective Date Assets, and (c) the proceeds of each of the foregoing including, without limitation, any interest or other income earned thereon.

1.8    " Executive Board" means and refers to the  Executive Board initially appointed pursuant to Article 5.2.4 of the Plan.

1.9    "Plan" means the Modified Joint Plan of Reorganization of Debtor and Creditors' Committee that was confirmed by the Bankruptcy Court's Confirmation Order and any approved amendments thereto.

1.10    "Representative" means a director, officer, shareholder, affiliate, member, partner, manager, agent, employee, employer or other representative of an entity.

1.11    "Trustee" means the person or entity named as such in the Plan, who is to serve as Trustee hereunder, or any successor thereto appointed as provided in the Plan or herein.

## ARTICLE II.
## ESTABLISHMENT AND NATURE OF CREDITORS' TRUST

2.1    **Declaration of Trust**.  In order to declare the terms and conditions of the Creditors' Trust and in consideration of the confirmation of the Plan pursuant to the Bankruptcy Code,  Debtor has executed this Trust Agreement and all of his right, title and interest of, in, and to the Transferred Assets hereby vests in Trustee, in trust nevertheless, under and subject to the terms and conditions set forth herein and in the Plan for the benefit of the Beneficiary, free and clear of  any lien, claim or Interest in such property of any other Person or entity except as provided in the Plan.  Trustee shall

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 3

hold legal title to all Creditors' Trust Assets and shall have the right to cause the name or style in which the title of Creditors' Trust Assets is held of record to be changed accordingly. Notwithstanding anything to the contrary in this Trust Agreement, Debtor shall have no obligations under or in connection with the Creditors' Trust or this Trust Agreement other than those obligations expressly given to Debtor in this Trust Agreement.

       2.2    **Purpose**. Debtor, Trustee and the Executive Board hereby declare and agree that the Creditors' Trust is being established to:

           2.2.1       liquidate the Creditors' Trust Assets and distribute the proceeds, after the payment of Creditors' Trust Administrative Expenses, to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes, in partial payment of those claims;

           2.2.2       pursue, litigate, and resolve the Causes of Action, including without limitation the Avoidance Actions (but excluding any such Avoidance Actions that are also Partnership Claims unless they are transferred to the Creditors' Trust pursuant to the Plan), and objections to claims; and

           2.2.3       otherwise implement the terms and provisions of the Plan, the Confirmation Order and any other applicable order entered by the Bankruptcy Court.

       2.3    **Character and Treatment of Creditors' Trust for Tax Purposes**. It is the intent of Debtor, Trustee and the Executive Board that for federal income tax purposes the Creditors' Trust be classified as a liquidating grantor trust under Section 671 of the Internal Revenue Code and Section 301.7701-(4) of the Treasury Department Procedure and Administration Regulations, and that such trust be owned by its grantor and beneficiary, the Debtor's bankruptcy estate, for the sole and exclusive purposes of the payment of Creditors' Trust Administrative Expenses and the partial payment of Allowed Claims of Class 5 and Allowed Claims for priority taxes. Accordingly, the Debtor's bankruptcy estate will report all taxable income, gains and losses from transactions in the Transferred Assets for the duration of the Plan. The Trustee will be responsible for filing all federal, state, and local tax returns for both the Creditors' Trust and the Debtor's bankruptcy estate, and will pay all resulting tax liabilities from assets of the Creditors' Trust.

       2.4    **Trustee's Acceptance**. Trustee hereby accepts this trust imposed upon Trustee by this Trust Agreement and agrees to observe and perform that trust, upon and subject to the terms and conditions set forth herein.

## ARTICLE III.
## DISPOSITION OF TRUST ASSETS

       3.1    **Liquidation of Creditors' Trust Assets**. Trustee shall use all commercially reasonable efforts to liquidate, sell or otherwise dispose of, as the case may be, all of the Creditors' Trust Assets as soon as reasonably possible, subject always to

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 4

Trustee's obligation to take all actions in his/her capacity as Trustee in a manner consistent with the best interests of the Beneficiary and the holders of Allowed Claims of Class 5 and Allowed Claims for priority taxes, with the powers conferred upon him/her under this Trust Agreement and the Plan and in accordance with the terms and provisions of this Trust Agreement and the Plan.

3.2     **Prosecution of Causes of Action, Defense of Claims and Settlement Thereof.**  Trustee shall be empowered to prosecute all Causes of Action, including without limitation, the Avoidance Actions, but excluding any Partnership Claims or JRSCo Interests (subject to the terms of the Plan) and defend all claims, actions and proceedings (including, without limitation, counterclaims) asserted or initiated by or asserted or initiated against the Creditors' Trust or Trustee, or which could result in a diminution of the Creditors' Trust Assets or the Creditors' Trust Assets, and to settle, mediate or arbitrate any such proceedings or claims pursuant to the terms hereof and the Plan.  The Executive Board shall make all substantive decisions (including settlement decisions) as the client with respect to the claims to be litigated under this provision, with the advice and counsel of Trustee and of the attorneys retained to represent Trustee with respect to such claims.

**ARTICLE IV.**
**CLAIMS ALLOWANCE**

4.1     **Objections to Claims**.  As soon as practicable, Trustee, acting in his capacity as the Estate Representative shall, where appropriate, cause objections, if any, to be filed to proofs of claim with the Bankruptcy Court.

4.2     **No Distribution Pending Allowance.**  If any portion of a Class 5 Claim or a priority tax claim is a Disputed Claim, no payment or distribution shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

4.3     **Distribution Reserve**.  Trustee shall create a separate Distribution Reserve from the Creditors' Trust consistent with Article 8.3 of the Plan to provide for a distribution to the holder of any Disputed Claim to which such holder may ultimately be entitled under the Plan.  Trustee may request estimation by the Bankruptcy Court of any Disputed Claim that is contingent or unliquidated (but is not required to do so).  Nothing in the Plan or this Trust Agreement will be deemed to entitle the holder of a Disputed Claim to post-petition interest on such claim, except as provided in Section 3.3.5 of the Plan.

4.4     **Distributions after Allowance**.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  Within thirty (30) days after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, Trustee shall provide to the holder of such claim the distribution to which such holder is at that time entitled under the Plan, if any.  After a Final Order has been entered, or other final

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 5

resolution has been reached, with respect to each Disputed Claim any cash or other property held in the Distribution Reserve shall be distributed the Creditors' Trust.

## ARTICLE V.
## DISTRIBUTIONS

5.1     **Distribution Holdback**. In addition to the funds or assets in the Distribution Reserve, Trustee shall at all times retain in the Creditors' Trust an amount of cash and property that Trustee reasonably believes is necessary to (i) implement this Trust Agreement; (ii) protect and preserve the value of the Creditors' Trust Assets; and (iii) to satisfy current and projected expenses and obligations of the Creditors' Trust.

5.2     **Distribution Obligations**. Trustee shall comply with the specific provisions governing distributions set forth in Article VIII of the Plan and the terms and conditions set forth in Article 8.4 of the Plan regarding distributions after allowance.

5.3     **Distributions**. Trustee shall make distributions of all funds reasonably available for distribution (after making appropriate reserves pursuant to Sections 4.3 and 5.1 above) in partial payment of Allowed Claims in Class 5 as promptly as is reasonably practicable and is consistent with economical management of the Creditors' Trust, but in any event no less often than once per year, and  with respect to Allowed Claims for priority taxes, Trustee shall make distributions as provided in Section 3.1.2 of the Plan. With respect to Allowed Claims in Class 5, in no event shall Trustee be obligated to make a distribution if, in the reasonable business judgment of Trustee, the amount then on hand and the ultimate distribution to be made would not be justified, taking into account all of the attendant costs of such distribution.

## ARTICLE VI.
## TRUSTEE POWERS, RIGHTS AND OBLIGATIONS

6.1     **Obligation to Maintain Bond**. Trustee shall at all times pending approval of a final accounting of his/her activities by the Bankruptcy Court and his/her release in accordance with the terms and provisions of this Trust Agreement maintain a Bond, in an amount set forth in the Confirmation Order, for the sole benefit of Beneficiary, the holders of Allowed Claims in Class 5, and the holders of Allowed Claims for priority taxes harmed by the Trustee's breach of the standard of care set forth in Section 6.9 herein.

6.2     **Trustee Not a Beneficiary or Successor**. Trustee shall not be a Beneficiary. Further, except as expressly provided in the Plan, neither the Creditors' Trust nor Trustee shall in any event be deemed to be a successor to any liabilities or other obligations of Debtor, nor shall Trustee have any personal liability for any such liabilities or obligations. In the event that any such liability or obligation is at any time asserted against the Creditors' Trust or Trustee as the transferee of the Creditors' Trust Assets on account of any claimed liability of, through or under Debtor, Trustee may use such part of the Creditors' Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge the same on terms reasonably satisfactory to

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 6

Trustee, except as provided in this Trust Agreement or in the Plan. Trustee shall in no event be required to use Trustee's personal funds or assets or the funds or assets of any entity in which Trustee may be involved for such purpose.

6.3 **Resignation**. The Trustee may resign by executing and delivering an instrument in writing to the Executive Board. In the event of Trustee's resignation, Trustee shall give notice promptly to the members of the Executive Board and to each counsel to Trustee and each counsel to the Executive Board; provided, however, that Trustee shall continue to serve as Trustee of the Creditors' Trust after his/her resignation until the date when appointment of a successor Trustee shall become effective in accordance with Section 6.5 hereof.

6.4 **Removal**. Trustee may be removed as Trustee of the Creditors' Trust by the Executive Board at its discretion.

6.5 **Appointment of Successor Trustee**. In the event of the death or incompetency (in the case of a Trustee that is a natural person), dissolution (in the case of a Trustee that is a corporation or other entity), resignation, or removal of Trustee in accordance with the terms and provisions of this Trust Agreement and the Plan, the Executive Board shall appoint a successor Trustee, which appointment shall be approved by the Bankruptcy Court. Any such appointment of a successor Trustee shall specify the date on which such appointment shall be effective. Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the retiring Executive Board an instrument accepting such appointment, and upon such actions such successor Trustee shall become vested with all the rights, powers, trusts and duties of the retiring Trustee and the retiring Trustee shall have no continuing rights, duties or obligations with respect to this Trust or any parties hereto.

6.6 **[Intentionally Omitted]**

6.7 **Trust Continuance**. The death or incompetency (in the case of a Trustee that is a natural person), dissolution (in the case of a Trustee that is a corporation or other entity), resignation, or removal of Trustee shall not operate to terminate the Creditors' Trust created by this Trust Agreement or to revoke any existing agency created pursuant to the terms of this Trust Agreement or invalidate any action theretofore taken by Trustee. In the event of the resignation or removal of Trustee in accordance with Sections 6.3 or 6.4 above, the resigning or removed Trustee shall promptly (a) execute and deliver such documents, instruments and other writings as may be requested by the Bankruptcy Court or reasonably requested by the Executive Board or the successor Trustee to effect the termination of Trustee's capacity under this Trust Agreement and the conveyance of the Creditors' Trust Assets and then held by Trustee to his/her successor; (b) deliver to the Bankruptcy Court, the Executive Board or the successor Trustee all documents, instruments, records and other writings related to the Creditors' Trust as may be in the possession of Trustee; and (c) otherwise assist and cooperate in effecting the assumption of his/her obligations and functions by such successor Trustee. Furthermore, in the event of the resignation or removal of Trustee in accordance with Sections 6.3 or 6.4 above, the resigning or removed Trustee shall prepare and submit to the Bankruptcy

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 7

Court for approval a final accounting of the activities of the Creditors' Trust and the bankruptcy estate during the period while such Trustee was acting as Trustee hereunder and as the Estate Representative under the Plan, together with Trustee's request that the Bankruptcy Court review and approve such final accounting as expeditiously as reasonably possible. Upon the Bankruptcy Court's approval of the final accounting so submitted by the resigning or removed Trustee, the resigning or removed Trustee shall be released and discharged from any further liability or obligation under this Trust Agreement as to the Creditors' Trusts and as the Estate Representative as to the Plan.

6.8    **Compensation.** Compensation of Trustee shall be at a fixed hourly rate of $495.00 per hour, but shall not exceed the budgeted amount for any calendar quarter without the consent of the Executive Board. The Trustee's compensation is subject to being increased by the Executive Board by not more than five percent (5%) per annum and no more than once per year. The budget shall be prepared as required by the Plan. In the event the Executive Board fails or refuses to approve budgeted compensation amounts, or requested modifications thereto, Trustee may seek approval for such compensation from the Bankruptcy Court. Trustee shall maintain time sheets accounting for time spent in performing his/her duties and obligations as the Estate Representative under the Plan and as the Trustee under this Trust Agreement. Such time sheets shall be furnished to the Executive Board within ten (10) calendar days following the end of each calendar month with respect to such month.

6.9    **Standard of Care; Exculpation.** Trustee and the members of the Executive Board shall perform the duties and obligations imposed on them by this Trust Agreement and the Plan with reasonable diligence and care under the circumstances. Trustee, Trustee's Representatives and the members of the Executive Board shall satisfy the standard of care applicable to trustees under Idaho Code § 15-7-302, and conduct themselves in accordance with other applicable laws. Except for fraud, breach of fiduciary duties, gross negligence, or willful misconduct as determined by a Final Order of a court of competent jurisdiction (any such order of such court is referred to in this Trust Agreement as a "Determination"), Trustee, Trustee's Representatives and the members of the Executive Board shall not be personally liable to the Creditors' Trust, to any Beneficiary, to the holders of Allowed Claims in Class 5, or to Allowed Claims for priority taxes. Except for fraud, breach of fiduciary duties, gross negligence, or willful misconduct as determined by a court of competent jurisdiction in a Determination, Trustee, Trustee's Representatives and the members of the Executive Board shall be defended, held harmless and indemnified from time to time from the Creditors' Trust (including applicable insurance coverage) as a Creditors' Trust Administrative Expense against any and all losses, claims, costs, expenses and liabilities (including legal fees, costs and expenses), and any costs of defending any action, suit, proceeding or investigation to which Trustee, Trustee's Representatives or the members of the Executive Board may be subject by reason of their execution in good faith of their duties under this Trust Agreement or the Plan. As provided above in this Trust Agreement, Trustee may obtain for the benefit of Trustee, Trustee's Representatives, and the members of the Executive Board at the reasonable expense of the Creditors' Trust as a Creditors' Trust Administrative Expense, insurance against claims of liability, damage awards and settlements.

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 8

6.10    **Reliance by Trustee**.  Trustee may rely, and shall be fully protected and personally indemnified and held harmless pursuant to Section 6.9 hereof in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which Trustee has no reason to believe to be other than genuine and to have been signed or presented other than by the parties whose names or signatures appear thereon or therewith or, in the case of digital facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy himself/herself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of a Determination finding Trustee guilty of fraudulent or willful misconduct, breach of fiduciary duty or gross negligence Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon.  Trustee may consult with legal counsel and shall be fully protected in respect of any action taken or suffered by his/her in accordance with the prior written opinion of legal counsel.  Without limiting the foregoing, in making payment to holders of Allowed Claims in Class 5, Trustee shall have the right to rely upon Debtor's schedules filed with the Bankruptcy Court, as the same have been modified or amended, and upon the Confirmation Order and such other orders of the Bankruptcy Court as may from time to time be entered in the case relating to the allowance or disallowance of claims.

6.11    **Exoneration and Protection.**

6.11.1   Third parties dealing with the Creditors' Trust shall look only to the Creditors' Trust Assets to satisfy any liability incurred by Trustee, Trustee's Representatives or the Executive Board to such parties, except for instances involving fraud, breach of fiduciary duties, gross negligence, or willful misconduct as determined by a court of competent jurisdiction in a Determination.

6.11.2   In engaging in any activity or transaction, Trustee shall pursue such transaction and conduct the operations and activities of the Creditors' Trusts in such manner as to preserve and maximize to the extent reasonably possible the value of the Creditors' Trust Assets taken as a whole without unduly prolonging the duration of the Creditors' Trust.

6.12    **Bank Accounts**.

6.12.1   Trustee shall maintain one or more Bank Accounts as Trustee may deem necessary or appropriate to carry out the purposes of the Creditors' Trust. The Bank Accounts shall be for the sole and exclusive benefit of the Creditors' Trust, the Beneficiary, and the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes, and no Creditors' Trust Assets shall be commingled with the assets of another person or entity.

6.12.2   Trustee shall pay all Creditors' Trust Administrative Expenses from the Bank Accounts and may pay the same as often as Trustee reasonably deems appropriate, subject to the terms of the Plan.

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 9

6.12.3  Without limiting the foregoing, and provided that such payments are consistent with the Plan and this Trust Agreement, Trustee shall have the right to pay himself/herself monthly compensation from the Bank Accounts as a Creditors' Trust Administrative Expense.

**6.13    Additional Powers.**

6.13.1  Except as otherwise provided in this Trust Agreement or the Plan, and without prior or further authorization, Trustee may control and exercise authority over the Creditors' Trust Assets, over the management, sale, disposition or abandonment thereof, and over the management of the Creditors' Trust to the same extent as if Trustee were the sole legal and beneficial owner thereof in his/her own right.  Consistent with Idaho Code § 68-110, no Person dealing with the Creditors' Trust shall be obligated to inquire into the authority of Trustee in connection with the management, sale, operation, leasing, abandonment or disposition of Creditors' Trust Assets.  Without in any way limiting the foregoing, Trustee's authority and power shall include the right and power to sell, settle or otherwise dispose of claims, collect money payable on account of the disposition of Creditors' Trust Assets, rent space, and obtain liability, casualty and other necessary or appropriate insurance (including, without limitation, such liability insurance as Trustee may from time to time reasonably elect to obtain and maintain for the benefit of the Creditors' Trust, the Estate Representative, Trustee, Trustee's Representatives and the members of the Executive Board with respect to the performance of the duties of Trustee and the Executive Board under this Trust Agreement and the Plan) for the Creditors' Trust, Trustee, Estate Representative, Trustee's Representatives, members of the Executive Board and/or the Creditors' Trust Assets.

6.13.2  In connection with the management and use of the Creditors' Trust Assets, Trustee, except as otherwise expressly limited in this Trust Agreement or the Plan, without limitation of his/her power and authority, may do the following: (i) accept the assets transferred and provided to the Creditors' Trust pursuant to this Trust Agreement and the Plan; (ii) market, sell or otherwise dispose of Creditors' Trust Assets, (iii) distribute Creditors' Trust Assets or their proceeds to holders of Allowed Claims in Class 5 or Allowed Claims for priority taxes in partial payment of those Claims, in accordance with the terms of this Trust Agreement and the Plan; (iv) endorse the payment of notes or other obligations of any Person or make contracts with respect thereto; (v) enter into contracts or other agreements or arrangements that are binding on the Creditors' Trust, or (vi) engage in all acts to the extent reasonably necessary to carry out the purposes of the Creditors' Trust.

6.13.3  In addition to the powers otherwise vested in Trustee with respect to the management and use of the Creditors' Trust Assets, Trustee shall use Creditors' Trust Assets to pay and satisfy, as a Creditors' Trust Administrative Expense, any and all unpaid federal, state, local or other tax liability owed by Debtor's bankruptcy estate with respect to the Retained Assets and the Reserves

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 10

and as provided in the Plan.  Furthermore, Trustee shall use Creditors' Trust Assets to pay and satisfy, as a Creditors' Trust Administrative Expense, any and all federal, state, local or other tax liability owed under the Plan by the bankruptcy estate or by the Creditors' Trust.  Nothing in this Section 16.3.1 shall apply to priority tax claims, which are expressly provided for in the Plan.

### 6.14    Reports and Notices.

6.14.1  Trustee shall prepare and provide to or file with the appropriate parties such notices, tax returns and other filings as may be required by applicable law.  All such notices, returns, or other filings shall be filed in a manner which is consistent with the treatment of the Creditors' Trust as a grantor trust of which the Debtor's bankruptcy estate is the grantor and, without limitation, shall include federal tax returns pursuant to Treasury Regulations Section 1.671-4(a) (or any successor provision).

6.14.2  Trustee may withhold from the amounts otherwise distributable from the Creditors' Trust at any time such sums as may be sufficient to pay any tax or charge which may have been or may be imposed on the distributee or on the Creditors' Trust with respect to the amount distributable under the income tax laws of the United States or any State or political subdivision or entity.  Trustee may require any distributee to furnish to Trustee its Social Security Number or Employer or Taxpayer Identification Number and Trustee may condition any distributions to such distributee upon receipt of such information.

6.15    **Investment Obligations**.  Using funds maintained in the Bank Accounts, Trustee may invest such funds, but only in (a) short term interest-bearing deposits, certificates of deposit, or repurchase obligations of any federally insured banking institution with a combined capital and surplus of at least $1 billion, or (b) short term investments and obligations of, and unconditionally guaranteed as to payment by, the United States of America and its agencies and instrumentalities.  Any such investments shall take into consideration the need to make disbursements thereof in payment of costs, expenses, and liabilities of the Creditors' Trusts or to make a distribution to the Beneficiary.

6.16    **No Trade or Business**.  Trustee shall carry out the purposes of the Creditors' Trust and the directions contained in this Trust Agreement and shall not at any time enter into or engage in any trade or business, including, without limitation, the purchase of any asset or property (other than such assets or property as are reasonably necessary to preserve, conserve, and protect the Creditors' Trust and/or the Creditors' Trust Assets and to carry out the purposes of the Creditors' Trust as set forth in Section 2.2 above or the other express provisions of this Trust Agreement).  The Creditors' Trust is established for the sole purpose of liquidating its assets and utilizing the proceeds for partial payments of the Allowed Claims in Class 5 and Allowed Claims for priority taxes, with no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Creditors' Trust and the Plan.

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 11

6.17    **Retention of Attorneys, Accountants, and Other Professionals.**

6.17.1  Subject to the approval of the Executive Board, Trustee may retain such law firms as counsel to the Creditors' Trust as Trustee may select in furtherance of the intent and purpose of this Trust Agreement. Present counsel for the Creditors' Committee may represent Trustee, if so employed.

6.17.2  Subject to the approval of the Executive Board, Trustee may retain such other experts, appraisers, accounting firms, advisors, consultants, or other professionals as Trustee may reasonably deem necessary or appropriate to assist Trustee in carrying out his/her powers and duties under this Trust Agreement, including, without limitation, employees of the entity by which he/she is employed.

6.17.3  Trustee may commit the Creditors' Trust to and provide for all persons or entities retained pursuant to this Section 6.17 compensation and reimbursement from the Creditors' Trust Assets for services rendered and expenses incurred, subject to any limitations contained in the Plan. Trustee shall make all reasonable and customary arrangements for payment or reimbursement of such compensation and expenses of such professionals (including, without limitation, negotiating schedules of payments, consenting to the withdrawal of professionals for non-payment of their fees, and providing for substitution of professionals). Trustee shall pay such compensation and expenses as is due to such professionals and other retained persons and entities from and out of the Bank Accounts as Creditors' Trust Administrative Expenses.

6.17.4  Trustee shall give written notice written notice of his proposed retention of a person pursuant to this Section 6.17 to the Executive Board. The Executive Board shall be deemed to have approved the proposed retention if no member of the Executive Board objects to the proposed retention within seven business days of having received notice thereof.

6.18    **Clerical Staff.**  Trustee shall be entitled to employ such clerical and administrative staff as may be necessary for him/her to perform his/her duties hereunder. The approval of the Executive Board of such employment shall not be necessary so long as the compensation paid to such persons is on standard terms. Trustee shall be entitled to retain persons who work for his employer for such positions. Trustee shall pay such compensation and expenses as is due to such clerical and administrative staff from and out of the Bank Accounts as Creditors' Trust Administrative Expenses.

6.19    **Executive Board.**

6.19.1  The Executive Board shall be appointed effective upon the entry of the Confirmation Order and shall assume its duties on the Effective Date. Each of the Appointing Creditors is entitled to designate one person to serve on the Executive Board. The Appointing Creditors have designated the initial members of the Executive Board to be the following persons:

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 12

| Appointing Creditor | Designee |
|---|---|
| AmericanWest Bank | Tom Hammons |
| Foundation Bank | Richard Hooper |
| Regal Financial Bank | Chuck Foisie |
| Washington Trust Bank | Charlie Wood |

Tom Hammons shall serve as the initial chairman of the Executive Board. The Executive Board members shall each have one (1) full vote. The members of the Executive Board shall act collectively as a governing board, by majority vote of a quorum present or communicating telephonically in such a manner that all participants on such telephone call may be heard by all other participants, and shall collectively constitute a governing board of the Creditors' Trust. The Executive Board shall have and perform the limited duties, responsibilities, rights and obligations set forth in the Plan and this Trust Agreement.

6.19.2  The Executive Board shall prescribe its own rules of procedure, subject to the provisions of the Plan and this Trust Agreement. In the event that a member of the Executive Board resigns, dies or is removed from office, the Appointing Creditor who designated such person for inclusion on the board shall be entitled to designate a successor. The Executive Board's rights and duties are limited to those described and provided for in the Plan and in this Trust Agreement.

6.19.3  The Executive Board may retain such attorneys as it may deem reasonably necessary, and the reasonable fees and expenses incurred by such retained attorneys shall be paid by the Creditors' Trust as a Creditors' Trust Administrative Expense. The Executive Board shall have the authority to incur reasonable fees and expenses of such retained attorneys. Present counsel for the Creditors' Committee may represent the Executive Board, if so employed. The Executive Board may not employ any accounting firms, experts, advisors, appraisers, auctioneers or other professionals, with all such enumerated professionals only employed by Trustee. Members of the Executive Board shall be entitled to receive reimbursement of their reasonable expenses (other than individual attorney's fees and costs) from the Creditors' Trust and shall each receive compensation from the Creditors' Trust in the amount of $1,000 per quarter, with such reimbursement and compensation treated as a Creditors' Trust Administrative Expense.

6.19.4  Trustee shall budget for monthly meetings with the Executive Board (which may be telephonic) regarding the administration of the Creditors' Trust and the Creditors' Trust Assets.

6.19.5  Without the consent of the Executive Board and the Bankruptcy Court, Trustee shall not:

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 13

(i)      make any borrowing on behalf of the Creditors' Trust or encumber the Creditors' Trust Assets;

(ii)     incur or pay any expenditure that has not been previously approved by the Executive Board as a line item in a quarterly budget plus any applicable variance;

(iii)    agree to the sale of any of the Creditors' Trust Assets;

(iv)     agree to the sale of any of the Transferred Assets; or

(v)      settle or compromise any of the Causes of Action.

6.19.6  Upon the final distribution by Trustee to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes, the Creditors' Trust shall be dissolved and the Executive Board's limited duties and responsibilities shall be deemed completed.

6.19.7  As set forth herein, each member of the Executive Board shall be designated by a particular creditor holding an Allowed Claim in Class 5.  A member shall abstain from considering and voting with respect to all matters uniquely concerning the creditor by whom he/she was designated.

6.20    **No Implied Duties or Obligations.**  Trustee's duties and obligations under this Trust Agreement and the Plan shall be limited to those specifically set forth in this Trust Agreement and the Plan and no additional duties or obligations shall be imposed upon Trustee by implication.

## ARTICLE VII.
## OBLIGATIONS OF THE DEBTOR

7.1     **Cooperation with Trustee.**  Debtor shall reasonably cooperate, without the necessity of compensation, with Trustee in administering the Creditors' Trust Assets and performing his/her duties as Trustee and with the Estate Representative in performing his duties under the Plan.  Such obligation shall include, without limitation, (a) an obligation to sign such instruments or documents as prove necessary or desirable in effecting a transfer of any Creditors' Trust Asset, (b) an obligation to assist in resolving tax matters that arise in connection with the affairs of the Creditors' Trust and the bankruptcy estate, and (c) an obligation to consult, and to appear and testify, upon reasonable advance notice without the necessity of a subpoena, in connection with litigation to which the Creditors' Trust, the Debtor's bankruptcy estate, the Trustee or the Estate Representative is a party.  Further, Debtor shall not take any action that would hinder or obstruct Trustee or the Estate Representative from performing his/her duties under the Plan and the Creditors' Trust Agreement.

7.2     **No Reversionary Interest.**  Except as provided in Section 3.3.5 of the Plan, Debtor, for himself, and any heirs successors or assigns hereby disclaims and waives any and all right to any reversionary interest in any of the Creditors' Trust Assets.

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 14

## ARTICLE VIII.
## LIQUIDATION AND TERMINATION OF THE CREDITORS' TRUST

8.1    **Creditors' Trust**.  The liquidation of the Creditors' Trust Assets shall occur on or before four and one-half years after the Effective Date or such later date as may be approved by the Bankruptcy Court.  In the event the Creditors' Trust Assets are not liquidated by that date, Trustee shall commence to auction the Creditors' Trust Assets and shall complete such auction(s) on or before the fifth anniversary of the Effective Date or such later date as may be approved by the Bankruptcy Court.

The Creditors' Trust shall continue until the distribution of the last of the Creditors' Trust Assets.  Upon the termination of the Creditors' Trust, Trustee shall advise the Bankruptcy Court in writing of such event and shall file with the Bankruptcy Court a detailed, final accounting of the activities of the Creditors' Trust.  Upon the Bankruptcy Court's approval of such final accounting, the Creditors' Trust shall be deemed terminated and Trustee shall be released of any further liability or obligation hereunder with respect to the Creditors' Trust.

## ARTICLE IX.
## MISCELLANEOUS

9.1    **Exemption from Registration**.  The rights of the Beneficiary arising under this Trust Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Trust Agreement in favor of the Beneficiary are deemed to be "securities", the exemption from registration under Section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Trust Agreement shall make a contrary or different contention.

9.2    **Notices.**

9.2.1    All notices, requests or other communications required or permitted to be made in accordance with this Trust Agreement shall be in writing and shall be delivered personally or by digital facsimile transmission or mailed by first class mail:

To the Creditors' Trust through Trustee:

_____
_____
_____
_____
Phone: _____
Fax: _____

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 15

To Trustee's Counsel

_____
_____
_____
_____
Phone: _____
Fax: _____


To the Executive Board:

    Chuck Foisie
    Executive Vice President & Chief Operating Officer
    Regal Financial Bank
    925 Fourth Ave., Suite 100
    Seattle, Washington 98104
    Phone: (206) 621-8713
    Fax: (206) 621-0888

    Tom Hammons
    Vice President, Special Assets Administrator
    AmericanWest Bank
    9019 E. Appleway Boulevard
    Spokane Valley, WA 99212
    Phone: (509) 279-1309
    Fax: (509) 241-0160

    Richard A. Hooper
    President
    Pivotal Solutions, Inc.
    451 SW 10th Street
    Suite 107
    Renton, WA  98055
    Phone: (425) 255-1348
    Fax: (425) 255-1368

    Charles Wood
    Vice President, Special Assets
    Washington Trust Bank
    P.O. Box 2127
    Spokane, WA  99210-2127
    Phone: (358-8115
    Fax: (509) 353-4870

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 16

To Debtor:

> Don J. Simplot
> P.O. Box 27
> Boise, ID  83707

To Debtor's Counsel:

> Joseph M. Meier, Esq.
> Cosho Humphrey, LLP
> 800 Park Boulevard
> Suite 790
> P.O. Box 9518
> Boise, ID 83707
> Phone:  (208) 344-7811
> Fax:  (208) 338-3290

9.2.2    Notices sent by e-mail or facsimile transmission shall be deemed delivered when actually received, and notices sent by first class mail shall be deemed delivered three (3) business days after mailing.

9.2.3    Any party hereto may change the address at which it is to receive notices under this Trust Agreement by furnishing written notice in accordance with the provisions of this Section 9.2 to the parties hereto to be charged with knowledge of such change.

9.3    **Effectiveness**.  This Trust Agreement shall become effective on the Effective Date.

9.4    **Counterparts**.  This Trust Agreement may be executed in one or more counterparts, each of which shall be deemed an original but which together shall constitute but one and the same instrument.

9.5    **Governing Law**.  This Trust Agreement shall be governed by, construed under and interpreted in accordance with the laws of the state of Idaho.

9.6    **Headings**.  Sections, subheadings and other headings used in this Trust Agreement are for convenience only and shall not affect the construction of this Trust Agreement.

9.7    **Severability**.  Any provision of this Trust Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

9.8    **Amendments**.  Trustee, with the prior consent of the Executive Board, may alter, amend or modify this Trust Agreement by filing a motion with the Bankruptcy

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 17

Court seeking such alteration, amendment or modification and following notice and hearing.

9.9    **Bankruptcy Court Approval**.  In any situation where Trustee is required by the terms and provisions of this Trust Agreement to obtain Bankruptcy Court approval of any action or when Trustee, in its discretion, elects to seek Bankruptcy Court approval of an action where such approval is not so required (which approval Trustee shall have the right to seek and obtain in connection with any action taken or which Trustee proposes to take under this Trust Agreement, including, without limitation, in connection with any disposition of any Creditors' Trust Asset, or any other decision to act or refrain from acting in connection with the Creditors' Trust Assets), Trustee shall in each case give notice of Trustee's motion for approval of such action to the Executive Board, its attorneys and the United States Trustee.

9.10    **Inconsistency with the Plan**.  In the event of any inconsistency between the Plan and any provision of this Trust Agreement, the applicable terms of the Plan shall be controlling.

9.11    **Restriction on Alienation**.  The interest of the Beneficiary in the Creditors' Trust may not be transferred either by the Beneficiary in person or by a duly authorized agent or attorney, or by the properly appointed legal representatives of the Beneficiary, nor may the Beneficiary have authority or power to sell, assign, transfer or encumber, or in any other manner anticipate or dispose of its interest in the Creditors' Trust.

9.12    **Preservation of Privilege**.  In connection with the rights, claims and Causes of Action that constitute the Creditors' Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) vesting in the Creditors' Trust, shall vest in the Creditors' Trust and its respective representatives, and Debtor, the Creditors' Committees, Trustee and the Executive Board are authorized to take all necessary actions to effectuate the vesting of such privileges.

9.13    **Entire Agreement**.  This Agreement, together with the Plan and the Confirmation Order, constitute the entire agreement of the parties hereto, and supersedes any other agreements, understandings, negotiations and discussions relating to the subject of this agreement.

9.14    **Relationship Created**.  The only relationship created by this Trust Agreement is the trustee-beneficiary relationship between Trustee and the Beneficiary. Nothing contained herein shall be construed to constitute the creation of any association, partnership, or joint venture of any kind. Except as otherwise specifically provided in this Trust Agreement, the Plan or the Confirmation Order, nothing in this Trust Agreement is intended to or shall be construed to confer on any person other than the parties hereto, the Beneficiary and the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes any rights or remedies under or by reason of this Trust Agreement.

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 18

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

TRUSTEE:

By: _____

DON J. SIMPLOT

By: _____
    Don J. Simplot

EXECUTIVE BOARD

By: _____
    Chuck Foisie

By: _____
    Tom Hammons

By: _____
    Richard A. Hooper

By: _____
    Charles Wood

3590138_10.DOC

EXHIBIT 1.2.20 (Creditors' Trust Agreement) - 19

# EXHIBIT 1.2.22

## Debtor's El Paso Property

The land referred to in this Commitment is described as follows:

Parcel 1:

The North Half of the Southeast Quarter of Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho.

AND

The Southeast Quarter of the Northeast Quarter of Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho.

AND

That part of Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho, more particularly described as follows:

BEGINNING at the Northeast corner of section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho; thence
North 89°42'36" West 659.33 feet; thence
South 0°02'13" East 661.80 feet along a line parallel to the East line of said Section 9 to the TRUE POINT OF BEGINNING; thence
South 0°01'00" East 330.45 feet; thence
South 89°40'18" East 659.46 feet to the East line of said Section 9; thence
North 0°02'13" West 330.90 feet along said East line; thence
South 89°42'36" West 659.33 feet to the TRUE POINT OF BEGINNING.

ALSO

That part of Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho, more particularly described as follows:

BEGINNING at the Northeast corner of Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho; thence
South 0°02'13" East 992.70 feet along the East line of said Section 9 to the TRUE POINT OF BEGINNING; thence
North 89°40'18" West 659.45 feet; thence
North 0°01'00" East 330.45 feet; thence
South 89°37'58" East 659.56 feet to the East line of said Section 9; thence
North 0°02'13" West along said East line to the TRUE POINT OF BEGINNING.

ALTA Commitment
Schedule C

(C0512358A.PFD/C0512358A/5)

**DS 1392**

EXHIBIT 1.2.22 (Debtor's El Paso Property) - 1

EXCEPTING THEREFROM

A portion of the Northeast Quarter of the Southeast Quarter, Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho, described as follows:

BEGINNING at the Southeast corner of the Northeast Quarter of the Southeast Quarter of said Section 9, Township 5 North, Range 3 West; thence
North along the East boundary line of the Northeast Quarter of the Southeast Quarter a distance of 300 feet; thence
West parallel to the South line of the Northeast Quarter of the Southeast Quarter a distance of approximately 1,320 feet to the West boundary line of the Northeast Quarter of the Southeast Quarter of said Section; thence
South along the Westerly boundary of the said Northeast Quarter of the Southeast Quarter 300 feet to the South boundary of the said Northeast Quarter of the Southeast Quarter; thence
East along the said South boundary of the Northeast Quarter of the Southeast Quarter a distance of 1,320 feet, more or less, to the POINT OF BEGINNING.

Parcel 2:

A portion of the Northeast Quarter of the Southeast Quarter, Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho, described as follows:

BEGINNING at the Southeast corner of the Northeast Quarter of the Southeast Quarter of said Section 9, Township 5 North, Range 3 West; thence
North along the East boundary line of the Northeast Quarter of the Southeast Quarter a distance of 300 feet; thence
West parallel to the South line of the Northeast Quarter of the Southeast Quarter a distance of approximately 1,320 feet to the West boundary line of the Northeast Quarter of the Southeast Quarter of said section, thence
South along the Westerly boundary of the said Northeast Quarter of the Southeast Quarter a distance of 300 feet to the South boundary of the said Northeast Quarter of the Southeast Quarter, thence
East along the said South boundary of the Northeast Quarter of the Southeast Quarter a distance of 1,320 feet, more or less, to the POINT OF BEGINNING.

EXCEPTING THEREFROM

COMMENCING at the Southeast corner of the North Half of the Southeast Quarter of Section 9, Township 5 North, Range 3 West, Boise Meridian, Canyon County, Idaho; thence
North along the East boundary line of the said North Half of the Southeast Quarter a distance of 125 feet to the TRUE POINT OF BEGINNING; thence continuing
North along the said East boundary line of the North Half of the Southeast Quarter a distance of 125 feet; thence
West parallel to the South boundary line of the North Half of the Southeast Quarter a distance of 125 feet;

(C0512368A.PFD/C0512368A/B)

**DS 1393**

EXHIBIT 1.2.22 (Debtor's El Paso Property) - 2

thence
South parallel to the East boundary line of the North Half of the Southeast Quarter a distance of 125 feet;
thence
East parallel to the South boundary line of the North Half of the Southeast Quarter a distance of 125 feet to the
POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM

BEGINNING at the, Southeast corner of the North Half of the Southeast Quarter of Section 9, Township 5 North,
Range 3 West, Boise Meridian, Canyon County, Idaho; thence
North along the East boundary line of the North Half of the Southeast Quarter a distance of 125 feet; thence
West parallel to the South boundary line of the North Half of the Southeast Quarter a distance of 125 feet;
thence
South parallel to the East boundary line of the North Half of the Southeast Quarter a distance of 125 feet;
thence
East along the South boundary line of the North Half of the Southeast Quarter a distance of 125 feet to the
POINT OF BEGINNING.

Parcel 3:

COMMENCING at the Southeast corner of the North Half of the Southeast Quarter of Section 9, Township 5
North, Range 3 West, Boise Meridian, Canyon County, Idaho; thence
North along the East boundary line of the said North Half of the Southeast Quarter a distance of 125 feet to the
TRUE POINT OF BEGINNING; thence continuing
North along the said East boundary line of the North Half of the Southeast Quarter a distance of 125 feet;
thence
West parallel to the South boundary line of the North Half of the Southeast Quarter a distance of 125 feet;
thence
South parallel to the East boundary line of the North Half of the Southeast Quarter a distance of 125 feet;
thence
East parallel to the South boundary line of the North Half of the Southeast Quarter a distance of 125 feet to the
POINT OF BEGINNING.

Parcel 4:

BEGINNING at the Southeast corner of the North Half of the Southeast Quarter of Section 9, Township 5 North,
Range 3 West, Boise Meridian, Canyon County, Idaho; thence
North along the East boundary line of the North Half of the Southeast Quarter a distance of 125 feet; thence
West parallel to the South boundary line of the North Half of the Southeast Quarter a distance of 125 feet;
thence
South parallel to the East boundary line of the North Half of the Southeast Quarter a distance of 125 feet;

(C0512368A.PFD/C0512368A/8)

DS 1394

EXHIBIT 1.2.22 (Debtor's El Paso Property) - 3

thence
East along the South boundary line of the North Half of the Southeast Quarter a distance of 125 feet to the
POINT OF BEGINNING.

(C0512368A.PFD/C0512368A/5)

DS 1395

EXHIBIT 1.2.22 (Debtor's El Paso Property) - 4

**EXHIBIT 1.2.31**

**Exempt Assets**

| | Description | Value (Scheduled Value, If Scheduled) | Asset or Value Retained |
|---|---|---|---|
| 1. | Ruger 28 gauge shotgun, serial number 420009207 | $400 | Asset Retained |
| 2.a. | Household Goods located in Boise, Idaho condominium: a table; 2 pictures; miscellaneous pots, pans, etc.; oversized chair; 2 end tables and a sofa table; entertainment center; vase and pedestal; magazine rack; 19" Zenith television; 5' x 9' Somovar wool rug; GE Stackables; electric barbeque; 17" Zenith television; bedroom set (bed, dresser, and 2 night stands) | $3,000 | Assets Retained |
| 2.b. | Sofa located in Boise, Idaho condominium[1] | $800 | $500 from the sale of the asset |
| 2.c. | Dining table and six chair located in Boise, Idaho condominium | $1,000 | $500 from the sale of the asset |
| 2.d. | Bedroom set (bed, dresser, and nightstand) located in Boise, Idaho condominium | $1,500 | $500 from the sale of the asset |
| 3. | Miscellaneous articles of men's clothing | $500 | Assets Retained |
| 4. | Armitron watch | $1 | Asset Retained |
| 5. | A man's wedding ring | $100 | Asset Retained |
| 6. | Gent's Tag Hauser 2000 Series Chronograph | $700 | Asset Retained |

---

[1] The assets listed in Item 2.b, 2.c, 2.d, and 9 of this Exhibit 1.2.31, and the assets listed in Item 2 of Exhibit 1.2.60, may be sold by Debtor through a court-approved auction prior to the Confirmation Date. Debtor may purchase these assets using Exempt Assets prior to such auction for fair market value; provided, however, that Debtor shall be entitled to credit bid the amount of the retained value listed in this Exhibit 1.2.31 for the assets listed in Item 2.b, 2.c, 2.d, and 9. In the event Debtor proceeds with such an auction and the assets listed in this note are sold, all net sales proceeds less the value retained by Debtor shall be turned over to bankruptcy estate for subsequent transfer pursuant to the terms of the Plan.

EXHIBIT 1.2.31 (Retained Assets) - 1

| | Description | Value (Scheduled Value, If Scheduled) | Asset or Value Retained |
|---|---|---|---|
| 7. | Life Insurance: cash surrender value and death benefit | $1,006.17[2] | Asset Retained |
| 8. | Social Security monthly benefits | Currently $1,630 per month | Asset Retained |
| 9. | 2004 Cadillac Escalade | $39,450 | $3,000 from the sale of the asset |
| 10.a. | JRSCo Defined Benefit Plan/Simplot Pension Plan S payments | $6,228.25 per month[3] | Asset Retained |
| 10.b. | JRSCo Defined Benefit Plan/Simplot Pension Plan S payments—Post-petition Proceeds:  Proceeds received from May 2006 through July 31, 2006, held in an exempt account. All payments received after July are also exempt as described in 10.a above. | . | Asset Retained |
| 11. | Debtor's El Paso Property | $5,000,000 | $50,000 from the sale of the asset |
| 12.a. | JRSCo Deferred Compensation Plan | $246,581.49, payable in monthly installments of $2,490.19 for a period of twenty years, which period began on May 1, 2001 | 75% of all distributions |

---

[2] Since the case was filed, the cash values in the life insurance has increased to $1,006.17 from the originally scheduled balance of $921.52.  The asset is claimed as exempt under Idaho law.

[3] Since the case was filed, the JRSCo corrected an error in the Defined Benefit Plan/Simplot Pension Plan S, and changed the monthly gross payment to $6,228.25. When the case was filed Debtor was receiving a gross payment of $6,166.12.  Debtor has also received a lump sum in the net amount of $3,912.55 from the defined benefit plan administrator to correct the mistake from the inception of payments received by Debtor.  This lump sum was deposited in the exempt property account and makes up a portion of the $13,610.77 being held in that account related to the defined benefit plan distributions.

EXHIBIT 1.2.31 (Retained Assets) - 2

| | Description | Value (Scheduled Value, If Scheduled) | Asset or Value Retained |
|---|---|---|---|
| 12.b. | JRSCo Deferred Compensation Plan—Post-petition Proceeds: Proceeds received from May 2006 through the Effective Date of the Plan, and held in an exempt account | $17,654.14 (as of December 13, 2006, but more shall be received prior to the Effective Date. These are proceeds received from May 2006 and through December 13, 2006, on account of the asset referenced in 12.a.) | 75% of proceeds |
| 13.a. | JRSCo Executive Deferred Compensation Plan | $245,161.60, payable in monthly installments of $2,613.80 for a period of twenty years, which period began on May 1, 2001 | 75% of all distributions |
| 13.b. | JRSCo Executive Deferred Compensation Plan—Post-petition Proceeds: Proceeds received from May 2006 through the Effective Date of the Plan, and held in an exempt account | $17,290.63 (as of December 13, 2006, but more shall be received prior to the Effective Date. These are proceeds received since May 2006 and through December 13, 2006, on account of the asset referenced in 13.a) | 75% of proceeds |
| 14.a. | IRA with Morgan Stanley, identified by an account number ending in 4010—rollover from 401k plan | $2,175,688.25 | Asset Retained |
| 14.b. | Proceeds held in Morgan Stanley Brokerage Account traceable to disbursements from Debtor's IRA (Item 14.a above) | Amount in account as of July 31, 2006 is $29,317.88 | Asset Retained |

EXHIBIT 1.2.31 (Retained Assets) - 3

| | Description | Value (Scheduled Value, If Scheduled) | Asset or Value Retained |
|---|---|---|---|
| 15. | After-tax proceeds from lump-sum payout of IMPCO Technologies, Inc. Deferred Compensation Plan (Proceeds held in an exempt account) | $60,239.35 | 75% of proceeds ($45,179.54) |

EXHIBIT 1.2.31 (Retained Assets) - 4

**EXHIBIT 1.2.60**

**Miscellaneous Transferred Assets**

Assets transferred to the Creditors' Trust include, without limitation, the following assets:

1)      Micron Payments.  Debtor's right to receive $300,000 from the J.R. Simplot Company, paid in six annual installments of $50,000, with each payment due on June 1 of each year, beginning in 2007 and continuing through 2012; and, additionally, $50,000 from Debtor's "exempt asset account," which sum represents the post-petition Micron Payment for 2006.  These payments are related to Debtor's decision to resign from the Micron board of directors at JRSCo's request.

2)      Debtor's Alleged Tools of the Trade.[4]

      a)      A computer desk and hutch.

      b)      A cherry desk.

      c)      An office chair.

      d)      A 9' x 12' rug.

      e)      Four pictures.

      f)      A globe.

      g)      A picture.

      h)      A 17 inch Zenith television set.

      i)      A 10' x 15' Somavare Rug.

      j)      Two pictures.

      k)      A Queen Ann chair.

      l)      The items listed in Items 2.b, 2.c, 2.d, and 9 in Exhibit 1.2.31 (Exempt Assets) less Debtor's allowed exemptions in those same items, to the extent Debtor elects not to purchase the non-exempt interest in those assets as provided in Exhibit 1.2.31.

3)      Debtor's El Paso Property (less the $50,000 that constitutes an Exempt Asset, as described on Exhibit 1.2.31).

---

[1] *See* Exhibit 1.2.31 (Exempt Assets), note 1.

EXHIBIT 1.2.60 (Miscellaneous Transferred Assets) - 1

4)     DJS II Family Trust Note (identified as Item F in the liquidation analysis in Debtor's Disclosure Statement).

5)     Shipp Estate Receivable (identified as Item J in the liquidation analysis in Debtor's Disclosure Statement).

6)     Debtor's interest in CQ Acquisitions, LLC; GB Vessel Acquisitions, LLC; BB Acquisitions, LLC; Rascals, Inc.; 3DM, LLC; CQ River Cruises, LLC; and all Debtor's claims against these entities (identified as Item K in the liquidation analysis in Debtor's Disclosure Statement).

7)     133.331 shares of Class B stock in JRSCo (identified as Item M in the liquidation analysis in Debtor's Disclosure Statement).

8)     Debtor's 13% interest in Claremont Properties (identified as Item N in the liquidation analysis in Debtor's Disclosure Statement).

9)     Debtor's interests as a plaintiff in certain class actions (identified as Item P in the liquidation analysis in Debtor's Disclosure Statement).

10)    Any remaining tax credit available after Debtor's application of the tax credit to his individual tax liabilities.

11)    25% of Debtor's interest in a J.R. Simplot Company Deferred Compensation Plan, with a value of $246,581.49 as of December 31, 2005, payable to Debtor in monthly installments of $2,490.19 over a period of twenty years, which period began on May 1, 2001; and 25% of any proceeds from such installments made to Debtor post-petition, some of which post-petition proceeds are currently held in an "exempt asset account" by Debtor.

12)    25% of Debtor's interest in a J.R. Simplot Company Executive Deferred Compensation Plan, with a value of $245,161.60 as of December 31, 2005, payable to Debtor in monthly installments of $2,613.80 over a period of twenty years, which period began on May 1, 2001; and 25% of any proceeds from such installments made to Debtor post-petition, some of which post-petition proceeds are currently held in an "exempt asset account" by Debtor.

13)    The balance of funds in all accounts maintained by Debtor in connection with this bankruptcy case, include, but not limited to, Debtor's asset sales account and Debtor's exempt funds account.

EXHIBIT 1.2.60 (Miscellaneous Transferred Assets) - 2

14)    All claims, rights, defenses, Interests, properties and assets of Debtor's bankruptcy estate as of the Effective Date of any nature whatsoever, including without limitation the Causes of Action, the Avoidance Actions, and the Post-Effective Date Assets; provided, however, that the Miscellaneous Transferred Assets shall not include (a) the Retained Assets, (b) the Partnership Claims, (c) the JRSCo Interests, or (d) the Reserve.

3591899_7.DOC

EXHIBIT 1.2.60 (Miscellaneous Transferred Assets) - 3