Randall A. Peterman, ISB No. 1944
MOFFATT, THOMAS, BARRETT, ROCK &
    FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
rap@moffatt.com
15-924.4

Attorneys for J. R. Simplot Company

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>DON J. SIMPLOT,<br><br>              Debtor. | Case No. 06-00002-TLM<br>Chapter 11<br><br>**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY** |

COMES NOW J. R. Simplot Company ("Company") and objects to confirmation

of the Modified Joint Plan of Reorganization of Debtor and Creditors' Committee (" Modified

Plan"), and the Creditors' Trust Agreement ("Modified CTA"), filed on March 25, 2007, by Don

Simplot ("Debtor") and the Creditors' Committee ("Creditors' Committee" or "CC").

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 1**

This is not the first attempt by the Debtor and the CC to confirm a Chapter 11 plan of reorganization. Both parties originally filed a plan ("Original Plan") on December 29, 2006; the Original Plan was withdrawn by the Debtor and the CC on the date of the confirmation hearing—February 21, 2007.

Prior to the withdrawal of the Original Plan by the plan proponents, the Company filed its Objection to Confirmation of Joint Plan of Reorganization of Debtor and Creditors' Committee, filed by J. R. Simplot Co. ("Original Objection"),[1] and the limited partnership known as DJS Properties, L.P. ("DJS") did the same. The Company's objection was based upon Section 365 issues, plan provisions which repeatedly attempted to exonerate and exculpate the CC and its professionals from liability, plan provisions which created an unlevel playing field between the parties, issues regarding contracts which reflected transfer restrictions regarding the Company's Class A and Class B stock,[2] and other related matters.

## I. FUNDAMENTAL DIFFERENCES BETWEEN THE ORIGINAL PLAN AND ORIGINAL CTA, AND THE MODIFIED PLAN AND MODIFIED CTA.

The Original Plan is summarized in the Company's Original Objection (pp. 1-5), and will not be repeated here.

Principal differences (Paragraphs 1-5 below) and similarities (Paragraphs 6-9 below) between the Original Plan and the Modified Plan are set forth below. Similarities are shaded; differences are not.

---

[1] The Company incorporates by reference the Original Objection.

[2] Applicable documents which might be considered to be executory contracts are identified in Footnote 1 to the Original Objection, which is hereby incorporated by reference.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 2**

BOI_MT2:647146.3

| | Original Plan | | Modified Plan |
|---|---|---|---|
| 1. | *No reliance* on 11 U.S.C. Section 1123(b)(3)(B) | 1. | *Absolute reliance* on 11 U.S.C. Section 1123(b)(3)(B)[3] |
| 2. | *No reference* to the Trustee as a "representative of the estate" ("ROE") | 2. | *Total identification* of the Trustee and the ROE[4] |
| 3. | *Creditor's trust* is created by the Class V unsecured claimants | 3. | *Debtor's trust* is created by the Debtor[5] |
| 4. | *Beneficiaries* are defined as the Class V unsecured claimants | 4. | *Beneficiary* is defined as the estate of the Debtor[6] |
| 5. | *Scope of fiduciary duty* is restricted to the Class V unsecured claimants | 5. | *Scope of fiduciary duty* is identical to that of any other bankruptcy trustee[7] |
| 6. | *Total release, exoneration and exculpation* of the Creditors' Committee and its professionals | 6. | *Total release, exoneration and exculpation* of the Creditors' Committee and its professionals[8] |
| 7. | *Exclusive rights* in the Trustee to challenge proofs of claim of take other actions | 7. | *Exclusive rights* in the Trustee to challenge proofs of claim or take other actions[9] |
| 8. | *Absolute control* of the Trustee by the CC, in the guise of the "Executive Board" of the Trust | 8. | *Absolute control* of the Trustee by the CC, in the guise of the "Executive Board" of the Trust[10] |
| 9. | *Lack of court supervision* over the Trustee | 9. | *Lack of court supervision* over the Trustee |

[3] Modified Plan Section 1.2.28 states:

> 1.2.28 "Estate Representative" means the person designated pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code to enforce all of the bankruptcy estate's and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Retained Assets and to administer and carry out the objectives of this Plan, and any successor thereto. The Estate representative and the Trustee of the Creditors' Trust shall always be the same person. The Estate Representative shall initially be Ronald Greenspan. The granting of a right or power to the Estate Representative under this Plan shall likewise authorize the Estate Representative to exercise such power or right in his/her right as trustee.

[4] Section 5.1.2.3 of the Modified Plan states: "The term 'Trustee' as used in Sections 6.9, 6.10, 6.11, 6.12, 6.14.1, 6.15, and 6.17.3 of the Creditors' Trust shall include the Estate Representative." Section 5.2.3 of the Modified Plan provides that the "Estate Representative shall be established as Trustee of the Creditors' Trust in the Trust Agreement."

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 3**

[5] Modified CTA Section 6.14.1 changes the identity of the grantor of the Trust from the Class 5 claimants to "Debtor's bankruptcy estate."

[6] In the Original CTA (Section 1.2), the term "Beneficiaries" was defined as follows:

> 1.2    "Beneficiaries" means, collectively, the holders of Allowed Claims in Class 5 under the Plan (whether or not allowed on or after the Effective Date) who held such claims as of the Effective Date.

In the Modified CTA, the definition of "Beneficiaries" is defined as follows:

> 1.2    "Beneficiary" means the Debtor's bankruptcy estate.

[7] Section 5.2.2 of the Modified Plan states:

> In addition to all other rights, claims, interests, powers and defenses provided to him under this Plan, the Estate Representative in his or her capacity as Estate Representative and as Trustee, shall possess with respect to all of the Transferred Assets and the Retained Assets. (Emphasis added.)

Section 5.1.2.3 of the Modified Plan states:

> The Estate Representative shall be, pursuant to Section 1123(b)(3)(B), appointed to enforce all of the bankruptcy estate's and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Retained Assets and to discharge his other obligations under the Plan. *The Estate Representative shall have all of the rights and powers of the debtor-in-possession in respect of the Retained Assets, including, without limitation, the right to commence and prosecute litigation and/or contested matters . . . .* (Emphasis added.)

[8] Under Section 12.6 of the Modified Plan the Trustee reserves all of his rights against all parties in interest, *except the CC, its members, or their officers, directors, subsidiaries, affiliates, members, managers, shareholders, partners, representatives, employees, attorneys or agents or any of their successors or assigns . . . .," all of whom are provided a release ("to the fullest extent permitted by applicable law") for any pre-confirmation acts or admissions.*

[9] Section 12.7 of the Modified Plan provides that the "Trustee and the Executive Board on behalf of the Creditors' Trust . . . shall have the exclusive right to enforce [any rights] against any person."

[10] Modified CTA, Section 6.19.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 4**

Each of these matters will be considered separately below.

1.   *Absolute reliance* **on 11 U.S.C. Section 1123(b)(3)(B).**

Bankruptcy Code Sections 1123(b)(2) and 1123(b)(3)(B) are a little-used portion

of the Bankruptcy Code, which provide as follows:

> (b)    . . . a plan may . . . .
>
> (2)    subject to section 365 of this title, provide for the
> assumption, rejection, or assignment of any executory contract or
> unexpired lease of the debtor not previously rejected under such
> section;
>
> (3)    provide for . . . .
>
> (B)    the retention and enforcement by the debtor, by the
> trustee, or by a representative of the estate appointed for such
> purpose, of any such claim or interest . . . .

In the past this provision has principally been raised regarding the ability of an

ROE to bring voiding actions on behalf of the estate, or the subject matter jurisdiction of the

bankruptcy court to hear such matters. *See, e.g., In re Sweetwater,* 884 F.2d 1323 (10th Cir.

1989), and cases cited therein. Based upon the fact the ROE is in fact an estate representative

acting for the benefit of the estate as a whole rather than a specific group of creditors, most

courts have granted such estate representatives those rights.[3]

Cases and commentators make clear that the provisions of Section 1123(b) are

subject to the provisions of Section 365, and that "the trustee's power under section 365(a) to

---

[3] One reported case absolutely denies the ability of a plan proponent to use of
Section 1123(b)(3)(B) to delay the ROE's ability to assume or reject an executory contract until
after confirmation—*In re Dynamic Tooling Systems, Inc.,* 349 B.R. 847 (Bankr. D. Kan. 2006).
That case is dealt with in more detail below.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 5**

BOI_MT2:647146.3

assume or reject executory contracts and unexpired leases is not absolute, but rather is 'subject to the court's approval.'" *Collier on Bankruptcy* § 1123.02[2] (7th ed. 2007).

The CC and the Debtor, as Modified Plan proponents, apparently believe that Section 1123(b)(3)(B) can overcome previous objections regarding the impact of plan confirmation on executory contracts between the Debtor and the Company and/or DJS. As outlined below, this is a false premise.

### 2.    *Total identification* of the Trustee and the ROE.

After acknowledging the existence of the ROE, the CC proposes that the interests of the Trustee and the ROE be totally identified with one another.

### 3.    *Debtor's trust* is created by the Debtor.

Under the Original Plan, a *creditors' trust* was proposed, with the Class V claimants being the trustors. Under the Modified Plan, a *debtor's trust* is proposed, with the Debtor being the trustor.

Despite this clear language in the Modified Plan, the document continues to define the plan trust as a "Creditors Trust." (Modified Plan, Section 1.2.19) This Freudian slip only reinforces that the Modified Plan continues the existence of a trust *created by and for the benefit of the Class V creditors,* despite the Modified Plan's claimed lip service to the idea that a "Debtor's trust" is now proposed.

### 4.    *Beneficiary* is defined as the estate of the Debtor.

Under the Original Plan, the CC proposed that the Trustee owed a fiduciary duty solely to those trustors/unsecured creditors who created and funded the Trust—i.e., the Class V unsecured creditors. Under the Modified Plan, the CC acknowledges that the Trustee now owes

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 6**

a fiduciary duty to the Debtor and the estate of the Debtor—the trustor of the newly proposed

trust, and the Beneficiary of the newly proposed trust, respectively.  The class of beneficiaries

under the post-confirmation trust—and the parties to whom the Trustee owes a fiduciary duty—

has therefore been increased dramatically.

Despite the relative simplicity of this premise—i.e., that because the definition of

the term Beneficiary has been modified and enlarged by the Modified Plan, the scope of the

fiduciary duty has been correspondingly modified and enlarged—the CC insists on provisions in

the Modified Plan which are contrary to this concept and insists that the Beneficiary estate, as

defined, is not the "ultimate beneficiary" of the Trust.

For example, Section 5.2.8 of the Modified Plan and Section 3.1 and Section 9.4

of the Modified CTA have been modified to indicate that the Trustee/ROE is obligated "to take

all actions in his/her capacity as Trustee in a manner consistent with the best interests of the

Beneficiary *and the holders of Allowed Claims of Class 5 . . . .*"  (Emphasis added.)  Section 6.1

of the Modified CTA, regarding the obligation of the Trustee/ROE to maintain a bond, indicates

that the bond will be issued "for the sole benefit of Beneficiary, the holders of Allowed Claims in

Class V, and the holders of Allowed Claims for priority taxes harmed by the Trustee's breach of

the standard of care set forth in Section 6.9 herein."[4]   Given the new definition of the term

"Beneficiary," such language is repetitive and unnecessary.  If the Trustee is no longer the

trustee of a creditors' trust with specific fiduciary duties owed to the Class V creditors, and if the

---

[4] The Modified Plan (Section 5.2.3) contains provisions which are contrary to Section 6.1
of the Modified CTA.  Section 5.2.3 of the Modified Plan states that the Bond is "for the benefit
of Beneficiaries [which is no longer a defined term under the Modified CTA] (as that term is
defined in the Creditors' Trust Agreement) of the Creditors' Trust Agreement."

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 7**

Trustee is now the trustee of the Debtor's trust invoked under Section 1123, with fiduciary duties to the estate, why should the holders of Class V claims be given special preference by the very terms of the Modified CTA?

The Company anticipates that the CC will deal with this issue by arguing that, while the Modified Plan pays lip service to a new definition of the term "Beneficiary," the Class V unsecured claimants are actually the "ultimate beneficiaries" of the Trust.  Because the Modified Plan does not define the term "ultimate beneficiaries," any such argument is disingenuous, is  contrary to the plain terms of the Modified Plan, utilizes a term which is undefined in the Modified Plan, and confuses the scope of the fiduciary duty in this case.

### 5.    *Scope of fiduciary duty* is identical to that of any other bankruptcy trustee.

The Modified Plan clearly states that the Trustee has "all rights, interests, powers, claims, and defenses of a trustee under the Bankruptcy Code," and that the ROE (who is identical to the Trustee) "shall have all of the rights and powers of the debtor-in-possession . . . ."  Both of these Modified Plan provisions clearly indicate that the Trustee under the Modified Plan is nothing more than a "garden variety" bankruptcy trustee, vested with all of the traditional rights, powers, duties and obligations which are clearly delineated by bankruptcy statute, rule, and case law.  This conclusion is in fact a necessary consequence of the CC's invocation of the Section 1123(b)(3)(B)—as a ROE, the Trustee/ROE is nothing more and nothing less than a trustee in the traditional bankruptcy sense.[5]  Furthermore, this conclusion is only reinforced by

---

[5] Why is the CC so resistant to acknowledgment that the Trustee which the CC itself proposes be considered to be a "bankruptcy trustee" for all purposes?  The only identifiable reason is that the CC wishes to control the reorganization process—by denying the existence of a "garden variety" trustee (even though the CC's own Modified Plan proposes it), by denying this

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 8**

Section 323(a), which states that, "A trustee in a case under this chapter is the representative of the estate."

Ninth Circuit case law only reinforces this view. In *Smith v. Arthur Anderson, LLP,* 421 F.3d 989 (9th Cir. 2005), a plan was confirmed which provided for a trustee to be "appointed as the representative of the bankruptcy estates" of the debtors (*Id.* at 996)—facts highly similar to the facts here. Question was raised as to whether the trustee had standing to assert the estate's claims in an adversary proceeding against a third party. In ruling that a post-confirmation plan trustee who was a representative of the estate had such standing, the Ninth Circuit held that the rights, duties and responsibilities of such a post-confirmation trustee are identical to those of any other pre-confirmation trustee. This conclusion was justified by the fact that the post-confirmation trustee "stands in the shoes of the bankrupt . . . and has standing to bring any suit . . . ." (*Id.* at 1002).

A parity of reasoning applies here. Despite the CC's protestations to the contrary, the Modified Plan by definition proposes appointment of a "garden variety" trustee who, by the very terms of the Modified Plan, is nothing more than the successor to the Debtor, and invested with all rights that would otherwise be available to a bankruptcy trustee. The provisions of the Modified Plan, Section 323(a), and decisional law all make clear that a "trustee" in the traditional bankruptcy sense is involved here.

---

Court oversight over such Trustee (even though the Bankruptcy Code requires it), and by denying that traditional principals of bankruptcy law are sufficient to govern the Trustee's actions (which by Ninth Circuit law apply to *all* trustees). The Court should not allow such a cynical use of the bankruptcy process.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 9**

Despite the simplicity of this conclusion, the CC refuses to accept it. Instead, the CC insists on the inclusion of plan provisions which (a) release and exonerate the CC and its professionals from any liability to the greatest extent of the law; (b) grant the Trustee the exclusive right to take any actions in this action, and preclude any such actions by any other party; (c) grant absolute control of the Trustee to the CC and the Class V unsecured claimants, now in the guise of the "Executive Board;" and (d) prohibit this Court from exercising its typical oversight function which exists as to any other trustee in the bankruptcy system.

By confusing the role of the Trustee and the scope of his fiduciary duties, the Modified Plan as proposed creates the distinct possibility of the Trustee being placed in the position that enhances the possibility of a breach of fiduciary duty—the highest duty recognized by the law, and the principal duty which permeates the bankruptcy system. Such a plan should not be confirmed.

## 6. *Total release, exoneration and exculpation* of the Creditors' Committee and its professionals.

Sections 12.6.1 and 12.6.2 of the Modified Plan release, exonerate and exculpate the Creditors' Committee *and* all of its professionals *and* any related parties from any liability "to the fullest extent of the law." Neither the Disclosure Statement nor the Modified Plan indicate what due diligence was exercised to determine whether such a "pass" is justifiable, or the party who exercised such due diligence to justify such a "pass." Despite the Company's attempts to determine the basis for such exculpation in negotiations with the CC, no explanation has been provided.

The Company has made a good faith effort to resolve confirmation matters with the CC amicably, and has indicated a willingness to proceed to settlement if the Company is

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 10**

BOI_MT2:647146.3

similarly released from pre-confirmation liability. All such proposals have been resolutely

denied by the CC, based upon the fact that the CC has not completed its "due diligence" to

determine whether the Company is guilty of any act which must be released. Nevertheless, and

without identifying any basis for such a proposal, the CC insists that it (merely because it

proposed the Modified Plan) should be provided such a pass.

Releasing professionals of the CC, who have sought and obtained (without

objection) from the estate almost $700,000 of costs and fees in this case, is especially egregious.

What possible reason justifies such a release? As it has refused to do in the past, this Court

should not confirm a plan which exculpates the CC or its professionals from liability, when no

justifiable reason is advanced for such exculpation.

> 7.    ***Exclusive rights*** **in the Trustee to challenge proofs of claim or take other actions.**

*If* the CC were to acknowledge the obvious—i.e., that the Modified Plan proposes

the appointment of a "garden variety" Trustee who would act under the supervision of this Court,

and would be granted the rights, powers, duties and responsibilities of any other bankruptcy

trustee, the CC *might* be able to confirm a plan which grants the Trustee the exclusive right to

challenge proofs of claim or take other actions to implement the Modified Plan. The CC's

insistence that the Executive Board control the Trustee *without Court supervision* means that

such a grant in the Modified Plan makes it unconfirmable.

The CC's motive is made even more clear by the injunctive provisions contained

in Section 12.5 of the Modified Plan, which specifically enjoins any party from "commencing or

continuing" any and all litigation post-confirmation. This Court has already ruled in a prior case

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 11**

that any such provision is unenforceable, which under Section 1129(a)(1) renders the Modified

Plan unconfirmable, because it does not comply with applicable law.

In *In re Aico Recreational Properties, LLC,* 03.2 I.B.C.R. 105, 108 (Bankr. Idaho

2003) a debtor stipulated to relief from the automatic stay, then violated the stipulation, which

led this Court to grant relief from the stay pursuant to the stipulation.  The debtor appealed the

decision, then filed with this Court a "Motion for New Trial and Reinstatement of Automatic

Stay."  In denying that motion, this Court stated:

> The Motion also asks that this Court "enjoin" Creditor from
> pursuit of its state law rights and remedies as a secured creditor.
> Debtor has not established a right to injunctive relief.  *See, e.g.,*
> *Morrow v. Torrance Bank (In re Morrow,* 189 B.R. 793, 802 n. 7
> (Bankr. C.D. Cal 1995) (noting Ninth Circuit standards for
> injunctive relief); *see also* Fed. R. Bankr. P. 7065 (incorporating
> Fed. R. Civ. P. 65).  Moreover, an injunction may be sought only
> through an adversary proceeding.  *See* Fed. R. Bankr. P. 7001(7).
> Debtor has not properly sough such relief, and this is an additional
> basis for denial of the request.  *Great Western Bank v. Snow (In re*
> *Snow),* 201 B.R. 968, 977 (Bankr. C.D. Cal 1996); *Ramirez v.*
> *Whelan (In re Ramirez),* 188 B.R. 413, 416 (9th Cir. BAP 1995
> (Klein, J, concurring).

Because the CC has no basis to seek or obtain such injunctive relief in the Modified Plan under

Bankruptcy Code provision (e.g., Section 524), and because the CC has not complied with this

Court's well-defined requirements necessary to justify injunctive relief (i.e., irreparable harm and

inadequacy of legal remedies—*see In re Morrow,* 189 B.R. 793 (Bankr. C.D. Cal. 1995)) under

other standards, no such injunctive relief can be approved here.

Taken together, (a) the structure of the Modified Plan, (b) the exclusive oversight

granted the Class V unsecured creditors (as an "Executive Board") over the supposed

independent Trustee, and (c) the lack of any oversight by the Court, create the distinct possibility

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 12**

that it will be virtually impossible for the Trustee to actually examine and (if necessary) object to the claims of the Class V unsecured claimants. Can a trustee, who by the Modified Plan provisions is supposed to owe a fiduciary duty to the estate, actually be expected to exercise due diligence and challenge the claims of the very parties who have the right to terminate and replace him without cause and without this Court's approval? Furthermore, can the CC (which (a) has already repeatedly attempted to exonerate itself from any liability in this case, and which (b) proposes that it alone be exonerated from liability under the Modified Plan provisions) be expected to objectively oversee the Trustee regarding the Trustee's analysis of the claims of the members of the CC?

These questions are not merely rhetorical. If the Trustee in fact were to objectively challenge or object to the amount of the claims of the Class V claimants, the recovery to the Class V claimants could be diminished, and the amount that the Trustee seeks to recover from the Company to satisfy those claims could be similarly diminished.

The Modified Plan does nothing more than to create a structure which guarantees that a Section 1123 Trustee and ROE will be loathe to challenge the claims of his "handlers," even as it attempts to maximize recovery against third parties (i.e., the Company) from whom maximal recovery will be required. Such a plan does not meet the standards of equity, fair play, and justice, let alone the fiduciary standards which must be met by any trustee in the bankruptcy setting. Such a plan does not comply with the confirmation standards of Section 1129(a).

> **8.**   ***Absolute control*** **of the Trustee by the CC, in the guise of the "Executive Board" of the Trust.**

In its Original Plan, and again in its Modified Plan, the CC insists on provisions which:

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 13**

(a) Provide for the "oversight" of the Trustee by the self-same members of the CC who are proposing the Modified Plan, now in the guise of an Executive Board. (Section 5.1.2.6 and Section 5.2.6 of the Modified Plan and Section 6.4, Section 6.5, and Section 6.19 of the Modified CTA). Creation of such an executive board with oversight duties proposes a situation which invites *prima facie* breach of the Trustee's fiduciary duties, and allows the wolf to guard the henhouse.[6]

(b) Provide the Executive Board the right, in its discretion, to terminate the Trustee and replace him with another Trustee, both without any Court supervision. (Modified CTA, Section 6.4 and Section 6.5.)

(c) Provide the Executive Board the right to hire legal counsel, separate and apart from legal counsel for the Trustee, and to pay such legal counsel (without Court oversight) immediately from estate funds. (Modified Plan, Section 5.2.6; Modified CTA, Section 6.19.3.)

(d) Provide for the Executive Board to "prescribe its own rules of procedure . . . ." (Modified Plan, Section 5.2.6; Modified CTA, Section 6.19.1.)

(e) Provide for the Trustee to hire legal counsel or other consultants, without Court approval, and to pay such legal counsel (without Court oversight) immediately from estate funds. (Modified Plan, Section 5.1.2.6; Modified CTA, Section 6.17.)

---

[6] There is no need for non-judicial "oversight" of a bankruptcy trustee; the Bankruptcy Code does not contemplate or even allow it; and its inclusion in the Modified Plan is nothing but a naked attempt by the CC to control the actions of the Trustee, who (under the Modified Plan) owes fiduciary duties to the estate and not to those creditors.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 14**

(f)    Provide for the amount of the hourly payment to the Trustee, and provide for immediate payment of such amounts to the Trustee, without Court oversight. (Modified Plan, Section 5.1.2.6(c).)

(g)    Exonerate the Trustee from any personal liability for his actions. (Modified CTA, Section 6.2.)

(h)    Exonerate the Trustee and the Executive Board from any liability for their actions "except for fraud, breach of fiduciary duties, gross negligence, or willful misconduct as determined by a court a competent jurisdiction . . . ." (Modified CTA, Section 6.9, Section 6.11.1.)[7]

(i)    Simultaneously hold the Trustee and the Executive Board to the "fraud, breach of fiduciary duties, gross negligence or willful misconduct" standard, then hold those parties to a *different* standard under state law (Idaho Code Section 15-7-302 and "other applicable laws. (Modified CTA, Section 6.9.)

(j)    Transfer the assets of the estate to the Trustee/ROE, who admittedly owes a fiduciary duty to the estate of the Debtor, and who is admittedly a bankruptcy trustee, even as such Trustee is granted, "control and . . . authority over the Creditors' Trust Assets, over the management, sale, disposition or abandonment thereof, and over the management of the Creditor's Trust *to the same extent as if Trustee were the sole legal and beneficial owner thereof in his/her own right.*" (Modified CTA, Section 6.13.1.)

---

[7] No explanation is given as to why an undefined "court of competent jurisdiction," rather than this Court, should make such a determination. (Modified CTA, Section 6.11.1.)

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 15**

BOI_MT2:647146.3

(k)      Provide the Trustee the right to petition the Court in the event of any

disagreement with the Executive Board regarding payment of his fees, even as the Court is

denied oversight of such payments. (Modified CTA, Section 6.8.)[8]

(l)      Contain confusing and contradictory language in the Modified Plan and

the Modified CTA, which both create a fiduciary relationship, then vitiate that trust relationship.[9]

(m)     Provide for the possibility that some court other than this Court to assume

oversight of the Trustee or his actions. (Modified CTA, Section 6.11.1.)

(n)      Indemnify the Trustee from liability for his actions, and allow for

immediate recovery by the Trustee from the estate assets of funds necessary to satisfy such

indemnification obligation. (Modified CTA, Section 6.9.)

(o)      Alter the investment obligations of the Trustee, from those imposed on

any other bankruptcy trustee in the nation (Modified CTA, Section 6.15), to those outlined in the

Modified CTA.[10]

---

[8] These rights were examined in the Company's Original Objection, pp. 28-29.

[9] These rights were examined in the Company's Original Objection, pp. 29-30.

[10] Many of these concerns can be vitiated if the Trustee is simply identified as a "garden variety" bankruptcy trustee, whose rights, powers, duties and responsibilities are defined by well-established principals of bankruptcy. *Cf.* Section 323(a). The CC cannot simultaneously pay lip service to Section 1123(b)(3)(B) by specific provisions in its Modified Plan, then reverse course and include provisions which ameliorate and destroy the impact of that acknowledgement. The CC's insistence on an uneven playing field which will be imposed on the Company over the next five years, is again evidence of the CC's lack of good faith and proposal of a Plan which violates law.

The CC's own acknowledgement that the post-confirmation Trustee is in fact a successor to the debtor-in-possession, and a bankruptcy trustee, is the consequence of the CC's invocation of Section 1123. The CC cannot in good faith propose a Modified Plan which both relies upon these premises as the means to overcome Section 365 issues with the Company and DJS, while

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 16**

(p)     Pay the Trustee immediately from estate funds, for work undertaken prior
to his appointment as Trustee in the Modified Plan (Modified Plan, Section 4.2.)

### 9.   Lack of court supervision over the Trustee.

Matters involving the lack of any Court supervision over the Trustee are analyzed
above.  The Company would note that Court supervision is especially necessary here, given the
CC's attempts from the outset of the case to exculpate itself from liability, the CC's proposal that
it and its professionals be the only parties to be released from liability, the CC's proposed
creation of an "Executive Board" with broad powers and rights but few responsibilities, and the
refusal of the CC to acknowledge the fiduciary duties which any bankruptcy trustee owes the
estate in any other case.

At least one bankruptcy court within the Ninth Circuit has dealt with a plan
proposal which attempted to minimize notice to interested parties, abandon property, retain and
pay professionals, sell property, and compromise and settle controversies, all without the court
supervision which normally attends such actions in a bankruptcy proceeding, whether pre-
confirmation or post-confirmation.  (*In re Beyond.com Corp.,* 289 B.R. 138 (Bankr. N.D. Cal.
2003)).  In refusing to recognize the validity of any such provisions under Section 1129(a)(1),
even at the disclosure statement stage in the proceedings, the court stated:

> The modifications to the applicable provisions of title 11 are not
> minor, ministerial or simply pragmatic.  In effect, the plan affords
> the reorganized debtor the prerogative to comply selectively with
> the provisions of the Bankruptcy Code and Rules without judicial
> supervision.  A more cynical view suggests that providing the least

simultaneously gutting those same premises regarding the administration of the post-
confirmation trust to clearly tilt the playing field in favor of a particular group of creditors—the
Class V unsecured creditors.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 17**

> notice to the fewest people reduces oversight. Accordingly, the
> plan fails to satisfy the requirements of Section 1129(a)(1).

*Id.* at 144. The court refused to approve any such provisions, even though such plan provisions

were considered by the plan proponents to be typical in such cases: "The offensive plan

provisions are not unique to this liquidating chapter 11 case and are not the brainchild of counsel

for the debtor, but were copied from some other plan, apparently confirmed in some other

jurisdiction and circulated as a model of creatively." *Id.* at 138. Compliance with Section

1129(a)(1) was still required.

*Beyond.com* similarly refused to allow plan provisions which prevented court

oversight of payments to professionals. The plan in that case included a provision regarding

reimbursement of professionals which is similar to the one involved here.[11] In striking down that

provision, the court stated:

> This section [Section 1129(a)(4)] mandates full disclosure of all
> payments for services, costs, and expenses in connection with the
> case and subjects the reasonableness of these payments to the
> scrutiny and approval of the court. [Citing cases]. It ensures
> compliance with the policies of the Code that the bankruptcy court
> should police the awarding of fees in title 11 cases and that holders
> of claims and interests should have the benefit of information that
> might affect the claimants' decision to accept or reject the plan.
>
> The requirements under Section 1129(a)(4) are two-fold. First,
> there must be disclosure. Second, the court must approve of the
> reasonableness of payments.

---

[11] The court called the provision regarding reimbursement of professionals of the post-
confirmation trustee "a sentence certain to confound." *Id.* at 141. That provision, like the
provision in the Modified Plan, granted the post-confirmation trustee the right to retain
professionals upon (a) consent of the Creditors' Committee which was overseeing the trustee; or
(b) bankruptcy court approval, yet at the same (c) time allowed the appointment of professionals
without court approval.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 18**

A parity of reasoning applies here. The Modified Plan's proposal that the Trustee/ROE and his professionals, and the Executive Board and its professionals, retain and pay their professionals and themselves without Court oversight, is simply those parties attempts to adopt a *per se* rule, wherein all expenses of these parties are deemed compensable simply by their very existence. This proposal is violative of Section 1129(a)(4), which is designed to prohibit just this sort of *per se* rule.

Given these facts, the Company objects to the Modified Plan.

## II. OBJECTION BASED UPON THOSE MATTERS IDENTIFIED IN SECTION I, ABOVE.

On the one hand, the CC attempts to introduce the concept of a ROE, with attendant changes to (a) the identity of the grantor creating the trust (from the Class V unsecured claimants under the Original Plan, to the Debtor under the Modified Plan), and (b) the identity of the Beneficiary which necessarily follow (from the Class V unsecured claimants to the Debtor's estate as a whole). On the other hand, other portions of the Modified Plan and the Modified CTA clearly reflect that the CC intends that the "ultimate beneficiary" is not the estate itself, but the self-same Class V class of creditors that was identified as the "Beneficiaries" under the Original Plan. *While the Modified Plan creates the appearance that it invokes Section 1123 to fundamentally change the plan provisions, closer scrutiny reveals that the Modified Plan is simply the Original Plan, in a different guise.* Because the Modified Plan is merely a *sub rosa* repetition of the Original Plan, seeks to take advantage of Section 1123(b) even as it ignores its consequences, and still proposes that the Class V claimants are both the parties who control the Trust and the ultimate Beneficiaries of the Trust, it cannot be confirmed.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 19**

Section 5.1.2.6 of the Modified Plan makes crystal clear that the CC is not actually proposing that the Trustee be a ROE whose "Beneficiary" is the estate of the Debtor. Instead, the CC continues to insist that its own members (now euphemistically called the "Executive Board") control the Trustee—something that cannot happen under Section 1123. This provision, which simultaneously proposes that the ROE is an estate representative who is nevertheless answerable to a specific group of creditors of the estate, only reinforces the fact that the Modified Plan does *not* propose a Section 1123(b)(3)(B) estate representative who necessarily owes a fiduciary duty to the estate.

This discrepancy makes clear that Modified Plan invokes Section 1123(b)(3)(B) solely so as to win the CC's confirmation battle with the Company and DJS regarding executory contract issues, then "morph" into a Trustee whose oversight is granted solely to the Class V unsecured claims, and whose "ultimate beneficiaries" are actually the Class V claimants. These are not the hallmarks of a Section 1123 ROE, are not characteristic of the duties normally imposed upon a Trustee, and underline the fact that the CC's invocation of the ROE concept is nothing more than a ruse intended to allow the CC to confirm a plan under the guise of Section 1123, without otherwise complying with the consequences of Section 1123.

A.    **Objection Based Upon Section 1129(a)(1) and (2).**

Section 1129(a)(1) requires that the Modified Plan comply with applicable provisions of the Bankruptcy Code, and Section 1129(a)(2) requires that the proponent of the Modified Plan comply with the applicable provisions of the Bankruptcy Code. A Modified Plan which pays lip service to Section 1123, yet contains provisions totally contrary to such concept,

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 20**

proposed by a plan proponent who will control the estate's Trustee and deny Court oversight of that Trustee, fails to satisfy either requirement.

The Company objects to the Modified Plan proposed by the CC because the provisions of such plan violate Section 1129(a)(1) and (2), for those reasons identified in Part I above. While a plan proponent certainly has latitude to propose a Chapter 11 plan which comports with the spirit and intent of the Bankruptcy Code, the Modified Plan here goes far beyond those boundaries.

**B.    Objection Based Upon Section 1129(a)(4).**

Section 1129(a)(4) requires that this Court approve as reasonable any payment which is made payable to a plan proponent or the Debtor (and by implication the Trustee/ROE who represents the Debtor) by the Modified Plan. Because the Modified Plan refuses to acknowledge this Court's oversight function in approving such payments post-confirmation, any payments made to the Trustee, the Executive Board, or the professionals retained by either such entity violate this provision.

Objections based upon Section 1129(a((4) were considered extensively in the seminal case of *In re Southern Indus. Banking Corp.,* 41 B.R. 606 (Bankr. E.D. Tenn. 1984), which dealt with the very issue now before this Court. In *Southern,* the Court conditionally confirmed a plan, pending the ability of the plan funders to obtain necessary regulatory approvals. The professionals for those plan funders then filed post-confirmation motions, pursuant to Section 1129(a)(4) of the Bankruptcy Code, seeking court approval of their fees and costs incurred during the "gap" period between conditional confirmation and regulatory approval.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 21**

In considering the issue under Section 1129(a)(4), the court stated:

> This provision [Section 1129(a)(4)] is nearly identical to Section
> 221(4) of the Bankruptcy Act of 1898, which was designed to
> "eliminate the practice of fixing reorganization fees and expenses
> by private arrangement, thereby decreasing the effective amount of
> recovery of creditors. [Citing cases, and citing 6A Collier on
> Bankruptcy]. Code section 1129(a)(4) maintains the protection
> formerly afforded under Section 221(4).
>
> The bankruptcy court had exclusive jurisdiction to assess
> the reasonableness of fees and expenses within the scope of
> Section 221(4) of the former Bankruptcy Code. [Citing cases].
> This jurisdiction continues under the Cod with respect to fee
> applications for services rendered "in, or in connection with, the
> case, or in connection with the plan and incident to the case." 11
> U.S.C.A. 1129(a)(4) (1979).

(Emphasis added). The court made this holding even though *third party payments* rather than

*payments from the estate* were involved.

The applicants, like the CC here, argued that no court oversight was justified, that

their fees were reasonable *per se,* and that the provisions of Section 330 were not applicable to

them. The court summarily dismissed this proposal, and specifically held that "Code Section

1129(a)(4)(B)(ii) explicitly requires the court to determine the reasonable of the payments sought

by the applicants. This duty exists even in the absence of any challenge or objection to an

applicant's request for approval. "A common sense approach dictates that 'reasonableness'

cannot be ascertained without reference to [ the factors of Section 330]." (*Id.* at 612).

Bankruptcy courts within the Ninth Circuit have struck down similar plan

provisions under Section 1129(a)(4). In *In re Beyond.com Corp.,* 289 B.R. 138 (Bankr. N.D.

Cal. 2003), the plan proposed appointment of a post-confirmation trustee, and included a

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 22**

provision regarding reimbursement of professionals which is similar to the one involved here.[12]
In striking down that provision, the court stated:

> This section [Section 1129(a)(4)] mandates full disclosure of all
> payments for services, costs, and expenses in connection with the
> case and subjects the reasonableness of these payments to the
> scrutiny and approval of the court. [Citing cases]. It ensures
> compliance with the policies of the Code that the bankruptcy court
> should police the awarding of fees in title 11 cases and that holders
> of claims and interests should have the benefit of information that
> might affect the claimants' decision to accept or reject the plan.

> The requirements under Section 1129(a)(4) are two-fold. First,
> there must be disclosure. Second, the court must approve of the
> reasonableness of payments.

A parity of reasoning applies here. The Modified Plan's proposal that the

Trustee/ROE and his professionals, and the Executive Board and its professionals, retain and pay

their professionals and themselves without Court oversight, is simply those parties attempts to

adopt a *per se* rule, wherein all expenses of these parties are deemed compensable simply by

their very existence. This proposal is violative of Section 1129(a)(4), which is designed to

prohibit just this sort of *per se* rule.

## C.    Objection Based Upon Section 1129(a)(3).

Section 1129(a)(3) requires that any plan be proposed in good faith and not by

any means forbidden by law. Ninth Circuit law makes clear that "good faith" in the context of

plan confirmation is not a defined term, but requires that any plan be "intended to achieve a

---

[12] The court called the provision regarding reimbursement of professionals of the post-
confirmation trustee "a sentence certain to confound." *Id.* at 141. That provision, like the
provision in the Modified Plan, granted the post-confirmation trustee the right to retain
professionals upon (a) consent of the Creditors' Committee which was overseeing the trustee; or
(b) bankruptcy court approval, yet at the same (c) time allowed the appointment of professionals
without court approval.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 23**                    BOI_MT2:647146.3

result consistent with the objectives of the Bankruptcy Code." *In re General Teamsters Warehouseman and Helpers,* 225 B.R. 719 (Bankr. N.D. Cal. 1998), *quoting In re Corey,* 892 F.2d 829, 835 (9th Cir. 1989). Such an assessment (a) is to be made by the bankruptcy judge after viewing the totality of the circumstances, (b) requires that a plan achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and (c) requires that the plan demonstrate fundamental fairness in dealing with creditors.

Section 1129(a)(3) also requires that the Modified Plan be proposed by no means forbidden by applicable law. This Court has noted (in *In re Camas Properties, Inc.,* 92 IBCR 19, 21, footnote 2 (Bankr. Id. 1992)) that this requirement means that "there must . . . be some enforceable legal basis advanced to support the means proposed to reorganize" (*citing In re Chandler Airpark Joint Venture I,* 163 B.R. 566, 92 IBCR 23 (Bankr. D. Ariz. 1992—Judge Jim D. Pappas).

The Company objects to the provisions of the Modified Plan identified above based upon Section 1129(a)(3), because the Modified Plan is proposed with a lack of good faith, and without identifiable legal bases under Section 1123(b)(3)(B)—the keystone to the CC's proposed plan. Instead, the Modified Plan has been proposed:

(a)     To create the appearance and impression in the Modified Plan that a Trustee/ROE is appointed under Section 1123(b)(3)(B), and created by the trustor/Debtor, who owes a duty to the estate and all parties in interest, then abandon that concept in the plan itself.

(b)     Through use of a misleading definition of the term "Beneficiary," which leads parties in interest to conclude that the Beneficiary of the plan Trust is the estate, when it is

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 24**

the undefined "ultimate beneficiaries" (i.e., the Class V claimants) who will actually control and benefit from the reorganization process.

      (c)     So as to sandwich the Trustee/ROE between the Executive Board (which has absolute control over the activities of the Trustee, without court oversight) and the "ultimate beneficiaries" of the Trust, who are those same Executive Board members, and expect that Trustee to fulfill his fiduciary duties to *all* parties in interest under such circumstances.

      (d)     So as to release, exonerate, and exculpate that same group of parties, and any and all attorneys or consultants which represented them, from any further liability to any party, even as all other parties in interest are subject to the scrutiny of the Trustee that is controlled by those same parties.

The Modified Plan does not contain the hallmarks of a plan which is proposed in good faith, or by any means supportable by applicable law. Confirmation should be denied under Section 1129(a)(3).

    **D.**    **Objection Based upon Section 1123(a)(7).**

Section 1123(a)(7) requires that the Modified Plan contain only provisions which are consistent with the interests of creditors and equity holders *and with public policy.* For all of the reasons outlined above, the Modified Plan in the present case does not meet this standard.

    **E.**    **Objection Based upon Various provisions of the Modified Plan and Modified CTA**

The Company objects to various other provisions of the Modified Plan and the Modified CTA, as outlined below.

The Modified Plan (Section 14.2) proposes that the Trustee be allowed to "pay himself on the Effective Date from the Reserve for fees arising in respect of his efforts prior to

the Effective Date. It is not necessary that this payment be approved by the Bankruptcy Court."
There is absolutely no basis in bankruptcy law for such a payment—especially without this
Court's approval.

The Modified CTA (Section 9.9) provides that, in the event the Trustee "in his
discretion" elects to seek bankruptcy court approval for any action which he has taken, the
"Trustee shall in each case give notice of Trustee's motion for approval of such action to the
Executive Board, its attorneys and the United States Trustee." Once again, the "club" which the
CC proposes be given notice of such important matters consists of the Trustee and the Executive
Board. The interests of any and all other parties in interest (the Debtor, the Company, DJS, the
IRS) are simply ignored. Due process and fundamental concepts of notice are tossed out the
window, despite the Bankruptcy Code's insistence that "notice and a hearing" accompany any
major events in a bankruptcy proceeding. Bankruptcy Code Section 102.

III.    OBJECTION BASED UPON THE UNEVEN PLAYING FIELD WHICH THE CC
INSISTS ON INCLUDING IN THE MODIFIED PLAN.

The Company has previously and repeatedly objected to the Original Plan's
proposal which creates a grossly uneven playing field between the Trustee (who will serve for
five years during which time he will be a shareholder of the company) and the Company. The
Company has repeatedly attempted to resolve this matter with the CC through negotiation—all to
no avail. As a result, the Company continues to interpose numerous objections to the Modified
Plan, based upon the CC's insistence that an uneven playing field be created through those
devices identified in Section I, above.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 26**         BOI_MT2:647146.3

This Court simply cannot confirm a Modified Plan which ties the fate of the Company to the Trustee for a period of five years, and exposes the Company to litigation with that Trustee over such an extended period of time, even as that same Modified Plan creates an uneven playing field for such litigation. Any such Modified Plan is not proposed in good faith, and is proposed by a means forbidden by law.

## IV.    OBJECTION BASED UPON THE PROPOSED PLAN TREATMENT OF THE COMPANY.

### A.    Summary of Modified Plan Treatment of the Company.

In general terms, the Modified Plan proposes the following plan treatment for the Company:[13]

(a)    The Modified Plan acknowledges that the CC and the Company disagree as to the characterization of the documents which reflect the Transfer Restrictions. (Modified Plan, Section 5.1.2.1).

(b)    The Modified Plan proposes that the bankruptcy estate's interest in those documents which reflect the Transfer Restrictions "will not be presently transferred to the Creditors' Trust, but are expressly retained by the bankruptcy estate and they shall be administered by the Estate Representative as provided in this Plan." (Modified Plan, Section 5.1.2.1).

(c)    The Modified Plan (Section 5.1.2.2(b) proposes that the Retained Assets (including the Company-related assets) be treated as follows:

---

[13] By its very terms, the Modified Plan (a) treats most executory contracts under Article IV of the plan; (b) specifically states that Article IV does not apply to the Company; and (c) states that Article V governs the Company's plan treatment.

•

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 27**

5.1.2.2  Retained Assets.

. . .

(b)    The Retained Assets shall be retained by the bankruptcy estate and no part of the Retained Assets shall be transferred to the Creditors' Trust until the sale, liquidation, or monetization of, or other realization upon, any of the Retained Assets. Upon the sale, liquidation, or monetization of or other realization upon, any of the Retained Assets, the proceeds thereof shall be immediately transferred by the Estate Representative to the Creditors' Trust and upon receipt by the Creditors' Trust any such proceeds shall be treated in all respects as Transferred Assets.

No definition is provided regarding the meaning of the term "monetization."

(d)    The Modified Plan (Section 5.1.2.3) proposes that the ROE be granted all rights of a bankruptcy trustee, and all rights of a debtor-in-possession, "including . . . the right to commence and prosecute litigation . . . ."

(e)    The Modified Plan (Section 5.1.2.5(a), (b), and (c)) proposes the following:

5.1.2.5  Resolution of Dispute Between Estate Representative and JRSCo.

(a)    Except as expressly provided in Section 5.1.2.2.(b), the JRSCo Interests and the bankruptcy estate's rights and, to the extent they are enforceable against the bankruptcy estate, its obligations under the JRSCo Documents, shall be retained by the bankruptcy estate and the Estate Representative shall enforce all of the bankruptcy estate's rights, title, interests, claims, powers, and defenses in and to such Interests.

(b)    Absent a settlement between the bankruptcy estate, JRSCo and the other applicable shareholders of JRSCo, the parties shall litigate before the Bankruptcy Court their respective positions with respect to whether or not any of the JRSCo Documents are Executory Contracts and the efficacy and enforceability of any provision of the JRSCo Documents. *In the event a Final Order is entered by the Bankruptcy Court that any of the JRSCo Documents are an Executory Contract then, in that event, the Estate*

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 28**

*Representative shall, subject to the approval of the Bankruptcy Court, and only to the extent allowed in such Final Order, assume or reject such JRSCo Document within sixty (60) days after entry of the Final Order or within such additional time as the Court, for cause, within such sixty-day period, fixes.* If the rejection by the Estate Representative of any of the JRSCo Documents results in a claim for damages, then, as applicable, JRSCo and the other shareholders of JRSCo shall be entitled to file a proof of claim in accordance with the Bankruptcy Code Section 502(g). The time for filing such a claim shall be determined by the Bankruptcy Court in accordance with Bankruptcy Rule 3002(c)(4), and any such allowed claim shall be treated as Allowed Claims in Class 5. Article IV of this Plan shall not apply to the JRSCo Documents.

(c)     *Pending the entry of a Final Order of the Bankruptcy Court upon whether or not any of the JRSCo Documents are Executory Contracts, the Estate Representative shall not be required to either assume or reject any of the Executory Contracts,* provided, however, not withstanding the foregoing at any time after sixty (60) days from the Effective Date JRSCo or any of the other JRSCo shareholders may seek an order for the Bankruptcy Court to require the Estate Representative to either reject or, to the extent allowed, assume any of the JRSCo Documents, and the Estate Representative shall have all of the bankruptcy estate's rights, claims, powers, and defenses with respect to any such motion.

(Emphasis added.)

**B.     Objection to the Modified Plan Treatment of the Company.**

The Company objects to its Modified Plan treatment on several bases. First, the Company maintains that neither Section 1123(b)(3)(B) nor *Dynamic Tooling Systems* justify the provisions of the Modified Plan as proposed by the plan proponents. Second, the Company objects to its Modified Plan treatment to the extent the Modified Plan fails to properly define certain terms critical to the Company. Third, the Company objects to Modified Plan and Modified CTA provisions regarding the end-of-plan terms which apply if the Debtor's Shareholder interest is not liquidated by the Trustee within 4 1/2 years of confirmation. Fourth,

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 29**

the Company objects to its treatment under the Modified Plan for various reasons raised in its

Original Objection, which have not been dealt with in the Modified Plan.

### 1.    Objection based upon *Dynamic Tooling Systems.*

Section 1123(b) is the linchpin of the Modified Plan's proposed plan treatment of

the Company.  Yet applicable case law (*In re Dynamic Tooling Systems, Inc.*, 349 B.R. 847

(Bankr. D. Kan. 2006), clearly indicates that the Modified Plan does not comport with Section

1123(b).

In *Dynamic Tooling Systems,* the Kansas bankruptcy court considered whether the

provisions of 11 U.S.C. Section 1123(b)(3)(B) could be utilized to allow an estate representative

to assume or reject an executory contract under Section 365 *after the date* of confirmation.  The

court denied this outright attempt to circumvent Section 365 through Section 1123.

In coming to this conclusion, the Kansas bankruptcy court acknowledged the

absolute right of the non-debtor party to an executory contract in a Chapter 11 proceeding to

require that the executory contract by assumed or rejected "not later than the conclusion of the

confirmation hearing." (*Dynamic Tooling Systems,* p. 854).  The court noted that this is the very

language of Section 365(d)(2), which states that the trustee may assume or reject an executory

contract" . . . at any time before the confirmation of a plan . . . ."  The Kansas court further

acknowledged that the non-debtor party "may insist that it be heard with respect to assumption or

rejection at the time of the confirmation hearing as a party in interest under Section 1128(b) to

assure adequate protection of its interests." (*Dynamic Tooling Systems,* p. 854).  In coming to

this conclusion, the Kansas court relied upon the following premise:

> The plan *may* provide for the assumption or assignment of an
> executory contract.  On the other hand, the contract may 'ride

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 30**

through' the plan as unaffected. However, a party to the contract may insist that it either be rejected or fully assumed under the plan if the contract has not already been dealt with separately from the plan. Such party has a right to be heard in respect of affirmation or rejection of the contract at the time of the confirmation hearing under Section 1128 or prior to such date, in order to assure adequate protection of its interests.

(*Dynamic Tooling Systems,* p. 854, footnotes 26 and 27, *quoting In re Cole,* 189 B.R. 40, 46

(Bankr. S.D.N.Y. 1995)). Based upon this explicit holding, the Kansas court confirmed the plan

*only after requiring that the plan proponent state on the record at the confirmation hearing its*

*intention to reject the executory contract.*

The *Dynamic Tooling* Systems case is remarkable for three reasons, when applied

to the present case. First, the Modified Plan explicitly provides that the ROE is granted the right

to assume or reject any executory contract with the Company post-confirmation only until such

time as a "Final Order is entered by the Bankruptcy Court that any of the JRSCo Documents are

an Executory Contract," and only so long as such assumption or rejection is made by the ROE

"within sixty (60) days after entry of the Final Order or within such additional time as the Court,

for cause, within such sixty-day period, fixes." (Modified Plan, Section 5.1.2.5(b)). The very

terms of the Modified Plan propose a post-confirmation assumption or rejection of such

executory contracts by the ROE, which is contrary to the very holding of *Dynamic Tooling*

*Systems.* That case absolutely requires assumption or rejection of an executory contract at

confirmation; the Modified Plan proposes assumption or rejection 60 days after some undefined

date in the future.

Second, the Modified Plan (Section 5.1.2.5(b)) does not comport with the holding

of *Dynamic Tooling Systems* in another critical manner. The Modified Plan does not reflect any

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 31**

election by the Debtor and the CC, as plan proponents, as to whether (a) either plan proponent considers the Company documents which create the Transfer Restrictions to be executory contracts subject to Section 362; or (b) either plan proponent wishes to assume or reject such contract. In other words, the Modified Plan proposes exactly what *Dynamic Tooling Systems* prohibits—an extended period of time (up to five years) post-confirmation for the Trustee to indicate to the Company whether the alleged executory contracts which reflect the Transfer Restrictions are going to be assumed or rejected. No such Modified Plan can be confirmed by this Court.

Third, the Modified Plan (Section 5.1.2.5(c)) explicitly reserves to the ROE the right to assume or reject such executory contracts for the five-year term of the Modified Plan, even as it places the onus on the Company to "seek an order for the Bankruptcy Court to require the Estate Representative to either reject or, to the extent allowed, assume any of the JRSCo Documents . . . ." Again, this provision is directly contrary to the holding of *Dynamic Tooling Systems.* The burden is upon the Debtor, not the non-debtor party, to elect assumption or rejection at or before confirmation.

Let there be no mistake. The Company and the Shareholders do not consent to any executory contracts (if any there be) between the Debtor, on the hand, and the Company or the Shareholders, on the other hand, "riding through" the confirmation process. Furthermore, both the Company and its Shareholders insist that the Modified Plan proponents at or before confirmation (a) identify any documents which reflect Transfer Restrictions which such parties consider to be executory contracts; and (b) state their election to assume or reject such contracts, pursuant to Section 365, Section 1123, and the reasoning of *Dynamic Tooling.*

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 32**

2.    **Objection based upon the Modified Plan's failure to define certain critical terms.**

The Modified Plan continues to misidentify the defined terms "JRSCo Documents" (Modified Plan Section 1.2.38) and "Transfer Restrictions" (Modified Plan Section 1.2.59). The JRSCO Documents are in fact identified in footnote one to the Original Objection, and should be reflected in the definitional portion of the Modified Plan.[14]

3.    **Objection based upon end-of-plan provisions.**

Section 8.1 of the Modified CTA provides that, in the event the liquidation of the trust assets does not occur within 4 1/2 years of confirmation, the Trustee is granted the right to auction such Creditor Trust Assets. The Modified Plan contains a slightly different provision (Section 5.2.13) regarding the auction of Transferred Assets, rather than Creditor Trust Assets. No similar provision is included in the Modified Plan regarding the auction of Retained Assets, including the Debtor's Sharehold interest in the Company. These contrary provisions create confusion regarding exactly what assets will be subject to the auction.

Regardless of this confusion, the Modified Plan obviously cannot propose that the Debtor's Sharehold interest in the Company be auctioned as the "default position" in the event matters are not resolved between the Trustee and the Company within the term of the Modified Plan. Any such provision merely encourages the Trustee to delay any decision to accept or reject executory contracts reflecting Transfer Restrictions between the Debtor and the Company, then auction assets subject to Transfer Restrictions to third parties free and clear of those Transfer

---

[14] The Company would also note that the Shareholders of the Company have filed a joinder to the Company's Objection, and that the wording of Article V the Modified Plan appears to apply to their benefit as well as the benefit of the Company.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 33**

Restrictions when the applicable time period runs. To the extent the Modified Plan proposes

such a remedy, the Company objects.

This provision of the Modified Plan only underlines the abuses that the Trustee can visit

upon the Company if the Trustee is in fact granted five years to assume or reject executory

contracts with the Company. Assumption or rejection *must* occur at confirmation; otherwise the

Trustee is simply invited to abuse its relationship with the Company.

#### 4.    **Objections based upon the Original Objection.**

The CC has simply failed to deal with various objections interposed in its Original

Objection to the Original Plan, which continue to apply to the Modified Plan. These include

those portions of the Original Objection devoted to the purported transfer of assets to the

Trustee/ROE "free and clear of any lien, claim or interest in such property of any other person,"

(Original Objection, Section IX, p. 30);[15] and those portions of the Original Objection to plan

provisions which failed to deal with the Company's preferred stock owned by DJS, and which

might come into the hands of the Trustee/ROE (Original Objection, Section XI, pp. 34-35). The

Company hereby renews those objections.

## V.    **OBJECTION BASED UPON PROVISIONS WHICH CLEARLY REFLECT A FAILURE TO COMPLY WITH THE SPIRIT AND INTENT AND LANGUAGE OF THE PROTECTIVE ORDER PREVIOUSLY ENTERED BY THE COURT.**

The CC continues its attempts to torpedo the Protective Order, despite the fact

that the CC charged the estate tens of thousands of dollars (and perhaps hundreds of thousands of

---

[15] The failure of the Company to object to such a "free and clear" provision may mean
that it is bound by such provision. *Cf. Matter of Penrod,* 169 B.R. 910 (Bankr. N.D. Ind. 1994).

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 34**

dollars)[16] in (a) its discovery efforts which precipitated the Protective Order, (b) the filing and

argument of various unsuccessful motions which led to the stipulated order, and (c) negotiating,

drafting, and submitting to the Court the terms of a Protective Order.[17]  When the Protective

Order was entered, the CC acknowledged that it was intended to "balance the need for

information with various parties" confidentiality concerns."[18]  The CC has now reversed its

course, and insists that the Protective Order be emasculated.

In Section 5.13 of the Modified Plan, the CC now proposes:  (a) that the

Protective Order apply only retrospectively and not prospectively; (b) that the Trustee's further

discovery requests "shall not be subject to the Protective Order;" and (c) that the Trustee shall

---

[16] In the Official Committee of Unsecured Creditors' First Interim Application for
Allowance and Payment of Fees and Expenses (Docket No. 278) filed July 31, 2006, the CC
billed $223,432.00 for "Asset Analysis and Recovery," which involved "multiple projects." The
initial entry on the docket states:

> Task Code 76 involves multiple projects.  This task code includes, among
> other things:  reviewing the thousands of pages of documents that have been
> provided; negotiating an obtaining a protective order that balanced the need for
> information with various parties' confidentiality concerns . . . and communicating
> with multiple parties in connection with all of these projects.

Seven attorneys (who charged for over 900 hours of work) and three paralegals were
involved in this task for the CC.

[17] *See* Exhibit A attached hereto.

[18] In March of 2006, the CC filed motions seeking to immediately undertake the
Rule 2004 examinations of the Debtor (Docket No. 88), the Company (Docket No. 89), and the
Partnership (Docket No. 93), and served subpoenas upon such entities.  All such parties objected
(Docket Nos. 99, 103, 104, 105 and 119), which resulted in this Court ruling (Docket No. 189)
that the "meet and confer" requirements of the Bankruptcy Rules applied to the CC's discovery
requests.  Following such court-ordered meet and confer sessions, this Court ultimately entered
its Protective Order on May 9, 2006 (Docket No. 225).  Thereafter, the Company was granted a
period of months to fulfill its obligations to produce documents relative to the Debtor, the
Company, or the Partnership—a duty which it fulfilled.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 35**

have the right to use information and data obtained in the future "in the same manner as Debtor

could have used the information prior to the entry of the Protective Order." In essence, the CC

proposes that the Court gut the very Protective Order which the CC precipitated, negotiated, and

stipulated to a year ago.

The Committee takes this position despite the existence of explicit terms in the

Protective Order which indicate that it applies to Third Parties, and defines a "Third Party" to

include (a) unsecured creditors who were not members of the Committee; and (b) "any other

entity, as defined in 11 U.S.C. Section 101(15), *including but not limited to any trustee or*

*examiner*." (Protective Order, p. 8 (emphasis added).)

The Committee takes this position despite the existence of a Protective Order

provision which states that it will remain in effect until "completion of this bankruptcy

proceeding. . . ." (Protective Order, pp. 11-13).  A provision in the Modified Plan provides that

the case is closed, five years after confirmation (Modified Plan, Section 14.13.)

The Committee takes this position despite having already stipulated to the

provisions of Section 19 of the Protective Order:

> **19.    LIMITATION ON USE AND SURVIVAL.**
>
> (a)    Any Confidential information disclosed to any person
> during the course of this bankruptcy case shall be used solely for
> the purposes of this bankruptcy case and shall not be disclosed or
> used by the recipients for any business, commercial, or competitive
> purpose whatever, except to further the recovery of claims against
> Debtor.
>
> (b)    *All obligations and duties arising under this Order shall*
> *survive the termination of this bankruptcy proceeding.  All*
> *obligations and duties arising under this Order shall apply in the*
> *event of conversion or dismissal of this bankruptcy proceeding.*
> *This Court retains jurisdiction over any parties in interest*

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 36**

> *respecting any dispute regarding the improper use of Confidential*
> *Information disclosed in accordance with this Order.*

(Emphasis added.)[19]

The Company objects to this emasculation of the Protective Order for several

reasons. First, both the Company and DJS have religiously lived up to their obligations under

the Protective Order—despite the massive time and effort and cost[20] required to fulfill those

obligations. The CC, on the other hand, having precipitated the entry of the Protective Order

through its "take no prisoners" approach to discovery in the spring of 2006, has utterly failed to

comply with those provisions of the Protective Order which it insisted on in the spring of 2006.

At that time, the CC insisted that it needed to immediately undertake the Rule 2004 examinations

of the Debtor, DJS, the Company, and the Company's investment banking firm, Houlihan Lokey.

At the insistence of the CC, provisions were included in the Protective Order which allowed such

examinations to immediately occur. (Protective Order, Sections 2, 4 and 6.) To date, not even

one of these examinations has been undertaken by the CC. Having required the other parties in

this bankruptcy to comply to the letter of the Protective Order, and having refused to comply

with the Protective Order itself, the CC is in no position to seek to emasculate its provisions.

---

[19] The Protective Order further grants this Court retained jurisdiction to "interpret,
modify, and enforce the terms of this Order." (Protective Order, p. 14.)

[20] In the case of the Company, compliance with the CC's discovery required dozens of
hours of work, and work by Company employees on weekends—all because of the CC's
overriding need for access to such data and information immediately. Compliance with the CC's
discovery also required that the Company expend tens of thousands of dollars, simply for coping
costs. The CC has provided no explanation as to why such data and information has sat, unused,
since its production a year ago.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 37**

Second, neither the stipulating parties nor the Court intended that the Protective Order would apply for a limited period of time. To the contrary, all parties stipulated (and this Court ordered) that the terms of the Protective Order would continue until the termination of the bankruptcy case. The CC is now not in a position to propose otherwise.

Third, the motivation of the CC must be questioned at this time. If the Protective Order was sufficient in May of 2006 to justify entry of an order which, in the words of the CC, "balanced the need for information with various parties' confidentiality concerns," why should it not be sufficient in protecting the interests of those same parties in their dealings with the Trustee in April of 2007?

Fourth, it is virtually impossible to "split the baby," as proposed by the CC in its Modified Plan. The Protective Order clearly anticipated that not only confidential documents, but that confidential data and information would necessarily be a part of the data provided to the CC pursuant to the Protective Order. It further proposed the means by which such confidential documents and information could remain confidential through the course of this bankruptcy proceeding—either as to members of the CC (Protective Order, pp. 12-13), prospective purchasers (Protective Order, p. 13), third parties (Protective Order, p. 8), in submissions to the Court (Protective Order, p. 10), in Rule 2004 examinations or depositions ("Protective Order, p. 9), or in hearings or trials (Protective Order, p. 10). As a practical matter, it will be impossible for the parties in interest to comply with a Modified Plan that makes it impossible to determine what data or documents or information or testimony or information are subject to the Protective Order, and what are not.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 38**          BOI_MT2:647146.3

Fifth, case law from this jurisdiction and other jurisdictions universally condemns

and refuses to allow a party's attempts to avoid stipulations and orders to which that party has

previously consented.

In an unbroken line of cases that commenced more than a dozen years ago, the

Idaho Bankruptcy Court has repeatedly upheld the sanctity of stipulations, and has universally

struck down attempts to avoid their application. As summarized in *In re Aico Recreational*

*Properties, LLC,* 03.2 I.B.C.R. 105, 107 (Bankr. Idaho 2003):

> Decisional law is rife with observations about the importance of
> negotiated settlements of disputes. They are, for several prudential
> reasons, to be encouraged. This might be viewed as particularly
> true in bankruptcy litigation, where the preciousness of both time
> and money is accentuated. To be of value, however, settlements
> must be enforceable and must be enforced. If parties were at
> liberty to disavow or modify their prior agreements, there would be
> serious impact on the utility of freely-bargained settlements of
> disputes. These views are in accord with those of Chief Judge
> Pappas, who wrote:
>
> This Court has repeatedly emphasized the importance of strict
> compliance with stipulations negotiated by parties in pending
> bankruptcy cases. Such stipulations play a critical role in the
> bankruptcy process. If obedience to the promises made in
> connection with a bankruptcy case is easily excused, negotiations
> between parties will be chilled and the process of obtaining
> cooperation and consensus in bankruptcy cases will be impaired.
> The Court declines to compromise the integrity of such agreements
> without a compelling reason to do so.
>
> *In re Blele,* 03.1 I.B.C.R. 85, 86 (Bankr. D. Idaho 2003) (citations omitted).

Ninth Circuit cases and cases from other circuit courts relied upon by this Court in

the *Aico* case are in accord. *See, e.g., Doi v. Halekulani Corp.,* 276 F.3d 1131 (9th Cir. 2002);

*Sargent v. Department of Health and Human Services,* 229 F.3d 1088, 1090 (Fed. Cir. 2000).

This rule has been applied both to written stipulations, and to stipulations made orally on the

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 39**

record to the Court. *Id; In re Van Orden,* 03.3 I.B.C.R. 161 (Bankr. Idaho 2003). These rulings

are a natural outgrowth of the concept that "an agreement to settle litigation is a contract, and

governed by contract law." *In re Huot,* 97.4 I.B.C.R. 122 (Bankr. Id. 1997).

    *In re East Shoshone Hospital District,* 00.2 I.B.C.R. 94 (Bankr. Idaho 2000) only

reinforces this view:

> This Court is sensitive to the general principle of finality of
> settlements, as well as to the statutory issues which have
> addressed. Idaho law is clear that settlements should be respected
> and encouraged, and constitute binding contracts between the
> parties. *Wilson v. Bogert,* 81 Idaho 535, 542, 347 P.2d 341, 345
> (1959). *See also, Suitts v. First Security Bank of Idaho,* 125 Idaho
> 27, 32, 867 P.2d 260, 265 (Ct. App. 1993). The settlement
> between this chapter 9 debtor and its creditor is no less important
> than the settlement of disputes as generally discussed in Idaho case
> law.

    In the present case the CC kicked off its aggressive discovery schedule on March

2, 2006, by setting the Rule 2004 examinations of the Debtor and the Company, and

accompanying those documents with expansive and burdensome requests for production of

documents.[21] More than two months later—on May 9, 2006—the Protective Order was finally

entered. *It was the CC itself that prepared the form of Protective Order* (Docket No. 207),

"signed off" on its terms, and lodged it with the Court for entry. It took the Company, the

Debtor and DJS months to comply with the requests for production of documents submitted by

the CC. This is the very Protective Order that the Court now asks be emasculated—something

that is not justified under applicable Idaho and Ninth Circuit law.

---

    [21] A summary of the events leading up to the entry of the Protective Order is attached as
Exhibit A.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 40**

The fact that an *order* of this Court, and not merely a stipulation, is at issue here only renders the CC's Modified Plan more outrageous, since such order implicates principals of *res judicata,* collateral estoppel, and the law of the case. Fundamental and long-established bankruptcy principals simply prevent the CC from avoiding the common sense reading of the Protective Order. The only fair, equitable and practical solution, which recognizes the intent of the parties and the Court at the time of entry of the Protective Order, is to provide for its continuing efficacy and effectiveness post-confirmation.[22] The CC's proposal is totally contrary to principals of good faith, equity, and basic bankruptcy law.

## VI.    THE LACK OF PLAN PROVISIONS WHICH IMPOSE A DUTY OF CONFIDENTIALITY UPON THE TRUSTEE AS TO INFORMATION WHICH THE TRUSTEE RECEIVES AS A SHAREHOLDER OF THE COMPANY.

The Trustee's assumption of the role of a Class A stockholder of the Company will be precedent setting—all such Shareholders have, in the past, been members of the Simplot family. The Trustee's status as a Shareholder will impose duties and responsibilities which are owed by the Trustee to the Company, and by the Company to the Trustee. The Trustee will also attempt to sell the Debtor's Interest in the Class A stock and Class B stock of the Company—

---

[22] The Company proposes that the Trustee step into the shoes of the CC (which is proposed to be dissolved upon confirmation of the Modified Plan) for all purposes as to the Protective Order. Such a proposal recognizes the obvious—that the Trustee is bound by the terms of the Protective Order, is the successor to the rights of the estate, and must be bound by the rights, duties and obligations of the CC under the Protective Order. Inherent in such recognition should be a transfer of the documents produced and the Confidential Information obtained by the CC from that committee to the Trustee, subject of course to the terms of the Protective Order. Any other outcome violates the provisions of the Protective Order, where this Court (with the consent of all of the parties) clearly ruled that the Protective Order was to continue to the end of the confirmation process. Furthermore, recognition of such continued jurisdiction of this Court granted under the Protective Order must jive with the other jurisdictional grants or reservations sought in the Plan.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 41**

either free from the Transfer Restrictions, or subject to such restrictions. All of these relationships will doubtless require massive amounts of negotiation and/or litigation between the Trustee and the Company. The Company is therefore highly interested in the terms of the Modified Plan and the Creditors' Trust Agreement, as they apply to the Trustee as a Shareholder, and the Shareholder's receipt of confidential information from the company.

The Company is equally concerned regarding the fundamental structure of the Modified Plan, which unleashes upon the Company a Trustee which is controlled by Class V unsecured claimants, unfettered from any Court supervision, and unrestricted by traditional bankruptcy notions of equity and fair play, for the five-year period of the Modified Plan. The proposed plan bears all of the hallmarks of a situation where the Trustee, by the very terms of the Modified Plan, will be led to shirk his duties and responsibilities in dealing with the parties who control him, while pursuing the Company (in his status as a Shareholder of the Company, and in his status as a successor to the debtor in possession and a trustee) on a grossly uneven playing field.

Given these circumstances, the Company has made four proposals to the CC regarding the confidentiality of Shareholder information which the Trustee will receive over the next five years as a Shareholder of the Company. All are intended to provide the Company minimal protection as to confidential information which the Trustee will receive as a Shareholder of the Company. All have been summarily rejected by the Committee, which insists that the Trustee have the absolute right to disseminate such information at will.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 42**

First, the Company has proposed to the CC that any information which the

Trustee receives *qua* a Shareholder of the Company be subject to the terms of the Protective

Order. *The CC has refused this proposal.*

Second, the Company has proposed to the CC that the Trustee may make any

Shareholder information available to the vast number of parties identified in Paragraph 12 of the

Protective Order, which reads:

> **12.    PARTIES TO WHOM THE COMMITTEE MAY
> RELEASE CONFIDENTIAL INFORMATION.** The
> Committee may release Confidential Information solely to the
> following parties:
>
> (a)    Members of the Committee ("Members").
>
> (b)    Representatives of the Members who are on the
> Committee, including alternates.
>
> (c)    No more than two senior executives of each
> corporate entity on the Committee to whom the Members of the
> Committee and their representatives report, not to include directors
> who are not full-time employees of the corporate entity at issue;
>
> (d)    Attorneys, legal assistants, accountants, experts,
> litigation support vendors, or consultants of the Committee or the
> Members, and such persons' employees;
>
> (e)    Persons with a sincere interest in purchasing assets
> from the bankruptcy estate, and such persons' employees,
> attorneys, and agents.
>
> (f)    The Court, Court personnel, mediators, and persons
> working in the office of the United States Trustee.
>
> (g)    Court reporters and videographers who are retained
> to transcribe or videotape testimony in this action; and
>
> (h)    The auditors of the corporate entities on the
> Committee, and the regulators of such corporate members.

*The CC has refused this proposal.*

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 43**

Third, the Company has proposed to the CC that the Trustee be allowed to provide confidential information to Third Parties under the Protective Order, so long as the Trustee again comports with the requirements of that document (Paragraph 13). *The CC has refused this proposal.*

Fourth, the Company has proposed to the CC that the parties agree to any other reasonable confidentiality provision regarding information which the Trustee may receive over the next five years *qua* a Shareholder of the Company. *The CC has refused this proposal.*

The Creditors Committee has absolutely no intention of allowing the Protective Order to be enforced, either as to discovery matters, or as to highly confidential information which the post-confirmation Trustee will receive as a Shareholder of the Company. Instead, the CC again proposes that the provisions of the Protective Order be gutted. The result will be that Trustee will have the absolute, unrestricted, and unmitigated right to disseminate to any party any and all information which the Trustee may receive as a Shareholder of the Company— regardless of the confidential nature of such information, which in the past has been shared solely with members of the Simplot family.

The Company proposes that the information which the Trustee obtains as a Shareholder of the Company be subject to the provisions of the Protective Order, all as outlined above. Such confidential information, which has previously been provided to only four shareholders, all of whom are members of the Simplot family, and all of which involves the inner workings of a privately-held corporation, should be protected at the limited level contained in the Protective Order.

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 44**                    BOI_MT2:647146.3

## VII. OBJECTIONS BASED UPON THE DJS PROPERTIES' OBJECTION.

DJS has filed its Objection of DJS Properties L.P. to Confirmation of Modified Joint Plan of Reorganization of Debtor and Creditors' Committee ("DJS Second Objection"). The Company hereby adopts and incorporates by reference the DJS Second Objection.

### CONCLUSION

The Debtor and the CC initially proposed an Original Plan which was dead on arrival, based upon the creation of a creditors' trust whose Trustee owed a fiduciary duty to the Class V Claimants, who were also the Beneficiaries of the trust. Those parties have now proposed a Modified Plan which creates the perception that the objections to the Original Plan have been met, through invocation of Section 1123, and through creation of a debtor's trust whose Trustee owes a fiduciary duty to the estate, which is defined as the Beneficiary of the trust. The alterations in the Modified Plan are illusory only; the unchanged portions of the Modified Plan (as identified in the chart which began this document) make clear that the plan proponents pay lip service to Section 1123, while refusing to alter the guts of the Original Plan.

The CC continues to insist on Modified Plan provisions which are so contrary to long-established and traditional rules of bankruptcy law as to render the plan unconfirmable. A plan which exculpates the plan proponent, and its professionals, and any parties related to it, from liability, without due diligence and without justification, cannot be confirmed. A plan which sandwiches an "independent" Trustee between an Executive Board and an "ultimate beneficiary" composed of unsecured creditors, and which creates a situation rife with the possibility of a breach of fiduciary duty by that Trustee to the estate which is defined as the trust Beneficiary, cannot be confirmed. A plan which does away with the concept of "notice and a

OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 45                    BOI_MT2:647146.3

hearing" cannot be confirmed. A plan which emasculates Court oversight of that Trustee cannot be confirmed. A Plan that actually pays the proposed Trustee an undisclosed amount for services provided before his appointment, without Court oversight, cannot be confirmed.

The CC insists that it can invoke Section 1123 in its plan treatment of the Company, yet refuses to comply with Section 1123, Section 365, and the reasoning of *Dynamic Tooling*. The CC insists that it can invoke Section 1123, yet refuse to identify executory contracts, and refuse to assume or reject such executory contracts, until five years after confirmation. This proposal runs roughshod over critical Code provisions, and cannot form the basis for a confirmable plan.

The CC, with a lack of good faith, attempts to emasculate the provisions of the Protective Order which the CC precipitated, negotiated, executed, drafted, and submitted to the Court.

The CC, again with a total lack of good faith, insists that it is entitled to the unbridled right to disseminate confidential information regarding a closely-held family corporation, without regard to the consequences of such action.

The Company anticipates that, at confirmation, the CC will argue those points that it believes it can win, then invite this Court to somehow divine what portions of the Modified Plan should be stricken because they prevent confirmation of the Modified Plan. The Court should resist the temptation to adopt this position, since it encourages a bad faith utilization of the bankruptcy process by plan proponents who take extreme positions in hopes that the Court will "split the baby" and grant the plan proponent some undefined portion of the relief requested. The Modified Plan proposed by the CC and the Debtor is so riddled with provisions which

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 46**

violate the Bankruptcy Code that it cannot be "band aided;" confirmation of the plan must be
denied.

DATED this 26th day of April, 2007.

MOFFATT, THOMAS, BARRETT, ROCK &
FIELDS, CHARTERED

By _____
Randall A. Peterman – Of the Firm
Attorneys for J. R. Simplot Company

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 47**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _25th_ day of April, 2007, I caused a true and correct copy of the foregoing **OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY** to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Jerome Shulkin
SHULKIN HUTTON, INC., P.S.
425 Pike Street, Suite 610
Seattle, Washington 98101-4078
*Attorneys for Debtor*

Joseph M Meier
COSHO HUMPHREY, LLP
P. O. Box 9518
800 Park Boulevard, Suite 790
Boise, Idaho 83707-9518
*Attorneys for Debtor*

GARY L. MCCLENDON
OFFICE OF THE UNITED STATES TRUSTEE
Washington Group Central Plaza
720 Park Boulevard, Suite 220
Boise, Idaho 83712

Ada County Treasurer
P. O. Box 2868
Boise, Idaho 83701-2868

Ford Elsaesser
Bruce A. Anderson
ELSAESSER, JARZABEK, ANDERSON, MARKS,
    ELLIOTT & MCHUGH, CHTD.
123 South 3rd
Post Office Box 1049
Sandpoint, Idaho 83864-0855
*Attorneys for Regal Financial Bank*

Eric R. Bjorkman
PERKINS COIE, L.L.P.
251 East Front Street, Suite 400
Boise, Idaho 83702-7310
*Attorneys for Foundation Bank*

Grant E. Courtney
Bruce W. Leaverton
Charles R. Ekbert
LANE POWELL PC
1420 Fifth Avenue, Suite 4100
Seattle, Washington 98101-2338
*Attorneys for Washington Mutual Bank and KeyBank, N.A.*

Larry E. Prince
Robert A. Faucher
Brad A. Goergen
HOLLAND & HART, L.L.P.
101 South Capitol Boulevard, Suite 1400
Post Office Box 2527
Boise, Idaho 83701-2527
*Attorneys for Official Committee of Unsecured Creditors*

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE, FILED BY J. R. SIMPLOT COMPANY - 48**

BOI_MT2:647146.3

John F. Kurtz and Janine P. Reynard
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 West Main Street, Suite 1000
Post Office Box 1617
Boise, Idaho 83701-1617
*Attorneys for American West Bank*

Craig Miller
DAVIS WRIGHT TREMAINE LLP
2600 Century Square
1501 Fourth Avenue
Seattle, Washington 98101-1688
*Attorneys for Banner Bank*

Michael G Schmidt
LUKINS & ANNIS, PS
250 Northwest Boulevard, Suite 102
Coeur d'Alene, Idaho 83814-2971
*Attorneys for Washington Trust Bank*

Jeffrey M Wilson
WILSON MCCOLL & RASMUSSEN
420 West Washington
Post Office Box 1544
Boise, Idaho 83701-1544
*Attorneys for CitiCapital Commercial
Corporation*

Steven W. Boyce
JUST LAW OFFICE
381 Shoup Avenue
Post Office Box 50271
Idaho Falls, Idaho 83405
*Attorneys for PHH Mortgage Corp.*

Kelly Greene McConnell
GIVENS PURSLEY LLP
601 West Bannock Street
Post Office Box 2720
Boise, Idaho 83701-2720
*Attorneys for Banner Bank*

Harold Q. Noack
1199 Shoreline Lane, Suite 308
Post Office Box 9795
Boise, Idaho 83707
*Attorneys for Rhodes Asset Management, LLC*

William L. Smith
TROUT ♦ JONES ♦ GLEDHILL ♦ FUHRMAN, P.A.
225 North 9th Street, Suite 820
Post Office Box 1097
Boise, Idaho 83701
*Attorneys for Frontier Bank*

William R. Snyder
WILLIAM R. SNYDER & ASSOCIATES, P.A.
520 W. Franklin Street
Post Office Box 2338
Boise, Idaho 83701-2338
*Attorneys for DJS Properties, L.P.*

Lance Loveland
PARSONS, SMITH, & STONE, LLP
137 West 13th Street
Post Office Box 910
Burley, Idaho 83318
*Attorneys for Diversified Financial
Services, LLC*

AND, I HEREBY CERTIFY that on this 25ᵗʰ day of April, 2007, I caused a
true and correct copy of the foregoing **OBJECTION TO CONFIRMATION OF MODIFIED
JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE, FILED BY J. R. SIMPLOT COMPANY** to be served by the method
indicated below, and addressed to the following non-CM/ECF Registered Participants:

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 49**

BOI_MT2:647146.3

Don J. Simplot
Post Office Box 27
Boise, Idaho  83707

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

Bradley R. Duncan
2600 Century Square
1501 Fourth Avenue
Seattle, Washington  98101
*Attorneys for Banner Bank*

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

American Marine Bank
Attn:  Barbara Swartling
Post Office Box 10788
Bainbridge Island, Washington  98110

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

Citicorp USA, Inc.
399 Park Avenue
New York, New York  10043

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

The Commerce Bank of Washington, N.A.
c/o Charles C. Robinson
Eighteenth Floor
1191 Second Avenue
Seattle, Washington  98101-2939

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

Brent G. Summers
TARLOW NAITO & SUMMERS LLP
6650 SW Redwood Lane, Suite 215
Portland, Oregon  97224
*Attorneys for DJS Properties, L.P.*

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

Foundation Bank
c/o Frederick W. Schoepflin
1201 Third Avenue, Suite 3200
Seattle, Washington  98101

(✓) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile

Randall A. Peterman

**OBJECTION TO CONFIRMATION OF MODIFIED JOINT PLAN OF
REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE,
FILED BY J. R. SIMPLOT COMPANY - 50**

**Exhibit A**

The following is a list of documents filed in the Don Simplot bankruptcy which led to entry of the Protective Order:

| Docket No. | Date | Document Name |
|---|---|---|
| 88 | 03/02/06 | Motion for 2004 Examination of Debtor Don J. Simplot |
| 89 | 03/02/06 | Motion for 2004 Examination of J.R. Simplot Company |
| 99 | 03/07/06 | Objection to Motion for 2004 Examination of J.R. Simplot Company |
| 103 | 03/09/06 | Response of J.R. Simplot Co. to Motion for 2004 Examination of DJS Properties L.P. |
| 104 | 03/09/06 | Response of J.R. Simplot Co. to Motion for 2004 Examination of Don Simplot |
| 126 | 03/14/06 | Memorandum of Creditor Committee regarding Motion for 2004 Examination of DJS Properties, Don J. Simplot, and J.R. Simplot Company |
| 128 | 03/15/06 | Supplement to (1) (Second) Response and Objection to the Creditors Committee Motion for an Examination of J.R. Simplot Company Pursuant to Bankruptcy Rule 2004 and Request for Protective Order; (2) Supplement to Response and Objection to the Creditors Committee Motion for an Ex Parte Examination of Don Simplot Pursuant to Bankruptcy Rule 2004 and Request for Protective Order; and (3) Supplement to Response and Objection to the Creditors Committee Motion for an Examination of DJS Properties L.P. Pursuant to Bankruptcy Rule 2004 and Request for Protective Order |
| 178 | 04/06/06 | Notice of Lodging of Creditors' Committee's Proposed Stipulated Order and Protective Order Regarding Rule 2004 Exams and Confidentiality (Simplot Parties) |
| 180 | 04/06/06 | Third Supplement to Response and Objection to the Creditors Committee Motion for an Examination of J.R. Simplot Company Pursuant to Bankruptcy Rule 2004 and Request for Protective Order |
| 182 | 04/06/06 | Supplement of DJS Properties to Response and Objections to Creditors' Committee Motion for 2004 Examination of DJS Properties L.P. |

| 185 | 04/07/06 | Motion of DJS Properties L.P. for Protective Order and to Quash Subpoena |
| 186 | 04/07/06 | Memorandum in Support of Motion of DJS Properties L.P. for Protective Order and to Quash Subpoena |
| 197 | 04/14/06 | Statement of Issues Filed by Creditor Committee regarding Motions for 2004 Examinations |
| 199 | 04/14/06 | Memorandum Filed by DJS Properties L.P. regarding Motion for 2004 Examination of DJS Properties L.P. |
| 203 | 04/18/06 | Fourth Supplement to Response and Objection to the Creditors Committee Motion for an Examination of J.R. Simplot Company, Debtor and DJS Pursuant to Bankruptcy Rule 2004 and Request for Protective Order |
| 205 | 04/18/06 | Response to Motion for 2004 Examination of DJS Properties L.P. filed by Creditor Committee |
| 206 | 04/18/06 | Statement of Issues Filed by DJS Properties L.P. |
| 207 | 04/18/06 | Notice of Lodging of Proposed Stipulated Order and Protective Order Regarding Rule 2004 Exams and Confidentiality Filed by Creditor Committee |
| 225 | 05/09/06 | Order Granting Stipulated Order and Protective Order Regarding Rule 2004 Exams and Confidentiality |

BOI_MT2:647389.1