**Jerome Shulkin, WSB No. 2198**
**Shulkin Hutton, Inc., P.S.**
2101 Fourth Avenue, Suite 200
Seattle, WA  98121
Telephone:  (206) 623-3515
Facsimile:  (206) 682-9289
Email:  mepelbaum@shulkin.com

**Joseph M. Meier, ISB No. 3314**
**Cosho Humphrey, LLP**
P.O. Box 9518
Boise, ID  83707-9518
Telephone:  (208) 344-7811
Facsimile:  (208) 338-3290
Email:  jmeier@cosholaw.com

Attorneys for Debtor-in-Possession

**Larry E. Prince, ISB No. 1759**
**Robert A. Faucher, ISB No. 4745**
**Brad A. Goergen, ISB No. 6631**
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, ID  83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
E-mail:  lprince@hollandhart.com
         rfaucher@hollandhart.com
         bagoergen@hollandhart.com

Attorneys for the Official Committee of Unsecured Creditors

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>DON J. SIMPLOT,<br><br>            Debtor. | Case No. 06-00002-TLM<br>Chapter 11<br><br>**MODIFIED JOINT PLAN OF<br>REORGANIZATION OF DEBTOR AND<br>CREDITORS' COMMITTEE** |

**MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE**

**MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE**

# TABLE OF CONTENTS

**ARTICLE I. DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME** ........................................................................ 1

   1.1 Scope of Definitions; Rules of Construction ........................................ 1

   1.2 Definitions ............................................................................................. 1

   1.3 Rules of Interpretation ...................................................................... ~~7~~9

   1.4 Computation of Time ........................................................................ ~~7~~9

**ARTICLE II. CLASSIFICATION OF CLAIMS AND INTERESTS** .................. ~~8~~9

   2.1 Introduction ....................................................................................... ~~8~~9

   2.2 Unclassified Claims (not entitled to vote on the Plan) ..................... ~~8~~9

   2.3 Unimpaired Class of Claims (deemed to have accepted the Plan and, therefore, not entitled to vote) ......................................................... ~~8~~10

   2.4 Impaired Classes of Claims (entitled to vote on the Plan) ............... ~~8~~10

**ARTICLE III. TREATMENT OF CLAIMS AND INTERESTS** ....................... ~~9~~11

   3.1 Unclassified Claims ........................................................................... ~~9~~11

   3.2 Unimpaired Class of Claims ............................................................. ~~10~~13

   3.3 Impaired Classes of Claims .............................................................. ~~11~~13

   3.4 Allowed Claims ................................................................................. ~~12~~14

   3.5 Accrual of Post-Petition Interest ...................................................... ~~12~~15

**ARTICLE IV. TREATMENT OF EXECUTORY CONTRACTS** ..................... ~~12~~15

   4.1 Executory Contracts .......................................................................... ~~12~~15

   4.2 Claims Based on Rejection of Executory Contracts .......................... ~~13~~16

**ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN** ................. ~~13~~17

   5.1 Reserve ~~13~~ and Retained Assets ........................................................ 17

   5.2 Creditors' Trust ................................................................................. ~~13~~21

   ~~5.3 Resolution of Dispute Between Creditors' Trust and the Partnership~~ ...... ~~18~~

   5.3 [Intentionally Omitted] ..................................................................... 26

   5.4 No Revesting of Assets ...................................................................... ~~20~~26

   5.5 Cooperation of Debtor ...................................................................... ~~20~~26

Table of Contents - i

5.6 Bifurcated Tangible ~~Retained~~Exempt Assets .................................................. 2027

5.7 Bankruptcy Code Sections 1106(b)(8) and 1106(c) ............................................ 2127

5.8 Post-Effective Date Assets ........................................................................... 2127

5.9 Post-Effective Date Earnings ...................................................................... 2127

5.10   Exemption from Certain Transfer Taxes ............................................. 2128

5.11   Transactions on Business Days ......................................................... 2228

5.12   Implementation ............................................................................... 2228

5.13   The Protective Order ....................................................................... 2228

5.14   Automatic Substitution of the ~~Plan Administrator~~Estate Representative in
       Litigation Prosecuted by the Creditors' Committee ............................. 2229

**ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN** ....................... 2329

6.1 Classes Entitled to Vote ............................................................................ 2329

6.2 Acceptance by Impaired Classes ................................................................ 2329

6.3 Elimination of Classes .............................................................................. 2330

6.4 Cramdown ............................................................................................... 2330

**ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS** ....................... 2330

7.1 Time of ~~Distributions for~~Payment on Claims ............................................ 2330

7.2 Allocation of Consideration ...................................................................... 2430

7.3 Means of Cash Payment ............................................................................ 2430

7.4 Fractional Dollars; De Minimis Distributions ............................................. 2431

7.5 Delivery of Distributions; Undeliverable or Unclaimed Distributions; No
    Requirement to Surrender Certificates ....................................................... 2431

7.6 Withholding and Reporting Requirements ................................................... 2431

7.7 Setoffs .................................................................................................... 2531

**ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
AND UNLIQUIDATED CLAIMS** ................................................................... 2531

8.1 Objections to Claims; Disputed Claims ...................................................... 2531

8.2 No Distribution Pending Allowance ............................................................ 2532

8.3 Estimation of Claims; Distribution Reserve ................................................ 2532

8.4 Distributions After Allowance ................................................................... 2633

Exhibit A - Page 4 of 62
Opp of DJS Properties to
Motion for Determination

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ............................................................... ~~26~~33

9.1 Conditions to Effective Date ................................................................. ~~26~~33

9.2 Waiver of Conditions ........................................................................... ~~27~~33

9.3 Effects of Failure of Conditions ........................................................... ~~27~~34

**ARTICLE X. MODIFICATIONS AND AMENDMENTS** ....................................... ~~27~~34

**ARTICLE XI. RETENTION OF JURISDICTION** ............................................ ~~28~~34

**ARTICLE XII. EFFECTS OF CONFIRMATION** ............................................. ~~29~~36

12.1    Discharge ............................................................................ ~~29~~36

12.2    Binding Effect ...................................................................... ~~30~~37

12.3    Authorization of Further Action ................................................ ~~30~~37

~~12.4~~    ~~Exculpation~~ ........................................................................ ~~30~~

<u>12.4</u>    <u>[Intentionally omitted</u> ........................................................... ~~37~~

12.5    Injunction ............................................................................ ~~30~~37

12.6    Releases .............................................................................. ~~31~~38

12.7    Rights of Action .................................................................... ~~32~~38

**ARTICLE XIII. COMPROMISES AND SETTLEMENTS; ASSET SALES** ............... ~~32~~38

13.1    Compromises and Settlements ................................................... ~~32~~38

13.2    Asset Sales .......................................................................... ~~32~~39

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** ......................................... ~~32~~39

14.1    Bar Dates for Certain Claims .................................................... ~~32~~39

14.2    Payment of ~~Plan Administrator~~<u>Estate Representative</u>'s Fees Incurred Prior to the Effective Date ..................................................................... ~~33~~40

14.3    Payment of Statutory Fees ....................................................... ~~33~~40

14.4    Severability of Plan Provisions ................................................. ~~34~~40

14.5    Successors and Assigns ........................................................... ~~34~~41

14.6    Term of Injunctions or Stays .................................................... ~~34~~41

14.7    Revocation, Withdrawal or Non-Consummation ............................ ~~34~~41

14.8    Creditors' Committee .............................................................. ~~35~~41

Table of Contents - iii

14.9      Plan Supplement..............................................................................3541

14.10    Notices to Debtors and Creditors' Committees............................3542

14.11    Governing Law................................................................................3643

14.12    Conflict with the Creditors' Trust Agreement.............................3643

14.13    Closure of the Bankruptcy Case....................................................3743

# TABLE OF EXHIBITS

**Exhibit**

1.2.3        Avoidance Actions

1.2.16       Contested Assets

1.2.17       Conveyed Assets

1.2.20       Creditors' Trust Agreement

1.2.22       Debtor's El Paso Property

~~1.2.53~~    ~~Retained~~1.2.31        Exempt Assets

~~1.2.56~~1.2.60        Miscellaneous Transferred Assets

## INTRODUCTION

Debtor Don J. Simplot and the Official Committee of Unsecured Creditors of Don J. Simplot hereby jointly propose the following plan of reorganization. This Plan treats all of the assets of Don J. Simplot and proposes a resolution of the outstanding claims against him. Reference is made to the Disclosure Statement, which was distributed with a prior version of this Plan, and which contains a discussion of the Debtor's assets, his business troubles, liquidation alternatives, a summary and analysis of this Plan, and certain related matters. This Plan has been modified from its prior version to address various issues. Debtor and the Creditors' Committee urge all holders of claims to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject. To the extent this Plan varies from the prior version, you are entitled to change your ballot as explained in the Notice accompanying this Plan.

### ARTICLE I.
### DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**1.1    Scope of Definitions; Rules of Construction.**

Except as expressly provided or unless the context otherwise requires, capitalized terms used but not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I. Any term used in this Plan that is not defined herein, but is defined in the Disclosure Statement, the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**1.2    Definitions.**

1.2.1 "Administrative Claims Bar Date" shall have the meaning given it in Article 14.1.1 of this Plan.

1.2.2 "Allowed Claim" means a claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is scheduled, other than a claim that is scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order, or (d) is reflected in a schedule of Allowed Claims, if any, filed from time to time with the Bankruptcy Court by the Plan AdministratorEstate Representative, or (e) that is expressly allowed in a liquidated amount in this Plan. An Allowed Claim (a) includes a Disputed Claim to the extent such Disputed Claim becomes allowed after the Effective Date; and (b) shall be net of any valid setoff exercised with respect to such claim under the provisions of the Bankruptcy Code and applicable

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 1

law. Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code, or in any order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of distributions under this Plan, include for prepetition claims interest on such claim or claims accruing from or after the Petition Date.

1.2.3 "Avoidance Actions" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims existing or arising under Chapter 5 of the Bankruptcy Code, including but not limited to state law remedies available pursuant to Section 544 of the Bankruptcy Code, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including without limitation those avoidance claims identified at Exhibit 1.2.3 hereto.

1.2.4 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§101-1532, as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

1.2.5 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Idaho ~~or any other court with jurisdiction over Debtor's Chapter 11 case~~.

1.2.6 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Debtor's Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

1.2.7 "Business Day" means any day on which commercial banks are open for business in Boise, Idaho, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)) .

1.2.8 ~~"Case Interest Rate" means the federal judgment rate described in 28 U.S.C. § 1961 in effect on the Petition Date, compounded annually on each anniversary of the Petition Date.~~[Intentionally deleted.]

1.2.9 "Causes of Action" means, individually or collectively, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims held by Debtor or the bankruptcy estate as of the Effective Date, including, but not limited to, the Avoidance Actions and the Partnership Claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.2.10 "Class" means one of the classes of claims listed in Article II of this Plan.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 2

1.2.11 "Class A Shareholder Agreement" means that "Supplemental Class A Shareholder Agreement" dated January 1, 2000, among Debtor, Gay C. Simplot, Scott R. Simplot and the Estate of Richard R. Simplot, Deceased.

1.2.12 "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

1.2.13 "Confirmation Date" means the date of entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court with respect to this Chapter 11 case.

1.2.14 "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code, to consider confirmation of this Plan under section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.2.15 "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.16 "Contested Assets" means ~~those assets transferred to the Creditors' Trust~~that portion of the Retained Assets which the Partnership might allege that it owns, including without limitation the assets identified at Exhibit 1.2.16 hereto.

1.2.17 "Conveyed Assets" means any assets conveyed by Debtor to the Partnership within the four year period prior to the Petition Date, including those assets identified at Exhibit 1.2.17 hereto.

1.2.18 "Creditors' Committee" means the official committee of unsecured creditors appointed in Debtor's Chapter 11 case pursuant to section 1102(a) of the Bankruptcy Code, as such committee may be reconstituted from time to time.

1.2.19 "Creditors' Trust" means the trust that is created pursuant to Article 5.2 of this Plan and the Creditors' Trust Agreement to facilitate the administration and liquidation of the Transferred Assets and ~~distributions to beneficiaries thereof,~~payment of Allowed Claims in Class 5, as more specifically set forth in the Creditors' Trust Agreement.

1.2.19A "Creditors' Trust Administrative Expenses" has the meaning assigned to that term in the Creditors' Trust Agreement.

1.2.20 "Creditors' Trust Agreement" means the agreement by and among Debtor, the ~~Plan Administrator~~Trustee and the Executive Board governing the Creditors' Trust, a form of which is attached hereto as Exhibit 1.2.20.

1.2.21 "Debtor" means Don J. Simplot, including in his capacity as debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

1.2.22 "Debtor's El Paso Property" means that real property in Canyon County, Idaho described at Exhibit 1.2.22 hereto.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 3

1.2.23 "Debtor's Share" means, with respect to the Post-Effective Date Earnings, 75% of the before tax amount thereof.

1.2.24 "Disclosure Statement" means the disclosure statement that relates to this Plan, as approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017, 3017 on December 19, 2007, as such disclosure statement may be amended, modified or supplemented from time to time.

1.2.25 "Disputed Claim" means any claim against Debtor or any portion thereof that is not an Allowed Claim or a disallowed claim, as the case may be.

1.2.26 "Distribution Reserve" means the reserve described in Article 8.3.2 of this Plan.

1.2.27 "Effective Date" means the first Business Day on which all conditions set forth in Article 9.1 of this Plan have been either satisfied or waived as provided in Article 9.2 of this Plan.

1.2.28 "Estate Representative" means the person designated pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code to enforce all of the bankruptcy estate's and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Retained Assets and to administer and carry out the objectives of this Plan, and any successor thereto. The Estate Representative and the Trustee of the Creditors' Trust shall always be the same person. The Estate Representative shall initially be Ronald Greenspan. The granting of a right or power to the Estate Representative under this Plan shall likewise authorize the Estate Representative to exercise such power or right in his/her right as Trustee.

1.2.29 1.2.28 "Executive Board" means the Executive Board of the Creditors' Trust possessing the governance and oversight authority specifically set forth in this Plan and Creditors' Trust Agreement.

1.2.30 1.2.29 "Executory Contract" means "executory contract" and "unexpired lease" as used in section 365 of the Bankruptcy Code.

1.2.31 "Exempt Assets" means those assets, or that portion of the total value of particular assets, identified at Exhibit 1.2.31 hereto

1.2.32 1.2.30 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.2.33 1.2.31 "Garden City Property" means that real property in Garden City, Idaho which is described as Lots 24 and 25, Fairview Acres Subdivision No. 5, according to the

official plat thereof, filed in Book 11 of Plats at Page 619, records of Ada County, Idaho. Title to that real property is vested in Don J. Simplot as custodian for John Ralstin Simplot and April Gwin Simplot.

1.2.34 ~~1.2.32~~ "General Unsecured Claim" means a pre-petition unsecured claim against Debtor that is not entitled to priority under section 507 of the Bankruptcy Code, including any claim for money borrowed or guaranteed, rejection of executory contracts, unsecured deficiency claims, and claims for indemnification, if any.

1.2.35 ~~1.2.33~~ "Interest" means the legal, equitable, contractual and other rights of any holder of a stock interest, membership interest, partnership interest or other equity interest in a corporation, limited liability company, limited partnership, general partnership or other entity, whether or not transferable, and any option, warrant or right, contractual or otherwise, to purchase, sell, subscribe for or otherwise acquire or receive any such interest.

1.2.36 ~~1.2.34~~ "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.2.37 ~~1.2.35~~ "JRSCo" means J.R. Simplot Company, a Nevada corporation.

1.2.38 "JRSCo Documents" means the JRSCo articles of incorporation dated June 28, 1955, as amended on May 21, 1997, and bylaws dated July 21, 2001, the Class A Shareholder Agreement, the Special Resolution of the Board of Directors of JRSCo dated March 11, 1997, the Special Resolution of the Class A Shareholders of JRSCo dated March 11, 1997, six separate consents of Class B Capital Stockholders of JRSCo, each dated March 24, 1997, and, to the extent it is applicable to the Debtor's bankruptcy estate, the J.R. Simplot Company Preferred Stock Shareholder Agreement dated as of May ___, 1997.

1.2.39 "JRSCo Interests" means all of the bankruptcy estate's rights, powers, title, interests, and claims in and to Interests in JRSCo and the JRSCo Documents.

1.2.40 ~~1.2.36~~ "Other Priority Claim" means a claim entitled to priority under section 507(a) of the Bankruptcy Code other than a priority tax claim or an administrative claim.

1.2.41 ~~1.2.37~~ "Partners" means the past, present, or future partners of the Partnership other than Debtor, and their principals, attorneys, and agents.

1.2.42 ~~1.2.38~~ "Partnership" means DJS Properties L.P., an Idaho limited partnership.

1.2.43 ~~1.2.39~~ "Partnership Agreement" means that Amended and Restated Agreement of Limited Partnership of DJS Properties L.P., dated as of March 6, 2000 by and between Don J. Simplot, as the General Partner, and Don J. Simplot and certain of the Partners as Limited Partners.

~~1.2.40     "Partnership Claims" means all claims and rights~~

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 5

1.2.44 "Partnership Claims" means all claims, title, interests, rights, and powers of Debtor's bankruptcy estate ~~against and relating to, all Interests of Debtor's bankruptcy estate in, and all defenses of the bankruptcy estate against claims of, the Partnership and the Partners, including without limitation those claims, rights, Interests, and defenses identified in clauses (i)-(xvii) of Article 5.3.1 hereof,~~ and the Debtor in, against, and relating to, all Interests in the Partnership, claims against the Partnership and the Partners, and all defenses against claims of the Partnership and the Partners, including, without limitation: (a) the bankruptcy estate's claims against the Partnership for approximately $9,000,000 in respect of money owed the bankruptcy estate by the Partnership; (b) the bankruptcy estate's general partnership Interest in the Partnership of approximately 2%; (c) the bankruptcy estate's limited partnership Interest in the Partnership of approximately of 73.4%; (d) the bankruptcy estate's claim that it holds all other rights of a general partner and a limited partner under the Partnership Agreement and applicable bankruptcy and non-bankruptcy law; (e) the bankruptcy estate's claim of ownership of certain assets which the Partnership also claims that it owns, including, without limitation, the Contested Assets; (f) Avoidance Actions against the Partnership, including, without limitation, claims under section 544 of the Bankruptcy Code with respect to the Contested Assets and fraudulent conveyance claims under sections 544 and 548 of the Bankruptcy Code with respect to the Conveyed Assets; (g) the bankruptcy estate's claims that certain provisions of the Partnership Agreement are unenforceable under bankruptcy law and that certain provisions of the Partnership Agreement are not enforceable against the bankruptcy estate under applicable non-bankruptcy law; (h) any right the Debtor or the bankruptcy estate may have to assume or reject the Partnership Agreement to the extent it is determined to be an Executory Contract; (i) the Debtor and the bankruptcy estate's damage claims against the Partners for violation of the automatic stay for purportedly replacing the Debtor as the general partner of the Partnership or otherwise limiting the Debtor and the bankruptcy estate's rights under the Partnership Agreement; (j) the Debtor and the bankruptcy estate's claims that the Partners said purported replacement and/or limitation rights was void and without effect because it was a violation of the automatic stay; (k) the Debtor and the bankruptcy estate's claims that the Partnership is obligated to be dissolved pursuant to the terms of the Partnership Agreement; (l) the bankruptcy estate's claim that since all of the Partners did not consent to said purported replacement and/or limitation of rights the action is void and without effect pursuant to the terms of the Partnership Agreement; (m) the bankruptcy estate's claims for breach of fiduciary duty, including claims arising out of said purported replacement and/or limitation of rights; (n) the bankruptcy estate's claim that the Debtor's consent as a limited partner to said purported replacement and/or limitation of rights was not done in the ordinary course of business; (o) all other rights of the general partner and/or a limited partner under the Partnership Agreement and/or damage claims against the Partnership and/or the Partners; (p) claims that the Partnership is merely the alter-ego of Don J. Simplot, and that all of the Partnership's assets should be as a result thereof be treated as assets of the bankruptcy estate (this might also be called a "reverse piercing" argument); (q) claims that the Partnership is not entitled to setoff the amounts it owes Debtor's estate against the prepetition claims it holds against Debtor's estate; (r) claims that the Partnership's allowable pre-petition unsecured claims against the estate, if any, should be subordinated; (s) all of the bankruptcy estate's defenses to claims of the Partnership and/or the Partners against it; and (t) all other Interests, claims, rights, powers, and defenses that the bankruptcy estate may have in, against, or concerning the Partnership and the Partners, and the assets of the Partnership, including those arising under the Partnership Agreement, bankruptcy law, and applicable non-

**MODIFIED** JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 6

Exhibit A - Page 13 of 62
Opp of DJS Properties to
Motion for Determination

bankruptcy law.  These are collective claims and defenses that have been asserted by the Debtor-in-Possession or the Creditors' Committee that exist against the Partners and the Partnership.  The Debtor does not agree that a cause of action exists as to all of the specified claims and defenses.  All claims and defenses, whether agreed to by Debtor or not, however, are contained within this definition.

1.2.45~~1.2.41~~ "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof or other entity.

1.2.46~~1.2.42~~ "Petition Date" means January 4, 2006, the date on which Debtor filed his petition for reorganization relief commencing the Chapter 11 case.

1.2.47~~1.2.43~~ "Plan" means this joint reorganization plan proposed jointly by Debtor and the Creditors' Committee, together with all exhibits hereto, as it may be further amended, modified or supplemented from time to time in accordance with section 1127 of the Bankruptcy Code, including any Plan Supplements.

~~1.2.44    "Plan Administrator" means the individual designated by Debtor and the Creditors' Committee who shall serve as the trustee of the Creditors' Trust and shall have certain additional post-Effective Date responsibilities to administer and carry out the objectives of this Plan, and any successor thereto.  The Plan Administrator shall be Ronald Greenspan.  The granting of a power or right to the Plan Administrator under this Plan shall likewise authorize the Plan Administrator to exercise such power or right in his/her capacity as Trustee.~~

1.2.48~~1.2.45~~ "Plan Supplement" means the compilation of documents or forms of documents specified in this Plan, including any exhibits to this Plan not included herewith, that the Creditors' Committee (with the consent of Debtor) will file with the Bankruptcy Court on or before the date that is fourteen (14) days prior to the date of the Confirmation Hearing.

1.2.49~~1.2.46~~ "Post-Effective Date Assets" means all property of the kind specified in sections 541 and 1115 of the Bankruptcy Code that Debtor acquires after the Effective Date but before the closure of this Chapter 11 case, including without limitation inheritances and the Trust's Share of the Post-Effective Date Earnings, except for (i) the ~~Retained~~Exempt Assets, income that is part of the ~~Retained~~Exempt Assets, income that Debtor earns directly from the ~~Retained~~Exempt Assets, property acquired with the ~~Retained~~Exempt Assets and proceeds of the ~~Retained~~Exempt Assets, and (ii) Debtor's Share of the Post-Effective Date Earnings.  Post-Effective Date Assets shall further include without limitation (i) any assets owned by Debtor prior to the Effective Date but which Debtor failed to identify or disclose in this bankruptcy case, but which Debtor or ~~Plan Administrator~~Estate Representative discovers after the Effective Date; and (ii) any tax refunds that are owing or paid in respect of Debtor's income or losses prior to the Effective Date.

1.2.50~~1.2.47~~ "Post-Effective Date Earnings" means all of Debtor's earnings from services performed by Debtor during that period which commences on the Effective Date and

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 7

ends on the first to occur of the following: (i) the day on which this bankruptcy case is closed, dismissed, or converted; or (ii) the day which is the five year anniversary of the Effective Date.

1.2.51~~1.2.48~~ "Pro Rata" means, at any time, the proportion that the face amount of an Allowed Claim in a particular Class bears to the aggregate face amount of all claims (including Disputed Claims, but excluding disallowed claims) in that Class, unless this Plan provides otherwise.

1.2.52~~1.2.49~~ "Professional Fee Claims" shall have the meaning given it in Article 14.1.1 of this Plan.

1.2.53~~1.2.50~~ "Protective Order" means that certain "Stipulated Order and Protective Order Regarding Rule 2004 Exams and Confidentiality (Simplot Parties)" entered in this Chapter 11 case on or about May 9, 2006.

~~1.2.51      "Reorganized Debtor" means Don J. Simplot after the Effective Date.~~

1.2.54 [Intentionally Deleted.]

1.2.55~~1.2.52~~ "Reserve" means the maximum amount of cash that the ~~Plan Administrator~~Estate Representative estimates is required to satisfy Allowed Claims described in Articles 3.1.1, ~~3.1.2,~~ 3.2, 14.1.1, 14.1.2, and the first sentence of 14.2 hereof.

1.2.56~~1.2.53~~ "Retained Assets" means ~~those assets, or that portion of the total value of particular assets, identified at Exhibit 1.2.53 hereto~~the Partnership Claims, the JRSCo Interests, and the JRSCo Documents.

1.2.57~~1.2.54~~ "Secured Claim" means a claim, other than a Setoff Claim, that is secured by a lien that is valid, perfected and enforceable, and not avoidable, on property in which Debtor has an interest, or the proceeds of the sale of such property, to the extent of the value, as of the Petition Date, of such interest or lien as determined by a Final Order of the Bankruptcy Court under section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the ~~Plan Administrator~~Estate Representative and the holder of such claim.

1.2.58~~1.2.55~~ "Setoff Claim" means a claim of a holder that has a valid right of setoff with respect to such claim, which right is enforceable under section 553 of the Bankruptcy Code as determined by a Final Order or as otherwise agreed in writing by the ~~Plan Administrator~~Estate Representative, to the extent of the amount subject to such right of setoff.

1.2.59~~1.2.56~~ "Transfer Restrictions" means, as applicable, as to the Interests in the Partnership the restrictions and rights set forth in the Partnership Agreement pertaining to a transfer of an Interest in the Partnership, including, without limitation, those pertaining to a "Defaulting Partner" and an "Assignee" as those terms are defined in the Partnership Agreement (Sections 2.6 and 2.11) and as to JRSCo the transfer restrictions contained in the JRSCo Documents, including, without limitation, those set forth in the JRSCo articles of incorporation (Article IV, Section 6).

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 8

1.2.60"Transferred Assets" means (i) all claims, rights, powers, defenses, Interests, properties and assets of Debtor's bankruptcy estate as of the Effective Date of any nature whatsoever, including without limitation the Causes of Action (except those which are part of the Retained Assets), the Avoidance Actions, the Partnership Claims (except which are part of the Retained Assets), and the Miscellaneous Transferred Assets identified at Exhibit 1.2.561.2.60 hereto, and (ii) the Post-Effective Date Assets; provided, however, that the Transferred Assets shall not include (a) the Retained Assets, (b) the Reserve, or (c) the Exempt Assets or (d) the Garden City Property.

1.2.611.2.57 "Trustee" means the Trustee of the Creditors' Trust and any successor thereto.

1.2.621.2.58 "Trust's Share" means, with respect to the Post-Effective Date Earnings, 25% of the before tax amount thereof.

1.2.631.2.59 "Voting Deadline" means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received.

### 1.3    Rules of Interpretation.

In this Plan (a) any reference to a contract, instrument, release, indenture or other agreement or document as being in a particular form or on particular terms and conditions means the agreement or document substantially in that form or on those terms and conditions; (b) any reference to an existing document or exhibit means that document or exhibit as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and Sections are for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, and (f) the rules of construction in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

### 1.4    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

ARTICLE II.
### CLASSIFICATION OF CLAIMS AND INTERESTS

### 2.1    Introduction.

All claims, except administrative claims and priority tax claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 9

claims and priority tax claims, as described below, have not been classified and are not entitled to vote on this Plan.

A claim is placed in a particular Class only to the extent that the claim falls within the description of that Class, and is classified in other Classes to the extent that any portion of the claim or Interest falls within the description of such other Classes. A claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such claim is an Allowed Claim in that Class and such claim has not been paid, released, or otherwise settled prior to the Effective Date.

### 2.2    Unclassified Claims (not entitled to vote on the Plan).

#### 2.2.1    *Administrative Claims.*

#### 2.2.2    *Priority Tax Claims.*

### 2.3    Unimpaired Class of Claims (deemed to have accepted the Plan and, therefore, not entitled to vote).

#### 2.3.1    *Class l: Other Priority Claims.*

Class l consists of all Other Priority Claims against Debtor, if any. There are no unpaid Other Priority Claims consisting of domestic support obligations, as defined in section 101(14A) of the Bankruptcy Code.

#### 2.3.2    *Class 3 Secured Claim of Diversified Financial Services, Inc.*

Class 3 consists of the claims of Diversified Financial Services, LLC ("DFS") (i) in respect of that Retail Installment Contract (Security Agreement) between Don J. Simplot and Silver Creek Irrigation dated September 17, 2001, secured by a security interest in two agricultural pivots and related equipment, and (ii) in respect of that Retail Installment Contract (Security Agreement) between Don J. Simplot and Silver Creek Irrigation Co. dated September 17, 2004, secured by a security interest in one agricultural pivot and related equipment.

Pursuant to an Order Removing Stay and Waiver Under FRBP 4001 (the "Stipulated Order") (Docket No. 534), DFS sold the three agricultural pivots subject to its liens, has from the proceeds of the sale been paid in full the amounts due it, and has paid the bankruptcy estate the sale proceeds in excess of the amounts due it. DFS is therefore not impaired by the Plan and will not receive any further payments under this Plan.

### 2.4    Impaired Classes of Claims (entitled to vote on the Plan).

#### 2.4.1    *Class 2: Secured Claims of PHH Mortgage Corp.*

Class 2 consists of (i) the claims of PHH Mortgage Corp. ("PHH") in respect of that Adjustable Rate Note dated November 16, 2000 in the principal face amount of $2,000,000, allegedly secured by an interest in Debtor's El Paso Property by that Deed of Trust of even date recorded in the official records of the Canyon County Recorder as Instrument No. 200040869,

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 10

and (ii) the claims of PHH allegedly secured by an interest in Debtor's El Paso Property by that Deed of Trust dated November 16, 2000 recorded in the official records of the Canyon County Recorder as Instrument No. 200040870.  Class 2 does not include the claims of PHH in respect of that Adjustable Rate Note dated February 20, 1997 (the "1997 Note") in the principal face amount of $130,000, secured by that Mortgage of even date recorded in the official records of the Canyon County Recorder as Instrument No. 9705267.  ~~This latter claim is classified as a General Unsecured Claim.~~

> ~~2.4.2   Class 3: Secured Claim of Diversified Financial Services, LLC.~~Class 3 ~~consists of the claims of Diversified Financial Services, LLC ("DFS") (i) in respect of that Retail Installment Contract (Security Agreement) between Don J. Simplot and Silver Creek Irrigation dated September 17, 2001, allegedly secured by a security interest in two agricultural pivots and related equipment, and (ii) in respect of that Retail Installment Contract (Security Agreement) between Don J. Simplot and Silver Creek Irrigation Co. dated September 17, 2004, allegedly secured by a security interest in one agricultural pivot and related equipment.~~The 1997 Note is secured by the property identified in item 2 of Exhibit 1.2.17 (the Hollow Road property) and will not be paid under or treated in this Plan except that in the event this property is recovered as an asset of the bankruptcy estate or, as applicable, the Creditors' Trust, the claim shall be paid in accordance with the terms of the 1997 Note.

> 2.4.2   [Intentionally omitted.]

> 2.4.3   *Class 4: Claims of April Dawn Simplot and John Ralstin Simplot.*

Class 4 consists of all claims of April Dawn Simplot and John Ralstin Simplot, including the claim that they beneficially own the Garden City Property free and clear of any interest of the bankruptcy estate except for the bankruptcy estate's legal title as custodian under the Uniform Transfers to Minors Act.

> 2.4.4   *Class 5: General Unsecured Claims.*

Class 5 consists of all General Unsecured Claims that exist against Debtor except for the unsecured claims of April Dawn Simplot and John Ralstin Simplot (which are included in Class 4).  Class 5 includes claims against Debtor for, without limitation, monies borrowed, rejection of executory contracts and unexpired leases, unsecured deficiency claims, and claims for indemnification, if any.

> 2.4.5   *Class 6: Claims of Don J. Simplot.*

Class 6 consists of all of Debtor's ownership interests in the assets of the bankruptcy estate, and his claims against the bankruptcy estate.

ARTICLE III.
**TREATMENT OF CLAIMS AND INTERESTS**

**3.1   Unclassified Claims.**

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 11

### 3.1.1 *Administrative Claims.*

The ~~Plan Administrator~~Estate Representative shall pay from the Reserve, to each holder of an Allowed Claim that is an administrative claim, in full satisfaction, settlement, release, and discharge of and in exchange for such allowed administrative claim, cash equal to the unpaid portion of such allowed administrative claim on or as soon as reasonably practicable after the latest of (a) the Effective Date, (b) the date that is five (5) Business Days after the date an administrative claim becomes an Allowed Claim, or (c) the date that is five (5) Business Days after the date an administrative claim becomes payable pursuant to any agreement between the ~~Plan Administrator~~Estate Representative and the holder of an administrative claim, except as otherwise provided for in the Plan, and subject to the requirements of Article 14.1.2 of the Plan for Professional Fee Claims and substantial contribution claims; *provided, however,* that obligations incurred by the Creditors' Trust after the Confirmation Date, including Professional Fee Claims, shall not be subject to applications to the Bankruptcy Court and may be paid by the Creditors' Trust in the ordinary course of its ~~business~~operations and without further Bankruptcy Court approval. There are no unpaid postpetition claims consisting of domestic support obligations, as defined in section 101(14A) of the Bankruptcy Code, and as provided for in section 1129(a)(14) of the Bankruptcy Code. Notwithstanding anything else contained herein, the holder of an Allowed Claim that is an administrative claim that has arisen with respect to or in respect of the ~~Retained~~Exempt Assets shall be paid by Debtor solely from such ~~Retained~~Exempt Assets. Such allowed administrative claims shall not be paid from assets of the bankruptcy estate, the Creditors' Trust, or the Reserve. Debtor shall not receive a discharge of such claims until such claims are paid in full. The holders of such claims shall not be subject to the injunction provided for in Article 12.5 hereof insofar as Debtor or the ~~Retained~~Exempt Assets are concerned.

### 3.1.2 *Priority Tax Claims.*

(a)    The ~~Plan Administrator~~Trustee shall pay from the ~~Reserve~~Creditors' Trust, to each holder of an Allowed Claim that is a priority tax claim, at the sole discretion of the ~~Plan Administrator~~Trustee, and in full satisfaction, settlement, release and discharge of and in exchange for such allowed priority tax claim, (a) cash equal to the unpaid portion of such allowed priority tax claim, (b) cash payments made in equal annual installments beginning on or before the first anniversary following the Effective Date, with the final installment payable not later than the fifth (5th) anniversary of the Petition Date, together with interest on the unpaid portion thereof at the ~~Case Interest Rate~~rate provided in Section 511(b) of the Bankruptcy Code from the Effective Date through the date of payment thereof, or (c) such other treatment as to which the ~~Plan Administrator~~Estate Representative and such holder shall have agreed on in writing; *provided, however,* that the ~~Plan Administrator~~Estate Representative reserves the right to pay any allowed priority tax claim or any remaining balance of any allowed priority tax claim, in full at any time on or after the Effective Date without premium or penalty; and *provided further,* that no holder of an allowed priority tax claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising after the Petition Date with respect to or in connection with such allowed priority tax claim. Notwithstanding anything else contained herein, the holder of an Allowed Claim that is a priority tax claim that has arisen with respect to or in respect of the ~~Retained~~Exempt Assets shall be paid by Debtor solely from

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 12

such ~~Retained~~Exempt Assets.  Such allowed priority tax claims shall not be paid from assets of the bankruptcy estate, the Creditors' Trust, or the Reserve.  ~~Debtor shall not receive a discharge of such claims until such claims are paid in full.  The holders of such claims shall not be subject to the injunction provided for in Article 12.5 hereof insofar as Debtor or the Retained Assets are concerned.~~

(b)    It is understood by the Debtor that the discharge granted by 11 U.S.C. §1141(d) shall be and the same is modified as to the tax debt provided for in this Plan, and discharge of any tax debt under this Plan shall not be effective until all State of Idaho taxes provided for under this Plan have been paid in full.  Nothing herein, however, shall alter this Plan as to the stated party's (Debtor or Estate Representative/Trustee) obligation to pay those debts owed to the State of Idaho as provided in this Plan.

If either the Idaho State Tax Commission or the Internal Revenue Service declares that the Estate Representative/Trustee appointed under the Plan is in default in payment of, as applicable, the pre-petition state and federal tax obligations under the Plan, then, as applicable, the entire Idaho State Tax or the Federal Tax pre-petition liability shall become due and payable within thirty (30) days of the written demand to the Debtor and the Estate Representative/Trustee if the alleged default has not been cured.  The foregoing is not a cross default provision  Further the Idaho State Tax Commission and the Internal Revenue Service shall determine whether the obligation is a Debtor obligation under the Plan or the obligation of the Estate Representative/Trustee under the Plan and it shall provide written notice of that default to the respective obligor (Debtor or the Estate Representative/Trustee).

If full payment is not made within thirty (30) days of such demand, or other arrangement is not agreed to in writing, the Idaho State Tax Commission or, as applicable, the Internal Revenue Service, may collect any unpaid liabilities through the administrative collection provisions of the Idaho State Tax Commission or, as applicable, the Internal Revenue Service from the Debtor if it is a Debtor tax obligation under the Plan or from the bankruptcy estate and/or the Creditors' Trust if it is not the Debtor's tax obligation under the Plan.

## 3.2    Unimpaired Class of Claims.

### 3.2.1    *Class 1: Other Priority Claims.*

On, or as soon as reasonably practicable after, the later of (i) the Effective Date or (ii) the date an Other Priority Claim becomes an Allowed Claim, each holder of an allowed Other Priority Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such allowed Other Priority Claim, as applicable, (a) cash in an amount equal to the unpaid portion of such allowed Other Priority Claim or (b) such other treatment as to which the ~~Plan Administrator~~Estate Representative and such holder shall have agreed upon in writing.

## 3.3    Impaired Classes of Claims.

### 3.3.1    *Class 2: Secured Claims of PHH ~~Mortgage Corp.~~*

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 13

The transfer of Debtor's El Paso Property to the Creditors' Trust shall be subject to the deed of trust liens of PHH except to the extent such liens are subsequently disallowed or avoided. The Debtor's El Paso Property shall be sold either by Debtor before the Effective Date or by ~~Trustee~~Estate Representative after the Effective Date. The sale shall be subject to Bankruptcy Court approval. To the extent that PHH's secured claim is an Allowed Claim, the amount of such Allowed Claim shall be paid from the net proceeds of sale of that portion of Debtor's El Paso Property which is subject to PHH's deeds of trust. If such a sale does not realize the full amount of PHH's Allowed Claim, then any deficiency shall be a General Unsecured Claim hereunder. If no such sale is consummated within 18 months after the Effective Date, then PHH shall be entitled to enforce its security interests to the extent permissible under applicable non-bankruptcy law. ~~Trustee may, in his or her discretion, make~~As provided in the Order Granting Conditional Relief From Section 362 Stay and Approving Stipulation (Docket No. 571) (the "Order"), interest only payments shall be made to PHH ~~in respect of its claim prior to sale in order to protect the Creditors' Trust's interest in the El Paso Property.~~ on or before the 15th of each month. The current interest only payment on the $2,000,000.00 loan is $9,988.06 per month, and the current interest only payment on the $1,000,000.00 loan is $5,921.81 per month. It is acknowledged that the interest rate under the notes is adjustable and that the required interest only payment amounts may vary as interest rates fluctuate pursuant to the terms of these notes. The terms and conditions of the Order are incorporated in this Plan as if set forth herein. As provided in Section 2.4.1, the 1997 Note will not be paid under or treated in the Plan except that in the event the Hollow Road property is recovered as an asset of the bankruptcy estate or, as applicable, the Creditors' Trust, the claim shall be paid in accordance with the terms of the 1997 Note.

  3.3.2 *Class 3: Secured Claim of Diversified Financial Services, LLC*[Intentionally omitted.]

Exhibit A - Page 21 of 62
Opp of DJS Properties to
Motion for Determination