~~Subject to the requirements of the Bankruptcy Code, Debtor may, prior to the Effective Date, sell the three agricultural pivots subject to the lien of DFS or abandon those pivots to DFS. Should the pivots remain in the bankruptcy estate as of the Effective Date, the transfer of the pivots to the Creditors' Trust shall be subject to the security interests of DFS except to the extent such liens are subsequently disallowed or avoided. The pivots shall be sold by Trustee after the Effective Date. The sale shall be subject to Bankruptcy Court approval. To the extent that DFS's Secured Claim is an Allowed Claim, the amount of such Allowed Claim shall be paid from the net proceeds of sale of the collateral. If such a sale does not realize the full amount of DFS's Allowed Claim, then any deficiency shall be a General Unsecured Claim hereunder. Alternatively, Trustee may return the pivots to DFS. In that event, DFS shall dispose of the pivots in a commercially reasonable fashion. If such a disposition does not realize the full amount of DFS's Allowed Claim, then any deficiency shall be a General Unsecured Claim hereunder.~~

### 3.3.3   Class 4: Claims of April Dawn Simplot and John Ralstin Simplot.

The interest of the bankruptcy estate in and to the Garden City Property shall be transferred to the class members in full satisfaction of any and all claims they assert against the bankruptcy estate, including their unsecured claims.

### 3.3.4   Class 5: General Unsecured Claims.

~~On the Effective Date or as soon as practicable thereafter, each~~Each holder of an ~~allowed~~Allowed General Unsecured Claim shall ~~receive, in full satisfaction, settlement and release of and in exchange for such Allowed Claim, a Pro Rata beneficial interest in the Creditors' Trust and in all distributions from the Creditors' Trust deriving from the Transferred Assets or proceeds thereof as set forth in the Creditors' Trust Agreement~~retain that Allowed Claim, and shall receive payments Pro Rata from the proceeds of Creditors' Trust, sales of Transferred Assets, and from amounts received by the Debtor's bankruptcy estate in connection with Retained Assets, in partial satisfaction of that Allowed Claim. As to any creditor whose claim against Debtor is non-dischargeable, the consideration received in respect of this Article 3.3.4 shall not be in full satisfaction, settlement, or release of such person's claim.

### 3.3.5   Class 6:  Claims of Don J. Simplot.

On the Effective Date, on account of, and in full and complete satisfaction of, Debtor's ownership interests in the assets of the bankruptcy estate and his claims against the bankruptcy estate, the ~~Retained~~Exempt Assets shall be transferred from the bankruptcy estate to Don J. Simplot free and clear of all claims against the bankruptcy estate.

Provided, however, in the event Allowed Claims in Class 5 are paid the full amount of their claims and are also paid in full the post-petition interest thereon at the rate of twelve percent (12%) per annum and all other obligations and expenses of the bankruptcy estate and the Creditors' Trust have been paid in full then, in that event, and only in that event, any remaining property in either the bankruptcy estate or the Creditors' Trust shall be transferred to the Debtor. The Debtor shall not, however, have any right whatsoever to inquire into or challenge any settlement or compromise by or any other action, or failure to take action, of the Estate.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 15

Representative or the Trustee.  Notwithstanding the foregoing, the Debtor shall have the right to bid on the sale of assets of the Creditors' Trust and the bankruptcy estate and nothing herein shall be construed as a limitation on Debtor from objecting to or otherwise opposing any request to delay the entry of a discharge under Bankruptcy Code section 1141(d) beyond five years of the Effective Date of the Plan.

**3.4     Allowed Claims.**

Notwithstanding any provision herein to the contrary, Trustee shall make distributions only to holders of Allowed Claims.  No holder of a Disputed Claim shall receive any distribution on account thereof until and to the extent that its Disputed Claim becomes an Allowed Claim. The presence of a Disputed Claim in any Class shall not be a cause to delay distribution to Allowed Claims in that Class.  Any holder of a Disputed Claim that becomes an Allowed Claim after distributions have commenced shall receive its Pro Rata distribution, without post-petition interest (except as otherwise expressly provided in this Plan), as set forth in Article 8.4 of this Plan.

**3.5     Accrual of Post-Petition Interest.**

In accordance with section 502(b)(2) of the Bankruptcy Code, the amount of all claims against all Debtors shall be calculated as of the Petition Date.  Except as otherwise provided elsewhere in this Plan or in an order of the Bankruptcy Court, no holder of an Allowed Claim shall be entitled to the accrual of post-petition interest or the payment by Debtor of post-petition interest on account of such Allowed Claim for any purpose.  Notwithstanding the foregoing, holders of Allowed Claims that are secured claims shall be entitled to post-petition interest to the extent provided for in Bankruptcy Code section 506(b).

ARTICLE IV.
**TREATMENT OF EXECUTORY CONTRACTS**

**4.1     Executory Contracts.**

4.1.1  This Article 4 shall not apply to or control the Partnership Claims, including, but not limited to, the Partnership Agreement, and it shall not apply to or control the JRSCo Documents.  The treatment of the Partnership Claims and the JRSCo Documents shall be governed by Article V.

4.1.2  The Debtor does not believe he is a party to any Executory Contracts except possibly the following:

(a)     The Partnership claims that the Partnership Agreement is an Executory Contract.  This is disputed and it is asserted that the Partnership Agreement is not an Executory Contract.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 16

(b)     JRSCo may claim that some of the JRSCo Documents are not Executory Contracts. The Creditors' Committee may claim that some of the JRSCo Documents are Executory Contracts.

(c)     The timeshare maintenance agreement with Operadora Turistica pertaining to the Debtor's Mazatlan El Cid timeshare.

(d)     The timeshare maintenance agreement with Resort Maintenance, LLC pertaining to the Debtor's Mazatlan El Cid timeshare.

(e)     Any agreement between the Debtor and April and John Simplot pertaining to the management of property. Any such agreement is fully settled and resolved by the treatment of April and John Simplot as Class 4 claimants and April and John Simplot shall not have any claims against the Debtor or the bankruptcy estate as a result of any such alleged agreement.

(f)     An agreement dated January 2, 2006 for the purchase of the Debtor's El Paso Property between, among others, the Debtor and M&H Development. This agreement has been terminated due to the conditions precedent not being satisfied and, as a result, M&H Development does not have any claims against the Debtor or the bankruptcy estate by virtue of the agreement.

(g)     The back-up agreement to purchase the Debtor's El Paso Property between, among others, the Debtor and Scott Lamm and Robert Haggett. This agreement has terminated due to the conditions precedent not being satisfied and, as a result, Scott Lamm and Robert Haggett do not have any claims against the Debtor or the bankruptcy estate by virtue of this agreement.

Although the foregoing is a list of all the contracts which the Debtor believes may possibly be Executory Contracts, in the event the Debtor is a party to any contract which may be determined to be an Executory Contract then, in that event, any such Executory Contract shall be covered by this Plan, including, without limitation, this Article IV. In that regard, no Executory Contract shall "ride through" this bankruptcy proceeding.

4.1.3 4.1.1-Except as otherwise provided in this Plan, all of Debtor's rights under any Executory Contract to which Debtor is a party shall transfer to the Trust in accordance with Article 5 hereof. Trustee shall thereafter enjoy with respect to such Executory Contracts all rights and powers that Debtor had as a debtor in possession under the Bankruptcy Code, including the right to assume or reject such Executory Contracts. The non-debtor parties to such Executory Contracts shall enjoy all rights and powers as they enjoyed with respect to such contracts during Debtor's Chapter 11 Case prior to the Confirmation Date.

4.1.4 4.1.2-Trustee's assumption or rejection of Executory Contracts shall be subject to Bankruptcy Court approval obtained prior to the termination the Creditors' Trust. Except as otherwise provided in the Plan, Trustee shall be entitled to assume or reject the

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 17

Executory Contracts notwithstanding any provision in section 365 of the Bankruptcy Code that might otherwise require an earlier assumption or rejection.

4.1.5 ~~4.1.3~~ Notwithstanding the foregoing, Debtor reserves the right, at any time prior to the Confirmation Date, to seek approval of the Bankruptcy Court to reject any Executory Contract.

4.1.6 ~~4.1.4~~ Should litigation be commenced to determine the extent to which a particular contract or unexpired lease is an Executory Contract, then Trustee shall be entitled to bring a separate, subsequent motion to assume or reject the contract or unexpired lease to the extent it is an Executory Contract. The motion to assume or reject need not be brought as part of the initial litigation.

**4.2     Claims Based on Rejection of Executory Contracts.**

If the rejection by Debtor or Trustee, pursuant to this Plan or otherwise, of an Executory Contract results in a claim for damages, then the non-debtor party to such Executory Contract shall be entitled to file a proof of claim in accordance with Bankruptcy Code section 502(g). The time for filing such a claim shall be determined by the Bankruptcy Court in accordance with Bankruptcy Rule 3002(c)(4).

ARTICLE V.
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1     Reserve and Retained Assets.**

5.1.1 ~~5.1~~ *Reserve.*

The ~~Plan Administrator~~Estate Representative shall on the Effective Date establish the amount of the Reserve, and Debtor shall on the Effective Date convey said amount in cash to ~~Plan Administrator~~Estate Representative subject to the terms of this Plan. ~~Plan Administrator~~Estate Representative shall set such sum aside as the Reserve. The ~~Plan Administrator~~Estate Representative, subject to the terms of this Plan and the oversight of the Bankruptcy Court, shall have sole control of the Reserve. The ~~Plan Administrator~~Estate Representative shall use the Reserve to satisfy all Allowed Claims described in Articles 3.1.1, 3.1.2, 3.2, 14.1.1, 14.1.2, and the first sentence of Article 14.2 hereof. After the payment of all such Allowed Claims, the ~~Plan Administrator~~Estate Representative shall convey any remaining monies from the Reserve to the Creditors' Trust.

5.1.2 *Retained Assets.*

5.1.2.1 Background Statement.

DJS and the Partners claim that the Partnership Agreement is an Executory Contract, that it cannot be assumed by the debtor-in-possession, and that any transfer of the bankruptcy estate's Interests in the Partnership to the Creditors' Trust may trigger the Transfer Restrictions contained in the Partnership Agreement. The Creditors' Committee

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 18

asserts that the Partnership Agreement is not an Executory Contract and that any transfer of such Interests in the Partnership to the Creditors' Trust will not result in the Transfer Restrictions being triggered. JRSCo and the shareholders of JRSCo other than the Debtor may claim that any transfer of the JRSCo Interests to the Creditors' Trust will trigger the Transfer Restrictions and that some of the JRSCo Documents may not be Executory Contracts. The Creditors' Committee claims that any transfer of the JRSCo Interests to the Creditors' Trust will not trigger the Transfer Restrictions and that some of the JRSCo Documents may be Executory Contracts. Since the value of the bankruptcy estate's Interests in the Partnership and JRSCo may be adversely impacted if the Transfer Restrictions were triggered by the transfer of the Retained Assets to the Creditors' Trust, the Partnership Claims, the JRSCo Interests, and the bankruptcy estate's rights and, to the extent they are enforceable against the bankruptcy estate, its obligations under the JRSCo Documents will not be presently transferred to the Creditors' Trust, but are expressly retained by the bankruptcy estate and they shall be administered by the Estate Representative as provided in this Plan.

### 5.1.2.2 Retained Assets.

(a)     The Retained Assets are, and shall be, for the sole and exclusive benefit of the holders of Allowed Claims in Class 5. Debtor shall have no rights to, or interest in, the Retained Assets. Any attorney-client privilege, work product privilege or other privilege or immunity attaching to any documents or communications (either written or oral) related to the Retained Assets shall remain with the bankruptcy estate and shall be controlled, exercised and/or waived solely by the Estate Representative.

(b)     The Retained Assets shall be retained by the bankruptcy estate and no part of the Retained Assets shall be transferred to the Creditors' Trust until the sale, liquidation, or monetization of, or other realization upon, any of the Retained Assets. Upon the sale, liquidation, or monetization of or other realization upon any of the Retained Assets, the proceeds thereof shall be immediately transferred by the Estate Representative to the Creditors' Trust and upon receipt by the Creditors' Trust any such proceeds shall be treated in all respects as Transferred Assets.

### 5.1.2.3 Estate Representative.

The Estate Representative shall be, pursuant to Section 1123(b)(3)(B), appointed to enforce all of the bankruptcy estate's and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Retained Assets and to discharge his other obligations under this Plan. The Estate Representative shall have all of the rights and powers of the debtor-in-possession in respect of the Retained Assets, including, without limitation, the right to commence and prosecute litigation and/or contested matters and the right, after first obtaining approval of the Bankruptcy Court, to sell all or any part of the Retained Assets and to compromise and settle claims relating to all or any part of the Retained Assets. The Estate Representative shall be appointed effective as of the entry of the Confirmation Order and shall assume his duties on the Effective Date. The Estate Representative and the Trustee shall always be the same person and in the event someone other than Ron Greenspan is the Trustee then, in that event, such person shall be, without further action or approval, appointed the Estate

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 19

Representative and shall be substituted for any such prior Estate Representative. Accordingly, any person who is the Trustee and ceases to be the Trustee for any reason shall also cease to be the Estate Representative. The Estate Representative's compensation and expenses and all costs and expenses associated with: (i) the Retained Assets; (ii) the enforcement of the bankruptcy estate and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Retained Assets (including, without limitation, professional fees); and (iii) the administration of the bankruptcy estate (including, without limitation, professional fees and taxes) shall be the responsibility of, and shall be paid by, the Creditors' Trust. The term "Trustee" as used in Sections 6.9, 6.10, 6.11, 6.12, 6.14.1, 6.15, and 6.17.3 of the Creditors' Trust shall include the Estate Representative.

### 5.1.2.4 Resolution of Dispute Between Bankruptcy Estate and the Partnership.

(a)     Except as expressly provided in Section 5.1.2.2(b), the Partnership Claims shall be retained by the bankruptcy estate and the Estate Representative shall enforce all of the bankruptcy estate's and, as applicable, the Debtor's rights, title, interests, claims, powers, and defenses in and to the Partnership Claims.

(b)     The Partnership has claims against the bankruptcy estate, including, without limitation, the following: (i) the Partnership has a pre-petition claim against the bankruptcy estate as set forth in that proof of claim filed by it against Debtor in the amount of $14 million; (ii) the Partnership claims ownership of certain assets which Debtor's estate claims that it owns, including without limitation the Contested Assets; (iii) the Partnership claims that Debtor's interest in the Partnership, and any transfer thereof, are subject to all terms of the Partnership Agreement, and (iv) the Partnership has defenses to the claims of Debtor's estate against it, many of which have been raised and disclosed in the Disclosure Statement.

(c)     The claims, interests, rights, title, powers, and defenses identified in Articles 5.1.2.4(a) and 5.1.2.4(b) hereof shall be treated as follows. Absent a settlement between the bankruptcy estate, the Partnership and the Partners, the parties shall litigate their respective positions with respect to the Partnership Claims before the Bankruptcy Court, including, but not limited to, their respective claims to the ownership of the Contested Assets.

(d)     Without limiting the generality of Section 5.1.2.4(c), whether or not the Partnership Agreement is an Executory Contract shall be determined by the Bankruptcy Court. Unless DJS or the Partners have already filed a motion with the Bankruptcy Court seeking to require the Debtor or, as applicable, the Estate Representative, to either reject or, to the extent allowable, assume the Partnership Agreement, within sixty (60) days after the Effective Date the Estate Representative shall file an adversary proceeding in the Bankruptcy Court against the Partners and, to the extent necessary, the Partnership seeking a declaratory judgment upon whether or not the Partnership Agreement is an Executory Contract. This declaratory judgment proceeding may be filed as a separate action and does not need to include any of the other Partnership Claims. In the event a Final Order is entered by the Bankruptcy Court that the Partnership Agreement is an

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 20

Executory Contract then, in that event, the Estate Representative shall, subject to approval of the Bankruptcy Court, and only to the extent allowed in any such Final Order, assume or reject the Partnership Agreement within sixty (60) days after the Final Order, or within such additional time as the Court, for cause, within such sixty-day period, fixes. Pending entry of such Final Order the Estate Representative shall not be required to either assume or reject the Partnership Agreement. In the event the Partnership Agreement is determined by the Bankruptcy Court to be an Executory Contract and in the further event the Partnership Agreement is rejected by the Estate Representative then, in that event, if such rejection results in a claim for damages, then the Partners or, as applicable, the Partnership, shall be entitled to file a proof of claim in accordance with Bankruptcy Code Section 502(g). The time for filing such a claim shall be determined by the Bankruptcy Court in accordance with Bankruptcy Rule 3002(c)(4). Article IV of this Plan shall not apply to the Partnership Agreement.

(e)     Should, after resolution of the disputes (either by Final Order or court approved stipulation) between the Estate Representative, the Partnership and the Partners, the Partnership and/or the Partners have an allowed unsecured claim that is not subordinated, such claim shall be treated as if it were an Allowed Claim in Class 5. If the Partnership and, as applicable, the Partner's claim is allowed but subordinated, then the Partnership and, as applicable, the Partners shall receive nothing in respect of such a claim, except after payment in full to the holders of other Allowed Claims in Class 5.

5.1.2.5 Resolution of Dispute Between Estate Representative and JRSCo.

(a)     Except as expressly provided in Section 5.1.2.2(b), the JRSCo Interests and the bankruptcy estate's rights and, to the extent they are enforceable against the bankruptcy estate, its obligations under the JRSCo Documents, shall be retained by the bankruptcy estate and the Estate Representative shall enforce all of the bankruptcy estate's rights, title, interests, claims, powers, and defenses in and to such Interests.

(b)     Absent a settlement between the bankruptcy estate, JRSCo and the other applicable shareholders of JRSCO, the parties shall litigate before the Bankruptcy Court their respective positions with respect to whether or not any of the JRSCo Documents are Executory Contracts and the efficacy and enforceability of any provision of the JRSCo Documents. In the event a Final Order is entered by the Bankruptcy Court that any of the JRSCo Documents are an Executory Contract then, in that event, the Estate Representative shall, subject to the approval of the Bankruptcy Court, and only to the extent allowed in such Final Order, assume or reject such JRSCo Document within sixty (60) days after entry of the Final Order or within such additional time as the Court, for cause, within such sixty-day period, fixes. If the rejection by the Estate Representative of any of the JRSCo Documents results in a claim for damages, then, as applicable, JRSCo and the other shareholders of JRSCo shall be entitled to file a proof of claim in accordance with the Bankruptcy Code Section 502(g). The time for filing such a claim shall be determined by the Bankruptcy Court in accordance with Bankruptcy Rule 3002(c)(4), and any such allowed claim shall be treated as Allowed Claims in Class 5. Article IV of this Plan shall not apply to the JRSCo Documents.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 21

(c)     Pending the entry of a Final Order of the Bankruptcy Court upon whether or not any of the JRSCo Documents are Executory Contracts, the Estate Representative shall not be required to either assume or reject any of the Executory Contracts, provided, however, not withstanding the foregoing at any time after sixty (60) days from the Effective Date JRSCo or any of the other JRSCo shareholders may seek an order for the Bankruptcy Court to require the Estate Representative to either reject or, to the extent allowed, assume any of the JRSCo Documents, and the Estate Representative shall have all of the bankruptcy estate's rights, claims, powers, and defenses with respect to any such motion.

5.1.2.6 Bankruptcy Estate Administration.

(a)     Subject to the approval of the Executive Board, the Estate Representative may retain such law firms, accounting firms, disbursing agents, experts, advisors, appraisers, auctioneers or other professionals as she/he may deem necessary to aid in the performance of his/her responsibilities pursuant to this Plan including, without limitation, the liquidation of the Retained Assets and the transfer of the Retained Assets to the Creditors' Trust pursuant to the terms of this Plan. Professionals currently employed in this case may be employed by the Estate Representative. Persons affiliated with the Estate Representative may be employed by the Estate Representative. The Estate Representative shall give written notice of his proposed retention of any such person to each member of the Executive Board. The Executive Board shall be deemed to have approved the proposed retention if no member of the Executive Board objects to the proposed retention within seven (7) business days of having received notice thereof.

(b)     The Estate Representative shall, on behalf of the bankruptcy estate, prepare and provide to or file with the appropriate parties such notices, tax returns or other filings as may be required by applicable law.

(c)     Compensation of the Estate Representative shall be at the same fixed hourly rate as the Trustee is compensated.

(d)     The Retained Assets shall be transferred to the Creditors' Trust on or before four and one-half (4-1/2) years after the Effective Date or such later date as may be approved by the Bankruptcy Court. Upon the transfer of the Retained Assets to the Creditors' Trust they shall be treated, for all purposes, as Transferred Assets.

**5.2     Creditors' Trust.**

5.2.1 *Creditors' Trust.*

On or before the Effective Date, Debtor, the ~~Plan Administrator~~Trustee and the Executive Board shall execute the Creditors' Trust Agreement and shall take all other steps necessary to establish the Creditors' Trust. On the Effective Date, Debtor shall be deemed to have transferred, ~~in accordance with Article 5.2.10 hereof,~~ all of his ~~right~~and the bankruptcy estate's rights, title, powers, interests, and ~~interest~~defenses in and to the Transferred Assets, but not in the Retained Assets, the Exempt Assets or the Reserves, to the Creditors' Trust for the sole and

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 22

Exhibit A - Page 29 of 62
Opp of DJS Properties to
Motion for Determination

exclusive ~~benefit of the holders~~purposes of the payment of Creditors' Trust Administrative Expenses and the partial payment of Allowed Claims in Class 5 and Allowed Claims for priority taxes (but subject to the rights of the ~~holders~~holder of the ~~Class 2 and~~ Class 3 claims hereunder). Debtor shall have no interest in the Creditors' Trust subsequent to his conveyance of those assets to the Creditors' Trust, except as provided in Section 3.3.5. In connection with this transfer, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Creditors' Trust shall vest in the Trustee and his or her representatives.

### 5.2.2   *Conveyance of the Transferred Assets.*

~~5.2.1~~   ~~Transfer of the Transferred Assets.~~ In addition to all other rights ~~and~~, claims, interests, powers, and defenses provided to him under this Plan, the ~~Plan Administrator~~Estate Representative, in his or her capacity as ~~Plan Administrator~~Estate Representative and as Trustee, shall possess with respect to all of the Transferred Assets and the Retained Assets all rights, interests, powers, ~~and~~ claims, and defenses of a trustee under the Bankruptcy Code.

~~5.2.2.2~~   ~~Transfer of JRSCo Interests to the Creditors' Trust.  Without limitation to Article 5.2.2.1, as part of the conveyance described in Article 5.2.1 above, Debtor's Interests in JRSCo shall be transferred to the Creditors' Trust.  The Plan Administrator, in his/her capacity as Trustee of the Creditors' Trust, shall have all rights, powers, and claims with respect to the Interests as Debtor had as a debtor in possession under the Bankruptcy Code.  All restrictions, limitations, conditions or qualifications set forth in JRSCo's articles of incorporation, bylaws, the Class A Shareholder Agreement , or the J.R. Simplot Company Preferred Stock Shareholders Agreement dated as of May ___, 1997 with respect to the Interests shall be enforceable against the Plan Administrator, in his/her capacity as Trustee of the Creditors' Trust, to the extent that such restrictions, limitations, conditions or qualifications would be enforceable against a debtor in possession under the Bankruptcy Code.  To the extent that such limitations, restrictions, conditions or qualifications constitute or arise from an Executory Contract, such contract shall be treated in accordance with Article 4 hereof.~~

~~5.2.2.3~~   ~~Transfer of the Partnership Claims (including Interests) to the Creditors' Trust.  Without limitation to Article 5.2.2.1, as part of the conveyance described in Article 5.2.1 above, the Partnership Claims (including Interests in the Partnership) shall be transferred to the Creditors' Trust.  The Plan Administrator, in his/her capacity as Trustee of the Creditors' Trust, shall have all rights, powers, and claims with respect to such claims (including Interests) as Debtor had as a debtor in possession under the Bankruptcy Code.  All restrictions, limitations, conditions or qualifications set forth in the Partnership Agreement with respect to the Partnership Claims (including Interests) shall be enforceable against the Plan Administrator, in his/her capacity as a Trustee of the Creditors' Trust, to the extent that such restrictions, limitations, conditions or qualifications would be enforceable against a debtor in possession under the Bankruptcy Code.  To the extent that such limitations, restrictions, conditions or qualifications constitute or arise from an Executory Contract, such contract shall be treated in accordance with Article 4 hereof.~~

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 23

### 5.2.3  Trustee.

The ~~Plan Administrator~~Estate Representative shall be established as Trustee of the Creditors' Trust in the Trust Agreement. The Trustee of the Creditors' Trust shall be appointed effective upon the entry of the Confirmation Order, with said Trustee assuming the duties of the Trustee on the Effective Date. In accordance with the provisions of the Creditors' Trust Agreement, the Trustee, in his or her reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to cash the assets of the Creditors' Trust, make timely distributions and not unduly prolong the duration of the Creditors' Trust. The Trustee shall have and perform only those duties, responsibilities, rights and obligations set forth in the Creditors' Trust Agreement, this Plan, and the Confirmation Order, <u>which obligations include the posting of a Bond, in an amount set forth in the Confirmation Order, for the benefit of Beneficiaries (as that term is defined in the Creditors' Trust Agreement) of the Creditors' Trust Agreement</u>.

### 5.2.4  Executive Board.

The Executive Board shall be appointed effective upon the entry of the Confirmation Order and shall assume its duties on the Effective Date. The initial members of the Executive Board shall consist of ~~five~~four individuals. Each of the following unsecured creditors shall be entitled to designate one individual: American West Bank~~; Citicorp USA, Inc.~~; Foundation Bank; Regal Financial Bank; and Washington Trust Bank. The designee of American West Bank shall serve as the initial chairman of the Executive Board. The Executive Board shall have and perform the duties, responsibilities, rights and obligations set forth in this Plan and the Creditors' Trust Agreement.

### 5.2.5  ~~Plan Administrator~~ Estate Representative.

Debtor and the Creditors' Committee designate Ronald Greenspan as the ~~Plan Administrator~~Estate Representative. The ~~Plan Administrator~~Estate Representative shall be appointed effective upon the entry of the Confirmation Order, with said ~~Plan Administrator~~Estate Representative assuming the duties of the ~~Plan Administrator~~Estate Representative on the Effective Date. The ~~Plan Administrator~~Estate Representative shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Creditors' Trust Agreement and this Plan.

### 5.2.6  Powers and Duties of and Governance by Executive Board.

The Executive Board shall prescribe its own rules of procedure, subject to the provisions of this Plan and the Creditors' Trust Agreement.

The Executive Board may retain such attorneys as it may deem reasonably necessary, and the reasonable fees and expenses incurred by such retained attorneys shall be paid by the Creditors' Trust. Present counsel for the Creditors' Committee may represent the Executive Board, if so employed. Counsel for Trustee may represent the Executive Board except to the extent that such joint representation would constitute a conflict of interest. The Executive Board may not employ any accounting firms, experts, advisors, appraisers, auctioneers or other professionals. All such professionals shall only be employed by Trustee. Members of the

<u>MODIFIED </u>JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 24

Executive Board shall be entitled to receive reimbursement of their reasonable expenses (other than individual attorneys' fees and costs) from the Creditors' Trust, as described in the Creditors' Trust Agreement.

Trustee shall budget for monthly meetings with the Executive Board regarding the administration of the Creditors' Trust and the Transferred Assets.

Without the consent of the Executive Board or~and~ the Bankruptcy Court, ~if the Executive Board has refused to authorize such action,~ Trustee shall not:

(a)    make any borrowing on behalf of the Creditors' Trust or encumber the Transferred Assets;

(b)    incur or pay any expenditure that has not been previously approved by the Executive Board as a line item in the quarterly budget plus any applicable variance;

(c)    agree to the sale of any of the Transferred Assets ~that has been valued by an independent appraiser as having a fair market value in excess of $100,000~;

(d)    ~agree to the sale of any of the Transferred Assets for consideration in excess of $100,000; or~[Intentionally Deleted]; or

(e)    settle or compromise any of the Causes of Action ~in which the amount in controversy exceeds $50,000 or with respect to which Trustee has a conflict of interest~.

Upon the final distribution by Trustee to beneficiaries of the Creditors' Trust, the Creditors' Trust shall be dissolved and the Executive Board's duties and responsibilities shall be deemed completed.

5.2.7   *Quarterly Budgetary Process.*

~Prior to~Within ten (10) days of the Effective Date, with respect to the balance of the calendar quarter commencing on the Effective Date, and prior to the commencement of each subsequent calendar quarter during the term of the Creditors' Trust, Trustee shall present to the Executive Board for approval Trustee's budget and ancillary reports for the Creditors' Trust and the Retained Assets. Such reports may be modified from time-to-time as agreed between Trustee and the Executive Board.

The Executive Board shall approve such quarterly budget or approve with modifications (either as to scope or amount) such quarterly budget within ten (10) business days after Trustee's written and oral presentation of such budget to the Executive Board. If the Executive Board refuses to approve such quarterly budget, or fails to approve such quarterly budget within such ten (10) business day period, Trustee may seek approval of such quarterly budget by the Bankruptcy Court. The budget for projected professional costs set forth on the schedule of projected professional costs shall be based upon and include the quarterly budgets, broken down into monthly components, to be submitted by each professional listed on such schedule.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 25

Each month during each calendar quarter, Trustee shall furnish to the Executive Board monthly operating reports (with a budget to actual comparison).

### 5.2.8 *Creditors' Trust Agreement.*

On the Effective Date, the Creditors' Trust Agreement shall become effective. Subject only to the terms and conditions of the Creditors' Trust Agreement and this Plan, Trustee shall have full power, authority and responsibility to take any steps necessary to administer the Creditors' Trust, including, without limitation, the duty and obligation to commence and prosecute litigation and/or contested matters, liquidate assets of the Creditors' Trust, to make distributionspayments therefrom to the beneficiaries of the Trustholders of Allowed Claims in Class 5 and Allowed Claims for priority taxes, and to pursue objections to any Disputed Claims, except that the Partnership's Disputed Claim shall be objected to and prosecuted by the Estate Representative. Consistent with Idaho Code § 68-110, no Person dealing with the Creditors' Trust shall be obligated to inquire into the authority of Trustee in connection with the management, sale, operation, leasing, abandonment or disposition of Creditors' Trust Assets. The limitations on the Trustee's power to act without prior consent from the Executive Board and the Bankruptcy Court as provided in Section 5.2.6(a)–(e) define the rights between and among the parties to the Creditors' Trust Agreement and the beneficiaries thereto.

### 5.2.9 *Creditors' Trust Administration.*

Subject to the approval of the Executive Board, Trustee may retain such law firms, accounting firms, disbursing agents, experts, advisors, appraisers, auctioneers or other professionals as she/he may deem necessary to aid in the performance of his/her responsibilities pursuant to the Creditors' Trust Agreement and this Plan including, without limitation, the liquidation and distribution of the Transferred Assets. Professionals currently employed in this case may be employed by Trustee. Persons affiliated with Trustee may be employed by Trustee. Trustee shall give written notice of his proposed retention of any such person to each member of the Executive Board. The Executive Board shall be deemed to have approved the proposed retention if no member of the Executive Board objects to the proposed retention within seven business days of having received notice thereof.

The Causes of Action (except those which are part of the Retained Assets) shall vest in the Creditors' Trust upon the Effective Date. The Creditors' Trust shall retain and preserve all of the Causes of Action (except those which are part of the Retained Assets) and Trustee and the Executive Board shall pursue and enforce all of the Causes of Action (except those which are part of the Retained Assets), including, but not limited to the Avoidance Actions and the Partnership Claims(except those which are part of the Retained Assets), as representatives and successors to Debtor in accordance with Bankruptcy Code section 1123(b)(3)(B).

Trustee shall, on behalf of the Creditors' Trust, prepare and provide to or file with the appropriate parties such notices, tax returns and other filings as may be required by applicable law.

Trustee may be removed at the discretion of the Executive Board. If Trustee is removed, dies or resigns, the Executive Board shall have the exclusive right to nominate any successor

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 26

Exhibit A - Page 33 of 62
Opp of DJS Properties to
Motion for Determination

~~Plan Administrator~~Trustee and Estate Representative, subject to approval by the Bankruptcy Court.

Compensation of Trustee shall be at a fixed hourly rate to be set as of the Effective Date of the Plan, as described in the Creditors' Trust Agreement.

### 5.2.10 *Tax Matters.*

For federal income tax purposes, it is intended that the Creditors' Trust be classified as a liquidating trust under Section 301.7701-4(d) of the Procedure and Administration Regulations of the Internal Revenue Code and that such trust ~~is owned by its beneficiaries, the holders~~be owned by its grantor and beneficiary, the Debtor's bankruptcy estate, for the sole and exclusive purposes of the payment of Creditors' Trust Administrative Expenses and the partial payment of Allowed Claims in Class 5~~, who are also deemed to be grantors of the Creditors' Trust. Accordingly, for income tax purposes, it is intended that such beneficiaries be treated as if they had received an undivided interest in~~5 and Allowed Claims for priority taxes. Accordingly, the Debtor's bankruptcy estate will report all taxable net income, gains and losses from transactions in both the Transferred Assets and ~~then contributed such interests to the Creditors' Trust. Trustee shall~~the Retained Assets for the duration of the Plan. The Trustee will be responsible for filing all federal, state and local tax returns for both the Creditors' Trust. ~~Trustee shall determine the fair market value of the assets contributed to the Creditors' Trust on the Effective Date and shall report such information to the beneficiaries of the Creditors' Trust. The Creditors' Trust and its beneficiaries will be required to use such valuation determined and reported by Trustee for all federal income tax purposes. All items of income, deduction, credit, or loss of the Creditors' Trust shall be allocated for federal, state and local income tax purposes among the beneficiaries of the Creditors' Trust as set forth in this Plan; provided, however, that to the extent that any item of income cannot be allocated in the taxable year in which it arises, the Creditors' Trust shall pay the federal, state and local taxes attributable to such income (net of related deductions) and the amount of such taxes shall be treated as having been received by, and paid on behalf of, the beneficiaries of the Creditors' Trust receiving such allocations when such allocations are ultimately made~~ and the Debtor's bankruptcy estate, and will pay all resulting tax liabilities from assets of the Creditors' Trust.

### 5.2.11 *Distributions; Beneficial Interests in the Creditors' Trust.*

Trustee shall make ~~distributions to the beneficiaries of~~payments from the Creditors' Trust to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes in accordance with the Creditors' Trust Agreement. Trustee shall make ~~distributions~~payments of all funds reasonably available for ~~distribution~~payment (after making appropriate reserves for further cost of administration of the Creditors' Trust or any reserves necessary for protection of Disputed Claims) to ~~beneficiaries of the Creditors' Trust~~the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes as promptly as is reasonably practicable and is consistent with economical management of the Creditors' Trust. In no event shall Trustee be obligated to make a ~~distribution~~payment if, in the reasonable business judgment of Trustee, the amount then on hand and the ultimate ~~distribution~~payment to be made would not be justified, taking into account all of the attendant costs of such ~~distribution~~payment.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 27

### 5.2.12 *Costs and Expenses.*

All costs and expenses associated with the administration of the Creditors' Trust and of the Estate Representative, including, but not limited to, all federal, state, and local taxes, shall be the responsibility of and paid by the Creditors' Trust.

### 5.2.13 *Liquidation of Assets of the Creditors' Trust.*

The liquidation of the Transferred Assets shall occur on or before four and one half years after the Effective Date or such later date as may be approved by the Bankruptcy Court. In the event the Transferred Assets are not liquidated by that date, Trustee shall commence to auction the Transferred Assets and shall complete such auction(s) on or before the later to occur of: (i) the fifth anniversary of the Effective Date or; and (ii) such later date as may be approved by the Bankruptcy Court.

### 5.2.14 *Approval or Consent to Act.*

In any situation in which an action by Trustee requires the approval or consent of the Executive Board and the Executive Board has refused or failed to give such approval or consent, Trustee may seek such approval or consent from the Bankruptcy Court by application or motion, and any order granting such application or motion shall constitute the necessary approval or consent for such action by Trustee.

### 5.3 ~~Resolution of Dispute Between Creditors' Trust and the Partnership.~~[Intentionally Omitted].]

~~5.3.1 Debtor acknowledges that the bankruptcy estate has claims against and relating to the Partnership, and Interests in and relating to the Partnership, including without limitation the following: (i) Debtor's estate has claims against the Partnership for approximately $9.0 million in respect of money owed Debtor's estate by the Partnership; (ii) Debtor's estate holds a general partnership Interest in the Partnership of approximately 2%; (iii) Debtor's estate holds a limited partnership Interest in the Partnership of approximately 73.4%; (iv) Debtor's estate holds all other rights of a limited partner under the Partnership Agreement; (v) Debtor has the right to assume or reject the Partnership Agreement to the extent that it is executory; and (vi) Debtor's estate has defenses to the claims of the Partnership against it. Debtor acknowledges that the Creditors' Committee takes the position that the bankruptcy estate has additional claims against and relating to the Partnership, and Interests in and relating to the Partnership, including without limitation the following: (vii) a claim of ownership of certain assets which the Partnership also claims that it owns, including without limitation the Contested Assets; (viii) Avoidance Actions against the Partnership, including without limitation claims under section 544 of the Bankruptcy Code with respect to the Contested Assets and fraudulent conveyance claims under sections 544 and 548 of the Bankruptcy Code with respect to the Conveyed Assets; (ix) damage claims against the Partners for violation of the automatic stay for purportedly replacing Debtor as general partner of the Partnership; (x) a claim that since the Partners' purported replacement of Debtor violated the stay, it was void and without effect, and the Partnership is obligated to dissolve pursuant to the terms of the Partnership Agreement; (xi) claims against the Partners and the Partnership for breach of fiduciary duty, including claims~~

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 28

arising out of their acts to purportedly replace Debtor as general partner of the Partnership; (xii) all other rights of the general partner under the Partnership Agreement and/or damages claims against the Partners arising out of the Partners' purported cancellation of those rights; (xiii) claims that certain of the provisions of the Partnership Agreement are unenforceable under bankruptcy law; (xiv) claims that the Partnership is the merely the alter-ego of Don J. Simplot, and that all of the Partnership's assets should as a result thereof be treated as assets of the bankruptcy estate (this might also be called a "reverse-piercing" argument) (xv) claims that the Partnership is not entitled to setoff the amounts it owes Debtor's estate against the prepetition claims it holds against Debtor's estate; (xvi) claims that certain of the terms of the Partnership Agreement are not enforceable against Debtor's estate under applicable non-bankruptcy law; and (xvii) claims that the Partnership's allowable pre-petition unsecured claims against the estate, if any, should be subordinated.

5.3.2    The Partnership has claims against Debtor's estate, including, without limitation, the following: (i) the Partnership has a pre-petition claim against Debtor's estate as set forth in that proof of claim filed by it against Debtor in the amount of $14 million; (ii) the Partnership claims ownership of certain assets which Debtor's estate claims that it owns, including without limitation the Contested Assets; (iii) the Partnership claims that Debtor's interest in the Partnership, and the transfer thereof, are subject to all terms of the Partnership Agreement, and (iv) the Partnership has defenses to the claims of Debtor's estate against it, many of which have been raised and disclosed in the Disclosure Statement.

5.3.3    The claims, Interests, and defenses identified in Articles 5.3.1 and 5.3.2 hereof shall be treated as follows. All of the Partnership Claims shall be transferred to the Creditors' Trust. Trustee shall possess with respect to such Partnership Claims all rights which Debtor possessed with respect to such Partnership Claims as a debtor in possession under the Bankruptcy Code, and all rights as are set forth in this Plan, the Creditors' Trust Agreement, and the Confirmation Order. Absent a settlement between Trustee and the Partnership, the parties shall litigate their respective positions with respect to the Partnership before the Bankruptcy Court, including their respective claims to the ownership of the Contested Assets.

5.3.4    The efficacy or enforceability of any provision of the Partnership Agreement shall be subject to the litigation. Trustee shall retain the right to assume or reject the Partnership Agreement, but only to the extent approved by the Bankruptcy Court and only to the extent that such agreement is executory. Trustee shall be entitled to postpone exercising his/her right to assume or reject the Partnership Agreement until 45 days after the entry of a Final Order that adjudicates the status of the Partnership Agreement and the status of the parties' respective rights against one another. Article 4.1 of this Plan shall not apply to the Partnership Agreement.

5.3.5    Should, after resolution of the disputes between Trustee and the Partnership, the Partnership have an allowed unsecured claim that is not subordinated, such claim shall be treated as if it were an allowed Class 5 claim hereunder. If the Partnership's claim is allowed but subordinated, then the Partnership shall receive nothing in respect of such a claim, except after payment in full to the holders of other Allowed Claims in Class 5.

5.4    **No Revesting of Assets.**

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 29

The property of Debtor's bankruptcy estate other than the RetainedExempt Assets shall remain property of such Debtor's bankruptcy estate and shall be subject to the control of the Plan AdministratorEstate Representative after the Confirmation Date until such property vests in the Creditors' Trust. Provided, however, in the event Allowed Claims in Class 5 and Allowed Claims for priority taxes are paid the full amount of their claims and are also paid in full the post-petition interest thereon at the rate of twelve percent (12%) per annum or such other rate as applicable and all other obligations and expenses of the bankruptcy estate and the Creditors' Trust have been paid in full then, in that event, and only in that event, any remaining property in either the bankruptcy estate or the Creditors' Trust shall be transferred to the Debtor. The Debtor shall not, however, have any right whatsoever to inquire into or challenge any settlement or compromise by or any other action, or failure to take action, of the Estate Representative or the Trustee. Notwithstanding the foregoing, the Debtor shall have the right to bid on the sale of assets of the Creditors' Trust and the bankruptcy estate and nothing herein shall be construed as a limitation on Debtor from objecting to or otherwise opposing any request to delay the entry of a discharge under Bankruptcy Code section 1141(d) beyond five years of the Effective Date of the Plan.

### 5.5    Cooperation of Debtor.

Debtor shall reasonably cooperate, without the necessity of compensation, with Trustee in administering the Creditors' Trust Assets and performing his/her duties as Plan AdministratorEstate Representative and Trustee. Such obligation shall include, without limitation, (i) an obligation to sign such instruments or documents as prove necessary or desirable in effecting a transfer of any Creditors' Trust Asset, (ii) an obligation to assist in resolving tax matters that arise in connection with the affairs of the Creditors' Trust, such as, for example, assisting in determining the tax basis of any asset transferred to the Creditors' Trust and assisting in the preparation and filing of amended tax returns, and (iii) an obligation to appear to consult or testify, upon reasonable advance notice and without the necessity of a subpoena, in connection with litigation to which the Plan AdministratorEstate Representative or the Trustee is a party. Debtor shall cooperate with the Plan AdministratorEstate Representative to facilitate the transfer of Debtor's books and records to Plan AdministratorEstate Representative, including computer generated or maintained books, records, and data. Debtor shall assist in causing his agents, including his accountants, to cooperate in this regard as well. Further, Debtor shall not take any action that would hinder or obstruct the Plan AdministratorEstate Representative from performing his/her duties under this Plan and the Creditors' Trust Agreement.

### 5.6    Bifurcated Tangible RetainedExempt Assets.

This Article 5.6 shall apply to assets 2.b, 2.c, 2.d and 9 described at Exhibit 1.2.531.2.31 hereof. Each of those assets is partially exempt. Those assets——notwithstanding their inclusion in Exhibit 1.2.53—1.2.31—shall be considered part of the Transferred Assets and shall be conveyed to the Creditors' Trust. Trustee shall not liquidate those assets during the first fifteen days after the Effective Date, in order to provide Debtor time to make Trustee a cash offer from his exempt funds to purchase some or all of those assets. If Debtor and Trustee are able to reach the terms of a satisfactory purchase and sale, then the asset at issue shall be conveyed by Trustee to Debtor at the agreed-upon price and the entire asset shall thereafter be considered a-

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 30

Retainedan Exempt Asset. The price shall be set by Trustee in his sole discretion and need not be in the amount of the "Value" column in Exhibit 1.2.53.1.2.31. To the extent that Trustee does not sell the assets to Debtor, then Trustee shall sell the assets not later than 240 days after the Effective Date. Trustee shall remit to Debtor, within 30 days of the sale, cash proceeds in the amount set forth in the "Asset or Value Retained" column with respect to such asset in Exhibit 1.2.53.1.2.31.

### 5.7   Bankruptcy Code Sections 1106(b)(8) and 1106(c).

Debtor shall fulfill all obligations required of a trustee under sections 1106(b)(8) and 1106(c) of the Bankruptcy Code. Nothing in this Plan shall be construed as altering or modifying any state court ordered domestic support obligation.

### 5.8   Post-Effective Date Assets.

In accordance with section 1115(a) of the Bankruptcy Code, all Post-Effective Date Assets shall be conveyed to the Creditors' Trust. Should Don J. Simplot acquire an interest in property that is a Post-Effective Date Asset, then Don J. Simplot shall transfer such interest in property to the Creditors' Trust within fifteen (15) Business Days of acquiring or becoming aware of such interest. Trustee shall possess with respect to such Post-Effective Date Assets all rights which a debtor in possession would possess with respect to such assets, and all rights as are set forth in this Plan, the Creditors' Trust Agreement, and the Confirmation Order.

### 5.9   Post-Effective Date Earnings.

Debtor and Trustee shall cooperate as necessary to allow for appropriate and just treatment of Post-Effective Date Earnings, both as regards the tax treatment thereof and the transfer of funds. The parties' present intention and understanding is that, notwithstanding section 1115 of the Bankruptcy Code, Debtor's Share of the Post-Effective Date Earnings are excluded from the estate as a result of such share being exempt pursuant to Idaho law (see I.R.S. Notice 2006-83). Debtor shall be responsible for paying taxes on Debtor's Share of Post-Effective Date Earnings. Trust's Share of Post-Effective Date Earnings shall be regarded as property of the Creditors' Trust, as the continuation of the bankruptcy estate. The Creditors' Trust shall be responsible for paying taxes on the Trust's Share of Post-Effective Date Earnings. Debtor shall, as promptly as possible, convey to Trustee, on behalf of the Creditors' Trust, Trust's Share of Post-Effective Date Earnings.

### 5.10   Exemption from Certain Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer from Debtor to a Creditors' Trust or any other Person or entity pursuant to a sale or transfer authorized by this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 31

assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.11  Transactions on Business Days.

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### 5.12  Implementation.

Pursuant to the Confirmation Order and upon Confirmation of this Plan, the Debtor and the ~~Plan Administrator~~Estate Representative shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan, in accordance with its terms.  On or before the Effective Date, Debtor and the Creditors' Committee jointly may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and the other agreements referred to herein.  Debtor or the ~~Plan Administrator~~Estate Representative, as the case may be, shall execute such documents and take such other actions as necessary to effectuate the transactions provided for in this Plan, without the need for any additional approvals, authorizations or consents.

### 5.13  The Protective Order.

5.13.1 The Protective Order shall continue to apply after the Confirmation Date and the Effective Date. The Plan Administrator to documents disclosed or required to be disclosed pursuant to the Protective Order.  With respect to such documents, the Estate Representative, in his/her capacity as ~~Plan Administrator~~Estate Representative and in his/her capacity as Trustee, and the members of the Executive Board, shall have all rights and obligations of the "Committee" and "Members" under the Protective Order.  Further, regarding documents subject to the Protective Order, the Protective Order shall continue to apply to establish the rights and obligations of those persons identified in sections 12(b) through and including 12(h) of the Protective Order, in all instances with the ~~Plan Administrator~~Estate Representative, in his/her capacity as ~~Plan Administrator~~Estate Representative and in his/her capacity as Trustee, and the members of the Executive Board being considered "Members" as set forth therein.   Nothing in the Protective Order or Section 5.13 of this Plan shall prevent the Creditors' Committee and its attorneys from turning over, and the Creditors' Committee and its attorneys are hereby expressly directed to turn over, Confidential Information in their possession (as that term is defined in the Protective Order) to the Estate Representative and Executive Board.

5.13.2 Notwithstanding the foregoing Section 5.13.1, information acquired by the Estate Representative, whether in his/her capacity as Estate Representative or in his/her capacity as Trustee, shall not be subject to the Protective Order if obtained outside of the Protective Order.  Specifically, information obtain by the Estate Representative, whether in his/her capacity as Estate Representative or in his/her capacity as Trustee, by virtue of his/her status as a successor to Debtor's rights, which rights include the right to request and receive certain

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 32

Exhibit A - Page 39 of 62
Opp of DJS Properties to
Motion for Determination

~~information, shall not be subject to the Protective Order, and the Estate Representative shall have the right to use such information in the same manner as Debtor could have used the information prior to the entry of the Protective Order.~~

**5.14   Automatic Substitution of the ~~Plan Administrator~~Estate Representative in Litigation Prosecuted by the Creditors' Committee.**

Should, pursuant to an order of the Bankruptcy Court, the Creditors' Committee be engaged in litigation of any claims of the bankruptcy estate as of the Effective Date, including without limitation, all or some of the Partnership Claims, or should the Creditors' Committee be prosecuting an objection to any claim as of the Effective Date, then the ~~Plan Administrator~~Estate Representative shall be entitled to substitute himself/herself in lieu of the Creditors' Committee in such litigation upon occurrence of the Effective Date, in his/her capacity as ~~Plan Administrator~~Estate Representative or in his/her capacity as Trustee. Entry of the Confirmation Order shall constitute approval of such substitution and no further order of the Bankruptcy Court shall be necessary. In connection with this substitution, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) arising in favor of the Creditors' Committee in connection with these proceedings shall vest in the Trustee and his or her representatives.

ARTICLE VI.
**ACCEPTANCE OR REJECTION OF THE PLAN**

**6.1    Classes Entitled to Vote.**

Each impaired Class of claims under this Plan is entitled to vote to accept or reject this Plan. By operation of law, each unimpaired Class of claims, if any, is deemed to have accepted this Plan and, therefore, is not entitled to vote.

**6.2    Acceptance by Impaired Classes.**

An impaired Class of claims shall have accepted this Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan, in each case not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.

**6.3    Elimination of Classes.**

Any Class that does not contain, as of the date of the commencement of the Confirmation Hearing, any Allowed Claims or Interests or any claims temporarily allowed for voting purposes under Fed. R. Bankr. P. 3018 shall be deemed to have been deleted from this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**6.4    Cramdown.**

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS'
COMMITTEE - 33

Exhibit A - Page 40 of 62
Opp of DJS Properties to
Motion for Determination

If, and to the extent, necessary to confirm this Plan notwithstanding the rejection of this Plan by any Class, Debtor and the Creditors' Committee shall request confirmation of this Plan, as it relates to such Classes and as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. Debtor and the Creditors' Committee reserve the right to modify this Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1    Time of ~~Distributions for~~Payment on Claims.

As soon as and as often as is practicable until the Creditors' Trust is terminated, Trustee shall ~~distribute to the beneficiaries of~~make payments from the Creditors' Trust to the holders of Allowed Claims in Class 5 and Allowed Claims for priority taxes of the net income of the Creditors' Trust and the net proceeds from the sale or liquidation of Transferred Assets; provided, however, Trustee shall be permitted to withhold such amounts of cash as Trustee reasonably determines shall be necessary for the Creditors' Trust to satisfy and pay its obligations and the obligations of the bankruptcy estate.

Any ~~distribution~~payment under this Plan of property other than cash shall be made by the ~~Plan Administrator~~Estate Representative in accordance with the terms of this Plan.

### 7.2    Allocation of Consideration.

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class of claims under this Plan shall be treated first, as satisfying the stated principal amount of each holder's Allowed Claim and second, to the extent of any remaining consideration, as satisfying accrued but unpaid interest, if any.

### 7.3    Means of Cash Payment.

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the ~~Plan Administrator~~Estate Representative, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the ~~Plan Administrator~~Estate Representative. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to this Plan in the form of checks issued by Trustee shall be null and void if not cashed within one year of the date of the issuance thereof.

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 34

Exhibit A - Page 41 of 62
Opp of DJS Properties to
Motion for Determination

### 7.4   Fractional Dollars; De Minimis Distributions.

Any other provision of this Plan notwithstanding, payments of fractions of dollars shall not be made.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  Trustee shall not make any payment of less than $25.00 with respect to any claim unless a request therefor is made in writing to Trustee.

### 7.5   Delivery of Distributions; Undeliverable or Unclaimed Distributions; No Requirement to Surrender Certificates.

Distributions to holders of Allowed Claims shall be made by the Trustee (i) at the holder's last known address, (ii) at the address in any written notice of address change delivered to Trustee, or (iii) at the address shown in a duly filed Notice of Transfer under Bankruptcy Rule 3001.  If any holder's distribution is returned as undeliverable, is unclaimed or such holder fails to cash a check within one (1) year of its issuance, such distribution shall be distributed Pro Rata to the holders of Allowed Claims in Class 5.

### 7.6   Withholding and Reporting Requirements.

In connection with this Plan and all distributions hereunder, the Plan AdministratorEstate Representative shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Plan AdministratorEstate Representative shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

### 7.7   Setoffs.

The Plan AdministratorEstate Representative may, but shall not be required to, set off against any claim the payments or other distributions to be made pursuant to this Plan in respect of such claim, claims, or Causes of Action of any nature whatsoever that either Debtor or either Creditors' Trust may have against the claim's holder; provided, however, that neither the failure to do so nor the allowance of any claim hereunder shall constitute a waiver or release by Debtor or a Creditors' Trust of a Cause of Action that Debtor or Creditors' Trust or may have against such holder.  Nothing herein shall be deemed to expand rights to setoff under applicable law.

ARTICLE VIII.
### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### 8.1   Objections to Claims; Disputed Claims.

As soon as practicable after the Effective Date, the Plan AdministratorEstate Representative shall file objections, if any, to proofs of claim with the Bankruptcy Court. Notwithstanding any provision of this Plan or the Creditors' Trust Agreement to the contrary, the

MODIFIED JOINT PLAN OF REORGANIZATION OF DEBTOR AND CREDITORS' COMMITTEE - 35