Larry E. Prince, ISB No. 1759
Robert A. Faucher, ISB No. 4745
Brad A. Goergen, ISB No. 6631
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, ID  83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
E-mail:  lprince@hollandhart.com
         rfaucher@hollandhart.com
         bagoergen@hollandhart.com

Attorneys for the Official Committee of Unsecured Creditors

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>DON J. SIMPLOT,<br><br>              Debtor. | Case No. 06-00002-TLM<br>Chapter 11 |

## SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION

# TABLE OF CONTENTS

Page

I.  BACKGROUND. .................................................................................. 1

II.  SUMMARY OF OBJECTIONS. ............................................................. 2

    A.  The DJS Objection ................................................................. 2

    B.  The JRSCo Objection ............................................................ 2

    C.  The IRS Objection.................................................................. 5

III.  THE MODIFIED PLAN SATISFIES APPLICABLE CONFIRMATION
    STANDARDS. ........................................................................................ 6

    A.  The Modified Plan Permissibly and Justifiably Allows the Estate
    Representative to Deal With Executory Contracts Post-petition ............... 7

    B.  The Modified Plan Properly Utilizes § 1123(b)(3)(B) ........................... 19

    C.  DJS's Claims Are Properly Classified .................................................. 26

    D.  Debtor and the Creditors' Committee Complied With Bankruptcy
    Code § 1125 in Proposing the Modified Plan ......................................... 30

    E.  The Exculpation Provisions in the Modified Plan Are Appropriate
    Under Bankruptcy and Non-bankruptcy Law .......................................... 31

    F.  The Modified Plan's Treatment of the Protective Order Is Fair and
    Consistent With the Parties' Agreement Embodied in the Protective
    Order ..................................................................................................... 35

    G.  The Modified Plan Provides a Detailed Roadmap for Post-
    Confirmation Dealings Between the Estate Representative and
    JRSCo .................................................................................................... 37

    H.  The Modified Plan Properly Acknowledges the Ongoing Effect of
    the Automatic Stay ................................................................................. 40

    I.  DJS and JRSCo Lack Standing to Make Certain Objections ................... 42

    J.  Certain Objections to Confirmation Are Only "Wish List" Requests
    Masquerading as Objections .................................................................. 44

IV.  CONCLUSION. ..................................................................................... 45

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (the "Creditors' Committee"), by and through its attorneys of record, hereby submits the following Second Omnibus Response to Objections to Confirmation (the "Second Response"). This Second Response sets forth why the Modified Joint Plan of Reorganization of Debtor and Creditors' Committee (the "Modified Plan"), Docket No. 577, should be confirmed, notwithstanding the pending objections to confirmation.  Because the Modified Plan satisfies applicable confirmation standards, the Creditors' Committee requests that the Court overrule all pending objections to confirmation and enter an order confirming the Modified Plan.

## I.    BACKGROUND.

In its previously-submitted Omnibus Response to Objections to Confirmation ("First Response"), Docket No. 552, the Creditors' Committee provided a summary of the relevant background facts leading up to the February 21 confirmation hearing, and the Creditors' Committee's decision to seek a postponement.  The Creditors' Committee incorporates that background herein.  *See* First Response at 1–5, Docket No. 552.

Since filing the First Response, the Creditors' Committee and Debtor in possession Don J. Simplot ("Debtor") have negotiated with various parties concerning their remaining objections to confirmation.  Unfortunately, the Creditors' Committee's efforts were largely unsuccessful with respect to DJS[1] and JRSCo.  Nonetheless, Debtor and the Creditors' Committee have modified the plan of reorganization previously submitted, *see* Joint Plan of Reorganization of Debtor and Creditors' Committee (the "Joint Plan"), Docket No. 480, and have submitted the Modified Plan.  This Second

---

[1] Capitalized terms not expressly defined in this Second Response have the meaning given to them in the Modified Plan and accompanying exhibits to the Modified Plan.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 1

Response is submitted in support of confirmation of the Modified Plan, and in response to the pending objections to confirmation of the Modified Plan.

## II.    SUMMARY OF OBJECTIONS.[2]

### A.    The DJS Objection.

DJS's objection (the "DJS Objection") essentially raises five issues.  *See* DJS Objection, Docket No. 599.[3]  These issues are: (i) whether assumption or rejection of executory contracts must occur at or before confirmation; (ii) the classification of DJS's claims; (iii) whether the Modified Plan satisfies 11 U.S.C. § 1125; (iv) the Modified Plan's exculpation language; and (v) the ongoing role of the automatic stay.  For the reasons explained in more detail below, none of these issues prevent confirmation of the Modified Plan.

### B.    The JRSCo Objection.

JRSCo's objection (the "JRSCo Objection") is difficult to summarize.  *See* JRSCo Objection, Docket No. 596.  Despite a lack of organization and clarity, it appears JRSCo's objections fall into four categories.  These categories are: (i) whether assumption or rejection of executory contracts must occur at or before confirmation; (ii)

---

[2]  Five parties objected to confirmation of the Joint Plan: PHH Mortgage Corp., Docket No. 523; the U.S. Trustee, Docket No. 527; the IRS, Docket No. 533; DJS, Docket No. 542; and JRSCo (which includes the joinder of certain JRSCo shareholders), Docket Nos. 543, 544.  PHH Mortgage Corp.'s objection was resolved in connection with its stay relief motion.  *See* Docket No. 571 (Order Granting Conditional Relief From Section 362 Stay And Approving Stipulation).  The U.S. Trustee's objection has been resolved through plan modifications included in the Modified Plan.

[3]  DJS filed its objection twice.  *See* Docket Nos. 598, 599.  The only difference between the two filings appears to be that the latter filing contains the exhibits referenced in the objection, whereas the former does not.  For simplicity, the Creditors' Committee will only cite to the latter filing.  The Creditors' Committee will also reference specific page numbers within the DJS Objection, although the Court may have trouble locating the references because there are no page numbers shown on the DJS Objection.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 2

the use of 11 U.S.C. § 1123(b)(3)(B); (iii) the interplay between JRSCo and the

§ 1123(b)(3)(B) Estate Representative post-confirmation; and (iv) the post-confirmation

role of the Protective Order.

In addition to summarizing the JRSCo objection, the Creditors' Committee feels

compelled to express that it is surprised by the JRSCo Objection.  Instead of arguing

substantive issues, JRSCo repeatedly uses hyperbole; mischaracterizes settlement

negotiations; carelessly interposes objections based on obvious misreadings of the

Modified Plan; makes frivolous arguments; and quotes plan language in a misleading

manner.

For example, the JRSCo Objection states "[t]he CC, again with a total lack of

good faith, insists that it is entitled to the unbridled right to disseminate confidential

information regarding a closely-held family corporation, without regard to the

consequences of such action."  JRSCo Obj. at 46, Docket No. 596.  Because this

statement uses strikingly absolute terms to completely misportray the Modified Plan,

one must conclude JRSCo made an intentional exaggeration characteristic of hyperbole.

JRSCo also accuses the Creditors Committee of summarily rejecting proposals

made by JRSCo relating to the Protective Order.  *See* JRSCo Obj. at 42, Docket No.

596.  In reality, JRSCo and the Creditors' Committee discussed Protective-Order issues

several times.  After initial discussions, the Creditors' Committee made pertinent plan

revisions, discussed those revisions with JRSCo, and then made further revisions based

on JRSCo's feedback.  Saying the Creditors' Committee "summarily rejected" JRSCo's

proposals is a mischaracterization of settlement negotiations.

JRSCo states elsewhere that "Sections 12.6.1 and 12.6.2 of the Modified Plan

release, exonerate and exculpate the Creditors' Committee *and* all of its professionals

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 3

*and* any related parties from any liability 'to the fullest extent permitted by law.'"

JRSCo Obj. at 10, Docket No. 596 (emphasis in original). This passage is based on an

obvious misreading of the Modified Plan. The release in Section 12 pertains solely to

the Creditors' Committee and its members; the release does not apply to professionals

retained by the Creditors' Committee. This passage from the JRSCo Objection is but

one example of a carelessly interposed objection based on an obvious misreading of

plan language.

JRSCo, moreover, deemed it appropriate to criticize the Modified Plan's use of

the word "monetization" without providing a definition. DJS Obj. at 28, Docket No.

596. This objection is plainly frivolous. But for JRSCo's benefit, "monetization"

means "to give the character of money to" and "to convert . . . into currency . . . ." *See*

Dictionary.com, http://dictionary.reference.com/browse/monetization.

In its discussion regarding the Protective Order, JRSCo states "[i]n Section 5.13

of the Modified Plan, the CC now proposes . . . (b) that the Trustee's further discovery

requests 'shall not be subject to the Protective Order[.]'" JRSCo Obj. at 35, Docket No.

596. This selective quotation is taken out of context and is used to imply the Modified

Plan says something entirely different than what it actually says: "information acquired

by the Estate Representative . . . shall not be subject to the Protective Order *if obtained*

*outside of the Protective Order.*" Modified Plan, § 5.13.2, Docket No. 577 (emphasis

added). Objectively viewed in its entirety, this plan language simply states a truism—

the Protective Order only applies to those documents within its scope. This is but one

example of JRSCo quoting plan language in a misleading manner.

The Creditors' Committee could go on to catalogue all of the numerous

inappropriate, incorrect, and misleading passages in JRSCo's Objection. But doing so

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 4

would be a distraction from what should be the goal for everyone: addressing the confirmation of the Modified Plan based on substantive issues.  The Creditors' Committee will not, therefore, refute each of these passages, but will instead focus on the substantive issues raised in the JRSCo Objection.

> ### C.       The IRS Objection.

The IRS's objection to the Modified Plan appears to target a single issue: gap-period interest on the IRS's priority tax claim.  The Creditors' Committee's position is that 11 U.S.C. § 1129 does not require a chapter 11 plan to provide for the payment of post-petition, pre-confirmation interest on priority tax claims.  *See* 11 U.S.C. §§ 502(b) (limiting allowed claims to prepetition debts); 507(a)(8) (identifying priority status for certain governmental tax claims); 1129(a)(9)(c) (requiring payments on account of claims described in § 507(a)(8) to total, as of the effective date of the plan, the allowed amount of such claim).  It is the Creditors' Committee's understanding the IRS agrees that the estate is not required to pay post-petition, pre-confirmation interest to the IRS.

An individual chapter 11 debtor's post-confirmation liability for interest accruing during this gap period, however, is a separate issue.  *See Miller v. United States*, 363 F.3d 999, 1001–02, 1010 (9th Cir. 2004) (holding gap period interest on priority tax claims is nondischargeable); *Cal. State Bd. of Equalization v. Ward* (*In re Artisan Woodworkers*), 225 B.R. 185, 190 (B.A.P. 9th Cir. 1998) (differentiating between plan treatment and dischargeability of gap period interest on priority tax claims).  But any liability Debtor may have will not be an obligation of either the Creditors' Trust or the post-confirmation bankruptcy estate.  In light of these facts, the IRS's objection does not prevent confirmation of the Modified Plan.  Accordingly, the Creditors' Committee will not comment further on the IRS objection.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 5

### III.    THE MODIFIED PLAN SATISFIES APPLICABLE CONFIRMATION STANDARDS.

The Creditors' Committee is confident that this Court's independent inquiry into whether the Modified Plan satisfies applicable confirmation standards will result in confirmation.  A separate explanation concerning how the Modified Plan satisfies the chapter 11 confirmation requirements is contained in Debtor's L.B.R. 3020.1 statement. The Creditors' Committee, therefore, will focus only on confirmation objections in this Second Response.

At the outset, it is important to note that the Modified Plan has been proposed by both Debtor and the Creditors' Committee, and has been overwhelmingly approved by creditors, both secured and unsecured.  The principal objections to plan confirmation are from DJS and JRSCo.  DJS is a limited partnership that was created by Debtor and that is owned by him and, either directly or indirectly, by Debtor's immediate family. Debtor's chapter 11 estate has, according to DJS, a 2% general partnership interest and a 73.3576% limited partnership interest.  DJS Obj. at 2, Docket No. 599.  The remaining 24.6424% is held by a trust created by Debtor (20%) and by Debtor's children and grandchildren (4.6424%).  It seem incongruous that an entity in which Debtor owns an interest greater than 75% is strenuously objecting to Debtor's reorganization plan.

JRSCo is a Simplot-family corporation in which Debtor's chapter 11 estate owns, in addition to other stock interests, approximately 23.5% of the voting stock.  Although JRSCo's standing to object to the Modified Plan is questionable, *see* Section III.I, *infra*, its motivation is clear.  JRSCo is seeking to gain a tactical advantage in any ensuing litigation between it and Debtor's chapter 11 estate.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 6

Between DJS and JRSCo, the pending objections to confirmation concern eight issues: (i) whether assumption or rejection of executory contracts must occur at or before confirmation; (ii) the use of Bankruptcy Code § 1123(b)(3)(B); (iii) the classification of DJS's claims; (iv) whether the Modified Plan satisfies Bankruptcy Code § 1125; (v) exculpation language; (vi) the post-confirmation role of the Protective Order; (vii) the post-confirmation interplay between JRSCo and the Estate Representative appointed under § 1123(b)(3)(B); and (viii) the ongoing role of the automatic stay.  In addition to these eight areas, the Court should also (1) analyze DJS's and JRSCo's standing, and (2) differentiate between true plan confirmation objections and "wish list" items masquerading as objections.

### A.    The Modified Plan Permissibly and Appropriately Allows the Estate Representative to Deal With Executory Contracts Post-petition.

#### 1.    <u>Post-confirmation assumption or rejection is permissible under the Bankruptcy Code.</u>

The Modified Plan deals with executory contracts in two places.  Article IV treats executory contracts with parties other than DJS and JRSCo; executory contract issues involving DJS and JRSCo are treated under § 5.1.2.  Modified Plan at 15–21, Docket No. 577.  With respect to DJS and JRSCo, the Modified Plan vests an "Estate Representative" with the responsibility of resolving executory contract issues.  For both DJS and JRSCo, the Modified Plan permits the Estate Representative to resolve executory contract issues post-confirmation.  *Id*. at §§ 5.1.2.4(d).  For DJS, the Estate Representative is required to begin litigation to resolve executory contract issues within sixty days of the effective date of the Modified Plan, unless such litigation has already been initiated.  There is no similar time restriction for JRSCo.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 7

A chapter 11 plan may provide for the post-confirmation assumption or rejection of executory contracts.  The procedure for doing so must be express, and is especially appropriate in situations where forced assumption or rejection would harm the estate.  And when a chapter 11 plan is a liquidating plan, the power to assume or reject may be delegated to a party other than the debtor.  The statutory basis for this procedure is 11 U.S.C. §§ 365(d)(2) and 1123(b)(3).

Section 365(d)(2) allows, but does not require, a chapter 11 debtor to assume or reject an executory contract prior to confirmation.  The statute also allows a party to such contract to request that the court order an earlier decision by the debtor.

> In a case under chapter . . . 11 . . . of this title, the trustee *may* assume or reject an executory contract . . . at any time before the confirmation of a plan but the court, on the request of any party to such contract . . . may order the trustee to determine within a specified period of time whether to assume or reject such contract . . . .

11 U.S.C. § 365(d)(2) (emphasis added).

Section 1123(b) contains a list of permissible options that a chapter 11 plan may include, subject to the mandatory requirements in § 1123(a).  Among these optional provisions, § 1123(b) permits a chapter 11 plan to provide for the assumption or rejection of executory contracts, and to nominate an estate representative to enforce the estate's claims and interests post-confirmation.

> [A] plan may . . .
>     (2) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;
>     (3) provide for . . . the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest.

11 U.S.C. § 1123(b)(2), (b)(3)(B).

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 8

Section 365(d)(2) does not require assumption or rejection of an executory

contract before confirmation of a plan.  Section 1123(b)(2) expressly allows the plan to

provide for the assumption or rejection of an executory contract.  And the Modified

Plan does this.  Further, courts have interpreted these statutes to permit post-

confirmation assumption or rejection.  In *Alberts v. Humana Health Plan, Inc.* (*In re

Greater Se. Cmty. Hosp. Corp. I*), 327 B.R. 26, 34 (Bankr. D.C. 2005), the court stated

unequivocally that "[t]he Bankruptcy Code permits questions of assumption or rejection

under a plan to be determined after confirmation of a plan calling for such post-

confirmation determination."  This rule, according to the court, prevents parties to a

reorganization from being deprived of a "flexible mechanism whereby confirmation of a

plan [is] not delayed by the necessity of first clearing up uncertainties regarding"

executory contracts.  *Id*. at 34.

In re Worldcom*, No. 02-13533(AJG), 2006 WL 898029 at*1–2 (Bankr. S.D.N.Y.

Mar. 9. 2006), held that post-confirmation assumption or rejection rights must be

expressly provided for in a plan.  In *In re Worldcom*, the court denied the debtors' post-

confirmation motion to reject executory contracts because the chapter 11 plan did not

expressly provide the debtors with that authority.  *Id*.  The court distinguished several

decisions in which post-confirmation assumption or rejection was permitted based on

the plans in those cases expressly permitting post-confirmation assumption or rejection.

*Id*. at *3.

Other decisions highlight that post-confirmation assumption or rejection rights

are particularly appropriate when premature action would harm the estate.  In *In re

Hernandez*, 287 B.R. 795, 796–97 (Bankr. D. Ariz. 2002), the court denied a motion to

compel assumption or rejection.  *In re Hernandez* involved a non-assumable intellectual

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 9

property license.  After ruling the license was non-assumable, the court noted "the facts

of this case create an unusual problem:  If the court determines that the Agreement must

be rejected, then the Debtors will have forfeited their rights under the Agreement

regardless of whether the Debtors actually committed a breach."  *Id*. at 798.

Ultimately, the court gave the debtors the option of allowing the license to "ride

through" unaffected.  *Id*. at 806–07.

  *In re Gunther Hotel Assocs*., 96 B.R. 696, 697–98 (Bankr. W.D. Tex. 1988),

illustrates that delaying rejection until after confirmation is appropriate when earlier

action may harm the estate.  Debtor Gunther Hotel Associates operated under a license

agreement with a reservation and marketing company.  *Id*.  In denying cross-motions

regarding rejection of the license agreement, the court noted that rejection would

benefit the debtor eventually, but not if done prior to confirmation.  *Id*. at 698.

Ultimately, the court *sua sponte* extended the deadline for the licensor to request

rejection post-confirmation, thereby preserving the value of the license for the benefit

of the debtor and permitting the licensor to seek rejection post-confirmation.  *Id*. at 701.

*See also Vindicator Group Inc. v. LaVail* (*In re LaVail*), 144 B.R. 897, 898 (Bankr

D.N.M. 1998) (discussing how premature rejection of a limited partnership agreement

would negatively impact the estate).

  Finally, *In re Dynamic Tooling Sys., Inc*., 349 B.R. 847 (Bankr. D. Kan. 2006),

supports the delegation of assumption and rejection powers to a § 1123(b)(3)(B) estate

representative.  A creditor of Dynamic Tooling Systems proposed a reorganization plan

under which the creditor's subsidiary had the authority, post-confirmation, to assume or

reject executory contracts.  *Id*. at 850–51.  A licensee objected to the subsidiary's right

to make assumption and rejection decisions.  *Id*. at 851.  After analyzing *Hartford*

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 10

*Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000), and other authorities, the court concluded there was no basis to prevent the subsidiary, as a § 1123(b)(3)(B) estate representative, from making assumption and rejection decisions post-confirmation.[4]

Read together, *Alberts*, *In re Worldcom*, *In re Hernandez*, *In re Gunther Hotel Assocs.*, *In re LaVail*, and *In re Dynamic Tooling Sys. Inc.* stand for the propositions that (i) assumption or rejection of executory contracts may be postponed until after confirmation; (ii) post-confirmation assumption or rejection is particularly appropriate when the delay is necessary to preserve the value of the estate; and (iii) the power to assume or reject executory contracts post-confirmation may be delegated to a § 1123(b)(3)(B) estate representative.

> 2.    <u>Post-confirmation assumption or rejection is appropriate in this case.</u>

The Modified Plan's provisions for post-confirmation assumption and rejection are permissible under the express terms of § 1123(b)(2) and (b)(3)(B) and, in this case, are appropriate for at least three reasons. First, the Modified Plan permits only a modest delay until the executory contracts with DJS are addressed. *See In re Dynamic*

---

[4] JRSCo argues that the court in *In re Dynamic Tooling Sys., Inc.* denied the proposal to have an estate representative assume or reject executory contracts post-confirmation. JRSCo Obj. at 30, Docket No. 596. JRSCo is incorrect. After concluding a plan could delegate assumption and rejection powers to a § 1123(b)(3)(B) representative, the court commented on the pre-Code practice of fixing deferred dates for assumption or rejection, and then noted the parties resolved this issue by agreement. *In re Dynamic Tooling Sys., Inc.*, 349 B.R. at 852–54. The court, therefore, did not reject the concept. Nor does the decision "absolutely require" assumption or rejection at confirmation as JRSCo argues. JRSCo Obj. at 31, Docket No. 596. The existence of "ride through" decisions also demonstrates that assumption or rejection of executory contracts at or before confirmation is not required, *see, e.g., In re JZ, LLC*, 357 B.R. 816 (Bankr. D. Idaho 2006), and the discussion herein demonstrates that post-confirmation assumption or rejection may be made by a § 1123(b)(3)(B) estate representative.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 11

*Tooling Sys., Inc.*, 349 B.R. at 854 (noting a thirty-day, post-effective-date delay); *In re Gunther Hotel Assocs.*, 96 B.R. at 701 (ordering a sixty-day, post-effective-date delay). And to the extent JRSCo wishes equal treatment, the Creditors' Committee will agree to a similar time frame for the initiation of litigation to address the executoriness of any contracts between JRSCo and Debtor. It is difficult to see how this modest delay prejudices any party, yet alone DJS or JRSCo.

DJS, moreover, is disingenuous in criticizing this aspect of the Modified Plan. DJS Objection at 10–11, Docket No. 599. The Creditors' Committee invited DJS to bring a motion to compel assumption or rejection so these issues could be resolved prior to or at confirmation. But DJS declined to act. DJS did not initiate an adjudication of whether its limited partnership agreement (the "Limited Partnership Agreement") is subject to assumption or rejection; Debtor was not motivated to challenge his family limited partnership; and the Creditors' Committee lacked standing to bring the issue before the Court. If DJS were truly concerned about the timing of assumption or rejection, it could have forced the issue by filing a motion to compel assumption or rejection of its Limited Partnership Agreement. DJS's objection, in actuality, is simply an attempt to deny creditors their day in court on important issues.

As explained below, the Creditors' Committee does not believe the Limited Partnership Agreement is an executory contract. DJS's scheme thus becomes obvious. DJS is seeking to prevent any adjudication of whether the Limited Partnership Agreement is an executory contract by unilaterally characterizing it as an executory contract and demanding that it be assumed or rejected prior to confirmation. Section 1123(b)(2) and (b)(3)(B) expressly authorize plan provisions that neutralize such self-serving schemes, which schemes are detrimental to creditors.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 12

Second, even assuming the Limited Partnership Agreement and the JRSCo Documents are executory, there is a substantial risk that the estate will be harmed by a premature decision regarding assumption or rejection.  Whatever rights the estate may have pursuant to executory contracts with DJS and JRSCo, rejecting these contracts may reduce the value of the interest the Estate Representative must liquidate.  Further, rejection will likely result in claims being filed under 11 U.S.C. § 502(g).

Take, for example, Debtor's interests in DJS as a partner.  DJS takes the position that confirmation of the Modified Plan will result in the Estate Representative succeeding to Debtor's rights and interests as a general partner.  DJS Obj. at 17–22, Docket No. 599.  If true, forcing a rejection could constitute a breach of the Limited Partnership Agreement, *see* 11 U.S.C. § 365(g), thereby potentially triggering various default provisions in the Limited Partnership Agreement.  Sections 2.6 and 2.11 of the Limited Partnership Agreement, read together, may render the estate's post-rejection interest in DJS to be only an economic interest.  This would clearly diminish the value of an estate asset, and would permit DJS to file an additional claim for rejection damages.  *See In re LaVail*, 144 B.R. at 897 (noting rejection may affect the nature of estate property).

Third, it is entirely unclear whether the Limited Partnership Agreement and the JRSCo Documents are truly executory contracts.  Unless and until these agreements are adjudicated as executory, there is no reason to force assumption or rejection.  And the Creditors' Committee does not dispute the executoriness of the Limited Partnership Agreement lightly.  To demonstrate the legitimacy of this position, the Creditors Committee will briefly explain the basis for challenging the executoriness of the Limited Partnership Agreement.  Of course, the Court need not address the merits of

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 13

executoriness to confirm the Modified Plan.  Rather, the existence of a legitimate

dispute on these issues simply underscores why the Modified Plan's structure is

required, especially in light of DJS's objections to the Creditors' Committee having

standing to raise this issue before confirmation.  *See* Docket Nos. 374 (Stipulated Mot.

for Order Granting Standing to Creditors' Committee to Prosecute Estate's Claims); 439

(Docket Entry noting motion for derivative standing denied).

### 3.   The Limited Partnership Agreement is not executory.

Whether Debtor's interests in DJS are subject to § 365 turns upon the threshold

question of whether the Limited Partnership Agreement is an executory contract.  At the

risk of stating the obvious, if the Limited Partnership Agreement is not an executory

contract, there is nothing to assume or reject.

The definition of an executory contract in the Ninth Circuit is well-established.

An executory contract is one on which performance remains due to some extent on both

sides, such that the failure of either party to complete the performance that is due would

constitute a material breach and thus excuse the performance of the other.  *Unsecured*

*Creditors' Comm. of Robert L. Helms Constr. & Dev. Co. v. Southmark Corp.* (*In re*

*Robert L. Helms Constr. & Dev. Co.*), 139 F.3d 702, 705 (9th Cir. 1998); *United States*

*v. Goff*, 05.1 I.B.C.R. 3, 9 (Bankr. D. Idaho 2005).  This is the so-called "Countryman"

definition.

In applying this analysis, each contract must be viewed according to its specific

terms.  *Per se* rules regarding the executoriness of particular sorts of contracts are

improper.  As this Court noted recently in *In re A–Z Elecs., LLC*, 350 B.R. 886, 889

(Bankr. D. Idaho 2006), the laws applicable to limited liability companies are analogous

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 14

in some instances to those applicable to partnerships.  In *Meiburger v. Endeka Enters., L.L.C.* (*In re Tsiaoushis*), the court offered a cogent summary of the proper analysis:

> The analysis used to determine whether a particular limited liability company operating agreement is an executory contract under Bankruptcy Code § 365(e)(1) is clear.  There is no per se rule.  Each operating agreement is separately analyzed.  The courts, utilizing the Countryman definition, examine the operating agreement to determine whether there are unperformed obligations on the part of the parties.  If not, the operating agreement is not an executory contract. . . . If there are unperformed obligations of both the debtor and the other party or parties, the court must determine whether, if not performed, non-performance would constitute a material breach excusing the other party from further performance.  If so, the operating agreement is an executory contract. . . . The reported cases go no further.

Case No. 05-15135-RGM, Adv. No. 06-1167, 2007 WL 186536 at *3 (Bankr. E.D. Va. Jan. 19, 2007); *see also Movitz v. Fiesta Invs., LLC* (*In re Ehmann*), 319 B.R. 200, 205 (Bankr. D. Ariz. 2005) ("As demonstrated by the excellent analysis in [*Samson v. Prokopf* (*In re Smith*), 185 B.R. 285, 292–93 (Bankr. S.D. Ill. 1995)], it is facile to assume that all partnership agreements are executory contracts.").  Although *Meiburger* addresses a limited liability company operating agreement, the analytic framework set forth by the court applies equally to limited partnership agreements.

DJS's Limited Partnership Agreement is a contract between the partners.  The executoriness analysis, then, queries: (i) what performance do the other partners owe Debtor; (ii) what performance does Debtor owe the other partners; and (iii) is the performance due, if any, material?  Importantly, these questions must be answered based on the status of the contract as of the petition date.  *See e.g., Cohen v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 138 B.R. 687, 699–700 (Bankr. S.D.N.Y. 1992).

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 15

Perhaps the most direct route to answering the executoriness question is to look at what performance limited partners owe. The Limited Partnership Agreement specifically excludes limited partners from management activities, and insulates them from liability for DJS's debts and losses beyond any initial capital contribution. Limited Partnership Agreement, §§ 7.1, 7.2. Further, limited partners are not required to make capital contributions. Limited Partnership Agreement, § 3.1. Thus, limited partners do not have any material performance obligations.

DJS's list of the limited partners' alleged performance obligations is unpersuasive. DJS Obj. at 8–9, Docket No. 599. For example, the obligation "to accept the management and control of" the general partner is not a performance obligation at all. Moreover, several of the purported "obligations" are contingent. A limited partner's obligation to execute documents upon the general partner's request necessarily depends upon a request being made. DJS has not alleged that any such request was pending at the time of filing. Contingent obligations such as this do not constitute a material performance obligation for executoriness purposes. *See Meiburger*, 2007 WL 186536 at *2 (rejecting contingent obligations of members as support for determining an operating agreement is executory); *see also In re Capital Acquisitions & Mgmt. Corp.*, 341 B.R. 632, 636 (Bankr. D. Ill. 2006). None of the alleged "obligations" of limited partners referenced by DJS are of the sort courts have held sufficient to make an agreement executory.[5]

---

[5]  *See In re Capital Acquisitions & Mgmt. Corp.*, 341 B.R. at 636 (holding a LLC operating agreement was not executory for a non-manager member because the member had no current, material performance obligations at the time of filing); *Movitz*, 319 B.R. at 205 (noting the lack of current, material performance obligations makes partnership agreements and LLC-operating agreements not executory); *In re Garrison-Ashburn, L.C.*, 253 B.R. 700, 708–09 (Bankr. E.D. Va. 2000) (holding a LLC-operating

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 16

Further, other provisions of the Limited Partnership Agreement negate the alleged "obligations" listed by DJS. Specifically, the Limited Partnership Agreement includes provisions: (a) allowing the general partner unilaterally to amend the Limited Partnership Agreement; and (b) providing the general partner with the power to execute whatever instruments are necessary to accomplish DJS business. Limited Partnership Agreement, §§ 12.2, 14.1, 14.2. To the extent limited partner performance is due, it certainly is not material, and its non-performance would not excuse the general partner from performing.

Nor are DJS's arguments bolstered by *In re Sunset Developers* and *In re Myers Financial Group, Inc.*, two cases upon which DJS relies extensively. Both cases are distinguishable. *In re Sunset Developers*, for example, involved a general partnership, not a limited partnership. 69 B.R. 710, 711 (Bankr. D. Idaho 1987). Perhaps more importantly, the executoriness question depended upon the relationship between the two partners, both of whom were general partners. *See id*. at 712. Each owed ongoing performance in the form of obligations to make contributions and to manage the

---

agreement was not executory for a non-manager member because the member had no management, service, or capital contribution duties); *Broyhill v. DeLuca* (*In re DeLuca*), 194 B.R. 65, 77 (Bankr. E.D. Va. 1996) (concluding a LLC-operating agreement was executory because the business purpose of the entity remained to be completed and members had ongoing duties and responsibilities to bring the project to a successful conclusion); *Calvin v. Siegal* (*In re Siegal*), 190 B.R. 639, 643 (Bankr. D. Ariz. 1996) (concluding a general partnership involved an executory contract because of an ongoing duty for general partners to contribute capital); *Samson*, 185 B.R. at 293–94 (concluding a limited partnership agreement was not executory because the limited partner had no ongoing material obligations); *Breedon v. Catron* (*In re Catron*), 158 B.R. 624, 625–26 (Bankr. E.D. Va. 1992) (concluding a general partnership agreement is executory due to capital contribution requirements); *In re Priestley*, 93 B.R. 253, 258–59 (Bankr. D. N.M. 1988) (concluding a limited partnership agreement was executory with respect to the general partner because of ongoing management duties, and with respect to the limited partners because of ongoing obligations to pay partnership debts).

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 17

partnership's affairs.  *Id*.  DJS's limited partners have no ongoing obligations to make contributions or to manage DJS's affairs.

*In re Myers Financial Group, Inc*. Case No. 92-03319 JDP (Bankr. D. Idaho), did involve a limited partnership agreement.  But under that specific agreement, limited partners had the ongoing obligation to make capital contributions to the partnership. *See* DJS Obj., Ex. B. at 18–19 (transcript of the Court's oral ruling concluding the partnership was executory).  Additionally, the limited partners were required to make a decision regarding an offer to sell property.  *Id*. at 20.  The limited partners could not, however, simply decline to act.  *Id*.  In contrast, the Limited Partnership Agreement does not require DJS's limited partners to make ongoing capital contributions, but it does permit limited partners to decline to act (to the extent they are required to do anything at all).

In sum, the post-petition assumption or rejection of executory contracts is permissible; the Modified Plan's provisions for the post-petition assumption or rejection of certain executory contracts is warranted in this case; and rejection is likely not required in any event because the Limited Partnership Agreement is not executory. The Modified Plan, within the strictures of the Bankruptcy Code, appropriately deals with executory contract issues between the estate and DJS and JRSCo, and the resolution of such issues will be initiated promptly after confirmation.

Accordingly, the Modified Plan complies with the applicable provisions of title 11, United States Code.  The Modified Plan also seeks to accomplish a purpose contemplated by the Bankruptcy Code, to achieve a result consistent with the Bankruptcy Code, and to do so based on express Bankruptcy Code language and applicable decisional authority.  The Modified Plan thus satisfies 11 U.S.C.

§ 1129(a)(1) and (a)(3).  *See In re Madison Hotel Assocs.*, 749 F.2d 410, 424–25 (7th Cir. 1984) (noting good faith under § 1129(a)(3) means a plan is likely to achieve a result consistent with the objectives and purposes of the Bankruptcy Code), *cited with approval in Platinum Capital v. Sylmar Plaza, L.P.* (*In re Sylmar Plaza, L.P.*), 314 F.3d 1070, 1074 (9th Cir. 2002) (holding bad faith finding not warranted due to a plan adversely affecting a creditor's rights); *see also Solow v. PPI Enters.* (*U.S.*), *Inc.* (*In re PPI Enters.* (*U.S.*), *Inc.*), 324 F.3d 197, 211 (3d Cir. 2003) (noting bad faith did not exist simply because debtors availed themselves of Bankruptcy Code provisions). Objections based on the Modified Plan's treatment of executory contracts should, therefore, be overruled.

### B.    The Modified Plan Properly Utilizes § 1123(b)(3)(B).

Section 1123(b)(3)(B) of the Bankruptcy Code expressly permits a plan proponent to appoint an estate representative to enforce the estate's claims and interests post-confirmation.  Whether or not § 1123(b)(3)(B) is invoked frequently, *see* JRSCo Obj. at 5, Docket No. 596, is irrelevant to whether the statute is legitimate authority for the Modified Plan's appointment of an Estate Representative.[6]  And because express statutory authority exists for this aspect of the Modified Plan, JRSCo's good faith and other objections ring hollow.  *See, e.g.*, JRSCo Obj. at 24, Docket No. 596 (arguing a lack of good faith despite relying on authority holding good faith exists where there is an enforceable legal basis advanced to support the reorganization plan).

---

[6]  The Creditors' Committee does not agree with JRSCo that § 1123(b)(3)(B) is a "little-used" provision.  Just the opposite is true.  In larger chapter 11 cases, § 1123(b)(3)(B) is an often-used provision.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 19

First, there are no shortage of cases dealing with § 1123(b)(3)(B), although many

deal with post-confirmation jurisdictional issues such as standing.[7]  A few, however,

provide insight relevant to this case.

In *Elk Horn Coal Co. v. Conveyor Mfg. & Supply, Inc*. (*In re Pen Holdings,*

*Inc*.), 316 B.R. 495 (Bankr. M.D. Tenn. 2004), Judge Lundin examined the legislative

history behind § 1123(b)(3)(B), and its predecessor section under the Bankruptcy Act,

to illuminate the statute's application.  *In re Pen Holdings, Inc*. explains that the

language in § 1123(b)(3)(B) was an expansion of the analogous Bankruptcy Act

provision, with the Code language directed at preserving "a debtor's causes of action

for the benefit of creditors."  *Id*. at 500.  Other courts have similarly acknowledged that

§ 1123(b)(3)(B) makes possible the formulation and consummation of a plan before

completion of the investigation and prosecution of causes of action.  *See Kroh Bros.*

*Dev. Co. v. United Missouri Bank of Kansas City* (*In re Kroh Bros. Dev. Co*.), 100 B.R.

487, 494 (Bankr. W.D. Mo. 1989) (quoting *Du Voisin v. E. Tenn. Equity, Ltd*. (*In re S.*

*Indus. Banking Corp.*), 59 B.R. 638, 642 (Bankr. E.D. Tenn. 1986)).

The Modified Plan does exactly this.  It preserves all of the estate's non-exempt

assets for the benefit of creditors, without unnecessarily prolonging the bankruptcy

---

[7] *See, e.g., Starzynski v. Sequoia Forest Indus*., 72 F.3d 816, 820–21 (10th Cir. 1995)
(interpreting how statutes of limitation applicable to trustees apply to a § 1123(b)(3)(B)
estate representative); *McFarland v. Leyh* (*In re Tex. Gen. Petroleum Corp.*), 52 F.3d
1330, 1334–35 (5th Cir. 1995) (addressing a § 1123(b)(3)(B) estate representative's
standing to exercise avoiding powers); *Retail Marketing Co. v. King* (*In re Mako, Inc.*),
985 F.2d 1052, 1054–55 (10th Cir. 1993) (addressing a § 1123(b)(3)(B) estate
representative's standing to exercise avoiding powers); *Nordberg v. Sanchez* (*In re*
*Chase & Sanborn Corp.*), 813 F.2d 1177, 1180 n.1 (11th Cir. 1987) (addressing a
§ 1123(b)(3)(B) estate representative's standing to exercise avoiding powers); *Premium*
*of Am., LLC v. Sanchez* (*In re Premium Escrow Servs., Inc.*), 342 B.R. 390, 399–400
(Bankr. D.C. 2006) (addressing a § 1123(b)(3)(B) estate representative's standing to
enforce estate claims).

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 20

case.  In this regard, the Modified Plan syncs perfectly with established principles of bankruptcy law.  Moreover, the Modified Plan invokes § 1123(b)(3)(B) in exactly the manner intended.  JRSCo's vague and unsupported objections that the Modified Plan is contrary to bankruptcy principles and public policy, and misuses § 1123(b)(3)(B), are without basis.  *See* JRSCo Obj. at 20–21, 23–24, 25, Docket No. 596.

The Tenth Circuit Court of Appeals' comments on § 1123(b)(3)(B) are also relevant to this case.  *Citicorp Acceptance Co. v. Robison* (*In re Sweetwater*), 884 F.2d 1323, 1324 (10th Cir. 1989), involved a chapter 11 plan that appointed certain administrative claimants as the estate representative under § 1123(b)(3)(B) to pursue avoidance actions—primarily for their own benefit, with any surplus to go to the reorganized debtor.  In determining that the plan properly used § 1123(b)(3)(B), the court noted the plan did not assign the avoidance claims to the trustee of the fund created to liquidate the claims.  *Id*. at 1327.  The plan instead retained the claims and tasked a representative with liquidating the claims for the benefit of particular parties.  *Id*.  This distinction prompted the court to comment "[t]hus in effect the avoidance claims were not assigned outright to [the trustee] within the meaning of the term 'assign' as it traditionally has been used in the case law involving the nonassignability rule."  *Id*.  *See also In re Kroh Bros. Dev. Co*., 100 B.R. at 499–500 (making the assignment-versus-appointment distinction).

Applying *In re Sweetwater* here, the Modified Plan does not "assign" claims or interests to anyone.  Rather, under the Modified Plan's express terms, the claims and interests related to DJS and JRSCo are retained by the estate and the Estate Representative, rather than the debtor in possession, will enforce this discrete set of claims and interests.  The Estate Representative, then, is in no different position than

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 21

Debtor (as the debtor in possession) currently is; Debtor (as the debtor in possession) is

a fiduciary charged with acting for the benefit of creditors, and the Estate

Representative will be too.  DJS's several objections regarding confirmation subjecting

the Estate Representative to conflicting fiduciary obligations, *see, e.g*., DJS Obj. at 17–

18, Docket No. 599, thus have no persuasive value.  The Modified Plan does not create

a conflict between fiduciary obligations—that conflict already exists, if it exists at all.

The Modified Plan simply sets forth a procedure for resolving issues between parties.

Moreover, there is little reason to assume a post-confirmation fiduciary conflict

is inevitable.  DJS assumes exactly this in its objection.  According to DJS, the Estate

Representative's obligations to unsecured creditors will directly conflict with his

obligations as a general partner of DJS.  But are there other possibilities?  Of course

there are.[8]

For instance, Debtor's management rights as a general partner of DJS may not

have survived Debtor's bankruptcy filing.  The Creditors' Committee disputes this

conclusion for good reason.  But if the Creditors' Committee is wrong on this point,

confirming the Modified Plan will not cause any fiduciary conflict.  Further, DJS's

post-confirmation installation of a substitute general partner may be void for various

reasons, including the failure to follow the terms of the Limited Partnership Agreement

and because it violated the automatic stay.  If so, there may have been no general

---

[8]  It is submitted that DJS's objections (and JRSCO's) are motivated in part by a desire
to have this case converted to chapter 7.  But DJS is curiously silent about how
conversion would remedy the potential conflicts of fiduciary duties that DJS thinks are
inevitable.  Obviously conversion would not cure any potential conflict issues because
rather than the Estate Representative, a chapter 7 trustee would enforce the same claims
and interests.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 22

partner in place for more than ninety days, and DJS would be required to wind up its affairs and dissolve under § 1.5 of the Limited Partnership Agreement.

Alternatively, Debtor's management rights may have survived Debtor's filing. In this event, the Estate Representative could exercise the estate's rights under § 4.1(b) and (c) of the Limited Partnership Agreement, and make distributions to the estate. And because the estate has a majority interest in DJS, the Estate Representative would have the unilateral authority to make such distributions. Further, the Estate Representative could always resign as the general partner, or when warranted obtain court approval before taking certain actions.

Finally, the decision of *Iron-Oak Supply Corp. v. Nibco, Inc.* (*In re Iron-Oak Supply Corp.*), 162 B.R. 301 (Bankr. E.D. Cal. 1993), adds crucial insight into § 1123(b)(3)(B) issues. In describing the plan, the court noted "[t]he plan requires the unsecured creditors to appoint a representative of the estate for the purpose of prosecuting the avoiding actions. They accepted the plan as a class, even though they were agreeing to sue themselves[.]" *Id.* at 308. The court proceeded to compare and contrast chapter 11 trustees and § 1123(b)(3)(B) estate representatives. While noting some similarities, the court made an important distinction between trustees and estate representatives: "A representative's duties are prescribed by the plan specifying retention and enforcement of causes of action. A trustee's duties are prescribed by the Bankruptcy Code." *Id.* at 309; *see also Elder v. Uecker* (*In re Elder*), 325 B.R. 292, 295, 300 (N.D. Cal. 2005) (distinguishing between a trustee and a § 1123(b)(3)(B) estate representatives for compensation purposes); *In re Jelinek*, 153 B.R. 279, 285–86 (Bankr. D.N.D. 1993) (making the same distinction). While this passage from *In re*

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 23

*Iron-Oak Supply Corp*. discusses chapter 11 trustees, the analysis is also applicable to chapter 7 trustees.

*In re Iron-Oak Supply Corp*. teaches that the use of an estate representative to prosecute claims against individual members of the estate representative's constituency presents no more risks than those inherent in many bankruptcy contexts.  Further, while similarities may exist, there are important differences between trustees and § 1123(b)(3)(B) estate representatives.  The consequences that flow from these differences are not mere semantics.

The Modified Plan honors these differences in both substance and form.  Nonetheless, JRSCo criticizes the Modified Plan because, according to JRSCo, the Modified Plan improperly puts the Estate Representative in the position of objecting to the claims of his constituency, and treats the Estate Representative differently than a "garden variety" bankruptcy trustee.  JRSCo Obj. at 8, 13, Docket No. 596.  But there is nothing in the Bankruptcy Code that prohibits an Estate Representative from objecting to unsecured creditors' claims.  The Estate Representative, quite frankly, is the party who is most likely to file claim objections.  Indeed, the current Creditors' Committee objected to the stay relief motion of one of its members—AmericanWest Bank.  *See* Docket No. 95.

And the Modified Plan treats the Estate Representative differently than a "garden variety" trustee because the Estate Representative is not a "garden variety" trustee (whatever that means).  That said, the Modified Plan subjects the Estate Representative to significant Court oversight.  For instance, § 5.2.6 of the Modified Plan requires the Trustee to obtain court approval to incur credit, pay expenses outside of those approved by the Executive Board through a budgeting process (akin to court approval for

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 24

transfers outside the ordinary course of business), sell Transferred Assets, and settle or compromise Causes of Action. Similar limitations apply to the Estate Representative. *See* Modified Plan at §§ 5.1.2.3, 5.1.2.6, Docket No. 577.

To summarize, DJS and JRSCo objected to the Joint Plan's transfer of DJS- and JRSCo-related claims and interests to the Creditors' Trust. The Modified Plan addresses these objections by not transferring these assets to the Creditors' Trust, but providing for their retention by the estate. Debtor is obviously in no position to enforce claims against his family limited partnership and a family-owed company. Debtor and the Creditors' Committee, therefore, utilized § 1123(b)(3)(B) to provide for an Estate Representative to enforce these claims and interests. The Modified Plan uses § 1123(b)(3)(B) properly and consistently with the letter and spirit of the Bankruptcy Code. The appointment of an Estate Representative, and the delegation of duties to him under the Modified Plan, is supported by a considerable body of decisional authority. Perhaps most importantly, the Estate Representative concept allows this case to proceed without unnecessary delay, while preserving all the parties' rights.

Based on these reasons, it is clear that the Modified Plan does not lead to any inevitable conflict of fiduciary duties, and that the same potential for conflicts under the Modified Plan already exists with Debtor acting as the debtor in possession. The Modified Plan does not, accordingly, contravene any public policy. Moreover, the notion that someone other than Debtor would enforce the estate's rights and interests in the Retained Assets is not new—the Joint Plan contemplated the same approach. These facts negate DJS's § 1129(a)(5) objection, to the extent this section is even applicable to the Estate Representative. *See* 7 *Collier on Bankruptcy* ¶ 1129.03[5][b] (Alan N. Resnick & Henry J. Summer eds., 15th ed. rev. 2004). These facts also negate JRSCo's

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 25

§ 1123(a)(7) public-policy objection, again to the extent applicable.  *See* JRSCo Obj. at

25, Docket No. 596.  And the same good faith analysis in Section III.A above supports

a finding of good faith with respect to the Modified Plan's use of § 1123(b)(3)(B).

Finally, the Modified Plan, and it proponents, complied with the provisions of

title 11, United States Code, by relying on plan language expressly authorized by the

Bankruptcy Code and applicable decisional law.  This satisfies the confirmation

standards in § 1129(a)(1) and (a)(2).  Objections to the Modified Plan's use of

§ 1123(b)(3)(B) should be overruled.

### C.    DJS's Claims Are Properly Classified.

At the time Debtor and the Creditors' Committee filed the Modified Plan on

March 28, 2007, DJS's proof of claim on file with the Court listed unsecured,

nonpriority debt of $14,000,000.  *See* Claim No. 24-1.  No secured claim, including a

claim secured by setoff rights, was listed.

Also prior to March 28, 2007, Key Bank, National Association had a proof of

claim on file.  *See* Claim No. 20.  Key Bank's claim listed unsecured, nonpriority debt

of $2,083,596.67.  According to DJS, DJS was a guarantor of Debtor's debt to Key

Bank.  DJS Obj. at 5, Docket No. 599.

After Debtor and the Creditors' Committee filed the Modified Plan, DJS filed an

amended proof of claim on April 20, 2007.  *See* Claim No. 24-2.  This amended proof

of claim disclosed an additional claim allegedly secured by setoff rights.  Apparently,

on or about March 1, 2007, DJS turned over to Key Bank $2,380,195.18 in connection

with litigation in Oregon based on DJS's guaranty of Debtor's obligations to Key Bank.

This payment is the basis for DJS's new "secured" claim (the "Subrogation Claim").

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 26

DJS did not file its amended proof of claim until almost one month after the

Modified Plan was filed, and less than one month before the confirmation hearing.

Thus, DJS's objection to the Modified Plan's classification of the Subrogation Claim

smacks of gamesmanship.  Should Debtor and the Creditors' Committee be entitled to

rely on the proofs of claim on file with the Court when crafting a plan?  Of course they

should.  DJS had knowledge of its payment to Key Bank for nearly a month before the

Modified Plan was filed, and DJS had knowledge of Key Bank's lawsuit enforcing

DJS's guaranty before it filed its original proof of claim.  Yet DJS did not list any claim

secured by setoff rights in its original proof or claim, nor did DJS amend its proof of

claim until after the Modified Plan was filed.[9]  DJS's criticism that Debtor and the

Creditors' Committee did not divine what DJS had done in a Multnomah County

lawsuit, therefore, deserves little sympathy.

The Modified Plan, moreover, properly classifies DJS's claims.  11 U.S.C.

§ 1122 prohibits a plan from placing dissimilar claims in the same class.  Specifically,

"a plan may place a claim or an interest in a particular class only if such claim or

interest is substantially similar to the other claims or interest of such class."  11 U.S.C.

§ 1122(a).  The term "substantially similar" is not specifically defined by the

Bankruptcy Code, but the term has been construed to mean "similar in legal character or

effect as a claim against the debtor's assets or as an interest in the debtor."  7 *Collier on

Bankruptcy* ¶ 1122.03[3].

The Modified Plan places DJS's claims in Class 5, along with the claims of other

general, unsecured creditors.  *See* Modified Plan at § 2.4.4, Docket No. 577.  This

---

[9]  These facts create waiver and estoppel issues regarding whatever setoff rights DJS
may have.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 27

treatment is appropriate because, even assuming DJS has enforceable setoff rights due to the Subrogation Claim, DJS's claims have the same attributes as other Class 5 claimholders vis-à-vis the estate.  The Subrogation Claim does not grant DJS lien rights in particular property, which is ordinarily the reason a secured creditor is separately classified.  *See* 7 *Collier on Bankruptcy* ¶ 1122.03[4] (noting claims secured by different properties should be separately classified).  Instead, to the extent DJS has setoff rights, these rights are really more in the nature of a defense to Debtor's claims against DJS.

Nor is the Court required to adjudicate at confirmation whether DJS's setoff rights are enforceable.  The Modified Plan provides a mechanism for DJS to asserts its setoff rights, if enforceable, post-confirmation.  Specifically, the Modified Plan defines "Partnership Claims" to include DJS's setoff rights.  Modified Plan at § 1.2.44(q), Docket No. 577.  The Modified Plan goes on to require the Estate Representative and DJS to either settle the Partnership Claims or litigate these claims before this Court.  Modified Plan at §§ 5.1.2.4(c), 7.7, Docket No. 577.  DJS will, therefore, be able to assert its setoff claims pertaining to the Subrogation Claim post-confirmation.  The absence of a separate classification for the Subrogation Claim is no reason to derail confirmation at this late date.

DJS is not, furthermore, clearly entitled to enforce any setoff rights.  The application of setoff rights in bankruptcy is discretionary.  *See Ky. Cent. Ins. Co. v. Brown (In re Larbar Corp.)*, 177 F.3d 439, 447 (6th Cir. 1999); *River Valley Bank of Russellville, Ark. v. Ace Sports Mgmt., LLC (In re Ace Sports Mgmt., LLC)*, 271 B.R. 134, 143 (Bankr. E.D. Ark. 2001) (citing 4 *Collier on Bankruptcy* ¶ 553.02[3]).  And the creditor asserting such rights bears the burden of proving it is entitled to do so

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 28

under applicable nonbankruptcy law.  *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18–19 (1995) (noting setoff rights in bankruptcy must be premised on applicable nonbankruptcy law); *Belford v. Union Trust Co.* (*In re Wild Bill, Inc.*), 206 B.R. 8, 13 (Bankr. D. Conn. 1997) (noting the burden of proof lies with the creditor asserting setoff rights, and citing *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996)).  The proper context for DJS to make this showing, if it can, is in the post-confirmation adversary proceeding anticipated by the Modified Plan.[10] But for confirmation purposes, the lack of certainty regarding whether DJS has enforceable setoff rights is yet another reason to overrule DJS's objection concerning classification of the Subrogation Claim.

In short, the particular classification of the Subrogation Claim is a red herring. The Modified Plan preserves DJS's setoff rights, subject to judicial adjudication. Further, DJS's setoff rights may well not be enforceable in bankruptcy.  To the extent DJS's setoff rights are enforceable, those rights are limited and are provided for in the Modified Plan.  Most importantly, the Modified Plan properly classifies DJS's claims.

---

[10]  Presumably DJS is claiming setoff rights stemming from its status as a subrogee of Debtor's obligations to Key Bank.  But Key Bank has not yet assigned its claim to DJS or released its claim.  Thus, Key Bank retains a claim against the estate.  Because DJS has not, apparently, satisfied the entire Key Bank claim, and in addition because DJS's payment obligation was contingent, DJS's status as a subrogee, and its entitlement to stand in Debtor's shoes as a subrogee, is questionable.  *See Celotex Corp. v. Allstate Ins. Co.* (*In re Celotex Corp.*), 289 B.R. 460, 473 n.19 (Bankr. M.D. Fla. 2003) (interpreting 11 U.S.C. § 509(a) as requiring the entire debt to be paid for statutory subrogation to apply); *Kerr McGee Chem. LLC v. Elias* (*In re Elias*), 04.2 I.B.C.R. 74, 77–78 (Bankr. D. Idaho 2004) (noting the requirement of equitable subrogation that the entire debt be paid).

Further, any setoff rights, if there are any, would also be limited to Key Bank's prepetition unsecured claims, which, of course, do not include, among other things, postpetition interest.  *See* 11 U.S.C. § 502(b)(2).  Other substantive issues exist as to whether DJS has a setoff right, but for purposes of plan confirmation, they do not, at this time, need to be decided.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 29

By properly classifying DJS's claims, the Modified Plan complies with the applicable

provisions of title 11, United States Code, and thereby satisfies 11 U.S.C. § 1129(a)(1).

For all of these reasons, DJS's objection as to the classification of its claims should be

overruled.

### D.    Debtor and the Creditors' Committee Complied With Bankruptcy Code § 1125 in Proposing the Modified Plan.

Debtor and the Creditors' Committee have moved this Court for an order

determining that, as proponents of the Modified Plan, Debtor and the Creditors'

Committee complied with § 1125, and that acceptances of the Joint Plan are deemed

acceptances of the Modified Plan.  *See* Mot. for Determination under 11 U.S.C.

§ 1127(c) and (d), Docket No. 593.  The bases for this motion are detailed in the brief

accompanying the motion.  *See* Brief in Support of Mot. for Determination under 11

U.S.C. § 1127(c) and (d), Docket No. 593.  Rather than repeat the entire rationale here,

the Creditors' Committee respectfully directs the Court to its brief in the Court's

records.

A few points, however, bear repeating.  First, DJS has been actively involved in

this case from the outset.  DJS, therefore, had advance notice, and adequate notice, of

the Modified Plan's provisions.  Accordingly, DJS cannot contest the adequacy of

disclosure.  *See* Brief in Support of Mot. for Determination under 11 U.S.C. § 1127(c)

and (d), at 5–6, Docket No. 593.

Second, DJS's disclosure objection is premised on the assumption that the

modifications to the Joint Plan are material.  Yet DJS offers no examples or analysis to

support this assumption.  As explained in the briefing on file, the modifications

reflected in the Modified Plan are neither material nor adverse, and the relevant

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 30

standard for redisclosure includes both elements.  *See* Brief in Support of Mot. for

Determination under 11 U.S.C. § 1127(c) and (d), at 6–9, Docket No. 593.

Finally, should the Court grant the Motion for Determination, DJS's redisclosure

objection will be moot.  This, in turn, will mean that Debtor and the Creditors'

Committee satisfied § 1125 in proposing the Modified Plan.  Completing the circuit,

Debtor's and the Creditors' Committee's compliance with § 1125 will mean the

Modified Plan and its proponents satisfied the applicable provisions of title 11, United

States Code, thereby satisfying § 1129(a)(1) and (2).  For all of these reasons, the Court

should overrule DJS's § 1125 objection to confirmation.

### E. The Exculpation Provisions in the Modified Plan Are Appropriate Under Bankruptcy and Non-bankruptcy Law.

There are essentially two pending objections based on the exculpation language

in the Modified Plan.  The first is directed at the language in § 12.6, which focuses on

the Creditors' Committee and its members.  The second is directed at various provisions

of the Modified Plan and the Creditors' Trust Agreement, which focus on the Trustee.

The Modified Plan provides a release to the members of the Creditors'

Committee for claims arising out of their service as members of the Creditors'

Committee.  Modified Plan at § 12.6, Docket No. 577.  There is an exception to this

release for fraud, breach of fiduciary duty, willful misconduct, and gross negligence.

Releases of this nature find support in the decisional authority of several courts.

The Third Circuit Court of Appeals affirmed a confirmation order over the objections of

a creditor that the plan contained exculpation language for the members of the

creditors' committee.  *In re PWS Holding Corp*., 228 F.3d 224, 243, 245–47 (3d Cir.

2000).  The disputed plan provision stated:

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 31

> None of the Debtors, the Reorganized Debtors, New
> Bruno's, the Creditor Representative, the Committee or any
> of their respective members, officers, directors, employees,
> advisors, professionals or agents shall have or incur any
> liability to any holder of a Claim or Equity Interest for any
> act or omission in connection with, related to, or arising out
> of, the Chapter 11 Cases, the pursuit of confirmation of the
> Plan, the consummation of the Plan or the Administration of
> the Plan or the property to be distributed under the Plan,
> except for willful misconduct or gross negligence . . . .

*Id*. at 246.  The court concluded this language was appropriate in light of the limited

grant of immunity to committee members for acts taken in that role.  *Id*. at 246–47.  The

plan language, furthermore, properly included an exception for willful misconduct and

gross negligence.  *Id.  Accord Pan Am Corp. v. Delta Air Lines, Inc*., 175 B.R. 438,

514–514 (S.D.N.Y. 1994); *Philip v. L.F. Rothschild Holdings, Inc*. (*In re L.F.

Rothschild Holdings, Inc.*), 163 B.R. 45, 48–49 (Bankr. S.D.N.Y. 1994); *In re Drexel

Burnham Lambert Group, Inc.*, 138 B.R. 717, 721–22 (Bankr. S.D.N.Y. 1992).

The exculpation language in the Modified Plan is even more restrictive than the

analogous language in *In re PWS Holding Corp.*  For example, the release in *In re PWS

Holding Corp.* applied to professionals retained by the committee.  Here, the

exculpation language in the Modified Plan applies only to members of the Creditors'

Committee.  (As mentioned in note 2, *supra*, JRSCo believes otherwise, but JRSCo is

simply wrong.)  The exculpation language in the Modified Plan is well within the range

of language supported by decisional authority as being confirmable.

The exculpation provisions for the Trustee are different in certain respects than

those applying to members of the Creditors' Committee, although there are similarities.

Sections 5.2.3 of the Modified Plan and § 6.1 of the Creditors' Trust Agreement require

the Trustee to post a bond, for the benefit of the Creditors' Trust beneficiaries, for

breaches of the defined standard of care.  Separately, §§ 6.9 and 6.11.1 of the Creditors'

Trust Agreement provide the bulk of exculpation and indemnification language.

Sections 6.9 and 6.11.1 of the Creditors' Trust Agreement, read in concert,

express three main points.  First, the assets of the Creditors' Trust are to be the primary

source for satisfying any claims made against the Creditors' Trust or the Trustee, except

for claims based on the Trustee's (i) fraud; (ii) breach of fiduciary duty; (iii) gross

negligence; or (iv) willful misconduct.  Second, the Trustee, Executive Board, and the

Trustee's Representatives shall not be personally liable to the Creditors' Trust, any

Beneficiary, holders of Allowed Claims in Class 5, or holders of Allowed Claims for

priority taxes, except for (i) fraud; (ii) breach of fiduciary duty; (iii) gross negligence;

or (iv) willful misconduct.  Third, the Creditors' Trust will indemnify the Trustee,

Executive Board, and the Trustee's Representatives for claims made against them in

connection with trust administration, unless such claims are for (i) fraud; (ii) breach of

fiduciary duty; (iii) gross negligence; or (iv) willful misconduct.

These exculpation provisions are consistent with general principles of trust law.

While trustee exculpation provisions may be strictly construed against the trustee, they

are enforceable with respect to beneficiaries.  *See* 76 Am. Jur. 2d Trusts § 336 (2005).

Additionally, a trust agreement may provide that the trust will be liable for the torts of

the trustee.  *See* 76 Am. Jur. 2d Trusts at §§ 366, 368.

With respect to third parties, in Idaho, Idaho Code § 15-7-306 controls personal

liability of the trustee for contractual obligations and certain torts.  In general terms,

§ 15-7-306 bars a trustee's personal liability for contractual obligations expressly

entered as a representative of a trust.  Section 15-7-306 also limits a trustee's tort

liability for torts committed while administering a trust to situations where the trustee is

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 33

"personally at fault."  Idaho Code § 15-7-306(b).  Despite the existence of personal tort

liability, a trustee may seek reimbursement for damages paid from trust assets.  *See* 76

Am. Jur. 2d Trusts at §§ 366, 367 (discussing reimbursement and tort liability for

trustees).

Applying these authorities to the Creditors' Trust Agreement, there are two

subsets of liability that are relevant.  The first consists of tort liability arising from the

Trustee's personal fault, but excluding liability for (i) fraud; (ii) breach of fiduciary

duty; (iii) gross negligence; or (iv) willful misconduct.  The second subset consists of

liability for these four exclusions.  Any third party harmed by a tort falling within the

first subset can look to the assets of the Creditors' Trust, including the liability policy

to be purchased to cover such claims.  *See* Modified Plan, Ex. 1.2.20 at § 6.9, Docket

No. 577.  Any third party harmed by a tort falling within the second subset can look to

directly to the assets of the Trustee.  Seen this way, the exculpation provisions not only

shield the Trustee from certain types of liability, but also benefit third parties by

identifying assets and responsible parties in the unfortunate (and unlikely) event that a

third party is harmed.

Summarizing, the exculpation provisions in the Modified Plan and Creditors'

Trust Agreement are supported by law.  The provisions are reasonably limited in scope,

and protective measures will be taken for the benefit of third parties.  Because the

exculpation provisions are based on applicable bankruptcy and non-bankruptcy law,

including decisional authorities interpreting these laws, the exculpation provisions

satisfy the good faith requirement of § 1129(a)(3).  *See Solow*, 324 F.3d at 211 (noting

bad faith did not exist simply because debtors availed themselves of Bankruptcy Code

provisions).  For these same reasons, the exculpations provisions comply with title 11,

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 34

United States Code, as did the plan proponents in submitting the Modified Plan, which satisfies the confirmation standards in § 1129(a)(1) and (a)(2). The stated objections to these exculpatory provisions, therefore, should be overruled.

> **F.** **The Modified Plan's Treatment of the Protective Order Is Fair and Consistent With the Parties' Agreement Embodied in the Protective Order.**

This Court entered the Protective Order on May 9, 2006. Docket No. 225. The Protective Order embodies the considerable efforts of Debtor, DJS, JRSCo, and the Creditors' Committee in negotiating a procedure for the disclosure and treatment of confidential information.

The scope of the Protective Order is clearly defined. The Protective Order applies to confidential information produced by Debtor, DJS, and JRSCo. Regarding JRSCo, the Protective Order requires JRSCo to provide, on a rolling basis, documents described in eight discrete categories. Protective Order at ¶¶ 5, 6, Docket No. 225.

Section 5.13 of the Modified Plan addresses the prospective application of the Protective Order. This section covers three key areas. First, Section 5.13.1 makes clear that the Protective Order will continue to apply post-confirmation. Second, Section 5.13.1 covers the transition between the Creditors' Committee, who currently possesses the confidential information produced under the Protective Order, and the Trustee, Estate Representative, and Executive Board that will step into the Creditors' Committee's shoes post-confirmation. In general terms, the Modified Plan requires the Trustee, Estate Representative, and Executive Board to take possession of the confidential information already provided to Creditors' Committee under the Protective Order, and to treat such confidential information in accordance with the rights and restrictions applicable to the Creditors' Committee. Third, Section 5.13.2

acknowledges the obvious: the Protective Order will not apply to the information to which it does not apply.

JRSCo has made a lengthy objection to the Modified Plan's treatment of the Protective Order.  JRSCo Obj. at 34–41, Docket No. 596.  In its objection, JRSCo accuses the Modified Plan of gutting the Protective Order.  But JRSCo's objection is really nothing more than a disguised attempt to expand the scope of the Protective Order beyond what the parties, including JRSCo, agreed to.

Contrary to JRSCo's accusations, the Modified Plan is not attempting to eviscerate the Protective Order.  As explained above, the Modified Plan provides for the transition of confidential information to the Trustee, Estate Representative, and Executive Board, and otherwise acknowledges that the Protective Order will continue to apply according to its terms.

At the core of JRSCo's objection is the fact that the Estate Representative, as the party who enforces the estate's rights as a Class A shareholder, will be in a position to obtain, potentially, sensitive information about JRSCo.  JRSCo obviously thinks the Protective Order should apply to information the Estate Representative obtains as a shareholder, despite that no other Class A shareholder is subject to the Protective Order, and despite that the information may not be within the clearly defined scope of the Protective Order.

In support of this untenable position, JRSCo argues it would be impossible to differentiate between information the Estate Representative obtained as a shareholder, and that obtained under the Protective Order.  JRSCo Obj. at 38, Docket No. 596.  However, all that needs to be done is to reference Exhibit C to the Protective Order.  If

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 36

the information is described there, it would be subject to the Protective Order; if the information is not described there, it would not be subject to the Protective Order.

JRSCo also implies the scope of the Protective Order should be expanded, contrary to the parties' expectations, because the Estate Representative is not a Simplot family member.  JRSCo Obj. at 46, Docket No. 596.  But JRSCo has not pointed to any confidentiality restrictions that apply to the other Class A shareholders, presumably because none exist.  Genetics notwithstanding, it thus appears nothing prevents the other Class A shareholders from disseminating information they obtain as shareholders, and there is no good reason to subject the Estate Representative to special restrictions. That said, the Modified Plan does provide that the Estate Representative will honor any confidentiality restrictions applicable to Debtor and in place prior to the Protective Order.  Modified Plan at § 5.13.2, Docket No. 577.  Although there likely are no such restrictions, the Modified Plan demonstrates a fair and consistent approach to dealing with the Protective Order, and reflects good faith.  *See* 11 U.S.C. § 1129(a)(3). Accordingly, the Court should overrule JRSCo's Protective-Order objections.

### G.    The Modified Plan Provides a Detailed Roadmap for Post-Confirmation Dealings Between the Estate Representative and JRSCo.

JRSCo appears to be concerned about how the dealings between it and the Estate Representative will unfold post-confirmation.  *See* DJS Obj. at 17, 21, 26–27, 29, 30, 32, 33, Docket No. 596.  One aspect of JRSCo's concern is the treatment of the JRSCo Documents as executory documents.  Although JRSCo is unwilling to commit to a position on whether any of the JRSCo Documents are executory, *see* DJS Obj. at 32, Docket No. 596, it expects the Modified Plan to do so.  As with DJS, JRSCo could have forced this issue prior to confirmation by bringing a motion under § 365(d)(2), but it

did not.  Nonetheless, the Creditors' Committee is willing to, if necessary, initiate

litigation to address the executoriness of any contracts between JRSCo and Debtor

under the same time frame applicable to DJS.

All issues between the Estate Representative and JRSCo will be adjudicated by

this Court, unless the parties are able to settle a particular dispute.  Modified Plan at

§ 5.1.2.5, Docket No. 577.  The Estate Representative will take appropriate steps to

reduce the JRSCo Interests to cash, and then turn over those funds to the Trustee for

distribution.  Modified Plan at § 5.1.2.2(b), Docket No. 577.  The Estate

Representative's conduct in liquidating the Retained Assets, which include the JRSCo

Interests, will be subject to Court approval.  *See* Modified Plan at § 5.1.2.3, Docket No.

577.

In the event the Estate Representative is unable to complete its assignment

during the allotted time, the JRSCo Interests along with the other Retained Assets will

be turned over to the Trustee for liquidation and distribution of the proceeds.  Modified

Plan at § 5.1.2.6(d), Docket No. 577.  This turn-over process does not affect the nature

of the relationship between JRSCo and the JRSCo Interests.  The transfer will not void

any rights or claims, or otherwise affect the status quo.  Such a transfer may affect the

value of the JRSCo Interests upon final liquidation, but the transfer would not affect

JRSCo's substantive rights.

Finally, during the tenure of the Estate Representative, the Estate

Representative's compensation will be paid from assets of the Creditors' Trust.  The

Modified Plan does not contemplate prior Court approval for the payment of

compensation (to either the Trustee or the Estate Representative).  The terms of

compensation, however, are disclosed in the Modified Plan, as is the procedure for

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 38

Executive Board oversight over compensation. *See* Modified Plan at §§ 5.1.2.3, 5.2.6, 14.2; Ex. 1.2.20 at § 6.8, Docket No. 577.

The Creditors' Committee respectfully submits that Court approval over the post-confirmation compensation to be paid to the Trustee and Estate Representative, and their employees, is not required. In *Elder*, 325 B.R. at 295, 300, the court affirmed a confirmation order of a plan that provided for the liquidating trustee to receive hourly compensation in excess of the cap in 11 U.S.C. § 326(a). In making this determination, the court relied upon the fact that a post-confirmation liquidation trustee is distinct from a pre-confirmation trustee. *Id.* at 301. The court went on to conclude that making such a distinction was consistent with Ninth Circuit authority, although there did not appear to be any decisions specifically addressing the issue. *Id. Accord In re Jelinek*, 153 B.R. at 285–86 (making the same distinction); *Schultz v. Mitchell-Huron Prod. Credit Ass'n* (*In re Schultz*), 69 B.R. 629, 631 (D.S.D. 1987) (noting the conduct and compensation of liquidating and disbursing agents should be regulated by the terms of the plan).

These authorities support the confirmability of the compensation procedure set forth in the Modified Plan. Additionally, because the source of compensation will be non-estate funds, the usual policy considerations supporting court oversight of compensation do not apply. JRSCo belabors the decision of *In re Beyond.com Corp.*, 289 B.R. 138 (Bankr. N.D. Cal. 2003). *Elder*, however, contradicts *In re Beyond.com Corp.* Moreover, *Elder* is more recent, is from the same district, and is an appellate case. *In re Beyond.com Corp.* is also a decision on the merits of a disclosure statement, *see* 289 B.R. at 140, making its conclusions about the confirmability of specific plan language nothing more than dicta. And the U.S. Supreme Court has recently cautioned

against relying on dicta. *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356, 126 S. Ct. 990,

996 (2006).  In short, *Elder* is more persuasive authority than *In re Beyond.com Corp*.

JRSCo's objection under § 1129(a)(4) in this regard is simply without merit.

JRSCo also relies on *In re S. Indus. Banking Corp*., 41 B.R. 606, 609, 613 (Bankr. E.D.

Tenn. 1984), which involved pre-effective date professional fees, including significant

pre-confirmation fees attributable to disclosure statement preparation and approval, and

plan development and confirmation.  In contrast, JRSCo's objection focuses exclusively

on post-effective date compensation.

Taken together, the various provisions of the Modified Plan provide adequate

certainty regarding how the Estate Representative will interact with JRSCo post-

petition.  These provisions embrace the practical realities of this case, and as explained

above, decisional authority supports the compensation procedures contained in the

Modified Plan, which procedures disclose the rate of compensation, the manner of

compensation, Executive Board oversight over compensation, and how compensation

disputes are to be resolved, and all of which have been approved by the unsecured

creditors.  JRSCo's objections based on the post-confirmation dealings between it and

the Estate Representative, and post-confirmation compensation issues, should be

overruled.

### H.    The Modified Plan Properly Acknowledges the Ongoing Effect of the Automatic Stay.

With respect to the automatic stay, Section 12.5 of the Modified Plan provides

simply that "11 U.S.C. § 362 shall continue to apply according to its terms."  Modified

Plan at 37, Docket No. 577.  This language must be read in connection with the

injunction that precedes it.  The preceding injunction language applies to all creditors

with claims or interests in Debtor, Debtor's Exempt Assets, and the Transferred Assets

to be put into the Creditors' Trust.  Those parties covered by the injunction are

prohibited from enforcing their claims or interests against Debtor's Exempt Assets or

the Transferred Assets.

The Retained Assets, however, will remain in the estate.  And this case will not

be closed for number of years.  Further, Debtor's discharge will not be entered until the

Creditors' Trust completes its work.  There will not, therefore, be any discharge

injunction to protect Debtor or the estate's assets for a considerable period.

Section 12.5 of the Modified Plan merely acknowledges that § 362 continues to

apply to property of the estate until such property is no longer property of the estate,

and to Debtor until the case is closed or dismissed, or a discharge is granted or denied.

11 U.S.C. § 362(c).  In this regard, the Modified Plan implements the same restrictions

that ordinarily apply in the bankruptcy context.  Debtor's Exempt Assets are protected

by the stay until his discharge is granted or denied; assets to be liquidated for the

benefit of creditors will be free from creditors' collection efforts during the liquidation

process; Debtor will be protected by the automatic stay, including its relief provisions,

until the stay terminates; and the Retained Assets will be protected while they remain

property of the estate.

DJS objects because the Modified Plan does not expressly grant relief from the

stay for DJS to pursue its claims against Debtor, the estate, and the Estate

Representative.  DJS Obj. at 26, Docket No. 599.  Of course, DJS can seek stay relief if

DJS deems it necessary.  And it is unclear how the automatic stay would prejudice DJS

in adjudicating the Partnership Claims before this Court, which is what § 5.1.2.4(c) of

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 41

the Modified Plan requires.  *See* Modified Plan at 19, Docket No. 577.  This objection

also lacks merit.

### I.      DJS and JRSCo Lack Standing to Make Certain Objections.

Certain of the pending objections to confirmation should be given little weight

because the objecting party lacks standing.  In this context, standing is determined

under the rather flexible "party in interest" test.  A particular entity may be a party in

interest because it is a creditor or, alternatively, because it has a pecuniary interest in

the outcome.  *See In re Stone*, 03.2 I.B.C.R. 134, 135 (Bankr. D. Idaho 2003) (noting

the standard).

But even under this relatively expansive test for standing, there are limits.  One

limit is rooted in the notion that a party in interest may have standing for certain issues,

but not others.  In other words, standing may or may not exist on an issue-by-issue

basis.  *See In re Arkoosh Produce, Inc.*, 03.3 I.B.C.R. 149, 152 (Bankr. D. Idaho 2003)

(concluding a party could have standing for some but not all purposes).

As noted above in Section III.D, DJS cannot contest, based on a lack of standing

and estoppel, the adequacy of disclosure of the Modified Plan.  The bulk of the standing

issues, however, involve JRSCo.

JRSCo's status as a creditor is dubious.  It has yet to file a proof of claim.

Moreover, JRSCo is unwilling to say the contracts between it and Debtor are executory.

*See* JRSCo Obj. at 32, Docket No. 596.  Thus, JRSCo may not even be a creditor based

on a contingent right to file a claim for rejection damages under § 502(g).  Without any

clear standing as a creditor, JRSCo's standing should be assessed on an issue-by-issue

basis.  And many of the issues to which JRSCo objects simply do not involve JRSCo.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 42

For example, JRSCo objects to: the Trustee and the Estate Representative being the same person; the Creditors' Trust being a debtor's grantor trust for tax purposes; the identification of the beneficiary of the Creditors' Trust; the Trustee's exclusive right to challenge proofs of claim;[11] the Executive Board's supervisory oversight concerning the Trustee; and how the Trustee and Estate Representative will be compensated.  JRSCo offers no explanation how it is prejudiced by the Trustee and the Estate Representative being the same person, or how its situation will be improved if the positions are filled by different persons.  JRSCo has no pecuniary interest in this issue.  Similarly, JRSCo offers no explanation how the tax structure of the Creditors' Trust affects JRSCo's interests.  JRSCo has no pecuniary interest in this issue either.

Nor is it apparent how the pool of persons who may object to claims affects JRSCo, especially since JRSCo is not now, nor likely to become, a creditor.  What is apparent is that JRSCo lacks a pecuniary interest in this issue.  Further, it is unclear what effect the Executive Board's oversight of the Trustee has on JRSCo.  The JRSCo Interests are being retained by the estate, and the Executive Board oversight of the Estate Representative is only indirect.  What is clear is that JRSCo lacks a pecuniary interest in this issue.  Finally, because JRSCo is not currently a creditor, and not likely to become one, JRSCo has no interest affected by the Trustee's and Estate Representative's compensation procedure.  JRSCo has no pecuniary interest in how the Trustee and Estate Representative are compensated.

---

[11]  JRSCo misreads the Modified Plan on this point.  The Trustee does not have the exclusive authority to challenge proofs of claim.  The definition of "Allowed Claim" clearly contemplates objections to proofs of claim, and § 8.1 of the Modified Plan directs the Estate Representative to pursue objections.  *See* Modified Plan at §§ 1.2.2, 8.1, Docket No. 577.  Nowhere does the Modified Plan exclude others from participating in the claims objection process.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 43

These examples demonstrate JRSCo's lack of standing regarding a variety of issues.[12]  The Creditors' Committee asks that the Court consider this when analyzing JRSCo's Objection.

### J.  Certain Objections to Confirmation Are Only "Wish List" Requests Masquerading as Objections.

As a final point concerning the objections to confirmation, the Creditors' Committee respectfully requests that the Court differentiate between true, substantive objections, and mere drafting suggestions masquerading as objections.  For instance, as mentioned above, DJS objected to the fact that the Modified Plan did not grant DJS relief from the automatic stay to pursue its claims against Debtor, the estate, and the Estate Representative.  DJS Obj. at 26, Docket No. 599.  To the extent a plan can grant relief from the stay—a doubtful proposition—this is nothing more than a "wish list" item phrased as an objection.

These "wish list" objections also conflate the distinct concepts of voting considerations and substantive confirmation criteria.  Some of JRSCo's and DJS's objections may be matters that creditors rightfully considered in determining whether to accept the proposed plan, but such matters do not constitute objections to confirmation of the Modified Plan.  Using the DJS-automatic-stay example again, the presence or absence of particular language regarding how the stay would apply to DJS post-confirmation may have played a role in DJS's consideration of whether to support or oppose the Modified Plan.  But the presence or absence of such language does not relate

---

[12]  Beyond its lack of standing, JRSCo fails in many instances to link its objections to a confirmation standard, or it cites to a standard but fails to give any meaningful explanation.  *See, e.g.*, JRSCo Obj. at 26–27 (objecting to an "uneven playing field" but citing no confirmation standard); at 25 (objecting on the basis of § 1123(a)(7) but offering no analysis), Docket No. 596.  JRSCo's approach further reduces the persuasiveness of the JRSCo Objection.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 44

to a substantive confirmation standard, nor does DJS link this objection to one.  *See*

DJS Obj. at 26, Docket No. 599.

These same flaws are apparent in the JRSCo Objection as well.  For example,

JRSCo complains the Modified Plan fails to address all of the issues JRSCo raised in its

prior objections to confirmation.  JRSCo Obj. at 34, Docket No. 596.  Frankly, not all

of those objections merited modifications to the Joint Plan.  The Creditors' Committee,

furthermore, is not just a scrivener for every party that wants a "pork barrel"

modification.  As a representative of unsecured creditors in the aggregate, the

Creditors' Committee must exercise discretion in determining the plan language it

wishes to support.  The Modified Plan, in the Creditors' Committee's view, represents a

fair resolution for unsecured creditors as a group.

## IV.    CONCLUSION.

The terms of the Modified Plan comply with the Bankruptcy Code.  Further, the

Modified Plan fairly protects DJS's and JRSCo's rights by, among other things,

providing a reasonable procedure to resolve disputes.  In response, DJS and JRSCo have

advanced several red herring arguments.  Nevertheless, the Modified Plan permissibly

uses a liquidation trust to liquidate certain assets.  The Modified Plan also permissibly

appoints an estate representative to enforce claims and interests retained by the estate.

In sum, the provisions of the Modified Plan are supported by the text of the Bankruptcy

Code and applicable decisional authority, and comport with the overarching policies

embodied in the Bankruptcy Code.

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 45

The Creditors' Committee respectfully requests that the Court enter an order (i)

overruling all pending objections to confirmation of the Modified Plan; and (ii)

confirming the Modified Plan.


DATED this 9th day of May, 2007.

HOLLAND & HART LLP


By ____/s/ Larry Prince_____
      Larry E. Prince, of the firm
      Attorneys for the Official Committee of
      Unsecured Creditors

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 46

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2007, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joseph M. Meier
Cosho Humphrey, LLP
jmeier@cosholaw.com
(Debtor)

Kelly Greene McConnell
Givens Pursley LLP
litigation@givenspursley.com
(Banner Bank)

Jerome Shulkin
mepelbaum@shulkin.com
(Debtor)

Craig Miller
Davis Wright Tremaine LLP
craigmiller@dwt.com
(Banner Bank)

U.S. Trustee
ustp.region18.bs.ecf@usdoj.gov

John S. Kaplan
Erik R. Bjorkman
Perkins Coie LLP
jkaplan@perkinscoie.com
Ebjorkman@perkinscoie.com
(Foundation Bank)

Gary L. McClendon
gary.mcclendon@usdoj.gov
(U.S. Trustee)

Michael G. Schmidt
Lukins & Annis, P.S.
mgs@lukins.com
(Washington Trust Bank)

Bruce A. Anderson
Elsaesser Jarzabek Anderson Marks Elliott and McHugh
baafiling@ejame.com
(Regal Financial Bank)

Ford Elsaesser
Elsaesser Jarzabek Anderson Marks Elliott and McHugh
ford@ejame.com
(Regal Financial Bank)

Jeffrey M. Wilson
Wilson McColl & Rasmussen
jeff@wilsonmccoll.com
(CitiCapital Commercial Corporation)

Jed Morris
Lukins & Annis, P.S.
mgs@lukins.com
(Washington Trust Bank)

William L. Smith
Trout Jones Gledhill Fuhrman, P.A.
bsmith@idalaw.com
(Frontier Bank)

John F. Kurtz, Jr.
Hawley Troxell Ennis & Hawley, LLP
jfk@hteh.com
(American West Bank)

Lynda Fischer
Ada County Treasurer
trbankrupt@adaweb.net,
bankruptcy@adaweb.net

Grant E. Courtney
Lane Powell PC
courtneyg@lanepowell.com
(Washington Mutual Bank and Key Bank)

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 47

| | |
|---|---|
| Harold Q. Noack, Jr.<br>Harold Q. Noack, Jr., P.A.<br>pete@noacklaw.com<br>(Rhodes Asset Management) | Bruce W. Leaverton<br>Lane Powell PC<br>leavertonb@lanepowell.com<br>(Key Bank, N.A.) |
| William R. Snyder<br>William R. Snyder & Associates, P.A.<br>main@wrslegal.com<br>(DJS Properties, L.P.) | Randall A. Peterman<br>Moffatt, Thomas, Barrett, Rock & Fields,<br>Chtd.<br>rap@moffatt.com<br>(J.R. Simplot Company) |
| Steven W. Boyce<br>Just Law Office<br>sboyce@justlawidaho.com<br>(PHH Mortgage Corp.) | Daniel C. Green<br>Racine Olson Nye Budge & Bailey, Chtd.<br>dan@racinelaw.net<br>(Cowlitz Bank) |
| Jan S. Ostrovsky<br>Crocker Kuno Ostrovsky LLC<br>jostrovsky@crockerkuno.com<br>(Cowlitz Bank) | Charles R. Ekberg<br>Lane Powell PC<br>ekbergc@lanepowell.com<br>(Washington Mutual Bank and Key Bank) |
| P. Larry Westberg<br>Westberg<br>lwstbrg@cableone.net<br>(DJS Properties, L.P.) | |

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:

   Via first-class mail, postage prepaid addressed as follows:

| | |
|---|---|
| American Marine Bank<br>Attn: Barbara Swartling<br>P.O. Box 10788<br>Bainbridge, WA  98110 | Michael Ballantyne<br>Thornton Oliver Keller<br>250 S. Fifth Street, 2nd Floor<br>Boise, ID  83702 |
| Washington Mutual<br>c/o Charles R. Ekberg<br>Lane Powell PC<br>1420 Fifth Avenue, Suite 4100<br>Seattle, WA  98101-2338 | Bradley R. Duncan<br>2600 Century Square<br>1501 Fourth Avenue<br>Seattle, WA  98101 |
| The Commerce Bank of Washington, N.A.<br>c/o Charles C. Robinson<br>Eighteenth Floor<br>1191 Second Avenue<br>Seattle, WA  98101-2939 | American Marine Bank<br>c/o Bradford Anderson<br>One Convention Place, Suite 1400<br>701 Pike Street<br>Seattle, WA  98101-3927 |

                    /s/ Larry Prince
                    for HOLLAND & HART LLP

3681478_3.DOC

SECOND OMNIBUS RESPONSE TO OBJECTIONS TO CONFIRMATION - 48