Larry E. Prince, ISB No. 1759
Brad A. Goergen, ISB No. 6631
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, ID  83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
E-mail:  lprince@hollandhart.com
          bagoergen@hollandhart.com

Attorneys for Plaintiff Ronald Greenspan as Estate Representative
of the Don J. Simplot Bankruptcy Estate

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>DON J. SIMPLOT,<br><br>             Debtor. | Bankruptcy Case No. 06-00002-TLM<br><br>Chapter 11 |
| RONALD F. GREENSPAN, as Estate Representative of the Don J. Simplot Bankruptcy Estate,<br><br>            Plaintiff,<br><br>v.<br><br>DJS PROPERTIES, L.P., an Idaho limited partnership; DJS MANAGEMENT LLC, an Idaho limited liability company; DJS II FAMILY GRANTOR TRUST, an Idaho Trust; MICHAEL LLOYD SIMPLOT, an individual; DEBBIE S. MCDONALD, an individual; CINDY SIMPLOT HAROIAN, an individual; JOHN DON SIMPLOT, an individual; APRIL DAWN SIMPLOT GWIN, an individual; JOHN RALSTIN SIMPLOT, an individual; ERIC MICHAEL SIMPLOT, an individual; MICHAEL L. SIMPLOT, in his capacity as custodian for Breanne Elizabeth Simplot under the Idaho Uniform Transfers to Minors Act; DEBBIE S. MCDONALD, in her | Adversary Case No. _____<br><br><br>**COMPLAINT** |

COMPLAINT - 1

capacity as custodian for Patrick Henry McDonald
under the Idaho Uniform Transfers to Minors Act;
CINDY S. HAROIAN, in her capacity as custodian
for Andrew Cortland Haroian under the Idaho
Uniform Transfers to Minors Act; CINDY S.
HAROIAN, in her capacity as custodian for
Samantha Erin Haroian under the Idaho Uniform
Transfers to Minors Act; CINDY S. HAROIAN, in
her capacity as custodian for Isabelle Morgan
Haroian under the Idaho Uniform Transfers to
Minors Act; CINDY S. HAROIAN, in her capacity
as custodian for Julian James Haroian under the
Idaho Uniform Transfers to Minors Act; CINDY S.
HAROIAN, in her capacity as custodian for Sophia
Rose Haroian under the Idaho Uniform Transfers
to Minors Act; JOHN D. SIMPLOT, in his capacity
as custodian for John Warren Simplot under the
Idaho Uniform Transfers to Minors Act; JOHN D.
SIMPLOT, in his capacity as custodian for Clayton
Allan Simplot under the Idaho Uniform Transfers
to Minors Act; JOHN D. SIMPLOT, in his capacity
as custodian for Thomas Robert Simplot under the
Idaho Uniform Transfers to Minors Act; APRIL S.
GWIN, in her capacity as custodian for Olivia
Grace Gwin under the Idaho Uniform Transfers to
Minors Act; NINA L. SIMPLOT, an individual;
REID H. SIMPLOT, an individual; BREANNE
ELIZABETH SIMPLOT, an individual; PATRICK
HENRY MCDONALD, an individual; ANDREW
CORTLAND HAROIAN, an individual;
SAMANTHA ERIN HAROIAN, an individual;
ISABELLE MORGAN HAROIAN, an individual;
JULIAN JAMES HAROIAN, an individual;
SOPHIA ROSE HAROIAN, an individual; JOHN
WARREN SIMPLOT, an individual; CLAYTON
ALLAN SIMPLOT, an individual; THOMAS
ROBERT SIMPLOT, an individual; OLIVIA
GRACE GWIN, an individual; and JOHN H.
GWIN, an individual,

                    Defendants.

COMPLAINT - 2

Plaintiff Ronald Greenspan, in his capacity as Estate Representative of the Don J. Simplot bankruptcy estate ("Estate Representative"), by and through his attorneys, Holland & Hart LLP, alleges upon information and belief as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Ronald Greenspan is the duly-appointed, court-authorized, Estate Representative of the Don J. Simplot bankruptcy estate in the above-captioned chapter 11 bankruptcy case (the "Estate").

2.      Defendant DJS Properties, L.P. ("DJS") is a limited partnership organized under the laws of the state of Idaho with its principle place of business located in Boise, Ada County, Idaho.

3.      There are twenty limited partners of DJS.  The Estate holds a 73.3578% interest in DJS as a limited partner.  The remaining nineteen DJS limited partners are defendants in this action (the "Limited Partner Defendants"), and the Limited Partner Defendants are:

      a.      The DJS II Family Grantor Trust, a trust organized under the laws of the state of Idaho, with its principle place of business at 999 Main Street, Suite 1300, P.O. Box 27, Boise, Idaho, 83707-0027, claiming a 20% interest;

      b.      Michael Lloyd Simplot, residing at 12625 W. Scotfield Street, Boise, Idaho, 83713, claiming a 0.4107% interest;

      c.      Debbie S. McDonald, residing at 1903 E. Spring Meadow Lane, Boise, Idaho, 83706, claiming a 0.0107% interest;

      d.      Cindy Simplot Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702, claiming a 0.4107% interest;

COMPLAINT - 3

e.      John Don Simplot, residing at 3301 Winsome Road, Boise, Idaho, 83702, claiming a 0.4107% interest;

f.      April Dawn Simplot Gwin, residing at 300 E. Parkriver Drive, Boise, Idaho, 83706, claiming a 0.4107% interest;

g.      John Ralstin Simplot, residing at 1103 E. Harrison Street, Seattle, Washington, 98102, claiming a 0.4107% interest;

h.      Eric Michael Simplot, residing at 12625 W. Scotfield Street, Boise, Idaho, 83713, claiming a 0.1815% interest;

i.      Michael L. Simplot, residing at 12625 W. Scotfield Street, Boise, Idaho, 83713, claiming a 0.1815% interest as custodian for Breanne Elizabeth Simplot under the Idaho Uniform Transfers to Minors Act;

j.      Debbie S. McDonald, residing at 1903 E. Spring Meadow Lane, Boise, Idaho, 83706, claiming a 0.1815% interest as custodian for Patrick Henry McDonald under the Idaho Uniform Transfers to Minors Act;

k.      Cindy S. Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702, claiming a 0.1815% interest as custodian for Andrew Courtland Haroian under and the Idaho Uniform Transfers to Minors Act;

l.      Cindy S. Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702, claiming a 0.1815% interest as custodian for Samantha Erin Haroian under the Idaho Uniform Transfers to Minors Act;

m.      Cindy S. Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702, claiming a 0.1815% interest as custodian for Isabelle Morgan Haroian under the Idaho Uniform Transfers to Minors Act;

COMPLAINT - 4

n.      Cindy S. Haroian, residing at 1849 North Stoneview Place, Boise,

Idaho, 83702, claiming a 0.1815% interest as custodian for Julian James Haroian

under the Idaho Uniform Transfers to Minors Act;

o.      Cindy S. Haroian, residing at 1849 North Stoneview Place, Boise,

Idaho, 83702, claiming a 0.1815% interest as custodian for Sophia Rose Haroian

under the Idaho Uniform Transfers to Minors Act;

p.      John D. Simplot, residing at 3301 Winsome Road, Boise, Idaho,

83702, claiming a 0.1815% interest as custodian for John Warren Simplot under

the Idaho Uniform Transfers to Minors Act;

q.      John D. Simplot, residing at 3301 Winsome Road, Boise, Idaho,

83702, claiming a 0.1815% interest as custodian for Clayton Allan Simplot under

the Idaho Uniform Transfers to Minors Act;

r.      John D. Simplot, residing at 3301 Winsome Road, Boise, Idaho,

83702, claiming a 0.1815% interest as custodian for Thomas Robert Simplot

under the Idaho Uniform Transfers to Minors Act; and

s.      April Dawn Simplot Gwin, residing at 300 E. Parkriver Drive,

Boise, Idaho, 83706, claiming a 0.1815% interest as custodian for Olivia Grace

Gwin under the Idaho Uniform Transfers to Minors Act.

4.      Defendant DJS Management LLC is a limited liability company organized

under the laws of the state of Idaho with its principal place of business located in Boise,

Ada County, Idaho.  Defendant Debbie S. McDonald is both the manager of DJS

Management LLC and a limited partner in DJS.  Defendant DJS Management LLC

claims a 0.4% interest in DJS as a general partner, subject to a dispute over the

COMPLAINT - 5

propriety, legitimacy, and efficacy of DJS Management LLC's appointment as a general partner.

5.      The Estate holds a 2% interest in DJS as a general partner.

6.      The remaining defendants in this action are referred to as the "Individual Defendants."  The Individual Defendants in this action are:

        a.      Michael Lloyd Simplot, residing at 12625 W. Scotfield Street, Boise, Idaho, 83713;

        b.      Debbie S. McDonald, residing at 1903 E. Spring Meadow Lane, Boise, Idaho, 83706;

        c.      Cindy Simplot Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702;

        d.      John Don Simplot, residing at 3301 Winsome Road, Boise, Idaho, 83702;

        e.      April Dawn Simplot Gwin, residing at 300 E. Parkriver Drive, Boise, Idaho, 83706;

        f.      John Ralstin Simplot, residing at 1103 E. Harrison Street, Seattle, Washington, 98102;

        g.      Nina L. Simplot, residing at 2401 E. Herbert Drive, Boise, Idaho, 83706-5706;

        h.      Reid H. Simplot, residing at 2401 E. Herbert Drive, Boise, Idaho, 83706-5706;

        i.      Eric Michael Simplot, residing at 12625 W. Scotfield Street, Boise, Idaho, 83713;

COMPLAINT - 6

j.      Breanne Elizabeth Simplot, residing at 12625 W. Scotfield Street, Boise, Idaho, 83713;

k.      Patrick Henry McDonald, residing at 1903 E. Spring Meadow Lane, Boise, Idaho, 83706;

l.      Andrew Courtland Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702;

m.      Samantha Erin Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702;

n.      Isabelle Morgan Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702;

o.      Julian James Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702;

p.      Sophia Rose Haroian, residing at 1849 North Stoneview Place, Boise, Idaho, 83702;

q.      John Warren Simplot, residing at 3301 Winsome Road, Boise, Idaho, 83702;

r.      Clayton Allan Simplot, residing at 3301 Winsome Road, Boise, Idaho, 83702;

s.      Thomas Robert Simplot, residing at 3301 Winsome Road, Boise, Idaho, 83702;

t.      Olivia Grace Gwin, residing at 300 E. Parkriver Drive, Boise, Idaho, 83706; and

COMPLAINT - 7

u.    John H. Gwin, residing at 300 E. Parkriver Drive, Boise, Idaho, 83706.

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(b) and § 2201, and pursuant to the reservation of jurisdiction contained in Article 11.1.5 of the Modified Joint Plan of Reorganization of Debtor and Creditors' Committee in the above-captioned chapter 11 case (the "Plan"), which Plan was confirmed by this Court on September 26, 2007.

8.    Venue is proper before this Court pursuant to 28 U.S.C. § 1409 as this is a proceeding arising under title 11, United States Code, or arising in or related to Debtor Don J. Simplot's ("Debtor") chapter 11 bankruptcy case, which case was filed in this District.

9.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

### GENERAL ALLEGATIONS

10.    Debtor filed for relief under chapter 11 of the Bankruptcy Code on January 4, 2006 (the "Petition Date").

11.    Prior to the Petition Date, Debtor served as the sole general partner of DJS.  Debtor also held, and the Estate still holds (through the Estate Representative), the largest limited partner interest in DJS.  Debtor effectively controlled DJS and its operations, and used DJS's assets as his own.

12.    DJS is an insider of Debtor, and Debtor is an insider of DJS.

13.    Debtor is a former employee and director of the J.R. Simplot Company ("JRSCo").  JRSCo is a large, closely-held, family-controlled, agribusiness company.

COMPLAINT - 8

JRSCo allegedly provided business management, wealth preservation, and tax minimization services to Debtor as a member of the Simplot family.  These services included documenting various purported transactions between Debtor and DJS.

14.    After the Petition Date, the Limited Partner Defendants allegedly terminated Debtor's general partner interest in DJS and appointed DJS Management LLC as a substitute general partner.  These acts were wrongful because, among other reasons: (i) they occurred during the pendency of Debtor's bankruptcy case but without the Limited Partner Defendants having first obtained stay relief under 11 U.S.C. § 362(d); (ii) they occurred without having obtained the consent of all of DJS's partners; and (iii) they relied upon Debtor's wrongful consent as a limited partner to the termination and appointment.

15.    After allegedly ousting Debtor from his position as the general partner of DJS, DJS, DJS Management LLC, and the Limited Partner Defendants have wrongfully excluded Debtor from participation in DJS, both as a general and limited partner.

16.    DJS and the Estate Representative dispute the ownership of certain assets (the "Contested Assets").  Debtor is the owner of record for the Contested Assets, and other incidents of ownership confirm that Debtor is the sole owner of the Contested Assets.  DJS, however, claims to own the Contested Assets.

17.    Approximately forty-five days prior to the Petition Date, Debtor transferred to DJS title to three parcels of real property.  The first property was a condominium located in the Grove Hotel in downtown Boise, Idaho; the second property was approximately 120 acres of undeveloped property located in the Middleton, Idaho, area, and immediately adjacent to Debtor's residence; and the third

COMPLAINT - 9

property was a lakefront parcel located in McCall, Idaho (collectively, the "Conveyed Assets"). Prior to these transfers, Debtor was the title holder of record for the Conveyed Assets, and other incidents of ownership confirm that Debtor was the sole owner of the Conveyed Assets. DJS provided no contemporaneous consideration for the transfer of title to the Conveyed Assets.

18.     During the four year period preceding the Petition Date, Debtor transferred a number of shares of Class B stock in JRSCo to the Individual Defendants, and transferred certain limited partner interests in DJS to the Limited Partner Defendants. Neither the Individual Defendants nor the Limited Partner Defendants provided any contemporaneous consideration for the respective transfers to them of Class B shares or limited partner interests.

19.     During the four-year period preceding the Petition Date, Debtor obligated himself for the repayment of millions of dollars of debt. Much of this debt is reflected in the bankruptcy schedules Debtor filed in connection with Debtor's chapter 11 bankruptcy case. As a result of being obligated to repay these debts, during the four-year period preceding the Petition Date, Debtor was "insolvent" as that term is defined in 11 U.S.C. § 101(32) and Idaho Code § 55-911.

### COUNT I
### Avoidance and Recovery of the "Boise Condo" Under
### Bankruptcy Fraudulent Conveyance Law
### (Against DJS)

20.     The Estate Representative realleges the allegations in paragraphs 1 through 19 as though fully set forth here.

21.     On November 15, 2005, approximately forty-five days prior to the Petition Date, Debtor purported to transfer and assign to DJS all of his interest in a

COMPLAINT - 10

condominium located atop the Grove Hotel in Boise, Idaho, identified as Condominium Unit 1403, as shown on the Condominium Plat of Boulevard Two Fifty Five Condominiums, Ada County Instrument No. 98015001 (the "Boise Condo").

22.    At the time Debtor transferred the Boise Condo to DJS, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32).

23.    Debtor's transfer of the Boise Condo to DJS was a transfer of an interest of Debtor in property.

24.    Debtor's transfer of the Boise Condo to DJS was intended by Debtor to hinder, delay, or defraud Debtor's existing and future creditors.

25.    In the alternative, Debtor received less than the reasonably equivalent value in exchange for the transfer of title to the Boise Condo, and the transfer occurred at a time when Debtor was insolvent or was engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions.

26.    The transfer of the Boise Condo is avoidable under 11 U.S.C. § 548.

27.    Pursuant to 11 U.S.C. §§ 548 and 550, the Estate Representative seeks to have Debtor's transfer of the Boise Condo to DJS unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the Boise Condo, plus interest from the date of the avoided transfer.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

COMPLAINT - 11

**COUNT II**
**Avoidance and Recovery of the Boise Condo Under**
**Idaho Fraudulent Conveyance Law**
**(Against DJS)**

28.    The Estate Representative realleges the allegations in paragraphs 1 through 27 as though fully set forth here.

29.    On November 15, 2005, approximately forty-five days prior to the Petition Date, Debtor purported to transfer and assign to DJS all of his interest in the Boise Condo.

30.    DJS provided no contemporaneous consideration in exchange for the transfer of title to the Boise Condo.

31.    At the time Debtor transferred the Boise Condo to DJS, Debtor was insolvent as that term is defined by Idaho Code § 55-911 and DJS was aware of Debtor's insolvency.

32.    Debtor transferred the Boise Condo to DJS with the intent to delay and defraud creditors, and the transfer is therefore void.

33.    In the alternative, Debtor transferred the Boise Condo to DJS with the actual intent to hinder, delay and defraud Debtor's creditors, and the transfer is therefore avoidable.

34.    In the alternative, Debtor received less than the reasonably equivalent value in exchange for the transfer of title to the Boise Condo, and the transfer occurred at a time when Debtor was insolvent or was engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions, and the transfer is therefore avoidable.

COMPLAINT - 12

35.     As a result, the transfer of the Boise Condo is void under Idaho Code §

55-906, and/or avoidable under Idaho Code §§ 55-913(1)(a), 55-913(1)(b), and 55-914,

and 11 U.S.C. § 544.

36.     The Estate Representative seeks to have Debtor's transfer of the Boise

Condo to DJS unwound and avoided, or, in the alternative, a money judgment against

DJS equal to the value of the Boise Condo pursuant to Idaho Code § 55-917 plus

interest from the date of the avoided transfer.  The Estate Representative also seeks

such other additional appropriate relief as may be available at law or equity.

## COUNT III
### Avoidance and Recovery of the "Boise Condo" Under
### Bankruptcy Preference Law
### (Against DJS)

37.     The Estate Representative realleges the allegations in paragraphs 1

through 36 as though fully set forth here.

38.     According to DJS, during a multi-year period preceding the Petition Date,

claims arose in DJS's favor and against Debtor such that DJS became one of Debtor's

"creditors," as that term is defined in 11 U.S.C. § 101(10).

39.     On November 15, 2005, approximately forty-five days prior to the Petition

Date, Debtor purported to transfer and assign to DJS all of his interest in the Boise

Condo.  This transfer was to or for DJS's benefit.

40.     Debtor's transfer of the Boise Condo to DJS was purportedly on account

of the pre-existing claims in DJS's favor and against Debtor.  This transfer was,

therefore, on account of an antecedent debt owed by Debtor to DJS before the transfer

was made.

COMPLAINT - 13

41.    At the time Debtor transferred the Boise Condo to DJS, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32).

42.    Debtor's transfer of the Boise Condo to DJS was made within ninety days of the Petition Date.

43.    The current market value of the Boise Condo is believed to be in excess of $900,000. But for Debtor's prepetition transfer of the Boise Condo to DJS, the Boise Condo would be liquidated and its proceeds available for distribution to Debtor's unsecured creditors.

44.    Debtor's transfer of the Boise Condo to DJS will enable DJS to receive more than it would receive if Debtor's case were one under chapter 7 of the Bankruptcy Code, the transfer had not been made, and DJS received payment of its claims pursuant to the Bankruptcy Code.

45.    Pursuant to 11 U.S.C. § 547, Debtor's transfer of the Boise Condo to DJS is an avoidable preference. Pursuant to 11 U.S.C. § 550, the Estate Representative is entitled to recover from DJS title to the Boise Condo or, in the alternative, a money judgment against DJS equal to the value of the Boise Condo plus interest from the date of the avoided transfer.

46.    The Estate Representative seeks to have Debtor's transfer of the Boise Condo to DJS unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the Boise Condo plus interest from the date of the avoided transfer. The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

COMPLAINT - 14

## COUNT IV
### Avoidance and Recovery of the "Hollow Road Property"
### Under Bankruptcy Fraudulent Conveyance Law
### (Against DJS)

47.     The Estate Representative realleges the allegations in paragraphs 1 through 46 as though fully set forth here.

48.     On November 29, 2005, Debtor purported to transfer and assign to DJS all of his interest in approximately 120 acres of undeveloped real property located at 15665 Hollow Road, Caldwell, Idaho, 83607 (the "Hollow Road Property"), which is described more particularly on **Exhibit A** attached hereto.

49.     At the time Debtor transferred the Hollow Road Property to DJS, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32).

50.     Debtor's transfer of the Hollow Road Property to DJS was a transfer of an interest of Debtor in property.

51.     Debtor's transfer of the Hollow Road Property to DJS was intended by Debtor to hinder, delay, or defraud Debtor's existing and future creditors.

52.     In the alternative, Debtor received less than the reasonably equivalent value in exchange for the transfer of title to the Hollow Road Property, and the transfer occurred at a time when Debtor was insolvent or was engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions.

53.     The transfer of the Hollow Road Property is avoidable under 11 U.S.C. § 548.

54.     Pursuant to 11 U.S.C. §§ 548 and 550, the Estate Representative seeks to have Debtor's transfer of the Hollow Road Property to DJS unwound and avoided, or, in

COMPLAINT - 15

the alternative, a money judgment against DJS equal to the value of the Hollow Road

Property plus interest from the date of the avoided transfer.  The Estate Representative

also seeks such other additional appropriate relief as may be available at law or equity.

### COUNT V
### Avoidance and Recovery of the Hollow Road Property
### Under Idaho Fraudulent Conveyance Law
### (Against DJS)

55.    The Estate Representative realleges the allegations in paragraphs 1

through 54 as though fully set forth here.

56.    On November 29, 2005, Debtor purported to transfer and assign to DJS all

of his interest in the Hollow Road Property.

57.    DJS provided no contemporaneous consideration in exchange for the

transfer of title to the Hollow Road Property.

58.    At the time Debtor transferred the Hollow Road Property to DJS, Debtor

was insolvent as that term is defined by Idaho Code § 55-911 and DJS was aware of

Debtor's insolvency.

59.    Debtor's transfer of the Hollow Road Property to DJS was a transfer of an

interest of Debtor in property.

60.    Debtor transferred the Hollow Road Property to DJS with the intent to

delay and defraud creditors, and the transfer is therefore void.

61.    In the alternative, Debtor's transfer of the Hollow Road Property was

made with the actual intent to hinder, delay, or defraud Debtor's creditors, and is

therefore avoidable.

62.    In the alternative, Debtor received less than the reasonably equivalent

value in exchange for the transfer of title to the Hollow Road Property, and the transfer

COMPLAINT - 16

occurred at a time when Debtor was insolvent or was engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions, and the transfer is therefore avoidable.

63.    As a result, the transfer of the Hollow Road Property is void under Idaho Code § 55-906, and/or avoidable under Idaho Code §§ 55-913(1)(a), 55-913(1)(b), and 55-914, and 11 U.S.C. § 544.

64.    The Estate Representative seeks to have Debtor's transfer of the Hollow Road Property to DJS unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the Hollow Road Property pursuant to Idaho Code § 55-917 plus interest from the date of the avoided transfer.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

### COUNT VI
### Avoidance and Recovery of the Hollow Road Property
### Under Bankruptcy Preference Law
### (Against DJS)

65.    The Estate Representative realleges the allegations in paragraphs 1 through 64 as though fully set forth here.

66.    According to DJS, during a multi-year period preceding the Petition Date, claims arose in DJS's favor and against Debtor such that DJS became one of Debtor's "creditors," as that term is defined in 11 U.S.C. § 101(10).

67.    On November 29, 2005, Debtor purported to transfer and assign to DJS all of his interest in the Hollow Road Property.

68.    Debtor's transfer of the Hollow Road Property to DJS was purportedly on account of the pre-existing claims in DJS's favor and against Debtor.  This transfer was,

COMPLAINT - 17

therefore, on account of an antecedent debt owed by Debtor to DJS before the transfer was made.

69.    At the time Debtor transferred the Hollow Road Property to DJS, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32).

70.    Debtor's transfer of the Hollow Road Property to DJS was made within ninety days of the Petition Date.

71.    But for Debtor's prepetition transfer of the Hollow Road Property to DJS, the Hollow Road Property would be liquidated and its proceeds available for distribution to Debtor's unsecured creditors.

72.    Debtor's transfer of the Hollow Road Property to DJS will enable DJS to receive more than it would receive if Debtor's case were one under chapter 7 of the Bankruptcy Code, the transfer had not been made, and DJS received payment of its claims pursuant to the Bankruptcy Code.

73.    Pursuant to 11 U.S.C. § 547, Debtor's transfer of the Hollow Road Property to DJS is an avoidable preference.  Pursuant to 11 U.S.C. § 550, the Estate Representative is entitled to recover from DJS title to the Hollow Road Property or, in the alternative, a money judgment against DJS equal to the value of the Hollow Road Property plus interest from the date of the avoided transfer.

74.    The Estate Representative seeks to have Debtor's transfer of the Hollow Road Property to DJS unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the Hollow Road Property plus interest from the date of the avoided transfer.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

COMPLAINT - 18

**COUNT VII**
**Avoidance and Recovery of the "McCall Property"**
**Under Bankruptcy Fraudulent Conveyance Law**
**(Against DJS)**

75.     The Estate Representative realleges the allegations in paragraphs 1 through 74 as though fully set forth here.

76.     On November 16, 2005, Debtor purported to transfer and assign all to DJS of his interest in a vacation home on Payette Lake located at 2340 Warren Wagon Road, McCall, Valley County, Idaho, described as two parcels of land, a portion of Lot 155 Payette Lake, Cottage Sites, located in Government Lot 4, on Lot 155, Section 28, T 19 N, R 3 East Boise Meridian, consisting of approximately .23 acres and .45 acres respectively (the "McCall Property").

77.     At the time Debtor transferred the McCall Property to DJS, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32).

78.     Debtor's transfer of the McCall Property to DJS was a transfer of an interest of Debtor in property.

79.     Debtor's transfer of the McCall Property to DJS was intended by Debtor to hinder, delay, or defraud Debtor's existing and future creditors.

80.     In the alternative, Debtor received less than the reasonably equivalent value in exchange for the transfer of title to the McCall Property, and the transfer occurred at a time when Debtor was insolvent or was engaged in businesses or transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions.

81.     The transfer of the McCall Property is avoidable under 11 U.S.C. § 548.

COMPLAINT - 19

82.    Pursuant to 11 U.S.C. §§ 548 and 550, the Estate Representative seeks to have Debtor's transfer of the Hollow Road Property to DJS unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the Hollow Road Property plus interest from the date of the avoided transfer.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

## COUNT VIII
### Avoidance and Recovery of the McCall Property
### Under Idaho Fraudulent Conveyance Law
### (Against DJS)

83.    The Estate Representative realleges the allegations in paragraphs 1 through 82 as though fully set forth here.

84.    On November 29, 2005, Debtor purported to transfer and assign to DJS all of his interest in the McCall Property.

85.    DJS provided no contemporaneous consideration in exchange for the transfer of title to the McCall Property.

86.    At the time Debtor transferred the McCall Property to DJS, Debtor was insolvent as that term is defined by Idaho Code § 55-911 and DJS was aware of Debtor's insolvency.

87.    Debtor's transfer of the McCall Property to DJS was a transfer of an interest of Debtor in property.

88.    Debtor transferred the McCall Property to DJS with the intent to delay and defraud creditors, and the transfer is therefore void.

89.    In the alternative, Debtor's transfer of the McCall Property was made with the actual intent to hinder, delay, or defraud Debtor's creditors, and is therefore avoidable.

COMPLAINT - 20

90.     In the alternative, Debtor received less than the reasonably equivalent value in exchange for the transfer of title to the McCall Property, and the transfer occurred at a time when Debtor was insolvent or was engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the business or transaction, and the transfer is therefore avoidable.

91.     As a result, the transfer of the McCall Property is void under Idaho Code § 55-906, and/or avoidable under Idaho Code §§ 55-913(1)(a), 55-913(1)(b), and 55-914, and 11 U.S.C. § 544.

92.     The Estate Representative seeks to have Debtor's transfer of the McCall Property to DJS unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the McCall Property pursuant to Idaho Code § 55-917.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

## COUNT IX
### Avoidance and Recovery of the McCall Property
### Under Bankruptcy Preference Law
### (Against DJS)

93.     The Estate Representative realleges the allegations in paragraphs 1 through 92 as though fully set forth here.

94.     According to DJS, during a multi-year period preceding the Petition Date, claims arose in DJS's favor and against Debtor such that DJS became one of Debtor's "creditors," as that term is defined in 11 U.S.C. § 101(10).

95.     On November 29, 2005, Debtor purported to transfer and assign to DJS all of his interest in the McCall Property.

COMPLAINT - 21

96.    Debtor's transfer of the McCall Property to DJS was purportedly on account of the pre-existing claims in DJS's favor and against Debtor.  This transfer was, therefore, on account of an antecedent debt owed by Debtor to DJS before the transfer was made.

97.    At the time Debtor transferred the McCall Property to DJS, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32).

98.    Debtor's transfer of the McCall Property to DJS was made within ninety days of the Petition Date.

99.    But for Debtor's prepetition transfer of the McCall Property to DJS, the McCall Property would be liquidated and its proceeds available for distribution to Debtor's unsecured creditors.

100.    Debtor's transfer of the McCall Property to DJS will enable DJS to receive more than it would receive if Debtor's case were one under chapter 7 of the Bankruptcy Code, the transfer had not been made, and DJS received payment of its claims pursuant to the Bankruptcy Code.

101.    Pursuant to 11 U.S.C. § 547, Debtor's transfer of the McCall Property to DJS is an avoidable preference.  Pursuant to 11 U.S.C. § 550, the Estate Representative is entitled to recover from DJS title to the McCall Property or, in the alternative, a money judgment against DJS equal to the value of the McCall Property plus interest from the date of the avoided transfer.

102.    The Estate Representative seeks to have Debtor's transfer of the McCall Property to DJS unwound and avoided, or, in the alternative, a money judgment against

COMPLAINT - 22

DJS equal to the value of the McCall Property.  The Estate Representative also seeks

such other additional appropriate relief as may be available at law or equity.

**COUNT X**
**Declaratory Judgment—Determination of Nature, Extent, and**
**Validity of Interest in the Contested Assets**
**(Against DJS)**

103.    The Estate Representative realleges the allegations in paragraphs 1

through 102 as though fully set forth here.

104.    Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, a federal

court "may declare the rights and other legal relations of any interested party seeking

such declaration[.]"

105.    DJS purports to have an interest in multiple items of real and personal

property titled in Debtor's name. These assets include:

     a.    a hangar at 4217 Aviation Way, Unit O, Caldwell, Idaho;

     b.    a marina slip/condominium in Anacortes, Washington, described

more particularly in the Deed of Trust and Security Agreement attached hereto as

**Exhibit B**;

     c.    hangars 106-D and 106-E at 336 Deinhard Lane, McCall, Idaho;

     d.    real property known as Casa Soridada in Mazatlan, Mexico;

     e.    a membership interest in Entech Development, Ltd. Co.;

     f.    shares of stock in PCS Edventures!.Com, Inc., including

approximately 505,000 shares represented by stock certificate number 663;

     g.    170,132 shares of stock in IMPCO Technologies, Inc., which were,

post-petition, sold by one of Debtor's secured creditors after the creditor

obtained stay relief;

COMPLAINT - 23

      h.     shares of stock in Entech Corporation, including 260 shares represented by stock certificate number 8;

      i.     approximately $285,650.48 resulting from Patrick and Veronica Jutte's payoff of a contract receivable involving real property known as Estrella del Mar and located in Mexico;

      j.     a real estate contract with Jose Hernandez regarding Mexico property;

      k.     interests in two condominiums, purchased in 2004, located at Sabalo Cerritos Numero 999, Interior 1, No. 608, Villas De Rueda, Mazatlan, Sinaloa; and Sabalo Cerritos Numero 999, Interior 1, No. 609, Villas De Rueda, Mazatlan, Sinaloa; and

      l.     a bank account maintained by Luis Gomez in Mazatlan, Mexico.

106.    DJS is not the title holder of record for, and does not have any perfected interest in, these assets. Debtor is the sole record title holder of these assets.

107.    Based upon, among other things, Debtor's status as the record title holder of these assets, the Estate Representative contends that Debtor was the sole owner of each of the Contested Assets. DJS disagrees.

108.    The Estate Representative seeks a declaration that: (i) the Estate is the sole owner of the Contested Assets and that DJS has no cognizable legal or equitable interest in the Contested Assets, or, (ii) in the alternative, that any interest DJS may have in the Contested Assets is void as against the Estate Representative and/or avoidable by the Estate Representative under applicable law, including but not limited to Idaho Code § 55-907 and 11 U.S.C. § 544.

COMPLAINT - 24

**COUNT XI**
**Declaratory Judgment—Invalidity of DJS Ipso Facto Provisions**
**(Against DJS, DJS Management LLC, and the Limited Partner Defendants)**

109.    The Estate Representative realleges the allegations in paragraphs 1

through 108 as though fully set forth here.

110.    Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, a federal

court "may declare the rights and other legal relations of any interested party seeking

such declaration[.]"

111.    DJS's Amended and Restated Agreement of Limited Partnership of DJS

Properties, L.P. (the "Partnership Agreement"), a true and correct copy of which is

attached hereto as **Exhibit C**, contains multiple provisions that restrict or condition the

transfer of partner interests in DJS, and that are conditioned on the insolvency or

financial condition of a partner, the commencement of a case under title 11 of the

United States Code, or on the appointment of or taking possession by a trustee in a case

title 11 of the United States Code, and which effect a forfeiture, modification, or

termination of the partner's interest in DJS.

112.    The Partnership Agreement contains multiple provisions that purport to

terminate or modify a partner's rights under the Partnership Agreement based on the

insolvency or financial condition of a partner at any time before the closing of a case

under title 11 of the United States Code, the commencement of a case under title 11 of

the United States Code, or the appointment of or taking possession by a trustee in a case

title 11 of the United States Code or a custodian before such commencement.

113.    The provisions referenced in paragraphs 111 and 112 herein (the "Transfer

Restrictions") include, but are not necessarily limited to:

COMPLAINT - 25

a.      Article 5.7, purporting to restrict a general partner's rights and powers to transfer that partner's general partner interest under all circumstances, including upon that partner's bankruptcy;

b.      Article 6.3, purporting to terminate a general partner's rights and powers upon that partner's bankruptcy;

c.      Article 6.4(b)(3), purporting to terminate a general partner's interests upon that partner's bankruptcy, converting that partner to a "Defaulting Partner," permitting the withholding of distributions during a four-year option period, and providing for the termination of that partner's interest after the four-year option period without any compensation whatsoever;

d.      Article 7.3, purporting to restrict a limited partner's rights and powers to transfer that partner's limited partner interest under all circumstances, including upon that partner's bankruptcy;

e.      Article 7.7(c), purporting to terminate a limited partner's interests upon that partner's bankruptcy, converting that partner to a "Defaulting Partner," permitting the withholding of distributions during a four-year option period, and providing for the termination of that partner's interest after the four-year option period without any compensation whatsoever;

f.      Article 11, purporting to create rights-of-first-refusal and option rights in favor of DJS and it partners that would permit, after a partner filed for bankruptcy, DJS and/or its partners to purchase the debtor-partner's partner interests at a discount and withhold distributions to the debtor-partner;

COMPLAINT - 26

g.      Other articles cross-referenced by or otherwise effectuating

Articles 5.7, 6.3, 6.4(b)(3), 7.3, 7.7(c), and 11; and

h.      All other articles of similar purpose or effect.

114.    The Estate Representative contends that there has been no transfer from

Debtor in his prepetition capacity to Debtor in his postpetition capacity, and that in any

event the Transfer Restrictions are void, invalid, and unenforceable against the Estate

Representative's rights and interests in DJS.  DJS disagrees.

115.    The Estate Representative seeks a declaration that the Transfer

Restrictions are void, invalid, and unenforceable against the Estate Representative's

rights and interests in DJS.

## COUNT XII
### Declaratory Judgment—Violation of the Automatic Stay
### (Against DJS, DJS Management LLC, and the Limited Partner Defendants)

116.    The Estate Representative realleges the allegations in paragraphs 1

through 115 as though fully set forth here.

117.    Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, a federal

court "may declare the rights and other legal relations of any interested party seeking

such declaration[.]"

118.    On March 7, 2006, DJS Management LLC and the Limited Partner

Defendants conducted a partnership meeting at which they: (i) deemed Debtor to be in

default as a general partner by virtue of his January 4, 2006, chapter 11 bankruptcy

filing; (ii) deemed certain of Debtor's rights and interests as a general partner to be

terminated; and (iii) allegedly appointed DJS Management LLC as a substitute general

partner.

COMPLAINT - 27

119.   Debtor's rights and interests in DJS as a general and limited partner were not automatically terminated upon Debtor's bankruptcy filing and have not been terminated.  Debtor's rights and interests in DJS as a general and limited partner survived Debtor's bankruptcy filing.

120.   The actions of DJS, DJS Management LLC, and the Limited Partner Defendants relating to the March 7, 2006, partnership meeting were acts taken in violation of 11 U.S.C. § 362(a) because they were, among other things, acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

121.   Because the actions of DJS, DJS Management LLC, and the Limited Partner Defendants relating to the March 7, 2006, partnership meeting violate 11 U.S.C. § 362(a), these actions are void and have no force or effect.

122.   Because the actions of DJS, DJS Management LLC, and the Limited Partner Defendants relating to the March 7, 2006, partnership meeting are void, either: (i) the Estate Representative is the sole general partner of DJS because Debtor's bankruptcy filing did not automatically terminate his status as a general partner and no other general partner has been properly installed; or (ii) there has been no general partner of DJS for more than ninety days and, therefore, DJS must be dissolved according to Article 1.5 of the Partnership Agreement and applicable law.

123.   DJS, DJS Management LLC, and the Limited Partner Defendants disagree with the allegations in this Count XII.

124.   The Estate Representative seeks a declaration that: (i) the acts of DJS, DJS Management LLC, and the Limited Partner Defendants in deeming Debtor to be in

COMPLAINT - 28

default as a general partner by virtue of his January 4, 2006, chapter 11 bankruptcy filing, deeming certain of Debtor's rights and interests as a general partner to be terminated, and appointing Defendant DJS Management LLC as a substitute general partner are void because the acts violated the automatic stay; and (ii) either the Estate Representative is the sole general partner of DJS because Debtor's bankruptcy filing did not automatically terminate his status as a general partner and no other general partner has been properly installed, or, in the alternative, there has been no general partner of DJS for more than ninety days and, therefore, DJS must be dissolved according to Article 1.5 of the Partnership Agreement and applicable law.

## COUNT XIII
## Violation of the Automatic Stay
## (Against DJS, DJS Management LLC, the Limited Partner Defendants)

125.    The Estate Representative realleges the allegations in paragraphs 1 through 124 as though fully set forth here.

126.    Prior to the Petition Date, Debtor was the sole general partner of DJS with a 2% general partner interest, and a limited partner with a 73.3578% limited partner interest.

127.    Debtor's rights and interests in DJS as a general and limited partner were not automatically terminated upon Debtor's bankruptcy filing and have not been terminated.  Debtor's rights and interests in DJS as a general and limited partner survived Debtor's bankruptcy filing.

128.    On March 7, 2006, DJS Management LLC and the Limited Partner Defendants conducted a partnership meeting at which they: (i) deemed Debtor to be in default as a general partner by virtue of his January 4, 2006, chapter 11 bankruptcy

COMPLAINT - 29

filing; (ii) deemed certain of Debtor's rights and interests as a general partner to be
terminated; and (iii) allegedly appointed DJS Management LLC as a substitute general
partner.

129.    The actions of DJS, DJS Management LLC, and the Limited Partner
Defendants relating to the March 7, 2006, partnership meeting were acts taken in
violation of 11 U.S.C. § 362(a) because they were, among other things, acts to obtain
possession of property of the estate or of property from the estate or to exercise control
over property of the estate in violation of 11 U.S.C. § 362(a)(3).

130.    The actions of DJS, DJS Management LLC, and the Limited Partner
Defendants relating to the March 7, 2006, partnership meeting were intentional.

131.    DJS, DJS Management LLC, and the Limited Partner Defendants all had
actual knowledge of Debtor's bankruptcy filing prior to the March 7, 2006, partnership
meeting.

132.    But for the intentional, willful, and wrongful acts of DJS, DJS
Management LLC, and the Limited Partner Defendants relating to the March 7, 2006,
partnership meeting, either the Estate Representative would be the sole general partner
of DJS because Debtor's bankruptcy filing did not automatically terminate his status as
a general partner and no other general partner has been properly installed, or, in the
alternative, there would have been no general partner of DJS for more than ninety days
and, therefore, DJS would have been dissolved according to Article 1.5 of the
Partnership Agreement and applicable law.

133.    As a result of the conduct of DJS, DJS Management LLC, and the Limited
Partner Defendants relating to the March 7, 2006, partnership meeting, the Estate

COMPLAINT - 30

Representative has been required to retain the services of attorneys to initiate and prosecute this action.

134.    As a result of the acts of DJS, DJS Management LLC, and the Limited Partner Defendants relating to the March 7, 2006, partnership meeting, the Estate Representative has sustained actual damages in an amount to be established at trial, plus attorney fees and costs incurred in initiating and prosecuting this action.

135.    The Estate Representative seeks a money judgment against DJS, DJS Management LLC, and the Limited Partner Defendants, jointly and severally, in an amount to be proven at trial, plus attorney fees and costs incurred in initiating and prosecuting this action, and for punitive damages equal to ten times the amount of actual damages.

## COUNT XIV
### Declaratory Judgment—Improper Installation of Substitute General Partner
### (Against DJS, DJS Management LLC, and the Limited Partner Defendants)

136.    The Estate Representative realleges the allegations in paragraphs 1 through 135 as though fully set forth here.

137.    Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration[.]"

138.    On March 7, 2006, DJS, DJS Management LLC, and the Limited Partner Defendants conducted a partnership meeting at which they: (i) deemed Debtor to be in default as a general partner by virtue of his January 4, 2006, chapter 11 bankruptcy filing; (ii) deemed certain of Debtor's rights and interests as a general partner to be

COMPLAINT - 31

terminated; and (iii) allegedly appointed DJS Management LLC as a substitute general partner.

139.    The alleged unanimous consent of DJS's partners to the appointment of DJS Management LLC as a substitute general partner was not properly obtained.

140.    Debtor, in his capacity as a general partner, was wrongfully excluded from voting on whether to appoint DJS Management LLC as a substitute general partner.

141.    Debtor voted as a limited partner in connection with the March 7, 2006, partnership meeting.  This vote was a use of estate property outside the ordinary course of business.  Debtor, however, voted without first having obtained bankruptcy court approval for his vote.

142.    Debtor's vote as a limited partner in connection with the March 7, 2006, partnership meeting violated his fiduciary duties to creditors in his bankruptcy case. Debtor conspired with DJS, DJS Management LLC, and the Limited Partner Defendants to effectuate this violation of Debtor's fiduciary duty as a debtor in possession.

143.    Because Debtor was wrongfully excluded from voting in his capacity as a general partner on whether to appoint DJS Management LLC as a substitute general partner, and because Debtor voted as a limited partner without having first obtained court approval as required, the appointment of DJS Management LLC as a substitute general partner is ineffective under the terms of the Partnership Agreement and applicable law.

144.    Because the appointment of DJS Management LLC as a substitute general partner is ineffective under the terms of the Partnership Agreement and applicable law, either the Estate Representative is the sole general partner of DJS, or, in the alternative,

COMPLAINT - 32

there has been no general partner of DJS for more than ninety days and, therefore, DJS must be dissolved according to Article 1.5 of the Partnership Agreement and applicable law.

145.   DJS Management LLC and the Limited Partner Defendants should be and are estopped from claiming Debtor was not entitled to vote as a general partner on whether to appoint DJS Management LLC as a substitute general partner because the Partnership Agreement has substantively similar provisions concerning the effect of a bankruptcy filing on both general and limited partners' rights and interests, but DJS Management LLC and the Limited Partner Defendants permitted Debtor to vote as a limited partner only.

146.   DJS, DJS Management LLC, and the Limited Partner Defendants disagree with the allegations in this Count XIV.

147.   The Estate Representative seeks a declaration that: (i) Debtor, in his capacity as a general partner, was wrongfully excluded from voting on whether to appoint DJS Management LLC as a substitute general partner; (ii) Debtor, in his capacity as a limited partner, was ineligible to vote on whether to appoint DJS Management LLC as a substitute general partner because Debtor failed to obtain the required court approval prior to voting; (iii) the appointment of DJS Management LLC as a substitute general partner was ineffective under the terms of the Partnership Agreement and applicable law, and is therefore void; and (iv) either the Estate Representative is the sole general partner of DJS, or, in the alternative, DJS must be dissolved pursuant to Article 1.5 of the Partnership Agreement and applicable law.

COMPLAINT - 33

## COUNT XV
### Dissolution of DJS
**(Against DJS, DJS Management LLC, and the Limited Partner Defendants)**

148.    The Estate Representative realleges the allegations in paragraphs 1 through 147 as though fully set forth here.

149.    On March 7, 2006, DJS Management LLC and the Limited Partner Defendants conducted a partnership meeting at which they: (i) deemed Debtor to be in default as a general partner by virtue of his January 4, 2006, chapter 11 bankruptcy filing; (ii) deemed certain of Debtor's rights and interests as a general partner to be terminated; and (iii) allegedly appointed DJS Management LLC as a substitute general partner.

150.    The appointment of DJS Management LLC as a substitute general partner was and is ineffective and void because of, among other things, those reasons set forth in Counts XII, XIII, and XIV of this Complaint, including that Debtor's vote as a limited partner in favor of the appointment was made without first obtaining required bankruptcy court approval, making the vote itself ineffective and void.

151.    DJS, DJS Management LLC, and the Limited Partner Defendants contend that Debtor's status as a general partner terminated upon his bankruptcy filing on the Petition Date.  If so, the failure of DJS, DJS Management LLC, and the Limited Partner Defendants to properly install a substitute general partner has triggered the mandatory dissolution and winding-up provisions of Idaho Code § 53-2-801(4) and Article 1.5 of the Partnership Agreement.

152.    If DJS, DJS Management LLC, and the Limited Partner Defendants are incorrect in their contention that Debtor's status as a general partner terminated upon

COMPLAINT - 34

his bankruptcy filing on the Petition Date, then the Estate Representative remains the

sole general partner of DJS.  The Estate Representative also controls a majority interest

in DJS as a limited partner and is entitled to receive distributions therefor.  Based on

the foregoing, as a general partner and majority-interest-holding limited partner, the

Estate Representative seeks and hereby applies for a court order directing the

dissolution and winding-up of DJS pursuant to Idaho Code §§ 53-2-801 and 802.

**COUNT XVI**
**Breach of Partnership Duties**
**(Against DJS Management LLC and the Limited Partner Defendants)**

153.    The Estate Representative realleges the allegations in paragraphs 1

through 152 as though fully set forth here.

154.    From and after the Petition Date, DJS Management LLC and the Limited

Partner Defendants have excluded Debtor and the Estate Representative from

participating in DJS as a general and limited partner.  This exclusion of Debtor is

wrongful under the Partnership Agreement and applicable law.

155.    DJS Management LLC and the Limited Partner Defendants' wrongful

exclusion of Debtor and the Estate Representative from participating in DJS includes,

but is not limited to, DJS's failure to make distributions to Debtor and the Estate

Representative.

156.    DJS Management LLC and the Limited Partner Defendants' wrongful

exclusion of Debtor from participating in DJS includes, but is not limited to, excluding

Debtor from voting in his capacity as a general partner at the March 7, 2006,

partnership meeting on whether to appoint DJS Management LLC as a substitute

general partner.

COMPLAINT - 35

157.   DJS Management LLC and the Limited Partner Defendants' wrongful exclusion of Debtor and the Estate Representative from participating in DJS is a violation of DJS Management LLC and the Limited Partner Defendants' duties of loyalty, care, good faith, and fair dealing.

158.   As a result of DJS Management LLC and the Limited Partner Defendants' violation of their duties of loyalty, care, good faith, and fair dealing, the Estate Representative has been damaged in an amount to be proven at trial.

## COUNT XVII
### Declaratory Judgment—Unavailability of Setoff Rights
### (Against DJS)

159.   The Estate Representative realleges the allegations in paragraphs 1 through 158 as though fully set forth here.

160.   Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration[.]"

161.   DJS was the maker of an Installment Promissory Note dated June 30, 2004, with an original principal amount of $9,088,546.94, an interest rate of 5.2% per annum, a maturity date of June 30, 2024, and naming JRS Properties III L.P. as the payee (the "DJS Note").

162.   JRS Properties III L.P. sold and assigned its rights under the DJS Note to Debtor pursuant to a Purchase and Sale Agreement dated August 31, 2004.

163.   The DJS Note requires DJS to make annual, interest-only payments on June 30 of each year.

164.    DJS has not made the annual payments required by the DJS Note for 2006 or 2007 in the amount of $472,604.44 each.

165.    In connection with Debtor's bankruptcy case, DJS filed and then later amended a proof of claim, which was assigned claim number 24 in Debtor's bankruptcy case (the "DJS Claim").  The DJS Claim does not list a specific amount, but includes sums for Debtor's partner draws.  DJS claims that it is entitled to set off Debtor's partner draws against the amounts DJS owes Debtor under the DJS Note.

166.    In connection with Debtor's bankruptcy case, Key Bank filed a proof of claim, which was assigned claim number 20 in Debtor's bankruptcy case (the "Key Bank Claim").  The Key Bank Claim was in the amount of $2,083,596.67.  The Key Bank Claim was the result of a judgment Key Bank obtained against DJS as the guarantor of a loan made to and defaulted on by Debtor.  During the pendency of Debtor's bankruptcy case, DJS paid Key Bank $2,380,195.18 on account of Key Bank's judgment.  DJS claims that it is entitled to set off the amounts it paid on account of the Key Bank judgment against the amounts DJS owes Debtor.

167.    In connection with Debtor's bankruptcy case, Banner Bank filed and then later amended a proof of claim, which was assigned claim number 35 in Debtor's bankruptcy case ("Proof of Claim No. 35").  Proof of Claim No. 35 covered two loans: an unsecured loan for approximately $309,000, and a secured loan for approximately $2,588,000.  In November 2007, Banner Bank sold and assigned to DJS that portion of Proof of Claim No. 35 pertaining to the $2,588,000 secured claim (the "Banner Bank Claim").  DJS claims that it is entitled to set off Debtor's obligations under the Banner Bank Claim against the amounts DJS owes Debtor.

COMPLAINT - 37

168.    The Estate Representative disputes that DJS is entitled to set off of amounts based on the DJS Claim, the Key Bank Claim, or the Banner Bank Claim.

169.    The Estate Representative seeks a declaration: (i) that DJS is not entitled to set off any amounts based on the DJS Claim, the Key Bank Claim, or the Banner Bank Claim; or (ii) to the extent DJS is entitled to an offset, determining the amount due under the DJS Note and the amount to which DJS is entitled to set off.

**COUNT XVIII**
**Breach of Contract/Promissory Note**
**(Against DJS)**

170.    The Estate Representative realleges the allegations in paragraphs 1 through 169 as though fully set forth here.

171.    DJS is the maker of the DJS Note, and DJS's duties and obligations under the DJS Note are owed to the Estate Representative.

172.    The DJS Note requires DJS to make annual, interest-only payments on June 30 of each year.

173.    DJS has not made the annual payments required by the DJS Note for 2006 or 2007 in the amount of $472,604.44 each.

174.    DJS's failure to make the required, annual payments for 2006 and 2007 is both a breach of the DJS Note and a default on the DJS Note.

175.    Although the DJS Note includes a provision for the acceleration of the entire principal balance due upon default, neither Debtor nor the Estate Representative has accelerated the principal due under the DJS Note, but the Estate Representative reserves the right to accelerate the DJS Note and amend this Complaint accordingly.

176.    As a result of DJS's default, the Estate Representative has been required to retain attorneys to enforce his rights under the DJS Note. The DJS Note permits the Estate Representative to recover his attorney fees and costs incurred in enforcing the DJS Note. The Estate Representative is also entitled to recover his attorney fees and costs pursuant to Idaho law, including but not limited to Idaho Code §§ 12-120 and 12-121.

177.    As a result of DJS's default, the Estate Representative has been damaged in the amount of: (i) $472,604.44, plus accrued interest from July 1, 2006, through the present; plus (ii) $472,604.44, plus accrued interest from July 1, 2007, through the present; plus (iii) the Estate Representative's attorney fees and costs incurred in enforcing his rights under the DJS Note.

178.    Accordingly, the Estate Representative seeks a money judgment against DJS in the amount of: (i) $472,604.44, plus accrued interest from July 1, 2006, through the present; plus (ii) $472,604.44, plus accrued interest from July 1, 2007, through the present; plus (iii) the Estate Representative's attorney fees and costs incurred in enforcing his rights under the DJS Note. The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

### COUNT XIX
### Declaratory Judgment—Equitable Subordination of the DJS Claim
### (Against DJS)

179.    The Estate Representative realleges the allegations in paragraphs 1 through 178 as though fully set forth here.

COMPLAINT - 39

180.    Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration[.]"

181.    DJS is an insider of Debtor.

182.    DJS is the alter ego of Debtor.  Debtor used DJS and DJS's assets as his own, without regard to DJS's separate existence.  Debtor's use of DJS and DJS's assets were at times documented, after the fact, so as to appear to honor the separate existence of DJS.  Treating DJS as a separate entity from Debtor would lead to inequitable results because doing so shields assets from the legitimate claims of Debtor's creditors despite Debtor's exercise of dominion and control over DJS and DJS's assets and his treatment of DJS's assets as though they were his own.

183.    DJS has engaged in inequitable conduct by, among other things, permitting confusion over the ownership of assets, accepting transfers of property from Debtor with knowledge of Debtor's impending bankruptcy, and commingling DJS's and Debtor's business and personal affairs.

184.    DJS's inequitable conduct has injured Debtor's creditors by, among other things, impeding the orderly identification of Debtor's assets and efficient liquidation of those assets to satisfy the legitimate claims of Debtor's creditors.

185.    The Estate Representative contends that all of DJS's claims, including the DJS Claim, the Key Bank Claim, and the Banner Bank Claim should be subordinated to all "Allowed Claims" (as that term is defined in the Plan) for purposes of distributions from the Don J. Simplot Creditors' Trust pursuant to 11 U.S.C. § 510.  DJS disagrees.

COMPLAINT - 40

186.    The Estate Representative seeks a declaration that all of DJS's claims, including the DJS Claim, the Key Bank Claim, and the Banner Bank Claim are subordinated to all "Allowed Claims" (as that term is defined in the Plan) for purposes of distributions from the Don J. Simplot Creditors' Trust.

**COUNT XX**
**Declaratory Judgment—Disregard DJS's Status as a Separate Entity**
**(Against DJS, DJS Management LLC, and the Limited Partner Defendants)**

187.    The Estate Representative realleges the allegations in paragraphs 1 through 186 as though fully set forth here.

188.    Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration[.]"

189.    Debtor used DJS and DJS's assets as his own, without regard to DJS's separate existence.  Debtor's use of DJS and DJS's assets were at times documented, after the fact, so as to appear at times to honor the separate existence of DJS.  Despite this misleading documentation, Debtor exercised dominion and control over DJS and DJS's assets as though they were his own and DJS was merely Debtor's alter ego.

190.    Prior to the Petition Date, Debtor held a 75.3578% interest in DJS, and was the sole general partner of DJS and the holder of the largest limited partner interest.

191.    Debtor's interests and ownership of DJS overlapped such that the separate personalities of the individual and the partnership no longer existed.

192.    Continuing to recognize the separate existence of DJS from Debtor would lead to an inequitable result.  One example of the resulting inequity involves Debtor's

fraudulent conveyances of his personal assets to DJS shortly before the Petition Date in

an effort to shield those assets from the legitimate claims of his creditors.  The Estate

Representative is seeking to unwind those fraudulent conveyances in this Complaint.

The Estate Representative is responsible for 100% of his own legal fees in unwinding

the fraudulent conveyances, and will, in effect, be subsidizing 75.3578% of DJS's legal

fees in defending the fraudulent conveyance claims.  Each dollar spent by DJS in

defending the fraudulent conveyance claims represents $0.753578 that should be

available for distribution to the Estate Representative.

193.    DJS is the alter ego of Debtor, and DJS's existence as a separate entity

should be disregarded.  DJS disagrees.

194.    The Estate Representative seeks a declaration that: (i) Debtor and DJS are

one in the same; (ii) DJS is not and shall not be regarded as a separate entity apart from

Debtor; and (iii) all of DJS's assets are owned by the Estate Representative as the

successor of Debtor and should be liquidated to pay Allowed Claims (as that term is

defined in the Plan).

**COUNT XXI**
**Avoidance and Recovery of JRSCo. Class B Stock**
**Under Idaho Fraudulent Conveyance Law**
**(Individual Defendants)**

195.    The Estate Representative realleges the allegations in paragraphs 1

through 194 as though fully set forth here.

196.    During the four-year period preceding the Petition Date, Debtor made a

series of transfers of JRSCo Class B stock to the Individual Defendants (the "Class B

Stock Transfers").  According to Debtor and JRSCo, each share of Class B stock was

worth between $4,382.61 and $4,867.17 during this period.

COMPLAINT - 42

197.    The Class B Stock Transfers include, but are not limited to, the following

transfers:

| DATE | TRANSFEREE | NO. OF SHARES |
|---|---|---|
| 7/31/04 | John H. Gwin | 5 |
| 2/28/04 | Olivia Grace Gwin | 5 |
| 2/28/04 | Thomas Robert Simplot | 5 |
| 2/28/04 | Clayton Allan Simplot | 5 |
| 2/28/04 | John Warren Simplot | 5 |
| 2/28/04 | Sophia Rose Haroian | 5 |
| 2/28/04 | Julian James Haroian | 5 |
| 2/28/04 | Nina L. Simplot | 5 |
| 2/28/04 | Reid H. Simplot | 5 |
| 2/28/04 | Isabelle Morgan Haroian | 5 |
| 2/28/04 | Samantha Erin Haroian | 5 |
| 2/28/04 | Andrew Cortland Simplot | 5 |
| 2/28/04 | Patrick Henry McDonald | 5 |
| 2/28/04 | Breanne Elizabeth Simplot | 5 |
| 2/28/04 | Eric Michael Simplot | 5 |
| 2/28/04 | John Ralstin Simplot | 5 |
| 2/28/04 | April Dawn Simplot Gwin | 5 |
| 2/28/04 | John Don Simplot | 5 |
| 2/28/04 | Cindy Simplot Haroian | 5 |

COMPLAINT - 43

| | | |
|---|---|---|
| 2/28/04 | Debbie S. McDonald | 5 |
| 2/28/04 | Michael Lloyd Simplot | 5 |
| 12/29/03 | Samantha Erin Haroian | 5 |
| 12/29/03 | Nina L. Simplot | 5 |
| 12/29/03 | Reid H. Simplot | 5 |
| 12/29/03 | Isabelle Morgan Haroian | 5 |
| 12/29/03 | Andrew Cortland Simplot | 5 |
| 12/29/03 | Patrick Henry McDonald | 5 |
| 12/29/03 | Breanne Elizabeth Simplot | 5 |
| 12/29/03 | Eric Michael Simplot | 5 |
| 12/29/03 | John Ralstin Simplot | 5 |
| 12/29/03 | April Dawn Simplot Gwin | 5 |
| 12/29/03 | John Don Simplot | 5 |
| 12/29/03 | Cindy Simplot Haroian | 5 |
| 12/29/03 | Debbie S. McDonald | 5 |
| 12/29/03 | Michael Lloyd Simplot | 5 |

198.    The Individual Defendants provided no contemporaneous consideration in exchange for the Class B Stock Transfers.

199.    At the time of the Class B Stock Transfers, Debtor was insolvent as that term is defined by Idaho Code § 55-911.

200.    The Class B Stock Transfers were transfers of an interest of Debtor in property.

COMPLAINT - 44

201.    Debtor transferred the Class B stock to the Individual Defendants with the intent to delay and defraud creditors, and the transfer is therefore void.

202.    In the alternative, Debtor transferred the Class B with the actual intent to hinder, delay, and defraud Debtor's creditors, and is therefore avoidable.

203.    In the alternative, Debtor received less than the reasonably equivalent value in exchange for the Class B Stock Transfers, and the transfer occurred at a time when Debtor was insolvent and engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions.

204.    As a result, the Class B Stock Transfers are void under Idaho Code § 55-906, and/or avoidable under Idaho Code §§ 55-913(1)(a), 55-913(1)(b), and 55-914, and 11 U.S.C. § 544.

205.    The Estate Representative seeks to have the Class B Stock Transfers unwound and avoided, or, in the alternative, a money judgment against each of the Individual Defendants equal to the value of the Class B stock transferred to that Individual Defendant.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

## COUNT XXII
### Avoidance and Recovery of a DJS Limited Partner Interest
### Under Idaho Fraudulent Conveyance Law
### (Limited Partner Defendants)

206.    The Estate Representative realleges the allegations in paragraphs 1 through 205 as though fully set forth here.

207.    According to DJS's tax returns, as of December 31, 2002, Debtor owned a 73.922985% limited partner interest in DJS.

COMPLAINT - 45

208.    According to Debtor's schedules filed in connection with Debtor's bankruptcy case, as of the Petition Date, Debtor owned a 73.3578% limited partner interest in DJS.

209.    Debtor transferred, within the three-year period preceding the Petition Date, a 0.565185% limited partner interest to the Limited Partner Defendants.

210.    The Limited Partner Defendants provided no contemporaneous consideration in exchange for the 0.565185% limited partner interest.

211.    At the time of the transfer of the 0.565185% limited partner interest, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32) and Idaho Code § 55-911.

212.    The transfer of the 0.565185% limited partner interest was a transfer of an interest of Debtor in property.

213.    Debtor transferred the 0.565185% limited partner interest with the intent to delay and defraud creditors, and the transfer is therefore void.

214.    In the alternative, Debtor transferred the 0.565185% limited partner interest with the actual intent to hinder, delay, and defraud Debtor's creditors, and is therefore avoidable.

215.    In the alternative, Debtor received less than the reasonably equivalent value in exchange for the 0.565185% limited partner interest, and the transfer occurred at a time when Debtor was insolvent and engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions.

COMPLAINT - 46

216.    As a result, the transfer of the 0.565185% limited partner interest is void under Idaho Code § 55-906, and avoidable under Idaho Code §§ 55-913(1)(a), 55-913(1)(b), and 55-914, and 11 U.S.C. § 544.

217.    The Estate Representative seeks to have the transfer of the 0.565185% limited partner interest unwound and avoided, or, in the alternative, a money judgment against the Limited Partner Defendants that received the 0.565185% limited partner interest equal to the value of interest transferred.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

### COUNT XXIII
### Derivative Action—Breach of Contract/Breach of Fiduciary Duties
### (DJS Management LLC)

218.    The Estate Representative realleges the allegations in paragraphs 1 through 217 as though fully set forth here.

219.    The Partnership Agreement does not permit a general partner to expend partnership funds (i) in defense of claims against limited partners, or (ii) to protect the rights and interests of limited partners as individuals.  Instead, the Partnership Agreement limits a general partner's authority to expend funds in defense of litigation to defending DJS itself.

220.    Section 5.10 of the Partnership Agreement expressly recognizes the general partner's fiduciary obligations to use DJS funds solely in accordance with the Partnership Agreement and applicable partnership law.

221.    From and after the Petition Date, DJS has incurred and paid legal fees for the benefit of the Limited Partner Defendants.  DJS has incurred and is incurring these

COMPLAINT - 47

legal fees in connection with protecting the rights and interests of the Limited Partner Defendants with respect to the effect of Debtor's bankruptcy case and related matters.

222.    DJS Management LLC has authorized the payment of these legal fees without a good faith belief as to the propriety of the incursion and payment of the legal fees.  DJS Management LLC's conduct in authorizing the payment of these legal fees for the benefit of the Limited Partner Defendants represents gross negligence and willful misconduct.

223.    DJS Management LLC has authorized the payment of these legal fees for the benefit of the Limited Partner Defendants in breach of the Partnership Agreement and in violation of applicable partnership law.

224.    DJS Management LLC's authorization of the payment of these legal fees for the benefit of the Limited Partner Defendants represents a breach of DJS Management LLC's fiduciary duties to Debtor and the Estate Representative, including DJS Management LLC's duties of loyalty, care, good faith, and fair dealing.

225.    DJS has been damaged as a result of DJS Management LLC's wrongful conduct in authorizing the payment of these legal fees for the benefit of the Limited Partner Defendants.  DJS's damages equal the legal fees incurred and paid for the benefit of the Limited Partner Defendants.

226.    The Estate Representative seeks a money judgment on behalf of DJS, in an amount to be proven at trial, equal to the legal fees incurred and paid for the benefit of the Limited Partner Defendants.

COMPLAINT - 48

227.    The Estate Representative is entitled to bring this Count XXIII on behalf

of DJS pursuant to Idaho Code § 53-2-1002(2), and to recover its attorney fees and

costs pursuant to Idaho Code § 53-2-1005.

## COUNT XXIV
### Derivative Action—Quantum Meruit/Unjust Enrichment/Restitution
### (Limited Partner Defendants)

228.    The Estate Representative realleges the allegations in paragraphs 1

through 227 as though fully set forth here.

229.    The Partnership Agreement does not permit a general partner to expend

partnership funds (i) in defense of claims against limited partners, or (ii) to protect the

rights and interests of limited partners as individuals.  Instead, the Partnership

Agreement limits a general partner's authority to expend funds in defense of litigation

to defending DJS itself.

230.    Section 5.10 of the Partnership Agreement expressly recognizes the

general partner's fiduciary obligations to use DJS funds solely in accordance with the

Partnership Agreement and applicable partnership law.

231.    From and after the Petition Date, DJS has incurred and paid legal fees for

the benefit of the Limited Partner Defendants.  DJS has incurred and is incurring these

legal fees in connection with protecting the rights and interests of the Limited Partner

Defendants with respect to the effect of Debtor's bankruptcy case and related matters.

232.    The Limited Partner Defendants have received a benefit to which they are

not entitled and for which they have not paid.  As a result, the Limited Partner

Defendants have been unjustly enriched.  DJS is entitled to recover from the Limited

Partner Defendants the amount by which they have been unjustly enriched.

COMPLAINT - 49

233.    Due to the Limited Partner Defendants' failure to pay for the legal services provided for their benefit, DJS is entitled to restitution under the doctrine of *quantum meruit* in an amount equal to the reasonable value of the legal services improperly provided to the Limited Partner Defendants and paid for by DJS.

234.    The Estate Representative is entitled to bring this Count XXIV on behalf of DJS pursuant to Idaho Code § 53-2-1002(2), and to recover its attorney fees and costs pursuant to Idaho Code § 53-2-1005.

## COUNT XXV
### Avoidance and Recovery of the "DJS Transfers" Under Bankruptcy Fraudulent Conveyance Law (Against DJS)

235.    The Estate Representative realleges the allegations in paragraphs 1 through 234 as though fully set forth here.

236.    During the four-year period preceding the Petition Date, Debtor made a series of transfers of cash to DJS (the "DJS Transfers").  Certain of these transfers occurred within the one-year period preceding the Petition Date.  The transfers occurring within one year of the Petition Date include, but are not limited to: (i) a transfer of $40,000 on January 18, 2005; (ii) a transfer of $130,141 on March 31, 2005; (iii) a transfer of $32,000 on October 17, 2005; and (iv) a transfer of $70,000 on October 19, 2005.

237.    At the time Debtor made the DJS Transfers, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32).

238.    DJS Transfers constitute a transfer of an interest of Debtor in property.

239.    Debtor effectuated the DJS Transfers to hinder, delay, or defraud Debtor's existing and future creditors.

COMPLAINT - 50

240.    In the alternative, Debtor received less than the reasonably equivalent value in exchange for the DJS Transfers, and the DJS Transfers occurred at a time when Debtor was insolvent or was engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions.

241.    The DJS Transfers are avoidable under 11 U.S.C. § 548.

242.    Pursuant to 11 U.S.C. §§ 548 and 550, the Estate Representative seeks to have the DJS Transfers unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the DJS Transfers, plus interest from the date of the avoided transfers.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

### COUNT XXVI
### Avoidance and Recovery of the DJS Transfers Under
### Idaho Fraudulent Conveyance Law
### (Against DJS)

243.    The Estate Representative realleges the allegations in paragraphs 1 through 242 as though fully set forth here.

244.    During the four-year period preceding the Petition Date, Debtor effectuated the DJS Transfers.

245.    DJS provided no contemporaneous consideration in exchange for the DJS Transfers.

246.    At the time Debtor effectuated the DJS Transfers, Debtor was insolvent as that term is defined by Idaho Code § 55-911 and DJS was aware of Debtor's insolvency.

247.    Debtor effectuated the DJS Transfers with the intent to delay and defraud creditors, and the transfer is therefore void.

COMPLAINT - 51

248.    In the alternative, Debtor effectuated the DJS Transfers with the actual intent to hinder, delay and defraud Debtor's creditors, and the transfer is therefore avoidable.

249.    In the alternative, Debtor received less than the reasonably equivalent value in exchange for the DJS Transfers, and the transfer occurred at a time when Debtor was insolvent or was engaged in businesses and transactions for which Debtor's remaining assets were unreasonably small in relation to the businesses and transactions, and the transfer is therefore avoidable.

250.    As a result, the DJS Transfers are void under Idaho Code § 55-906, and/or avoidable under Idaho Code §§ 55-913(1)(a), 55-913(1)(b), and 55-914, and 11 U.S.C. § 544.

251.    The Estate Representative seeks to have the DJS Transfers unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the DJS Transfers pursuant to Idaho Code § 55-917 plus interest from the date of the avoided transfers.  The Estate Representative also seeks such other additional appropriate relief as may be available at law or equity.

## COUNT XXVII
### Avoidance and Recovery of the DJS Transfers Under Bankruptcy Preference Law
### (Against DJS)

252.    The Estate Representative realleges the allegations in paragraphs 1 through 251 as though fully set forth here.

253.    DJS is an insider of Debtor.

COMPLAINT - 52

254.   According to DJS, during a multi-year period preceding the Petition Date, claims arose in DJS's favor and against Debtor such that DJS became one of Debtor's "creditors," as that term is defined in 11 U.S.C. § 101(10).

255.   During the one-year period preceding the Petition Date, Debtor effectuated the DJS Transfers to DJS.  These transfers were to or for DJS's benefit.

256.   The DJS Transfers were purportedly on account of the pre-existing claims in DJS's favor and against Debtor.  These transfers were, therefore, on account of an antecedent debt owed by Debtor to DJS before the transfers were made.

257.   At the time the DJS Transfers were made, Debtor was insolvent as that term is defined by 11 U.S.C. § 101(32).

258.   The DJS Transfers were made to an insider within one year of the Petition Date.

259.   But for the DJS Transfers to DJS, the cash transferred would be available for distribution to Debtor's unsecured creditors.

260.   The DJS Transfers will enable DJS to receive more than it would receive if Debtor's case were one under chapter 7 of the Bankruptcy Code, the transfers had not been made, and DJS received payment of its claims pursuant to the Bankruptcy Code.

261.   Pursuant to 11 U.S.C. § 547, the DJS Transfers are an avoidable preference.  Pursuant to 11 U.S.C. § 550, the Estate Representative is entitled to recover the DJS Transfers from DJS, in the alternative, a money judgment against DJS equal to the value of the DJS Transfers plus interest from the date of the avoided transfer.

262.   The Estate Representative seeks to have the DJS Transfers unwound and avoided, or, in the alternative, a money judgment against DJS equal to the value of the

DJS Transfers plus interest from the date of the avoided transfer.  The Estate

Representative also seeks such other additional appropriate relief as may be available at

law or equity.

### PRAYER FOR RELIEF

WHEREFORE, the Estate Representative prays for the following relief:

A.       With respect to Counts I, II, and III, that the Court enter a judgment

compelling DJS, as the initial transferee, to deliver to the Estate Representative title to

the Boise Condo free and clear of all DJS's interests, or, in the alternative, a monetary

judgment against DJS in an amount equal to the value of the Boise Condo, plus interest

from the date of the avoided transfer;

B.       With respect to Counts IV, V, and VI, that the Court enter a judgment

compelling DJS, as the initial transferee, to deliver to the Estate Representative title to

the Hollow Road Property free and clear of all DJS's interests, or, in the alternative, a

monetary judgment against DJS in an amount equal to the value of the Hollow Road

Property, plus interest from the date of the avoided transfer;

C.       With respect to Counts VII, VIII, and IX, that the Court enter a

judgment compelling DJS, as the initial transferee, to deliver to the Estate

Representative title to the McCall Property free and clear of all DJS's interests, or, in

the alternative, a monetary judgment against DJS in an amount equal to the value of the

McCall Property, plus interest from the date of the avoided transfer;

D.       With respect to Count X, that the Court enter a judgment declaring that

the Estate is the sole owner of the Contested Assets and that that DJS has no cognizable

legal or equitable interest in the property; or, in the alternative, that any interest DJS

COMPLAINT - 54

may have in the Contested Assets is void as against the Estate Representative and/or

avoidable by the Estate Representative under applicable law, including but not limited

to Idaho Code § 55-907 and 11 U.S.C. § 544.

      E.      With respect to Count XI, that the Court enter a judgment declaring that

the Transfer Restrictions are void, invalid, and unenforceable against the Estate

Representative's rights and interests in DJS;

      F.      With respect to Count XII, that the Court enter a judgment declaring

that: (i) the actions of DJS, DJS Management LLC, and the Limited Partner Defendants

in deeming Debtor to be in default as a general partner by virtue of his January 4, 2006,

chapter 11 bankruptcy filing, deeming certain of Debtor's rights and interests as a

general partner to be terminated, and appointing DJS Management LLC as a substitute

general partner are void because the acts violated 11 U.S.C. § 362; and (ii) either the

Estate Representative is the sole general partner of DJS because Debtor's bankruptcy

filing did not automatically terminate his status as a general partner and no other

general partner has been properly installed, or, in the alternative, there has been no

general partner of DJS for more than ninety days and, therefore, DJS must be dissolved

according to Article 1.5 of the Partnership Agreement and applicable law;

      G.      With respect to Count XIII, that the Court enter a money judgment in

favor of the Estate Representative and against DJS, DJS Management LLC, and the

Limited Partner Defendants, jointly and severally, for actual damages in an amount to

be proven at trial, plus attorney fees incurred in initiating and prosecuting this action,

and for punitive damages equal to ten times the amount of actual damages;

COMPLAINT - 55

H.      With respect to Count XIV, that the Court enter a judgment declaring

that: (i) Debtor, in his capacity as a general partner, was wrongfully excluded from

voting on whether to appoint DJS Management LLC as a substitute general partner; (ii)

Debtor, in his capacity as a limited partner, was ineligible to vote on whether to appoint

DJS Management LLC as a substitute general partner because Debtor failed to obtain

the required court approval prior to voting; (iii) the appointment of DJS Management

LLC as a substitute general partner was ineffective under the terms of the Partnership

Agreement and applicable law, and is therefore void; and (iv) either the Estate

Representative is the sole general partner of DJS, or, in the alternative, DJS must be

dissolved pursuant to Article 1.5 of the Partnership Agreement and applicable law;

I.      With respect to Count XV, that the Court enter an order directing the

dissolution and winding-up of DJS pursuant to Idaho Code §§ 53-2-801 and 802;

J.      With respect to Count XVI, that the Court enter a money judgment in

favor of the Estate Representative and against DJS Management LLC and the Limited

Partner Defendants, jointly and severally, in an amount to be proven at trial;

K.      With respect to Count XVII, that the Court enter a judgment declaring

that: (i) DJS is not entitled to set off any amounts based on the DJS Claim, the Key

Bank Claim, or the Banner Bank Claim; or, in the alternative (ii) to the extent DJS is

entitled to an offset, determining the amount due under the DJS Note and the amount to

which DJS is entitled to set off;

L.      With respect to Count XVIII, that the Court enter a money judgment in

favor of the Estate Representative and against DJS in the amount of: (i) $472,604.44,

plus accrued interest from July 1, 2006, through the present; plus (ii) $472,604.44, plus

accrued interest from July 1, 2007, through the present; plus (iii) the Estate

Representative's attorney fees and costs incurred in enforcing his rights under the DJS

Note;

M.      With respect to Count XIX, that the Court enter a judgment declaring

that the DJS Claim is subordinated to all "Allowed Claims" (as that term is defined in

the Plan) for purposes of distributions from the Don J. Simplot Creditors' Trust

pursuant to the Plan;

N.      With respect to Count XX, that the Court enter a judgment declaring

that: (i) Debtor and DJS are one in the same; (ii) DJS is not and shall not be regarded as

a separate entity apart from Debtor; and (iii) all of DJS's assets are owned by the Estate

Representative as the successor of Debtor and should be liquidated to pay Allowed

Claims (as that term is defined in the Plan);

O.      With respect to Count XXI, that that the Court enter a judgment

compelling the Individual Defendants, as the initial transferees, to deliver to the Estate

Representative the Class B Shares transferred to the Individual Defendants within four

years prior to the Petition Date, free and clear of all DJS's interests, or, in the

alternative, a monetary judgment against each Individual Defendant in an amount equal

to the value of the Class B Shares transferred to each Individual Defendant within four

years prior to the Petition Date;

P.      With respect to Count XXII, that that the Court enter a judgment

compelling the Limited Partner Defendants, as the initial transferees, to deliver to the

Estate Representative a 0.565185% limited partner interest in DJS, free and clear of all

Limited Partner Defendants' interests, and subject only to whatever transfer restrictions

held by the court to apply to the Estate Representative's other limited partner interests in DJS in this action, or, in the alternative, a monetary judgment against each Limited Partner Defendant in an amount equal to the value of the limited partner interest in DJS transferred to each Limited Partner Defendant within three years of the Petition Date;

Q.      With respect to Count XXIII, that that the Court enter a money judgment in favor of DJS and against DJS Management LLC in an amount to be proven at trial, and award the Estate Representative his attorney fees and costs incurred in bringing Count XXIII;

R.      With respect to Count XXIV, that that the Court enter a money judgment in favor of DJS and against the Limited Partner Defendants, jointly and severally, in an amount to be proven at trial, and award the Estate Representative his attorney fees and costs incurred in bringing Count XXIV; and

S.      With respect to Counts XXV, XXVI, and XXVII, that the Court enter a judgment compelling DJS, as the initial transferee, to deliver to the Estate Representative the DJS Transfers, or, in the alternative, a monetary judgment against DJS in an amount equal to the value of the DJS Transfers, plus interest from the date of the avoided transfer;

T.      With respect to all counts, that the Estate Representative have such other and additional relief as the Court deems just and equitable under the circumstances.

DATED this 2nd day of January, 2008.

HOLLAND & HART LLP


By ___/s/ Brad A. Goergen_____
    Brad A. Goergen, for the firm
    Attorneys for Ronald Greenspan as Estate
    Representative of the Don J. Simplot
    Bankruptcy Estate

3792739_6.DOC

COMPLAINT - 59